IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No.: 1-20-cr-142 |
| ALEXANDER SITTENFELD, a/k/a "P.G. Sittenfeld," | Hon. Douglas R. Cole |
| Defendant. | |

### MOTION FOR AMENDMENT OF PROTECTIVE ORDER REGARDING DISCOVERY

Mr. Sittenfeld respectfully requests an amendment of the Protective Order Regarding Discovery to reclassify audio recordings wherein he is a party to Tier 1. There are two reasons for this Motion.

First, the existing Tier 2 Discovery classification for the audio recordings wherein Mr. Sittenfeld is a party is overbroad, unduly burdensome, and substantially prejudices his constitutional rights through unfair use restrictions.

Second, on November 19, 2020, United States Attorney David DeVillers misstated relevant law and facts during a press conference when unveiling the indictment, substantially prejudicing Mr. Sittenfeld by stripping him of his due process rights and presumption of innocence. Additionally, as will be explained in the memorandum below, Mr. Sittenfeld's

RITTGERS & RITTGERS
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

1

rights were substantially prejudiced by the government's use of selective quotes in the indictment which are incomplete and devoid of their exculpatory context.

This substantial prejudice can only be cleared by the unrestricted use of the audio recordings in which Mr. Sittenfeld is a party. Defense counsel and the government are at an impasse as to resolving this issue.

Pursuant to *United States v. Montgomery*, 592 Fed Appx. 411 (6th Cir. 2014)(Unpub.) and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Mr. Sittenfeld respectfully moves the Court to amend paragraph 8 of the Protective Order to allow his defense counsel to make reasonable use of audio recordings wherein he is a party, without restriction. Specifically, Mr. Sittenfeld requests permission to disclose, in whole or in part, any audio recording wherein he is a party, without complying with the obligations set forth in the current Protection Order for Tier 2 Discovery.

Respectfully submitted,

RITTGERS & RITTGERS

*/s/ Charles M. Ritttgers*
Charles M. Rittger
Charles H. Rittgers
Rittgers & Rittgers
12 East Warren Street
Lebanon, OH 45036
(513) 932-2115
charlie@rittgers.com

*Counsel for the Defendant*

Date: January 13, 2021

RITTGERS & RITTGERS
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

2

## MEMORANDUM

United States Attorney David DeVillers used a press conference on November 19, 2020 to unveil the Sittenfeld Indictment. During his press conference, DeVillers and FBI Special Agent in Charge Chris Hoffman misstated facts and law in a way that unfairly and substantially prejudiced Mr. Sittenfeld. The Indictment is filled with partial quotes attributable to Mr. Sittenfeld gathered from recorded conversations. All the audio recordings that include Mr. Sittenfeld's statements are currently classified as Tier 2 Discovery.

Mr. Sittenfeld respectfully requests an amendment of the Protective Order in this case related to audio recordings wherein he is a party. Specifically, Mr. Sittenfeld is requesting permission to disclose, in whole or in part, any audio recording wherein he is a party, without complying with the obligations set forth in the Protection Order for Tier 2 Discovery. Mr. Sittenfeld seeks this amendment to the Protective Order because he is substantially prejudiced by the overly broad designation of these audio recordings as Tier 2 Discovery. The following explains how the press conference, the Indictment, and subsequent news coverage necessitate the requested amendment to the Protective Order.

The Sixth Circuit employs a general rule that a protective order may be modified upon a defendant's showing of "substantial prejudice." See *United States v. Montgomery*, 592 Fed. Appx. 411, 417 (6th Cir. 2014) (Unpub.). Mr. Sittenfeld's right to an untainted jury pool and the cooperation of potential defense witnesses has been unfairly prejudiced by the government's false and misleading statements in the Indictment and to the public. Given these unfairly prejudicial public statements by the government and their adverse impact on the jury pool and potential defense witnesses, Mr. Sittenfeld faces an unusually heavy burden in realizing the fullness of his rights to prepare a robust defense and to the effective assistance of

RITTGERS & RITTGERS
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

3

counsel because his counsels' use of the recordings to discuss his statements and actions in the complete context of the recordings and other evidence is severely limited by the current Protective Order.

### The Government's Pretrial Statements to the Public Were Misleading and Substantially Prejudicial to Mr. Sittenfeld's Constitutional Rights to a Fair Trial.

"It is as much the duty of the United States Attorney to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 (1935).

> "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern *impartially* is as compelling as its obligation to govern at all, and *whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done*. As such, he is in a peculiar and very definite sense the servant of the law, the two-fold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor -- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger* at 88 (Emphasis added).

The public, including the future jurors in this case, are entitled to have confidence in the United States Attorney that he will faithfully observe the obligations described in *Berger*. *See Berger* at 88. "Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused, when they should properly carry none." *Id.*

RITTGERS & RITTGERS
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

4

On November 19, 2020 United States Attorney DeVillers voluntarily called a press conference to announce the Sittenfeld Indictment.[1] During his half-hour press conference, DeVillers incorrectly stated on multiple occasions that Mr. Sittenfeld's Progress and Growth PAC was a "secret." DeVillers asked FBI Special Agent in Charge Chris Hoffman to speak at the press conference. Hoffman inaccurately stated that a person controlling his own PAC is "against federal law." DeVillers also characterized the lawfully organized and publicly filed PAC as a "slush fund," and he did not correct Hoffman's claim that it was against federal law for Mr. Sittenfeld to ask that the donated money go to a PAC that he controlled. Cincinnati area print, TV, and radio stations, as well as media around Ohio, like the Cleveland Plain Dealer, and nationally, such as the New York Times, all repeated the government's false statements about the Progress and Growth PAC being "secretly controlled" and functioning as a "slush fund." *See* Attached Exhibit.

The truth is that Mr. Sittenfeld's nonconnected Progress and Growth PAC was publicly and readily available to the government on the FEC website[2] starting on February 5, 2018, *well before* the government initiated its undercover investigation of Mr. Sittenfeld. The Court can read, as the government should have, the FEC Campaign Guide for Nonconnected Committees.[3] This guide explains how nonconnected PACs like Mr. Sittenfeld's are operated lawfully. *Id.*

The Court should hold the government accountable as it should have been aware of the facts about Mr. Sittenfeld's PAC and how he could operate it lawfully before it indicted

---

[1] *See* https://www.cincinnati.com/story/news/politics/2020/11/19/p-g-sittenfeld-cincinnati-city-council-arrest-fbi/3775193001/

[2] https://www.fec.gov/

[3] https://www.fec.gov/resources/cms-content/documents/nongui.pdf

RITTGERS & RITTGERS
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

5

him. The government would have learned that Mr. Sittenfeld lawfully controlled the expenditures to candidates and others by the PAC. The government would have seen that the undercover agents' contributions were timely and fully reported to the FEC and transparently available to the public and the government. By viewing the PAC's publicly reported expenditures, the government would have seen that the PAC did not pay any of its funds to Mr. Sittenfeld personally.

Perhaps the government was aware of all the facts on the FEC website before they indicted him. The Indictment does not charge Mr. Sittenfeld with any crime arising from the way he operated his PAC. It does not allege that any of the contributions to the PAC went to Mr. Sittenfeld personally rather than for authorized expenditures. It does not allege that the contributions from the undercover agents were not reported as required to the FEC.

It is inexplicable, therefore, why the government made multiple false and misleading statements that Mr. Sittenfeld operated his PAC unlawfully. DeVillers and Hoffman referred to Mr. Sittenfeld's PAC as a "slush fund" to which he was "hiding his connection" and which he "secretly controlled". DeVillers and Hoffman added that Mr. Sittenfeld unlawfully accepted "face-to-face" contributions from the undercover agents that were "hidden."

The FEC website instructs that to be lawful "no nonauthorized committee shall include the name of any candidate in its name." 10 CFR 102.14. The FEC does not request on Form 1 or elsewhere the name of the candidate controlling the PAC.

Despite facts available to the government and the public on the FEC website about Mr. Sittenfeld's PAC and how it could lawfully operate, the Indictment and the government's own public voices have falsely misled the public, including the jury pool. This has created the false impression that Mr. Sittenfeld unlawfully and secretly hid his connection to his PAC,

6

that he received hidden contributions received unlawfully in person, and that he unlawfully and secretly controlled it as a slush fund for his personal use. None of that is true.

<u>Basic Fairness Demands Amending the Protective Order To Remedy the Substantial Injustice the Government Has Caused.</u>

At the press conference, DeVillers and Hoffman frequently referred to the Indictment. The Indictment reads like a press release. It extensively quotes statements by Mr. Sittenfeld from secretly recorded audio obtained by the FBI. However, numerous quotes of Mr. Sittenfeld in the Indictment were selectively chosen and unfairly taken out of context in order to fit the government's chosen narrative. Some of the quotes are incomplete and quoted only in part. In some instances, the selected quotes cut off Mr. Sittenfeld mid-sentence, effectively removing the exculpatory context and meaning of his statement. This selective editing by the government distorts the meaning of Mr. Sittenfeld's actual statements and the truth.

Throughout the Indictment, the government claims that Mr. Sittenfeld agreed to help Project 1 because he had received campaign donations from individuals who might benefit from Project 1. To further this claim, paragraph 29 of the Indictment states: "Sittenfeld stated that he would give a nudge on the City side and the Port side to '*make haste on a development agreement.*'" This is a half-quote and cuts off Mr. Sittenfeld mid-sentence. The full quote in the recording is that Mr. Sittenfeld said, "*On the City side and frankly on the Port side, I can give a nudge and say, now that this partnership's in place, let's make haste on a development*

RITTGERS & RITTGERS
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

7

*agreement, **which by the way is in the City's best interest, too.**"* (Emphasis added). The part of the sentence the government did not include in the Indictment runs contrary to the government's narrative. It shows why Mr. Sittenfeld supports the development of Project 1 when Mr. Sittenfeld explicitly tells the undercover agents that the development is in the best interest of his constituents, and there is nothing illegal about Mr. Sittenfeld giving a non-official request to move a project along.

The government cuts off Mr. Sittenfeld mid-sentence in paragraph 20 of the Indictment. In a similar fashion to other half-quotes used in the Indictment, the part of the sentence that is not included in the selected quote from paragraph 20 contradicts the government's accusation that Mr. Sittenfeld's support for Project 1 was a quid pro quo. The Indictment, at paragraph 20, indicates that Mr. Sittenfeld met with UCE-1 and UCE-2 so he could accept campaign donations and reads, "Sittenfeld went on to state, '*It's gotta happen, I mean, I've already, in the conversation I've already had with my colleagues...*'" The full quote in the recording is *"It's gotta happen. I mean, I've already, in the conversations I've already had with my colleagues, **that parcel and what it means for, you know, broader tourism, that can't be what it has been historically, if we're going to energize that part of downtown.**"* (Emphasis added). Instead of including the exculpatory portion or the full sentence, the government entered an ellipsis and removed the part of the sentence that did not fit its narrative. The end of Mr. Sittenfeld's sentence explains the true reason why Mr. Sittenfeld, the Mayor, and the rest of council were supportive of Project 1, which is the opposite of the government's accusations in this case.

The government now objects to permitting the defense from freely disclosing the audio recordings, to individuals who are not a party therein, which give full context for the

8

selected partial quotes that it previously disclosed and voluntarily disseminated to the public. For purposes of this motion, the Court should consider the following quotes of Mr. Sittenfeld from the recordings that the government chose not to include in the Indictment or subsequent press conference which counter the narrative it presented unfairly in the Indictment and press conference.

- "If you had the parcel and that footprint just sitting, growing moss, or whatever, that would not be good for the city."
- "I think 435 is just a really strategic piece, for downtown, for a new convention center, for the hotel situation."
- "They're (Port of Greater Cincinnati Development Authority) there to facilitate, so you can turn blight into something, turn stuff around, like be a partner, obviously help facilitate stuff with an MBE."
- "I'm just saying, from my vantage point, I want to get a deal (Project 1) done for the city."
- "It's very important, no question about it. It's important to the City."
- "We can't let that parcel of a downtown that's making a big urban comeback sit and be what it has been for way too long."
- "If it's land that otherwise has a derelict building sitting on it, and getting it back to productivity, it's got my support, and I think I could certainly shepherd the votes, too"
- "This is a win for the City."

The government also claims that Mr. Sittenfeld accepted a campaign donation to make Project 1 "veto proof" so that Public Official A could not veto Project 1. The obvious implication of this accusation is that Public Official A would be inclined to veto Project 1. Paragraph 15 of the indictment reads, "UCE-1 stated that their interest is making Project 1 "*veto proof*"; Mr. Sittenfeld suggested that he can influence votes better than anyone. Mr. Sittenfeld stated, *"...I can move more votes than any single other person, including [Public Official A]."* The government ignores Mr. Sittenfeld's explicit statements that Public Official A would naturally support Project 1 without urging. In the same audio recording and

RITTGERS & RITTGERS
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

9

following the government's selected quote about needing to "veto proof" Project 1, Mr. Sittenfeld stated about Public Official A, *"he actually genuinely likes development. So, like, if this project is what it is teed up to be, does [Public Official A] want to be the voice after, after, 6 years of rah-rah, we gotta, like, keep, you know, keep the investment going? Even if he, you know, has some beef with [CW] or whatever, like, I, **I don't think he's going to stand in the way of a good deal**."* (Emphasis added). This shows that Mr. Sittenfeld explicitly told the undercover agents that there was no need to worry about veto proofing Project 1 because it was good for the City and Public Official A would not veto it. Mr. Sittenfeld is clear in the recordings that Public Official A should not be a concern. In addition to the above, Mr. Sittenfeld tells the undercover FBI agents in the recording that, *"[Public Official A] loves guys like you. You know, like people who choose to invest here. They believe in it. They're revitalizing."* This is also not included in the Indictment and contrary to the government's accusations and narration which were disclosed to the public through DeVillers' press conference.

In the press conference and Indictment, the government also ignores Mr. Sittenfeld's stated reasons for agreeing to discuss bonding and zoning requirements for sports gambling facilities within the City should Ohio ever legalize it and inserts its own narration claiming that the reason Mr. Sittenfeld was willing to discuss bonding and zoning was in exchange for a promised campaign donation. The audio recordings tell a different story. Mr. Sittenfeld and the undercover agents discuss the impact gambling facilities can have on a community if they are numerous and disreputable. Mr. Sittenfeld agrees with the undercover agents that his constituents would not want a gambling facility on every street corner and in every gas station and says, *"And by the way, I'm not convinced the public at large wants that version of things*

RITTGERS & RITTGERS
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

10

*anyway."* Mr. Sittenfeld agrees with the undercover agent's comments that gambling facilities can be regressive and when asked if he would be willing to considering zoning and bonding for gambling facilities, he specifically says, *"The great part of it, though, is honestly,* ***the public wants that, too.***" (Emphasis added). Mr. Sittenfeld says, *"my constituents"* do not want gambling facilities *"on every corner."* In DeVillers' press conference and the Indictment, these quotes and Mr. Sittenfeld's explicitly stated intent are unfairly omitted.

### The Current Protective Order Violates Mr. Sittenfeld's Constitutionally Guaranteed Right of Access to Evidence.

The Due Process Clause of the Fifth Amendment states that the government shall not deprive individuals of life, liberty, or property without due process of law. The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the accusations. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1972). The *Chambers* Court held that to defend against the State's accusations, a defendant has a right to present a complete defense.

To avoid violating an accused's due process rights, the Supreme Court of the United States has long held prosecutions must comport with prevailing notions of fundamental fairness. *California v. Trombetta*, 467 U.S. 479, 485 (1984). In *Trombetta*, the Court interpreted this well-established standard of fundamental fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense. *Id.* To safeguard that right, the Court has developed "what might loosely be called the area of *constitutionally guaranteed access to evidence.*" *Id.* (citing *U.S. v. Valenzuela-Bernal*, 458

RITTGERS & RITTGERS
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

11

U.S. 858, 867 (1982)) (Emphasis added). Maintaining this constitutional privilege is an essential step in ensuring the integrity of our criminal justice system. *Id.*

As part of the government's investigation, audio recordings were created of phone calls and in-person conversations between Mr. Sittenfeld and other individuals, including the government's undercover agents and witness. Given that the government created these recordings, it has *unfettered* access to review and share these recordings with its witnesses in preparation of its case against Mr. Sittenfeld.

By way of contrast, the government is interpreting the current Protective Order to require defense counsel to obtain and file an executed non-disclosure from *each* individual who listens to *any* portion of the audio recordings wherein Mr. Sittenfeld is an active participant *every time the recordings are accessed*. This stark inequality between the government and Mr. Sittenfeld's ability to access the same pieces of evidence is unconstitutional. *See Chambers; Trombetta; Berger.* The government's interpretation of the Protective Order requires the Defense to ask any nonparty who hears some of the audio, even in part, to read a six-page Order. That person must then sign an acknowledgement to follow the Order, which threatens sanctions for failure to comply. This creates a chilling effect for witnesses who may already be anxious and vacillating about the prospect of speaking to or helping the Defense Team. The audio recordings wherein Mr. Sittenfeld is a party have already been widely quoted by the government. Under the current language of the Protection Order and the government's interpretation of the Order, the government is not held to the same strict compliance and threat of sanctions as Mr. Sittenfeld, his Defense Team, and any potential witness.

**RITTGERS & RITTGERS**
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

12

Accordingly, the current Protective Order requirements related to audio recordings wherein Mr. Sittenfeld is a participant is substantially prejudicial and must be modified pursuant to *Montgomery* and the Due Process Clause of the Fifth Amendment.

<u>Mr. Sittenfeld's Need for Equal and Full Access to the Audio Recordings Outweighs Existing Privacy Concerns</u>

"The court may modify a protective order upon a showing of good cause, with the burden resting on the defendant to demonstrate why his need for the materials outweighs existing privacy concerns." *United States v. Lawson*, No. CRIM.A. 08-21-KSF, 2009 WL 2136818, at *1 (E.D. Ky. July 16, 2009) (citing *In Re Air Crash Disaster*, 130 F.R.D. 634, 638 (E.D. Mich. 1989)).

During the press conference on November 19, 2020, DeVillers disclosed the cooperating witness identified as "CW-1" in the indictment as Chinedum Ndukwe. Thus, there can be no reasonable argument by the government that Mr. Sittenfeld's requested amendment to the Protective Over for recordings in which he is a party infringes upon the privacy concerns of Mr. Ndukwe.

Moreover, the government's disclosure of Mr. Ndukwe as a cooperating witness has, understandably, given potential witnesses who previously dealt with Mr. Ndukwe pause about assisting in the preparation of Mr. Sittenfeld's defense. Counsel must be able to effectively use the recordings at issue to overcome this reluctance unfairly created by the government.

**RITTGERS & RITTGERS**
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

13

### Mr. Sittenfeld has Established that Substantial Prejudice Exists; Therefore, He Has Shown "Good Cause Exists" To Amend the Protective Order.

In *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785 (3d Cir.1994), the Third Circuit specified a list of non-exhaustive factors a court should consider in determining whether "good cause" exists for issuance of a protective order. 23 F.3d at 787–790. Those factors are:

1) whether disclosure will violate any privacy interests;
2) whether the information is being sought for a legitimate purpose or for an improper purpose;
3) whether disclosure of the information will cause a party embarrassment;
4) whether confidentiality is being sought over information important to public health and safety;
5) whether the sharing of information among litigants will promote fairness and efficiency;
6) whether a party benefitting from the order of confidentiality is a public entity or official; and
7) whether the case involves issues important to the public.

"The *Pansy* factors are applicable to the determination of good cause pursuant to Rule 16(d)(1). *See* United States v. White, 2004 U.S. Dist. LEXIS 21342, at *13 (E.D.Pa. Sept. 22, 2004) (stating that "Pansy, although involving civil proceedings, is applicable to the present issue")." *United States v. Luchko*, No. CRIM.A.06-319, 2006 WL 3060985, at *3 (E.D. Pa. Oct. 27, 2006). Those factors would accordingly help determine whether good cause exists to amend a protection order.

Mr. Sittenfeld's request to amend the Protective Order is reasonable and limited in scope. It will not violate any privacy interests. It is being sought for the legitimate purpose of protecting his constitutional rights to prepare for trial and to the effective assistance of counsel. It also ensures due process of law. No party will be embarrassed by the disclosure of the audio files. There are no confidentiality claims at issue. The amendment promotes fairness

**RITTGERS & RITTGERS**
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

14

and efficiency by removing the unconstitutional and inequitable restrictions placed on Mr. Sittenfeld's access to the evidence.

Upholding the foundational rights of our criminal justice system and Constitution are important to the public's confidence in our judicial system. Accordingly, all the *Pansy* factors weigh in favor of granting Mr. Sittenfeld's request to amend the Protective Order.

## **CONCLUSION**

The misstatements of fact and law in the press conference and the selective quotes taken out of context in the Indictment have been disseminated widely and frequently throughout the press and have deprived Mr. Sittenfeld of his presumption of innocence.

Now, the government objects to permitting defense counsel from the unfettered use of the audio recordings with potential witnesses, experts, and consultants without complying with strict Tier 2 designation language which should be reserved for highly sensitive material.

Mr. Sittenfeld's right to an untainted jury pool and the cooperation of potential defense witnesses have been unfairly prejudiced by the government's false and misleading statements in the Indictment and to the public in this case. Given these unfairly prejudicial public statements by the government and their adverse impact on the jury pool and potential defense witnesses, Mr. Sittenfeld faces an unusually heavy burden in realizing the fullness of his rights to prepare a robust defense and to the effective assistance of counsel because his counsels' use of the recordings to discuss his statements and actions in the complete context of the recordings and other evidence is so severely limited by the current Protective Order.

Defense counsel originally agreed to the Protective Order and language prior to knowing what the government would designate as Tier 2.

**RITTGERS & RITTGERS**
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

15

For the reasons stated above, Mr. Sittenfeld respectfully requests that the Court (1) amend paragraph 8 of the Protective Order; and (2) take judicial notice of the facts publicly available to the government on the FEC website[4] about Mr. Sittenfeld's nonconnected Progress and Growth PAC[5] and the public comments of United States Attorney DeVillers at the November 19, 2020 press conference.[6]

Paragraph 8 currently says:

> Tier 2 Discovery Materials shall not be further disseminated by any member of the Defense Team to any individuals, organizations, or other entities. This includes, but is not limited to, a prohibition against dissemination of any Tier 2 Discovery Materials to witnesses or potential witnesses, except that members of the Defense Team may allow a witness or potential witness who was a party to the communication described, recorded, or otherwise identified in particular Tier 2 Discovery Materials, to see, hear, and discuss those specific Tier 2 Discovery Materials during investigation for and preparation of the defense, provided that the witness or potential witness agrees in writing not to further disseminate those materials consistent with the terms of the Protective Order.

Mr. Sittenfeld requests that Paragraph 8 be amended to include the following two sentences, "The Defense Team may freely disclose any audio recording, or portion of any audio recording, wherein Mr. Sittenfeld is a party, without restriction, for the purpose of defending Mr. Sittenfeld. The Defense Team is authorized to disclose, in whole or in part, any

---

[4] https://www.fec.gov/

[5] https://www.fec.gov/data/committee/C00668640

[6] *See* https://www.cincinnati.com/story/news/politics/2020/11/19/p-g-sittenfeld-cincinnati-city-council-arrest-fbi/3775193001/

RITTGERS & RITTGERS
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

16

audio recording wherein Mr. Sittenfeld is a party, without complying with the obligations set forth in the Protection Order for Tier 2 Discovery."

Mr. Sittenfeld does not currently challenge the designation or requirements placed on Defense Counsel for the disclosure of agent reports and other discovery as Tier 2 Discovery Materials.

Mr. Sittenfeld's requested amendment satisfies the goals of the Protective Order. Further, there are unique circumstances as to why Mr. Sittenfeld's request for reasonable access to the communications is especially vital and the Protective Order should be amended as he requests.

Respectfully submitted,

*/s/ Charles M. Ritttgers*
Charles M. Rittgers
Charles H. Rittgers
Rittgers & Rittgers
12 East Warren Street
Lebanon, OH 45036
(513) 932-2115
charlie@rittgers.com

*Counsel for the Defendant*

Date: January 13, 2021

**RITTGERS & RITTGERS**
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

17

**Attached Exhibit in Support of Defendant PG Sittenfeld's Motion for Amendment of Protective Order Regarding Discovery**

| Agency | Quote |
|---|---|
| WLWT – Channel 5[7] | "He met in secret on numerous occasions, alone, received the checks personally to his hand. He didn't send a middleman," said Chris Hoffman, Special Agent in Charge for the FBI.<br><br>"This went into a political slush fund, a PAC," stated David DeVillers, the U. S. Attorney. The FBI described it as a secret account. |
| Fox 19 Now[8] | Specifically, Sittenfeld is accused of taking $40,000 in bribes that went into a political action committee (PAC) that he secretly controlled, prosecutors wrote in his indictment. |
| Cincinnati.com[9] | An indictment unsealed shortly after his arrest accused him of orchestrating a scheme to funnel money from developers |

---

[7] https://www.wlwt.com/article/pg-sittenfeld-temporarily-stepping-aside-from-city-council-as-he-faces-federal-charges/34891996#

[8] https://www.fox19.com/2020/12/09/judge-signs-off-pg-sittenfelds-suspension-cincinnati-city-council/

RITTGERS & RITTGERS
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

18

|  | into a political action committee (PAC) that prosecutors say he secretly controlled. The developers were actually undercover FBI agents, according to the indictment, who handed Sittenfeld checks totaling $40,000 on three different occasions in 2018 and 2019. |
|---|---|
| New York Times[10] | Prosecutors said Mr. Sittenfeld had accepted six checks totaling $40,000 from federal agents posing as real estate investors and had stashed the money in a political action committee that he secretly controlled. |
| WVXU – NPR[11] | "The other part of the scheme was to hide the proceeds — to hide the income coming in to go to the benefit of Mr. Sittenfeld via his political career," DeVillers said. |
| WKRC – Local 12[12] | The payments allegedly went to a PAC controlled by Sittenfeld, which is also illegal. |
| Cleveland.com[13] | "He was trying to hide the source of that money and what the activity was, but we at the FBI are here to shine the light on those activities," he said.<br><br>The complaint says Sittenfeld solicited and accepted $40,000 donations, made to a political action committee supporting his bid for mayor. |
| Citybeat.com[14] | But there are key differences in the cases against the two elected officials. Pastor is accused of personally enriching himself through $55,000 in bribes. |

---

[9] https://www.cincinnati.com/story/news/2020/12/23/attorneys-p-g-sittenfelds-conduct-was-not-crime/4023919001/

[10] https://www.nytimes.com/2020/11/19/us/politics/cincinnati-city-council-bribes.html

[11] https://www.wvxu.org/post/fbi-cincinnati-council-member-pg-sittenfeld-accepted-40k-bribes#stream/0

[12] https://local12.com/news/local/report-pg-sittenfeld-latest-cincinnati-city-council-arrested-for-corruption#:~:text=CINCINNATI%20(WKRC)%20%2D%20Cincinnati%20City,attempted%20extortion%20during%20his%20arraignment

[13] https://www.cleveland.com/open/2020/11/cincinnati-city-councilman-pg-sittenfeld-arrested-on-federal-charges.html

[14] https://www.citybeat.com/news/blog/21146568/city-councilman-pg-sittenfeld-charged-with-corruption-roiling-cincinnati

RITTGERS & RITTGERS
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

19

|  | Meanwhile, investigators say Sittenfeld arranged what amounted to campaign donations — though he circumvented election law by directing those payments to a Political Action Committee which he secretly controlled. |
|---|---|

**RITTGERS & RITTGERS**
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

20