IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
CINCINNATI, OH

| | | |
|---|---|---|
| UNITED STATES, | : | Case No. 1:20-CR-142 |
| | : | |
| Plaintiff, | : | Hon. Douglas Cole |
| vs. | : | |
| | : | |
| | : | MOTION FOR LEAVE TO FILE |
| ALEXANDER SITTENFELD, | : | *INSTANTER* AMICUS BRIEF OF THE |
| a/k/a "P.G. Sittenfeld", | : | CINCINNATI ENQUIRER, A |
| | : | DIVISION OF GANNETT GP MEDIA, |
| | : | INC., GRAY MEDIA GROUP, INC. |
| Defendant. | : | D/B/A WXIX-TV, SCRIPPS MEDIA, |
| | : | INC. D/B/A WCPO-TV, CINCINNATI |
| | : | PUBLIC RADIO D/B/A WVXU, |
| | : | OHIO/OKLAHOMA HEARST |
| | : | TELEVISION, INC. D/B/A WLWT-TV, |
| | : | SINCLAIR MEDIA III, INC. D/B/A |
| | : | WKRC-TV, AND THE ASSOCIATED |
| | : | PRESS IN SUPPORT OF |
| | : | DEFENDANT'S MOTION FOR |
| | : | AMENDMENT OF PROTECTIVE |
| | : | ORDER REGARDING DISCOVERY |

The Cincinnati Enquirer, a Division of Gannett GP Media, Inc., Gray Media Group, Inc. d/b/a WXIX-TV, Scripps Media, Inc. d/b/a WCPO-TV, Cincinnati Public Radio d/b/a WVXU, Ohio/Oklahoma Hearst Television, Inc. d/b/a WLWT-TV, Sinclair Media III, Inc. d/b/a WKRC-TV, and the Associated Press ("Amici Curiae") respectfully move this Court for leave to file *instanter* an amicus brief in support of the relief sought by Defendant Alexander Sittenfeld in his Motion for Amendment of Protective Order

Regarding Discovery (Doc. 26). A copy of Amici Curiae's brief is tendered with this motion.

Respectfully submitted,

/s/ John C. Greiner
**John C. Greiner** (0005551)
**Darren W. Ford** (0086449)
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street, Suite 1800
Cincinnati, OH  45202
Phone:	(513) 629-2734
Fax:	(513) 651-3836
E-mail:	jgreiner@graydon.law
	dford@graydon.law

*Counsel for Amici Curiae*

## MEMORANDUM IN SUPPORT

**I.	BACKGROUND**

The United States government's prosecution of former Cincinnati City Council member Alexander Sittenfeld, a/k/a "P.G. Sittenfeld" for alleged honest services fraud, bribery, and attempted extortion has drawn nationwide attention. (Doc. 3, Indictment.) Details about the government's case have emerged slowly since the United States Attorney for the Southern District of Ohio announced the indictment on November 19, 2020. It is clear, however, that the government's case is based, at least in part, on

recordings made by government agents of meetings between them and Defendant Sittenfeld in connection with a federal government operation targeting public corruption. (Doc. 3.)

The Cincinnati Enquirer, a Division of Gannett GP Media, Inc. ("The Cincinnati Enquirer"), Gray Media Group, Inc. d/b/a WXIX-TV ("WXIX"), Scripps Media, Inc. d/b/a WCPO-TV ("WCPO"), Cincinnati Public Radio d/b/a WVXU ("WVXU"), Ohio/Oklahoma Hearst Television, Inc. d/b/a WLWT-TV ("WLWT"), Sinclair Media III, Inc. d/b/a WKRC-TV ("WKRC"), and the Associated Press ("Amici Curiae") are media organizations that have covered the Sittenfeld prosecution since its announcement on November 19. *See* The Cincinnati Enquirer, *Read the indictment: Cincinnati Councilman P.G. Sittenfeld arrested* (Nov. 19, 2020), *available at* https://www.cincinnati.com/story/news/2020/11/19/cincinnati-city-council-p-g-sittenfeld-arrested-indictment/3777300001/ (last visited Feb. 3, 2021); WXIX, *P.G. Sittenfeld charged: Read the Full Indictment* (Nov. 19, 2020), *available at* https://www.fox19.com/2020/11/19/pg-sittenfeld-charged-corruption-investigation-read-indictment/ (last visited Feb. 3, 2021); WCPO, *Feds: Cincinnati City Councilman P.G. Sittenfeld solicited $40K in exchange for votes* (Nov. 19, 2020), *available at* https://www.wcpo.com/news/crime/feds-to-announce-charges-in-public-corruption-case (last visited Feb. 3, 2021); WVXU, *FBI: Cincinnati Council Member P.G. Sittenfeld Accepted $40K in Bribes* (Nov. 19, 2020), *available at* https://www.wvxu.org/post/fbi-

cincinnati-council-member-pg-sittenfeld-accepted-40k-bribes#stream/0 (last visited Feb. 3, 2021); WLWT, *Cincinnati council member P.G. Sittenfeld arrested on federal corruption charges* (Nov. 19, 2020), *available at* https://www.wlwt.com/article/cincinnati-council-member-pg-sittenfeld-arrested-on-federal-corruption-charges/34726792 (last visited Feb. 3, 2021); WKRC, *P.G. Sittenfeld latest Cincinnati City Council member arrested for corruption* (Nov. 19, 2020), *available at* https://local12.com/news/local/report-pg-sittenfeld-latest-cincinnati-city-council-arrested-for-corruption (last visited February 3, 2021); The Associated Press, *Feds charge 3rd Cincinnati councilman with corruption* (Nov. 19, 2020), *available at* https://apnews.com/article/cincinnati-money-laundering-john-cranley-ohio-3343523c3afb1b1440e818af57371586 (last visited Feb. 5, 2021). As members of the Cincinnati press, Amici Curiae have a strong interest in ensuring that they are able to report fully and accurately about the government's prosecution of this high profile case of a Cincinnati city councilman.

On January 13, Defendant Sittenfeld moved this Court to modify an existing protective order (Doc. 17) that prohibits him from releasing audio recordings of his conversations with government agents. (Doc. 26, Def.'s Motion for Amend. of Protective Order Regarding Discovery ("Motion").) Mr. Sittenfeld argues in his Motion that the protective order "substantially prejudices his constitutional rights through unfair use restrictions." (Doc. 26, at 1.) Specifically, Mr. Sittenfeld argues that United States Attorney David DeVillers misstated relevant law and facts at the November 19, 2020

4

press conference when the indictment was announced, and that the government uses "selective quotes in the indictment that are incomplete and devoid of their exculpatory context." (*Id.* at 1-2.) Mr. Sittenfeld's Motion, in essence, seeks an amendment to the Court's protective order to allow him to correct or rebut statements the United States Attorney has made about this case in public, and importantly, the media organizations that have been covering and reporting on the government's public statements about the case.

Amici Curiae now seek leave from this Court to file a brief in support of Defendant Sittenfeld's Motion.

## II. ARGUMENT

### A. Standard of Review

Although the Federal Rules of Civil Procedure do not contain a rule governing amicus briefs at the district court level, "it is generally accepted as being within the district court's discretion to permit the filing of an amicus brief." *Ark Encounter, LLC v. Stewart*, 311 F.R.D. 414, 426 (E.D. Ky. 2015) (citing *United States v. State of Mich.*, 940 F.2d 143, 165 (6th Cir. 1991)). Permitting a non-party to file an amicus brief allows those with an interest in the outcome of a particular issue to present their perspective, without the need for intervention. *Ark Encounter, LLC*, 311 F.R.D. at 436.

Although there is no standard governing a district court's discretion in allowing a non-party to file an amicus brief, the Federal Rules of Appellate procedure require a party seeking leave to file an amicus brief to state its interest, and "the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case." Fed. R. App. P. 29(a)(3). *See also Freed v. Thomas*, No. 17-CV-13519, 208 WL 3848155, at *2 (E.D. Mich. Aug. 9, 2018) (looking to Federal Rules of Appellate Procedure for guidance on whether to permit non-party to file amicus brief). That standard is met here.

### B. Amici Curiae's Interest

Amici Curiae's interest in the outcome of the pending Motion is manifest.

This case involves the prosecution of a prominent local politician for public corruption. The United States Supreme Court has long-recognized that "the right of access to criminal trial plays a particularly significant role in the functioning of the judicial process and the government as a whole" and that "[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982).

Sittenfeld's Motion seeks to modify a protective order issued by this Court pursuant to Federal Rule of Criminal Procedure 16(d). Like Federal Rule of Civil

Procedure 26, Criminal Rule 16(d) permits a district Court to issue a protective order for "good cause."

The United States Court of Appeals for the First Circuit has recognized it is implicit in the "good cause" requirement for issuing a protective order under Federal Rule of Civil Procedure 26 that "a party receiving discovery materials might make them public" and that "as a general proposition pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789-790 (1st Cir. 1988) (internal quotations omitted). The *Public Citizen* Court's observation is consistent with the Supreme Court's recognition of the public's general interest in monitoring and serving as a check on the judicial process. *Globe Newspaper Co.*, 457 U.S. at 606.

To put it another way, Rule 16(d)'s "good cause" requirement incorporates the expectation that a party to a judicial proceeding might make discovery materials public, unless a court finds "good cause" for restricting that party's right to share this information. Amici Curiae, as members of the press, therefore have a strong interest in ensuring that the public (and press's) rights impliedly reflected in the "good cause" requirement of Rule 16(d) are taken into consideration in the Court's adjudication of the Motion, as Mr. Sittenfeld has demonstrated through his Motion a desire and intention

to share the audio recordings made by the government with the press if allowed to do so.

Further, the audio recordings Mr. Sittenfeld wishes to disclose to the public would qualify as discovery material covered by the United States Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963). As the Third Circuit has recognized, "*Brady* materials, unlike civil discovery, are turned over by the government to the defense during its prosecution of alleged criminals *on behalf of the public*." *United States v. Wecht*, 484 F.3d 194, 209 (3d Cir. 2007) (emphasis added). Thus, the *Wecht* court recognized that although there is no general First Amendment right of access to discovery materials under the United States Supreme Court's decision in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984), *Brady* materials should be analyzed under a different rubric. *Wecht*, 484 F.3d at 209-210 (observing that "the process by which the government investigates and prosecutes its citizens is an important matter of public concern" and that this distinguishes "*Brady* materials from traditional civil discovery between private parties").

An additional consideration here is Mr. Sittenfeld's contention in his Motion that the excerpts from the recording used in the indictment, and reflected in the United States Attorney's public statements about the charges, do not present a full and accurate picture of what Mr. Sittenfeld said to the undercover government agents. Amici Curiae,

8

as members of the press, therefore have a unique interest in ensuring that they obtain full access to the recordings to permit them to report fairly and accurately about the government's case. *Cf. Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 493 (1975) (noting the "special protected nature of accurate reports of judicial proceedings" under the First Amendment). Promoting and protecting the press's ability to report accurately on judicial proceedings, and the evidence supporting the government's charges against a defendant, directly benefits the public, and promotes confidence in the judicial process.

### C. Amici Curiae's brief will assist the Court in considering the public's and press's interest in adjudicating the Motion.

The "good cause" requirement in Federal Rule of Criminal Procedure 16(d) reflects the expectation that a party to a criminal prosecution should be free to disseminate discovery materials to the public under the First Amendment absent a prior determination by the Court that "good cause" exists to restrict that right. This "good cause" standard directly benefits the public and press by ensuring that parties to a criminal prosecution are not unduly restricted from sharing information about their case so that the public can play its role as an additional safeguard in the process. *Cf. CBS Inc. v. Young*, 522 F.2d 234, 237-38 (6th Cir. 1975) (holding that gag order on parties to case impaired news organizations' ability to gather news in violation of the First Amendment).

In his Motion, Mr. Sittenfeld focuses on his interests in modifying the protective order so as to rebut what he claims are misleading characterizations of the audio recordings of Mr. Sittenfeld's conversations with government investigators. He does not, however, address the public's and press's interest in removing a restriction on Mr. Sittenfeld's ability to share that information. Indeed, his focus is on the potential adverse impact on the jury pool and potential defense witnesses. (Doc. 26, at 15.)

Although Amici Curiae's tendered brief advocates for the same modification of the protective order that Mr. Sittenfeld seeks, their legal arguments focus on the public's and press's interest in removing barriers to accessing information about this trial. Amici Curiae make no arguments regarding the potential impact of these tapes on the jury pool and defense witnesses, nor could they, as they have not heard the full audio recordings. And indeed, members of the press and public listening to the audio recordings will form their own opinions as to whether the audio recordings are exculpatory, as Mr. Sittenfeld claims, and whether the government has mischaracterized the audio recordings in its indictment and public statements.

In sum, neither the government nor Mr. Sittenfeld focus on the interests of the press and public in removing a barrier to accessing information that will better inform them about the nature of the charges against Mr. Sittenfeld, a high-profile elected official accused of bribery and attempted extortion. Amici Curiae's perspective will

10

assist the Court resolving the pending motion, and they therefore respectfully request that the Court grant their motion for leave to file the tendered amicus brief.

### D. Amici Curiae's brief is timely.

Amici Curiae make this motion prior to the Court's resolution of the pending motion, and therefore, the Court will have an opportunity to consider Amici Curiae's arguments in resolving it. Accordingly, the timing of Amici Curiae's brief will not impair or delay the resolution of the Motion.

## III. CONCLUSION

For the reasons set forth, Amici Curiae respectfully request that the Court grant their Motion for Leave, and deem the tendered amicus brief filed with the entry of any order granting this motion.

Respectfully submitted,

/s/ John C. Greiner
**John C. Greiner** (0005551)
**Darren W. Ford** (0086449)
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street, Suite 1800
Cincinnati, OH  45202
Phone:     (513) 629-2734
Fax:         (513) 651-3836
E-mail:     jgreiner@graydon.law
                  dford@graydon.law

*Counsel for Amici Curiae*

10844859.3