IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
CINCINNATI, OH

| | | |
|---|---|---|
| UNITED STATES, | : | Case No. 1:20-CR-142 |
| | : | |
| Plaintiff, | : | Hon. Douglas Cole |
| vs. | : | |
| | : | |
| ALEXANDER SITTENFELD, a/k/a "P.G. Sittenfeld", | : | |
| | : | |
| Defendant. | : | |
| | : | |

**BRIEF OF THE CINCINNATI ENQUIRER, A DIVISION OF GANNETT GP MEDIA, INC., GRAY MEDIA GROUP, INC. D/B/A WXIX-TV, SCRIPPS MEDIA, INC. D/B/A WCPO-TV, CINCINNATI PUBLIC RADIO D/B/A WVXU, OHIO/OKLAHOMA HEARST TELEVISION, INC. D/B/A WLWT-TV, AND SINCLAIR MEDIA III, INC., AND THE ASSOCIATED PRESS AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT'S MOTION FOR AMENDMENT OF PROTECTIVE ORDER REGARDING DISCOVERY**

> **John C. Greiner** (0005551)
> **Darren W. Ford** (0086449)
> GRAYDON HEAD & RITCHEY LLP
> 312 Walnut Street, Suite 1800
> Cincinnati, OH 45202
> Phone: (513) 629-2734
> Fax: (513) 651-3836
> E-mail: jgreiner@graydon.law
> dford@graydon.law
>
> *Counsel for Amici Curiae*

**TABLE OF CONTENTS**

INTEREST OF AMICI CURIAE ................................................................................................ 1

INTRODUCTION ........................................................................................................................ 4

ARGUMENT................................................................................................................................. 7

    I.   The "good cause" requirement in Federal Rule of Criminal Procedure 16(d) protects the public's and press's interest in accessing discovery materials exchanged by parties in a criminal proceeding. ...................................................................................................................... 7

    II.   The public's and press's interests in the audio recordings weighs in favor of modifying the protective order to permit Defendant Sittenfeld to release them. ........ 11

CONCLUSION ............................................................................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Cryovac, Inc.*,
   805 F.2d 1 (1st Cir. 1986)..................................................................................................7

*Brady v. Maryland*,
   373 U.S. 83 (1963)..............................................................................................5, 6, 9, 10

*CBS Inc. v. Young*,
   522 F.2d 234 (6th Cir. 1975)..............................................................................................4

*Globe Newspaper Co. v. Superior Court*,
   457 U.S. 596 (1982)........................................................................................................3, 8

*Howes v. Ashland Oil, Inc.*,
   932 F.2d 968, 1991 WL 73251 (6th Cir. 1991)..................................................................8

*In re Nat. Prescription Opiate Litigation*,
   927 F.3d 919 (6th Cir. 2019)...................................................................................6, 8, 10

*Public Citizen v. Liggett Group, Inc.*,
   858 F.2d 775 (1st Cir. 1988)..............................................................................................7

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984)..............................................................................................................9

*United States v. Bulger*,
   283 F.R.D. 46 (D. Mass 2012)...........................................................................................7

*United States v. Ford*,
   830 F.2d 596 (6th Cir. 1987)............................................................................................11

*United States v. Wecht*,
   484 F.3d 194 (3d Cir. 2007)......................................................................................5, 6, 9


**Constitutional Provisions; Rules**

U.S. Const., Amend. I ................................................................................................... *passim*

Fed. R. Civ. P. 26............................................................................................................7, 8

Fed. R. Crim. P. 16(d)........................................................................................................7

**INTEREST OF AMICI CURIAE**

The Cincinnati Enquirer, a Division of Gannett GP Media, Inc. ("The Cincinnati Enquirer"), Gray Media Group, Inc. d/b/a WXIX-TV ("WXIX"), Scripps Media, Inc. d/b/a WCPO-TV ("WCPO"), Cincinnati Public Radio d/b/a WVXU ("WVXU"), Ohio/Oklahoma Hearst Television, Inc. d/b/a WLWT-TV ("WLWT"), Sinclair Media III, Inc. d/b/a WKRC-TV ("WKRC"), and the Associated Press ("Amici Curiae") are media organizations that have covered the Sittenfeld prosecution since its announcement on November 19. *See* The Cincinnati Enquirer, *Read the indictment: Cincinnati Councilman P.G. Sittenfeld arrested* (Nov. 19, 2020), *available at* https://www.cincinnati.com/story/news/2020/11/19/cincinnati-city-council-p-g-sittenfeld-arrested-indictment/3777300001/ (last visited Feb. 3, 2021); WXIX, *P.G. Sittenfeld charged: Read the Full Indictment* (Nov. 19, 2020), *available at* https://www.fox19.com/2020/11/19/pg-sittenfeld-charged-corruption-investigation-read-indictment/ (last visited Feb. 3, 2021); WCPO, *Feds: Cincinnati City Councilman P.G. Sittenfeld solicited $40K in exchange for votes* (Nov. 19, 2020), *available at* https://www.wcpo.com/news/crime/feds-to-announce-charges-in-public-corruption-case (last visited Feb. 3, 2021); WVXU, *FBI: Cincinnati Council Member P.G. Sittenfeld Accepted $40K in Bribes* (Nov. 19, 2020), *available at* https://www.wvxu.org/post/fbi-cincinnati-council-member-pg-sittenfeld-accepted-40k-bribes#stream/0 (last visited Feb. 3, 2021); WLWT, *Cincinnati council member P.G. Sittenfeld arrested on federal corruption*

*charges* (Nov. 19, 2020), *available at* https://www.wlwt.com/article/cincinnati-council-member-pg-sittenfeld-arrested-on-federal-corruption-charges/34726792 (last visited Feb. 3, 2021); WKRC, *P.G. Sittenfeld latest Cincinnati City Council member arrested for corruption* (Nov. 19, 2020), *available at* https://local12.com/news/local/report-pg-sittenfeld-latest-cincinnati-city-council-arrested-for-corruption (last visited February 3, 2021); The Associated Press, *Feds charge 3rd Cincinnati councilman with corruption* (Nov. 19, 2020), *available at* https://apnews.com/article/cincinnati-money-laundering-john-cranley-ohio-3343523c3afb1b1440e818af57371586 (last visited Feb. 5, 2021). As members of the Cincinnati press, Amici Curiae have a strong interest in ensuring that they are able to report fully and accurately about the government's prosecution of this high profile case of a Cincinnati city councilman.

On January 13, Defendant Sittenfeld moved this Court to modify an existing protective order that prohibits him from releasing audio recordings of his conversations with government agents. (Doc. 26, Def.'s Motion for Amend. of Protective Order Regarding Discovery ("Motion").) Mr. Sittenfeld argues in his Motion that the protective order "substantially prejudices his constitutional rights through unfair use restrictions." (Doc. 26, at 1.) Specifically, Mr. Sittenfeld argues that United States Attorney David DeVillers misstated relevant law and facts at the November 19, 2020 press conference at which the indictment was announced, and that the government uses "selective quotes in the indictment that are incomplete and devoid of their exculpatory

2

context." (*Id.* at 1-2.) Mr. Sittenfeld's Motion thus seeks an amendment to the Court's protective order to allow him to correct or rebut statements the United States Attorney has made about this case in public, and importantly, and to respond to reporting by the media organizations that have been covering and reporting on the government's public statements about the case.

As news organizations and members of the public, Amici Curiae have a strong interest in ensuring that they are able to report fully and accurately on this criminal proceeding, and in performing its constitutional role in promoting the fairness and integrity of the judicial process. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982) (holding that "the right of access to criminal trial plays a particularly significant role in the functioning of the judicial process and the government as a whole" and that "[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole"). The existing protective order impedes Amici Curiae's ability to do that, and they wish to assist the Court in considering and addressing the public's and press's interests in this matter.

Accordingly, Amici Curiae respectfully submit their amicus curiae brief in support of the relief Defendant Sittenfeld seeks in his motion.

## INTRODUCTION

Defendant Sittenfeld's indictment last November is the most recent in a string of corruption charges the United States Attorney for the Southern District of Ohio brought against Cincinnati city councilmembers. *See* The Cincinnati Enquirer, *'I can deliver the votes': Cincinnati City Councilman P.G. Sittenfeld arrested on corruption charges* (Nov. 19, 2020), *available at* https://www.cincinnati.com/story/news/politics/2020/11/19/p-g-sittenfeld-cincinnati-city-council-arrest-fbi/3775193001/ (last visited Feb. 3, 2021) (reporting that Sittenfeld indictment follows earlier indictments of Cincinnati City Council members Tamaya Dennard and Jeff Pastor). The Sittenfeld indictment includes charges alleging honest services fraud, bribery, and attempted extortion (Doc. 3, Indictment)—very serious charges that have drawn the attention of the national media. The New York Times, *A Third Member of the Cincinnati City Council Is Charged With Corruption* (Nov. 19, 2020), *available at* https://www.nytimes.com/2020/11/19/us/politics/cincinnati-city-council-bribes.html (last visited Feb. 3, 2021).

As members of the Cincinnati press, Amici Curiae are at the forefront of reporting on the government's prosecution of Mr. Sittenfeld. To carry out their mission to fully and accurately inform the public about this high-profile prosecution, Amici Curiae must be able to gather news from those sources closest to the process, which are

the parties and their attorneys. *Cf. CBS Inc. v. Young*, 522 F.2d 234, 237-38 (6th Cir. 1975) (holding that gag order on parties to case impaired news organizations' ability to gather news in violation of the First Amendment).

Defendant Sittenfeld's Motion for Amendment of Protective Order Regarding Discovery ("Motion") (Doc. 26) seeks to remove restrictions on his ability to disseminate audio recordings made by the government in connection with its undercover investigation, which led to the charges against Sittenfeld. By his Motion, Mr. Sittenfeld demonstrates a desire and willingness to share that information with the public and press, if allowed to do so. The Court should grant his request, as the release of the information contained in the audio recordings will more fully and accurately inform the public about the nature of the government's case against Mr. Sittenfeld. Furthermore, it does not appear that the parties considered the public's substantial interest in obtaining materials governed by the United States Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963). *See United States v. Wecht*, 484 F.3d 194, 209 (3d Cir. 2007) (holding that "*Brady* materials, unlike civil discovery, are turned over by the government to the defense during its prosecution of alleged criminals *on behalf of the public*" (emphasis added)).

Indeed, the government sought the existing protective order a mere week after the indictment had been announced. (Doc. 30, Government's Response to Defendant's

5

Motion for Amendment of Protective Order Regarding Discovery, at 2.) It does not appear that in entering the protective order, the Court considered the specific audio recordings Mr. Sittenfeld seeks to release. Consequently, the Court could not have made an individualized inquiry into whether "good cause" existed for restricting access to these specific audio recordings. *See In re Nat. Prescription Opiate Litigation*, 927 F.3d 919, 929 (6th Cir. 2019) ("To show good cause for a protective order, the moving party is required to make 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

Because the audio recordings appear to constitute *Brady* materials, their status with respect to this factor should have been taken into account in determining whether the protective order should prohibit their release. *Wecht*, 484 F.3d at 209-210 (observing that "the process by which the government investigates and prosecutes its citizens is an important matter of public concern" and that this distinguishes "*Brady* materials from traditional civil discovery between private parties"). And when their centrality to the government's case, and status as *Brady* materials are taken into account, public's interest in accessing that information becomes manifest.

For this reason, Amici Curiae respectfully urge the Court to grant Defendant Sittenfeld's Motion and modify the protective order (Doc. 17, Protective Order

6

Regarding Discovery.) in the manner he requests so that he may disseminate the audio recordings in his possession to the public.

**ARGUMENT**

**I.     The "good cause" requirement in Federal Rule of Criminal Procedure 16(d) protects the public's and press's interest in accessing discovery materials exchanged by parties in a criminal proceeding.**

Sittenfeld's Motion seeks to modify a protective order issued by this Court pursuant to Federal Rule of Criminal Procedure 16(d). Like Federal Rule of Civil Procedure 26, Criminal Rule 16(d) permits a district Court to issue a protective order restricting discovery or inspection for "good cause." Good cause for the protective order must exist "even where . . . the parties agreed to the terms of the protective order." *United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass 2012) (collecting cases).

The United States Court of Appeals for the First Circuit has recognized it is implicit in the "good cause" requirement for issuance of a protective order under Federal Rule of Civil Procedure 26 that "a party receiving discovery materials might make them public" and that "as a general proposition pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789-790 (1st Cir. 1988) (internal quotations omitted). *See also Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir.

7

1986) (rejecting argument that the First Amendment is not implicated when a district court issues a protective order). The *Public Citizen* Court's observation is consistent with the Supreme Court's recognition of the public's general interest in monitoring and serving as a check on the judicial process. *Globe Newspaper Co.*, 457 U.S. at 606.

The Sixth Circuit has likewise recognized the role the press's First Amendment right of access has to play in determining whether the "good cause" standard for discovery protective orders has been met. In *The Courier Journal v. Marshall*, that court held that a district court had appropriately entered protective orders under Fed. R. Civ. P. 26 "after fairly balancing the very limited right of access the press has to the presumptively nonpublic fruits of civil discovery against the right of civil rights plaintiffs to obtain discovery of a Ku Klux Klan membership list over a claimed privilege based on first amendment associational rights." 828 F.2d 361, 367 (6th Cir. 1987). *See also In re Nat. Prescription Opiate Litigation*, 927 F.3d at 937 (noting that the district court had "correctly" considered the "great public interest" in the information that the protective order would have restricted in balancing competing harms); *Howes v. Ashland Oil, Inc.*, 932 F.2d 968 (Table), 1991 WL 73251, at *7 n.6 (6th Cir. 1991) (observing that although there may not be a presumptive First Amendment right of access to documents not submitted to a court, "[t]his does not mean . . . that a right of public access cannot arise under the terms of the Federal Rules of Civil Procedure").

8

Further, the audio recordings Mr. Sittenfeld wishes to disclose to the public would qualify as discovery material covered by the United States Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963). The United States Court of Appeals for the Third Circuit has recognized that "*Brady* materials, unlike civil discovery, are turned over by the government to the defense during its prosecution of alleged criminals *on behalf of the public*." *United States v. Wecht*, 484 F.3d 194, 209 (3d Cir. 2007). (emphasis added). The *Wecht* court continued, holding that although there is no general First Amendment right of access to discovery materials under the United States Supreme Court's decision in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984), *Brady* materials should be analyzed under a different rubric. *Wecht*, 484 F.3d at 209-210 (observing that "the process by which the government investigates and prosecutes its citizens is an important matter of public concern" and that this distinguishes *"Brady* materials from traditional civil discovery between private parties").

In its response memorandum to Defendant Sittenfeld's motion, the government argues that this Court need not consider the public's and press's interests in accessing the audio recordings at all because there is "no presumption of a public right to criminal discovery." (Doc. 30, at 18 n.12.) Specifically, the government contends that the court need not consider "whether a party benefitting from the order of confidentiality is a public entity or official" or "whether the case involves issues important to the public" in

9

assessing whether "good cause" exists for issuing a protective order. (*Id.*; Doc. 26, at 14 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785 (3d Cir. 1994).)

The government's position is untenable, as the cited Sixth Circuit and other federal circuit case law demonstrate. Although the right to unfiled discovery materials may be of a lesser nature, the court must still consider the public's interest. This is particularly true for *Brady* materials, a classification that appears to apply to the audio recordings at issue.

Accordingly, in resolving Defendant Sittenfeld's Motion, this Court must take into consideration the public's and press's interests in obtaining access to the information he has demonstrated a willingness to share, and which appear to constitute *Brady* materials the government was compelled to disclose by the Constitution.

The government also contends that the Court has already "acknowledged good cause exists for the Protective Order." (Doc. 30, at 1.) This does not appear to be the case, as the Court has not identified either factual findings or legal arguments supporting the need for the protective order, and more importantly, the need to prohibit the parties from disclosing the audio recordings at issue. *See In re Nat. Prescription Opiate Litigation*, 927 F.3d at 930-31 (holding that district court did not make good cause finding because it made "neither factual findings nor legal arguments" which the court needed to do "in order to provide a record useful for appellate review"

10

(internal quotations and original formatting omitted)). More important, the parties did not ask the Court to make findings regarding the public's and press's interests in accessing the audio recordings on which the government's case relies. Sixth Circuit precedent requires the Court to make such findings.

For these reasons, in considering Defendant Sittenfeld's Motion, the Court must take into account the public's and press's interests in removing the barrier to access that the protective order represents.

**II. The public's and press's interests in the audio recordings weighs in favor of modifying the protective order to permit Defendant Sittenfeld to release them.**

The Court has not yet made findings of fact and legal arguments to support whether "good cause" exists to justify the restrictions on the parties' ability to disseminate the audio recordings to the public. In responding to Defendant Sittenfeld's Motion, it must take these interests into account as well.

Defendant Sittenfeld and his attorneys have a First Amendment right to speak to the press about his case. *See United States v. Ford*, 830 F.2d 596, 599 (6th Cir. 1987). As the Sixth Circuit has explained:

> The accused has a First Amendment right to reply publicly to the prosecutor's charges, and the public has a right to hear that reply, because of its ongoing concern for the integrity of the criminal justice system and the need to hear from those most directly affected by it.

11

*Id.* (internal quotations omitted). By his Motion, Defendant Sittenfeld makes clear that he wishes to communicate with the public and press about his case, and to do so through disclosing audio recordings of conversations he had with undercover government agents.

The government's primary argument in opposition to the release of the audio recordings is that doing so would "adversely affect law enforcement interests and the privacy rights of third parties." (Doc. 30, at 1.) The government's response is partially redacted, and as such Amici Curiae are unable to assess the specific evidence it introduces in support of this contention, but it is difficult to see how such risks are present with respect to the audio recordings of Sittenfeld's conversations with government agents.

Notably, the Court has not imposed a gag order on Defendant Sittenfeld or his attorneys in this case, nor has the government sought such an order. Consequently, Sittenfeld is free to recount his recollection of those conversations, as well as who was present during them. If the government was truly concerned with the disclosure of the information on those audio recordings, or the investigatory techniques used, they have done little to prevent Mr. Sittenfeld and his attorneys from disclosing that information to the public.

Furthermore, to the extent there is information on the audio recordings that Mr. Sittenfeld couldn't somehow reveal based on his own memory of the events (which he has a First Amendment right to do), the release of that specific information could be restricted, without limiting Mr. Sittenfeld's ability to disclose recordings of his own statements. In other words, although good cause may exist to restrict the disclosure of information Mr. Sittenfeld did not have available to him before receiving the audio recordings at issue, no good cause exists to extend the protective order to prevent disclosure of information Mr. Sittenfeld is currently free to disclose to the public about his case.

Indeed, the fact that the government wishes to make it harder for Mr. Sittenfeld to fully and accurately disclose his conversations with the government agents with the public illustrates the way the government wishes to shape the narrative here. The government prepared the indictment and its statements at the press conference based on its ability to edit and cull the full collection of recorded conversations with Sittenfeld. (Doc. 30, at 9-11.) But the public has an interest in determining for itself what happened here, and Mr. Sittenfeld has demonstrated a desire to provide the public with the information to do this. The government's horror at the prospect of "the media" having access to the materials is disturbingly paternalistic, and does not support its assertion that the restrictions imposed by the protective order are necessary. (Doc. 30, at 9.)

In sum, the public has a compelling and significant interest in this case. The audio recordings Mr. Sittendfeld seeks to release to the public do not present any obvious risk of disclosing information that Mr. Sittenfeld is not already free to share under the First Amendment, and would unquestionably aid the public and press in acquiring a more complete picture of the governments corruption case against Mr. Sittenfeld. Weighed against the interests asserted by the government in maintaining the secrecy of information, the substance of which may already be disclosed freely, these interests should prevail.

## CONCLUSION

For the reasons set forth, Amici Curiae urge the Court to grant Defendant Sittenfeld's Motion and modify the protective order (Doc. 17) so as to permit Mr. Sittendfeld to disclose the audio recordings to the public.

        Respectfully submitted,

        /s/   John C. Greiner
        **John C. Greiner** (0005551)
        **Darren W. Ford** (0086449)
        GRAYDON HEAD & RITCHEY LLP
        312 Walnut Street, Suite 1800
        Cincinnati, OH  45202
        Phone:   (513) 629-2734
        Fax:       (513) 651-3836
        E-mail:    jgreiner@graydon.law
                       dford@graydon.law

        *Counsel for Amici Curiae*

10844860.2