IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ALEXANDER SITTENFELD,<br>  a/k/a "P.G. Sittenfeld,"<br><br>    Defendant. | Case No.: 1-20-cr-142<br><br>Hon. Douglas R. Cole |

## MOTION TO COMPEL DISCOVERY

Mr. Sittenfeld respectfully submits this Motion to Compel Discovery.

                                        Respectfully submitted,

                                        RITTGERS & RITTGERS

                                        */s/ Charles H. Rittgers*
                                        Charles H. Rittgers
                                        Charles M. Rittgers
                                        Rittgers & Rittgers
                                        12 East Warren Street
                                        Lebanon, OH 45036
                                        (513) 932-2115
                                        charlie@rittgers.com

                                        *Counsel for the Defendant*

**RITTGERS & RITTGERS**
**Attorneys at Law**

12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

## **MEMORANDUM OF LAW**

More than sixty days have passed since defense counsel first requested full discovery in this matter, and while some discovery has been provided, full discovery has yet to be disclosed. In multiple telephone conversations and in two formal discovery letters dated December 9, 2020 and January 22, 2021, defense counsel specifically requested all information related to inducements, threats, agreements, and consideration for the CW, Mr. Chinedum Ndukwe ("Ndukwe"); the Government's witness list; costs and expenditures related to this undercover operation; FBI policies, procedures and instructions related to Ndukwe, agents, and this operation; statements and communications from government agents made to the media, regardless of whether the statements were made public; and all recordings related to Project 1, Ndukwe, and Sittenfeld in the Government's possession. *See* Attached Exhibits A and B. Through February 9, 2021 the defense has not received the abovementioned discovery items.

In a letter dated January 29, 2021, the Government ignored repeated defense requests for information about Ndukwe; indicated the defense would receive a witness list following the final pretrial conference; costs and expenditures related to this undercover operation would not be provided; FBI policies, procedures and instructions related to Ndukwe and this operation would not be provided; statements and communications from government agents made to media would not be provided; and agreed to release, in the near future, recordings related to Project 1, Ndukwe, and Sittenfeld, but claimed that these recordings are not "relevant or material pursuant to Rule 16."

The deliberate and repeated public disclosure of information related to this investigation, including the voluntary revealing of the Government's cooperating witness, makes the pretrial discovery request for information about Ndukwe distinctly different from cases where the Government's key source remains confidential. The U.S. Attorney's public statements, which paint an altruistic picture for why this witness is cooperating, make this discovery request unique

**RITTGERS & RITTGERS**
**Attorneys at Law**
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

and necessary. Information related to the costs and expenditures of this undercover operation and FBI policies, procedures, and instructions, which, by defense counsel's own discoveries and confirming correspondence from the Government, indicate were violated by Ndukwe and government agents, are exculpatory in nature as they impact bias, motivation, and credibility of the operation itself and government actors. The disclosure of this information permits the defense to continue conducting its due diligence and defense of Sittenfeld. As the following memorandum will detail, this request is not based on mere speculation; the circumstances of this undercover investigation and the conduct and misconduct of government agents, employees, and witnesses warrants the immediate disclosure of the requested discovery.

### I. FACTS AND BACKGROUND

<u>The unnamed cooperating witness listed in the Indictment is not confidential and the Government strategically injected him into the public narrative.</u>

At a press conference called by United States Attorney David DeVillers ("DeVillers") on November 19, 2020, DeVillers publicly announced the name of the person who was labeled Cooperating Witness 1 ("CW") in the Indictment. The press conference was held the day the Indictment was unveiled. Immediately, the Government and its agent began shaping the public narrative. At the press conference, DeVillers and Special Agent in Charge Chris Hoffman ("Hoffman") told the public that Chinedum Ndukwe is the unnamed CW in the Indictment and described Ndukwe as a "brave" citizen who decided to work on "Team America." In subsequent news articles portraying Ndukwe as a courageous citizen with "strong values," DeVillers is quoted extensively.[1] Even prior to his November 19, 2020 press conference, DeVillers is quoted repeatedly in various news sources claiming that the reason Ndukwe began working with the FBI is because he was tired of "being shaken down."[2] Some news articles reveal that DeVillers said

---

[1] Cincinnati Enquirer, *As a Bengal or a secret FBI witness, Chinedum Ndukwe keeps doing the unexpected,* (Dec. 4, 2020), https://www.cincinnati.com/story/news/2020/12/03/chinendum-ndukwe-cincinnati-bengal-fbi-witness-bribery/6462167002/

[2] WCPO, *How downtown blight helped the FBI crack bribery case,* (Nov. 12, 2020), https://www.wcpo.com/news/local-news/i-team/how-downtown-blight-helped-the-fbi-crack-bribery-case; Cincinnati Enquirer, *Get to know the people involved in the events that led up to arrest of*

**RITTGERS & RITTGERS**
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

the reason the Government approached Ndukwe is because Ndukwe was vulnerable to extortion given his position as a local developer in Cincinnati.[3] A WCPO article published one week before DeVillers unsealed the Sittenfeld Indictment states in part the following, "DeVillers said the FBI approached Ndukwe because he was 'in a position to be able to be extorted, quite frankly.'" *Id.* After deliberately and voluntarily injecting Ndukwe into the public narrative and shading his involvement in a less than truthful light, the Government now refuses to provide defense counsel with information related to Ndukwe that would aid Sittenfeld's defense.

<u>The unvarnished truth and history of P.G. Sittenfeld's relationship with Chinedum Ndukwe, now known as the cooperating witness.</u>

In the Government's Indictment, it writes on page 3 that "In 2018, Sittenfeld requested money from CW on multiple occasions, knowing that CW was actively seeking an agreement with the City to develop Project 1 and, up to then, had been unsuccessful in his attempts. For example, on or about September 21, 2018, Sittenfeld contacted CW to request a $10,000 campaign donation in checks from multiple limited liability companies ("LLCs")."

In its narration, the Government falsely tries to portray that the reason Sittenfeld sought a campaign contribution from Ndukwe was specifically because Ndukwe was seeking a development agreement with the City. The true history and context of their relationship tells a starkly different story.

The origin of their relationship goes back more than a decade to before Sittenfeld was ever an elected office holder or candidate and when Ndukwe was still a football player with the

---

*Councilman Jeff Pastor*, (Nov. 10, 2020), https://www.cincinnati.com/story/news/2020/11/10/cincinnati-city-council-arrest-jeff-pastor-chinedum-ndukwe-tyran-marshall-david-devillers/6231402002/; and FOX19, *"There is more to this story:" Pastor's attorney raises questions on motives, evidence,* (Nov. 13, 2020), https://www.fox19.com/2020/11/13/pastors-attorney-questions-whistleblowers-motives-suggests-pastor-may-have-evidence/

[3] WCPO, *How downtown blight helped the FBI crack bribery case,* (Nov. 12, 2020), https://www.wcpo.com/news/local-news/i-team/how-downtown-blight-helped-the-fbi-crack-bribery-case

**RITTGERS & RITTGERS**
**Attorneys at Law**
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

Cincinnati Bengals. On March 26, 2010, a mutual friend sent an email introducing Ndukwe and Sittenfeld for the first time.

So began what would turn into a friendship, where the two would periodically catch up by phone or in-person, both casually and other times to swap notes about their hopes for the future of Cincinnati. Contrary to the Government's false narrative about Sittenfeld trying to take advantage of Ndukwe's real estate endeavors, Sittenfeld was, in fact, there to help and encourage Ndukwe from literally the very first time Ndukwe contemplated going into real estate following his time in the NFL. All the way back on June 26, 2012, Sittenfeld wrote to Laura Brunner, who is head of the Port Authority, that Ndukwe "is looking to get involved in the Cincinnati real estate and development market. I told him you are one of the savviest folks in town when it comes to that topic as leader of the Port Authority, so I hope you'll be able to get together at some point."

By this time, Sittenfeld had been elected to a seat on Cincinnati City Council, and he wanted to keep Ndukwe as part of the Cincinnati community. A hallmark of Sittenfeld's time in public service has been a deep and demonstrated commitment to ensuring that Cincinnati is a city of opportunity for Black residents, while also recognizing that the city has fallen far short of achieving that goal. Especially in the realm of real estate development, very few of the developers who bring deals to the City of Cincinnati are Black. Helping a talented, young Black leader make inroads in this space aligned strongly with Sittenfeld's, Ms. Brunner's, and many other people's vision for the future of the City. Sittenfeld made similar introductions for Ndukwe at the time to the leadership of 3CDC (the Cincinnati Center City Development Corporation).

For many years, Ndukwe was a regular, generous, and enthusiastic supporter of Sittenfeld's campaigns and his public service. Ndukwe gave the maximum or close to the maximum donation in support of every single campaign after Sittenfeld's first election bid. Ndukwe was so committed to helping Sittenfeld's elections that Ndukwe also asked his father to be a contributor to several of these campaigns as well. Donations from Ndukwe or his family members were disclosed in publicly filed documents in 2012, 2013, 2015, and 2017. There is

**RITTGERS & RITTGERS**
**Attorneys at Law**
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

documentation of Ndukwe replying enthusiastically to invitations to fundraising events, as he did for one on October 19, 2013, saying in reply to Sittenfeld things like, "I got you buddy." During this entire time, Ndukwe was a regular and generous donor to a variety of other elected officials and candidates as well.

This history and context rebut the Government's false narrative that Ndukwe was approached because Sittenfeld wanted a bribe. Rather, any outreach fits clearly into what had been a long relationship, and even friendship, with someone whom Sittenfeld had tried to help succeed in making positive contributions to the City, and who had been a longtime, consistent donor and fundraiser in support of Sittenfeld's public service. Because of Sittenfeld's long and well-documented friendship with Ndukwe, including Ndukwe being a consistent and enthusiastic campaign donor to Sittenfeld, it never occurred to Sittenfeld that associates acting on behalf of Ndukwe would be trying to bribe him.

Ndukwe's claim that Sittenfeld requested a contribution of $10,000 in September of 2018 is the Government's predicate for attempting to have Sittenfeld break the law which Sittenfeld did not do. Even though Ndukwe had been working with the undercover agents since April of 2018, it is notable and concerning that the September phone conversation was not recorded. Shortly after the September 2018 unrecorded call, however, Ndukwe recorded a call with Sittenfeld wherein he made an unsolicited offer to fundraise $20,000 for Sittenfeld. It is highly suspicious that the Government's predication is not recorded and in one of the first recorded calls between Ndukwe and Sittenfeld, it is Ndukwe who voluntarily discusses fundraising for Sittenfeld and specifically tells Sittenfeld that he wants to fundraise $20,000 for him. Such fundraising is legal and permitted by law.

One month prior to the September 2018 unrecorded call, in an August 22, 2018 recorded interaction with a third party, Ndukwe agrees, regarding Sittenfeld's mayoral candidacy, that he does not want "to see another white mayor."

RITTGERS & RITTGERS
Attorneys at Law

12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

Ndukwe's motivation to cooperate with the FBI in light of his past history with Sittenfeld is not mere speculation.

### Public records reveal serious allegations against Ndukwe

News sources indicate that Ndukwe was accused of sexual assault while he was cooperating with the FBI during this undercover operation. The woman who made the sexual assault allegation was interning for Ndukwe and was in her early twenties. After his sexual assault allegation became public, the undercover agents explicitly and repeatedly mentioned their concerns about the sexual assault allegation when they spoke with Sittenfeld in recorded interactions. Federal government involvement related to the resolution of these accusations is unknown.

### Undercover agents host Opening Day party with Ndukwe and women who appear to be under the legal drinking age

On March 28, 2019, the FBI agents involved in this undercover operation hosted an Opening Day party at their Government-rented upscale downtown penthouse. Sittenfeld and other elected officials were present for a portion of the Opening Day party and Sittenfeld witnessed Ndukwe with multiple females who appeared to be under the legal drinking age. In subsequent interactions with undercover agents, Sittenfeld, who was not aware that he was being recorded, raised concerns about Ndukwe's actions. Approximately one month after the Opening Day party, on May 2, 2019, Sittenfeld asked the undercover agents about the females who were with Ndukwe on Opening Day and asked where was Ndukwe's wife. In response, UCE-1 said,

> "Those girls - he met them at a bar. They drank everything in our [expletive] house that night. They cleaned us out. We ran out, we ran out of vodka, we ran out of tequila."

On a July 8, 2019 recording, Sittenfeld said that the last time he saw Ndukwe that Ndukwe was "with a gaggle of six underage girls on Opening Day." In response, the agent laughingly said, "Underage girls, like your boy Epstein."

Then again, during a September 24, 2019 recording, Sittenfeld commented to the FBI agent that Ndukwe should have been home with his newborn son instead of at the Opening Day

**RITTGERS & RITTGERS**
**Attorneys at Law**
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

party with the females he brought.

The sexual assault allegation, which occurred during this undercover operation, coupled with Ndukwe's behavior during the undercover operation and DeVillers public statements, necessitates further discovery which has not been provided by the Government.

Government funds, agent conduct, and policy violations

Information presently available to defense counsel primarily through their own preliminary investigation indicates that agents in this case committed violations of the Attorney General Guidelines on FBI Undercover Operations and Department of Justice "Ethics Handbook For On and Off-Duty Conduct,"[4] which directly relates to agent credibility and motivations in the operation.

Defense counsel disclosed to the Government some of its initial findings regarding undercover agent misconduct. As a result, the Government requested that that information be under seal and not disclosed in public filings.

The Government should be required to provide the defense with all current protocols, guidelines and instructions for this undercover operation, its agents, and government-controlled sources. Counsel believes that potential violations include, but are not limited to, the following:



---

[4] https://www.justice.gov/jmd/ethics-handbook

**RITTGERS & RITTGERS**
**Attorneys at Law**
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

[redacted]

Fundamental fairness requires disclosure of this information so that defense counsel has an opportunity to continue its inquiry into the validity, predication, and motivation for the undercover operation and the credibility of government agents and government-controlled witnesses.

## II. LEGAL STANDARD

### The *Brady* Doctrine includes impeachment evidence.

Impeachment evidence, along with exculpatory evidence, falls within the prosecution's mandatory disclosures under the *Brady* Rule. *Brady v. Maryland,* 373 U.S. 83, 87 (1963) and *Giglio v. U.S.*, 405 U.S. 150, 154 (1972). For the purposes of *Brady* disclosures, the Supreme Court of the United States has held that there is no difference between exculpatory evidence and impeachment evidence. *Kyles v. Whitley*, 115 S.Ct. 1555, 1565 (1995). The Court stressed that the disclosure of information that could be used for impeachment is just as important as exculpatory evidence and disclosure is required. *Id*. at 1569-71. The Court emphasized the similarity between exculpatory and impeachment evidence under *Brady* because impeachment evidence can be used to show bias and interest in the government's witnesses. *U.S. v. Bagley*, 473 U.S. 667, 676 (1985). When impeachment evidence is disclosed and used effectively, such evidence may make the difference between conviction and acquittal. *Id*. Consequently, when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within the *Brady* rule. *Id*. Therefore, impeachment evidence merits the same constitutional treatment as exculpatory evidence. *U.S. v. Abello-Silva*, 948 F.2d 1168, 1179 (10th Cir. 1991); *and Giglio*, 405 U.S. at 154.

### Inducements, threats, and agreements

---

[5] https://www.justice.gov/archives/ag/undercover-and-sensitive-operations-unit-attorney-generals-guidelines-fbi-undercover-operations

**RITTGERS & RITTGERS**
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

The United States Court of Appeals for the Sixth Circuit held that the pretrial disclosure of any express agreements between the prosecution and a witness must be turned over under *Brady*. *Bell v. Bell*, 512 F.3d 223, 233 (6th Cir. 2008) (en banc) (citing *Giglio*, 405 U.S. at 154-155). The Sixth Circuit went on to hold that even less formal agreements, including unwritten and tacit agreements, are also subject to disclosure under *Brady*. *Bell*, 512 F.3d at 233. The United States District Court for the District of New Mexico, in the case of *United States v. DeLeon*, 426 F. Supp.3d 1034 (D.N.M. 2019), ordered that the government must produce all law enforcement cooperation agreements within the government's possession and must produce the informant's criminal history and benefits the informant received for his cooperation with law enforcement. *DeLeon*, 426 F. Supp.3d at 1064. The *DeLeon* court cited Rule 16(a)(1)(E), stating that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph ... items, if the item is within the government's possession, custody, or control and is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). *Id.* at 1070. Even if a witness was unsuccessful in the attempt to get benefits in return for testimony, the fact the witness even made the attempt is "favorable" evidence. *See Wearry v. Cain* 136 S.Ct. 1002, 1007 (2016) citing to *Napue v. Illinois*, 360 U.S. 264, 270 (1959) for the proposition that "even though the State had made no binding promises, a witness' attempt to obtain a deal before testifying was material because the jury "might well have concluded that [the witness] had fabricated testimony in order to curry the [prosecution's] favor"].

<u>The requested disclosures should be considered collectively, and not item-by-item when this Court analyzes the disclosure under *Brady*.</u>

The materiality of favorable information sought by the defense should be considered collectively and not item by item. *Kyles*, 514 U.S. at 436. Even if a single piece of favorable information on its own may be deemed immaterial, the combination of two or more pieces of favorable information may be arguably material such that disclosure is constitutionally required. *Id*. at 437. In *Kyles*, the Supreme Court endorsed the argument that favorable information is

**RITTGERS & RITTGERS**
**Attorneys at Law**
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

material because it generally undermines the quality of the prosecution's investigation. *Id*. at 445. The *Kyles* Court held that the suppressed information was material because it would have raised opportunities to attack not only the probative value of crucial physical evidence and the circumstances in which it was found, but the thoroughness and even good faith of the investigation as well. *Id*.

Timely disclosure of <u>Brady</u> and <u>Giglio</u> Material

The Sixth Circuit held that failure to timely disclose *Brady* material may obstruct a defendant's ability to prepare for trial and undermine his ability to present his theory of defense. *See Generally U.S. v. Krebs*, 788 F.2d 1166, 1176 (6th Cir. 1986). Although *Brady* has never been read to create a constitutional right in the accused to unlimited discovery, it nevertheless imposes on the government a duty to disclose evidence favorable to the accused. *U.S. v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992) *citing United States v. Agurs*, 427 U.S. 97, 103–07, 96 S.Ct. 2392, 2397–99, 49 L.Ed.2d 342 (1976). While the Sixth Circuit generally holds that *Brady* and *Jencks* material must be disclosed in time for a defendant to adequately prepare for trial, it has clarified best practices in disclosure. *Minsky*, 963 F.2d at 876. The Sixth Circuit stated that the best practice – and that followed in most federal courts today – is for the government to produce such material *well in advance of trial* so that defense counsel may have an adequate opportunity to examine that which is not in dispute and the court may examine the rest *in camera*, usually in chambers. *Id*. (emphasis added). This helps the courts avoid the inevitable delay of the trial when the material is withheld until closer to trial. *Id*.

The legislative branch made their intent very clear when it comes to the disclosure of exculpatory evidence. In 2020, the 116th Congress of the United States enacted the Due Process Protections Act. *Due Process Protections Act of 2020*, S. 1380, 116th Cong. (2020). The Act requires a federal judge in criminal proceedings to issue an order confirming the obligation of the prosecutor to disclose exculpatory evidence. *Id*. The Act requires this Order to be given at the very first scheduled court date, when both the prosecutor and defense counsel are present. *Id*.

**RITTGERS & RITTGERS**
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

This Act is an explicit recognition for disclosure earlier rather than later and instructs the district courts to focus on circumstances for their district and formulate an order as they deem appropriate.

This Act was passed in response to cases such as *United States v. Stevens*, 08-CR-231 (D.D.C. Apr. 7, 2009). On July 29, 2008, Former U.S. Senator Ted Stevens was indicted by a federal grand jury on seven counts of failing to properly report gifts. *Indictment*, July 29, 2008. The charges related to renovations to his home and alleged gifts from a corporation, valued around $250,000. As the case progressed, it was discovered that the government had concealed exculpatory evidence. At the direction of the Attorney General, on April 1, 2009, the United States filed a Motion to Set Aside the Verdict and Dismiss the Indictment, citing the failure to produce notes taken by prosecutors regarding a witness who could have provided exculpatory evidence to the defense. District Judge Emmet G. Sullivan granted the Motion and recognized that the information was constitutionally required to be turned over to the defense.

This Court ordered the Government to disclose the discovery currently being requested by the defense. *See Generally United States v. Louis Trauth Dairy, Inc., and David E. Trauth*, 1994 WL 876372 (S.D. OH, Western Division Sept. 12, 1994). In *Louis Trauth Dairy*, this Court held that "Defendants need adequate time to review the evidence in the possession of the government so that the Defendant can make effective use of it at trial and thus a prompt disclosure of *Brady* material is warranted." *Id*. at *2. This Court noted that the complexities, length of an investigation, and the amount of potential *Brady* material all call for disclosure well before trial. *Id*. at *1. This Court further ordered the disclosure of any agreements reflecting inducements to the government's witnesses, as this evidence fell under *Brady* and impeachment material. *Id*. at *2. This Court "[could not] see how early release of relevant exculpatory material would prejudice the government." *Id*. Therefore, this Court ordered that the Government disclose all exculpatory material under *Brady* no later than forty-five days before trial. *Id*.

**RITTGERS & RITTGERS**
**Attorneys at Law**
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

Other federal courts of appeals have discussed the issue of disclosure and held that the government has an obligation to timely disclose *Brady* material. The United States Court of Appeals for the District of Columbia Circuit held that the government has an obligation to provide "timely, pretrial disclosure," and that the timeliness is assessed from the perspective of the defense's ability to meaningfully use the information. *Perez v. United States*, 968 A.2d 39, 66 (D.C. 2009); *See also Miller v. United States*, 14 A.3d 1094, 1111 (D.C. 2011). The court held that the prosecution must disclose this information "at such a time" and in such a manner "as to allow the defense to use the favorable material effectively." *Lindsey v. United States*, 911 A.2d 824, 838 (D.C. 2006) (internal quotation and citation omitted). As a practical matter, this means well before trial if not at the outset of the case, because "the due process obligation under *Brady* to disclose exculpatory information is for the purpose of allowing defense counsel an opportunity to investigate the facts of the case and, with the help of the defendant, craft an appropriate defense." *Perez at* 66. The ruling rejected any notion that disclosure in accordance with the Jencks Act satisfies the prosecutor's duty of reasonable disclosure under *Brady*, or that if such disclosure is made, the burden may then be shifted to the defendant to request a continuance or similar remedy. *Id.*

<u>The District Court's inherent power to order the Government to disclose material and evidence under *Brady* and *Giglio*</u>

This Court has the power to order the disclosure of all *Brady* material related to Mr. Ndukwe and the UCEs involved in this case. The Supreme Court of the United States has acknowledged that trial courts are empowered "to manage their own affairs so as to achieve the orderly and expeditious dispositions of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). (internal quotations and citations omitted); *See Also Geders v. U.S.*, 425 U.S. 80, 86 (1976) (The trial court "must have broad power to cope with the complexities and contingencies inherent in the adversary process … [and] [i]f truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings."). The foundation of the district court's authority to

**RITTGERS & RITTGERS**
Attorneys at Law
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

issue a pretrial *Brady* order is the court's general power "to effectuate … the speedy and orderly administration of justice." *United States v. Holmes*, 343 A.2d 272, 277 (D.C. 1975) (affirming the trial court's authority to order the disclosure of the government's witnesses both on grounds of "fundamental fairness" and "administrative efficiency."). In the case of *In re Terrorist Bombings of United States Embassies in East Africa*, 552 F.3d 93 (2d Cir. 2008), the United States Court of Appeals for the Second Circuit held that Rule 16(d) gives district courts the discretion to determine the circumstances "under which the defense may obtain access to discoverable information." *In re Terrorist Bombings of United States Embassies in East Africa*, 552 F.3d at 122. Rule 16(d)(2) "gives the district court broad discretion in imposing sanctions on a party who fails to comply with" Rule 16. *United States v. Wicker*, 848 F.2d 1059, 1060 (10th Cir. 1988).

### III. ARGUMENT

<u>Immediate disclosure of all *Brady* information is required</u>

The requested disclosures are *Brady* material and necessary to prepare Sittenfeld's defense. Delayed disclosure hampers defense counsel's ability to thoroughly investigate matters and meaningfully use the information for pretrial motions and discovery related issues. Such decisions include which witnesses need to be contacted, additional discovery requests to be made, what information to disclose to consultants, what pretrial motions to file, and other strategic decisions that must be made well in advance of trial.. Furthermore, this case is unusual in that the Government strategically and publicly began crafting its narrative through use of the news media and voluntarily made aspects of its case public, including the identity of its main cooperating witness. The Government cannot at the same time deny Sittenfeld the opportunity to access information that is likely to run contrary to that narrative, including the inducement information relevant to Ndukwe and information that calls into question the validity and credibility of the undercover operation and undercover agents.

This Court already ordered the Government to turn over all *Brady* material to the defense

**RITTGERS & RITTGERS**
**Attorneys at Law**
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

and the Government has not complied. On November 11, 2020, Magistrate Bowman issued a Due Process Protections Act Order that stated the Government was "obligated to produce all exculpatory evidence to the Defendant pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and orders it to do so. Failing to do so in a *timely manner* may result in consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, or sanction by the Court." *Due Process Protections Act Order*, Nov. 11, 2020. This Order from the Court was issued over two months ago. The Government, however, has failed to obey this Court's Order and provide the defense with the required *Brady* materials under the law.

The Due Process Protections Act was put in place to ensure *Brady* evidence is not concealed and to ensure that a criminal defendant receives the due process guaranteed to them under the Constitution. Federal courts across the country recommend that all *Brady* evidence be disclosed well before trial. Yet, even with the standing Order from this Court, and holdings from other courts across the country, the Government insists on holding the *Brady* evidence until a later date. The longer the Government refuses to hand over the requested information, the less useful that information becomes. There is no prejudice or harm to the Government for immediate compliance with the Court Order. The Government's refusal to provide defense counsel with the information requested handcuffs defense counsel's ability to provide Sittenfeld with a full and complete defense.

The Government admits that this is a prosecution built on its hope that a jury will convict Sittenfeld by drawing an inference that he implied an agreement to take specific official actions that he never took. DeVillers also admits that his office consciously decided to be more aggressive and start "taking shots" in corruption cases.[6] This is a unique prosecution because the Government wrote a speaking indictment and spoke extensively in public beyond the Indictment,

---

[6] https://www.cincinnati.com/story/news/2020/11/12/cincinnati-corruption-trump-appointee-cracks-down-ohio-politicians/6248308002/

**RITTGERS & RITTGERS**
**Attorneys at Law**
12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

including publicly discussing facts it will *not* prove at trial.

A single piece of information, even information that is not admissible at trial, can be the building block that leads to the discovery of admissible exculpatory evidence, but only when counsel has adequate time to investigate leads that rise from the received information. In civil cases, where money is at stake, parties are given the ability to depose potential witnesses, demand production of documents, and conduct full discovery well in advance of trial. In this case, Sittenfeld's liberty is at risk, and the Government refuses to provide information necessary for him to prepare a thorough defense, even refusing to provide a witness list.

Attached to this Motion are affidavits. *See* Attached Exhibits C - E. Two are from experienced and respected civil litigators. The other affidavit is from a nationally known attorney and professor who is shaping current dialogue and legislation related to criminal discovery and wrongful convictions. Each attest to the fundamental requirement of early discovery disclosure because disclosures are meaningless if there is not sufficient time for proper investigation. Even the best trial attorney cannot adequately analyze key evidence on short notice. As recognized in civil cases, several months of preparation and work is required after key disclosures are provided. Even if not admissible, a single disclosure can be the building block that leads to the discovery of admissible exculpatory evidence so long as the defendant has the time to conduct his own due diligence after the initial disclosure. Counsel could provide hundreds or even a thousand more affidavits from experienced litigators saying that timeliness of discovery is essential to trial preparation and investigation.

<u>Ndukwe and Agent Information</u>

Evidence and information which relate to the Government's investigation, misconduct of an agent, witness motivation, credibility and bias, and the handling of a cooperating source, is material and discoverable under *Brady* and *Giglio*. More specifically, Mr. Sittenfeld requests all information regarding the undercover agents, their supervision and instruction to Ndukwe; all information regarding times when Ndukwe violated instructions from his FBI handlers, including

**RITTGERS & RITTGERS**
Attorneys at Law

12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

not recording calls; full and complete records of all statements by Ndukwe about Mr. Sittenfeld, including all statements that were not recorded; all information related to inducements, threats, agreements, and consideration for Ndukwe; information related to Ndukwe's criminal record, including the sexual assault allegations; the Government's witness list; costs and expenditures related to this undercover operation; information related to how the UCEs spent and used money, including the penthouse and entertainment with females; current DOJ and FBI policies, procedures and instructions related to Ndukwe and this operation; statements and communications from government agents made to the media, regardless of whether the statements were made public; and all recordings related to Project 1, the CW, and Mr. Sittenfeld in the Government's possession.

## CONCLUSION

The timely disclosure of evidence impacts more than the trial. Disclosure of *Brady* material impacts the case throughout the pre-trial stages. Timely disclosure helps counsel determine what witnesses to call, what experts are needed, and leads to additional discovery motions, motions to suppress, and motions related to dismissing the case. Timely disclosure is essential to Mr. Sittenfeld's right to effective assistance of counsel and due process.

THEREFORE, defense requests this Court grant its Motion to Compel Discovery.

Respectfully submitted,

RITTGERS & RITTGERS

*Charles H. Rittgers*
Charles H. Rittgers
Charles M. Rittgers
Rittgers & Rittgers
12 East Warren Street
Lebanon, OH 45036
(513) 932-2115
charlie@rittgers.com

*Counsel for the Defendant*

**RITTGERS & RITTGERS**
Attorneys at Law

12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed with the Court's CM/ECF System this 10th day of February 2021, which provides electronic notice to all parties.

RITTGERS & RITTGERS

*Charles H. Rittgers*
Charles H. Rittgers
Charles M. Rittgers

**RITTGERS & RITTGERS**
**Attorneys at Law**

12 East Warren Street
Lebanon, Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201