**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**UNITED STATES OF AMERICA**

        **Plaintiff,**

    **v.**                        **Case No. 1:20–cr-142**
                                     **JUDGE DOUGLAS R. COLE**

**ALEXANDER SITTENFELD,**
    **a/k/a "P.G. Sittenfeld,"**

        **Defendant.**

## OPINION AND ORDER

This Opinion and Order addresses the government's Sealed Motion for a Protective Order (Doc. 33). For the reasons stated below, the Court **GRANTS** the government's Motion. Accordingly, going forward, both parties are directed to file under seal any references, whether in briefing or exhibits, to allegations regarding

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████    To accomplish this, the parties shall file any such documents on the sealed docket in unredacted form. The parties shall then have twenty-four hours to file on the public docket a version of any such filing in which all references to such allegations are redacted. The parties are directed to work together to determine the specific redactions necessary pursuant to this Opinion and Order, and to contact the Court if they cannot agree. In addition, because the government's Motion (Doc. 33) and Sittenfeld's Response Brief (Doc. 50) are both currently under seal, the parties are directed to (1) redact references to the allegations in those

documents consistent with this Opinion and Order, and (2) file the redacted documents on the public docket.

**BACKGROUND**

While preparing for trial in this case, Sittenfeld compiled a list of potential witnesses who might have information that is helpful to him. ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████ ████████████

███████████

Sittenfeld thought these allegations raised issues of potential government misconduct and called into question ████████████████████████████

██████████████████████ So Sittenfeld informed the government of these allegations and asked for further discovery material relating to them. The defense wanted, for example, ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[1] Refers to PageID#

████████████████████████████████████████████

████████████████████████████████████████████

███████████

Upon learning of the allegations, the government notified its liaison with the FBI who is responsible for handling *Giglio* inquiries. That prompted the FBI to begin an investigation into the matter. (According to the government, the FBI is expected to respond formally to the allegations at some future time.) Later, the defense notified the government of allegations relating to ████████████████████████████ ████████████████████████████████████ ████████████ ████████████████████████████████ As it did with the earlier allegations, the government notified its liaison responsible for handling *Giglio* claims, and the FBI broadened the scope of its original investigation to include these new allegations. The investigation was still ongoing as of the time that the government filed the instant Motion. (Doc. 33).

As for the discovery requests, the government and the defense appear to have reached an impasse. The government believes that "some of the Defendant's requests seek information that is not discoverable under the law." (Gov't Mot., Doc. 33, #267). The defense disagrees. At a January 22, 2021, status conference, the government notified the Court of the agent-misconduct allegations and asked for a temporary seal on any reference to the allegations that might be submitted to the Court. The Court granted the government's request. The government now seeks a permanent seal on such allegations.

Unfortunately, the government is not exactly clear about the relief it is requesting. For example, at the start of its Motion, the government "requests that the Court order any references to *the Defendant's claims of misconduct* ████████████ ███████████████████████████ be filed under seal and protected from dissemination at this time." (Gov't Mot., Doc. 33, #266 (emphasis added)). That suggests the government is only requesting a seal regarding the specific allegations of misconduct that give rise to the instant motion—allegations relating to ████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████

But at the end of its Motion, the government says it is requesting an order requiring "that *all* discovery filings *related to allegations of misconduct* ████████ ████████████ be filed and kept under seal." (*Id.* at #271 (emphasis added)). Read literally, the government's request could be understood as relating to every conceivable allegation of government misconduct that might be made, however unrelated to the specific allegations of misconduct giving rise to the instant Motion. But it seems unlikely that the government is seeking such relief. The government's reasons for seeking a protective order are tied to the nature of the specific allegations at issue here. And it has not explained why an order regarding all conceivable allegations of misconduct is supported by good cause. The Court therefore construes the government's request as limited to the specific allegations giving rise to the instant Motion. That said, if the government wishes to request a protective order

4

relating to other allegations of misconduct that may arise, it is of course free to file such a motion whenever it thinks appropriate.[2]

The government is also not completely clear about (1) whether it is seeking a seal on just "*references* to the Defendant's claims of misconduct" that might be included in discovery filings that largely contain other information that doesn't need to be sealed, (*id.* at #266 (emphasis added)); or (2) whether, instead, it is seeking a seal on "all discovery *filings* related to allegations of misconduct involving undercover," (*id.* at #271 (emphasis added)). A seal on the former would just require redactions of *portions* of a filing that reference the allegations but would not necessarily require that the entire filing be placed under seal (unless specific redactions were unfeasible for whatever reason). A seal on the latter suggests that the *entire* filing would be placed under seal, even if the filing is largely unobjectionable and contains just a few discrete references to the allegations.

The Court again opts for the more limited construction. The government does not explain why an entire filing would need to be placed under seal when only discrete portions of it reference the allegations. And the Court suspects that good cause would not exist for placing an entire filing under seal, as opposed to simply redacting the protectable portions of the filing (when feasible).

Putting these limiting constructions together, the Court construes the government's Motion as follows: a request for an order from this Court requiring that

---

[2] To avoid dissemination of potentially protectable discovery material before the government seeks (and potentially obtains) such an order, the Court encourages the parties to work together to avoid any disclosure of such materials before the Court has an opportunity to resolve any potential sealing issues relating to those allegations.

any references to the specific allegations giving rise to the instant Motion be placed under seal if included in a discovery motion filed with the Court. So understood, the Court **GRANTS** the government's Motion for the reasons below.

### LEGAL STANDARD

Federal Rule of Criminal Procedure 16(d)(1) permits a Court to issue a protective order regarding discovery material "for good cause." But what constitutes "good cause" under Rule 16(d)(1) remains an underdeveloped area of law in this Circuit. Fortunately, out-of-circuit precedent provides useful guidance. Courts have held that "good cause" under Rule 16(d)(1) "exists 'when a party shows that disclosure will result in a clearly defined specific and serious injury.'" *United States v. Bundy*, No. 2:16-cr-046-GMN-PAL, 2016 U.S. Dist. Lexis 166626, at *10 (D. Nev. Nov. 30, 2016) (quoting *United States v. Smith*, 985 F. Supp 2d 506, 523 (S.D.N.Y. 2013)); *accord United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) ("Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity."). "Establishing such an injury … requires 'a particular factual demonstration of potential harm, not [only] conclusory statements.'" *Bundy*, 2016 U.S. Dist. Lexis 166626, at *10 (second alteration original) (quoting *Smith*, 985 F. Supp. 2d at 523); *see also Wecht*, 484 F.3d at 211 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.") (quotation omitted). In addition, courts have considered the following factors in determining whether good cause exists: whether (1) disclosure of the materials in

question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order; and (3) the public's interest in disclosure outweighs the possible harm. *United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019); *see also Smith*, 985 F. Supp. 2d at 522–23.

## LAW AND ANALYSIS

**A.    The Government Has Shown Good Cause**

**1.    The Government Has Articulated A Clearly Defined, Specific, and Serious Injury.**

The Court first considers whether the government has articulated a clearly defined, specific injury that may result if the Court does not issue the requested order. The government has. That injury is this: without the protective order, the defense, through discovery filings, may publicly disseminate information about sensitive allegations that are currently being investigated, and that, depending on the results of the investigation, may be irrelevant or otherwise inadmissible at trial.

Recall that these allegations consist of claims of ████████████████ ███████████████████████████████████████████████ Given the salacious nature of these allegations, they risk prejudicing the government's case with the jury pool, even though the allegations may end up playing no role at trial in this case. "Intense publicity surrounding a criminal proceeding—what Justice Frankfurter referred to as 'trial by newspaper'—poses significant and well-known dangers to a fair trial." *United States v. Brown*, 218 F.3d 415, 423 (5th Cir. 2000) (quoting *Pennekamp v. Florida*, 328 U.S. 331, 359 (1946) (Frankfurter, J., concurring)). "Paramount among these dangers is the potential that pretrial publicity

7

may taint the jury venire, resulting in a jury that is biased toward one party or another." *Id.* "Accordingly, trial courts have 'an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity.'" *Id.* (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979)).

Here, the risk of prejudicial pretrial publicity is compounded by the strong media interest in this case.





████████████████████████████████████████████████████████

███████████████████████████████████████████████

There is also the distinct risk that dissemination of these allegations will prejudicially taint the jury pool by exposing it to information that the Court rules is irrelevant or otherwise inadmissible at trial. At this stage, these allegations are mostly likely to come before the Court in a pre-trial discovery motion. ████████ ████████████████████████████████ It is quite possible that the Court will rule against Sittenfeld's ██████████████ discovery requests regarding these allegations. Even if the Court permits such discovery, the Court may still rule that the information is irrelevant or otherwise inadmissible at trial. Disclosure of such information would thus "play a negative role in the functioning of the criminal process, by exposing the public generally, as well as potential jurors, to" seemingly "incriminating" allegations that might "not be used" at trial. *United States v. McVeigh*, 119 F.3d 806, 813 (10th Cir. 1997); *see also United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (reasoning that if "discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe").

One further consequence of all this could be a chilling effect that unacceptably impedes the discovery process. If discovery disputes regarding sensitive (and potentially irrelevant) allegations cannot be resolved with a reasonable degree of privacy, then one or both parties may "be discouraged from putting their" discovery requests or responses "in writing." *Anderson*, 799 F.2d at 1441. That would be

"undesirable to the extent that it creates misunderstanding and surprise for the litigants and the [Court]." *Id.*

The Court thus concludes that public dissemination of these allegations would work a clearly defined, specific, and serious injury by creating a substantial risk of jury-pool taint. It would also risk a chilling effect that impedes the discovery of information and adjudication of issues related to these allegations.

### 2. The Remaining Factors Support Granting a Protective Order.

The three remaining good-cause factors identified above also support granting a protective order. First, disclosure of the materials in question would pose a serious hazard to at least one third party: ███ Disseminating unsubstantiated allegations about a ████████████████████████████████ would be highly prejudicial to ███ privacy interests. Defense counsel practically conceded this at ██████████████████████████████████████████ ██████████████████████████[4]

Second, the defendant would not be prejudiced by a protective order. In that regard, the limited scope of the requested order bears emphasis. The government is *not* seeking a protective order that would bar *Sittenfeld* from obtaining discoverable information about these allegations. Properly construed, the government is simply requesting that any reference to the allegations included in any discovery filing be kept under seal. So Sittenfeld's own access to information about these allegations

---

[4] ████████████████████████████████████████████████████████████████████████████████████████████████████ So defense counsel's concession does not moot the government's Motion (nor has either party suggested it does).

would remain unchanged under the order. Only *non-parties* would be affected by the order in that they would not be able to view any references to the allegations that might be included in any discovery filings. In fact, nowhere in Sittenfeld's response brief does he attempt to identify any prejudice that the government's requested order would cause *him*. The defense exclusively argues that the government has not asserted a specific-enough or serious-enough injury to justify restricting public access to the allegations.

That brings the Court to the last factor: whether the public interest in disclosure outweighs the potential harm. It does not. These allegations are before the Court only because of an anticipated discovery dispute. In other words, as of now, they are relevant only to the extent they concern potentially discoverable information in the possession of the government. That is important because, in both civil and criminal cases, "[d]iscovery is neither a public process nor typically a matter of public record." *Anderson*, 799 F.2d at 1441. That follows as an historical matter—discovery materials were not traditionally "available to the public or press." *Id.*; *see also Bond v. Utreras*, 585 F.3d 1061, 1074 (7th Cir. 2009) ("At common law, pretrial proceedings were closed to the public … and the federal discovery rules have not changed this common-law tradition.") (citing *Gannett Co.*, 443 U.S. at 389). And it also follows as a matter of prudence. If discovery were a public process, "the purpose of the discovery rules—to encourage the disclosure of information and materials to avoid unnecessary surprise and to level the playing field—might be undermined." *Smith*, 985 F. Supp. 2d at 520. Moreover, "[m]uch of the information that surfaces during pretrial

discovery may be unrelated, or only tangentially related to the underlying cause of action." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). As a result, "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Id.* In short, the Court finds that the legitimate public interest in "discovered, but not yet admitted, information," like the allegations here, is minimal. To the extent that the public has any legitimate interest in the information, the Court concludes that it does not outweigh the potential harm that may result from dissemination.

## B.    Sittenfeld's Arguments Do Not Persuade

Sittenfeld deploys several arguments in opposing the government's motion. None are persuasive.

Sittenfeld begins by arguing that the government has not asserted a "clearly defined and serious injury" necessary to show cause under Rule 16(d)(1). (Sittenfeld Resp., Doc. 50, #454). According to Sittenfeld, that follows from the fact that the government has not identified any precedent specifically holding that a desire to prevent dissemination of alleged government misconduct is a basis for showing "good cause." But that argument would prove too much. Ordinarily, a litigant need not show a previous case exactly on point factually in order to justify relief in the instant matter. Legal reasoning often depends on analogy, and Sittenfeld cites nothing suggesting that is any less true here. As noted above, plenty of authority suggests that the trial court has an obligation to manage discovery to mitigate harmful effects from pre-trial publicity. Likewise, plenty of authority holds that the public has little

12

if any interest in accessing pre-trial discovery information. These settled principles inform the understanding of "good cause." And given the nature of the allegations here, which pose a substantial risk of prejudicing the jury pool before the Court has even had an opportunity to review their admissibility, such cases support a finding of good cause.

Sittenfeld next throws up a grab-bag of arguments without expending much effort developing any of them. Because he has likely waived these arguments, *see Navarro v. Procter & Gamble Co.*, No. 1:17-CV-406, 2021 WL 184591, at *46 (S.D. Ohio Jan. 19, 2021), the Court will address them only briefly (with one exception discussed more fully below).

To start, contrary to Sittenfeld's contentions, the government did not fail to identify "specific harm" in support of its motion for a protective order. (Sittenfeld Resp., Doc. 50, #454). The government cited the potential for jury taint due to the sensitive nature of the allegations, coupled with the fact that the allegations may be deemed inadmissible at trial. Similarly, the government's motion is not "replete with broad allegations of speculative harm." (*Id.* at #455). Rather, the government describes the allegations and then explains concretely the prejudicial risk they pose to the government's case. Sittenfeld also faults the government for not citing any of the considerations the Criminal Rules Advisory Committee listed as a potential basis for granting a protective order. (*Id.* at #454–55). These considerations include (1) the safety of witnesses and others, (2) a particular danger of perjury or witness intimidation, (3) the protection of information vital to the national security, and

13

(4) the protection of business enterprises from economic reprisals. *See* Advisory Committee's Note to 1966 Amendment of Rule 16. Importantly, however, the Advisory Committee prefaced this list by saying that the entries on the list were simply "[a]*mong the considerations* to be taken into account by the court." *Id.* (emphasis added). In no way did the Advisory Committee suggest that this list was intended to furnish the exclusive grounds for finding good cause.

Sittenfeld further contends that the government's motion (1) prematurely challenges the admissibility of discovery material related to the allegations; and (2) prematurely seeks in camera review of such material. (Sittenfeld Resp., Doc. 50, #455–57). Sittenfeld is wrong on both counts. To be sure, the government argues that the *potential* inadmissibility of the material weighs in favor of granting a protective order. Likewise, the government argues that because the allegations relate to material that the Court may need to inspect *in camera*, that too weighs in favor of a seal. But the government is quite clear, at least in this Motion, that it is not *yet* challenging the admissibility of such information or seeking *in camera* review. And it repeatedly emphasizes the limited nature of the relief that it *is* seeking: a seal on the above-mentioned allegations that may be referenced in any discovery filings submitted to the Court.

Sittenfeld's last argument is perhaps his most serious, and thus warrants a more fulsome response. Sittenfeld notes that, in the Sixth Circuit, the sealing of (at least certain types of) documents in (at least certain types of) civil cases is governed by *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir.

2016). And *Shane Group*, as Sittenfeld notes, imposes a much tougher standard on the moving party than Rule 16(d)(1)'s good-cause standard does.

More specifically, *Shane Group* drew a distinction between, on the one hand, "so-called 'protective orders' entered pursuant to the discovery provisions of Federal Rule of Civil Procedure 26," and on the other, "orders to seal court records." 825 F.3d at 305. As the court explained, "[d]iscovery concerns the parties' exchange of information that might or might not be relevant to their case." *Id.* "Secrecy is fine at the discovery stage." *Id.* (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)). "Thus, a district court may enter a protective order limiting the use or disclosure of discovery materials upon a mere showing of 'good cause.'" *Id.* (quoting Fed. R. Civ. P. 26(c)(1)). "These orders are often blanket in nature, and allow the parties to determine in the first instance whether particular materials fall within the order's protection." *Id.*

"At the adjudication stage, however, very different considerations apply." *Id.* (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). And language in *Shane Group* suggests that line between these two stages—"discovery and adjudicative"—is crossed when the parties place material into "the court record." *Id.* (citing *Baxter*, 297 F.3d at 545). The court reasoned that "[u]nlike information merely exchanged between the parties, '[t]he public has a strong interest in obtaining the information contained in the court record.'" *Id.* (second alteration original) (quoting *Brown & Williamson Tobacco Corp v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983)). The upshot is that "courts have long recognized … a 'strong presumption in favor of openness' as

to court records." *Id.* (quoting *Brown & Williamson*, 710 F.2d at 1180). The burden of overcoming that presumption "is a heavy one." *Id.* "Only the most compelling reasons can justify non-disclosure of judicial records." *Id.* (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). "Moreover, the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Id.* So, for example, in class actions—"where by definition some members of the public are also parties to the case"—standards for sealing should be particularly strict. *Id.* (cleaned up). "And even where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason." *Id.* "The proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Id.* at 305–06 (quoting *Baxter*, 297 F.3d at 548).

The Court quotes *Shane Group* at length because, even though it was a civil case, its reasoning applies here to some extent. After all, while the government labels its motion as a request for a protective order under Rule 16(d)(1), the government is effectively seeking an order that would seal certain information included in the court record. And, as noted, *Shane Group* at least suggests that the line separating the discovery stage and adjudicative stage "is crossed when the parties place material in the court record." 925 F.3d at 305. Thus, the material here, which is "in the court record," could be considered part of the "adjudicative stage," even though this is a discovery dispute.

But, while *Shane Group* plausibly *could* be read as applying to every conceivable court filing, including discovery-type motions like those here, the Court concludes that the case need not *necessarily* be read that way. Importantly, *Shane Group* itself involved an order that had "sealed most of the parties' substantive filings from public view, including nearly 200 exhibits and an expert report upon which the parties based a settlement agreement that would determine the rights of … millions of citizens." *Id.* at 302. Thus, in reaching its decision there, the Sixth Circuit was not required to consider the exact contours that separate "the adjudication stage," on the one hand, and the "discovery stage," on the other. The documents at issue here, by contrast, are *discovery filings* seeking *discovery material* submitted during the *discovery phase* of litigation. In a certain sense, such filings could be seen as a hybrid creature of both stages. They are at once documents filed with the court and "place[d] … in the court record," but also documents filed while discovery is ongoing seeking "information that might or might not be relevant to [the] case." *Id.* at 305. Thus, it may be an overreading of *Shane Group* to suggest that the case means to create a bright-line rule under which the presumption of access necessarily applies to every court filing.

Indeed, at least one district court in this Circuit has concluded that, to the contrary, *Shane Group* did draw "a distinction between discovery motions and adjudicative motions," with *Shane Group*'s requirements for sealing applying only to the latter types of motions. *Counts v. Gen. Motors LLC*, No. 1:16-12541, 2019 WL 5288044, at *2 (E.D. Mich. Oct. 18, 2019) (holding that *Shane Group*'s strict standards

did not apply to a motion (and responses to that motion) to permit limited discovery and reset corresponding deadlines). This Court is less convinced that *Shane Group* drew that distinction, even implicitly. But the Court *is* convinced that *Shane Group* did not necessarily *reject* the distinction either. As noted above, the issue simply was not presented there.

Thus, this Court must address whether *Shane Group*'s requirements should apply to every occasion on which a party files material with the court, thereby "plac[ing] [it] in the court record." *Id.* The Court concludes they should *not*, as "[s]uch an approach does not distinguish between material filed with discovery motions and material filed in connection with more substantive motions." *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 (11th Cir. 2001). And that distinction matters for a few reasons.

First, it matters based on the relevant history. *Shane Group* derived its standard from the well-settled common-law presumption of access to court documents. *See Shane Grp.*, 825 F.3d at 305 ("The courts have long recognized, therefore, a 'strong presumption in favor of openness' as to court records.") (quoting *Brown & Williamson*, 710 F.2d at 1179). That presumption traces its roots to the Roman and English traditions of *trials* being open to the public. *See Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418 (5th Cir. 2021); *see also Gannett Co.*, 443 U.S. at 386 n.15, ("For many centuries, both civil and criminal trials have traditionally been open to the public."). By contrast, there was no corresponding tradition of public access to *pre*trial proceedings. *Gannett Co.*, 443 U.S. at 389 ("Under English common

law, the public had no right to attend pretrial proceedings."); *accord Seattle Times Co.*, 104 S. Ct. at 2207–08; *see also Anderson*, 799 F.2d at 1441.

Of course, over time, certain pre-trial procedural vehicles have developed that adjudicate substantive rights, and thereby serve as a sort of "substitute" for trials (for example, summary judgment proceedings). *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 252 (4th Cir. 1988). And, not surprisingly, courts have applied the common-law presumption of openness to documents associated with such proceedings. *See id.* (collecting cases). But, when it comes to "material filed with discovery motions" that do not "require judicial resolution of the merits," courts have held that the common-law presumption of access does not attach. *Chicago Trib. Co.*, 263 F.3d at 1312; *accord Binh Hoa Le,* 990 F.3d at 419 n.31; *see also Anderson v. Cryovac, Inc.*, 805 F.2d 1, 10 (1st Cir. 1986) ("Although we agree that the public has a right of access to some parts of the judicial process, we conclude that this right does not extend to documents submitted to a court in connection with discovery proceedings."); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993) ("[W]e hold there is no [presumption of access] right as to discovery motions and their supporting documents."). Thus, to the extent *Shane Group* arises from and embodies common-law notions about access, its strictures would not naturally extend to discovery motions.

Second, the distinction matters because the purposes underlying the presumption of access counsel against giving the presumption much (if any) weight in the context of discovery motions. "The presumption of access is based on the need

for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) (Winter, J.); *see also Binh Hoa Le*, 990 F.3d at 418 ("Public trust cannot coexist with a system wherein judicial decisions are made behind closed doors." (cleaned up)). But not all information "generated in federal litigation" plays an equally valuable role in allowing the public to monitor the federal courts' performance of their Article III functions. *Amodeo*, 71 F.3d at 1048. Applying a strong presumption of access to "every item turned up in the course of litigation would be unthinkable." *Id.* It would impair reputations, ruin relationships, destroy businesses, and, as relevant here, potentially taint jurors "on the basis of misleading or downright false information." *Id.* at 1048–49.

One way to strike a balance is to have the weight of the presumption be governed "by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* at 1049; *accord IDT Corp. v. eBay*, 709 F.3d 1220, 1224 (8th Cir. 2013). Generally, "information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Amodeo*, 71 F.3d at 1049. Filings relating solely to discovery issues, which frequently are about the relevance (or irrelevance) of certain information, fall at or near the latter end of that continuum. Thus, to the extent the presumption of access applies at all to such documents, it should be "weak" because

the documents bear only a "marginal relationship to the performance of Article III functions." *Id.* at 1052.

Third, the distinction matters because applying *Shane Group*'s standard to discovery filings undermines the primary purpose of discovery: "to encourage the disclosure of information and materials to avoid unnecessary surprise and to level the playing field." *Smith*, 985 F. Supp. 2d at 520. Consider, for example, the existing protective Order in this case. (*See* Doc. 17). That Order functions as a kind of blanket order limiting the dissemination of certain categories of discovery material "to encourage the disclosure of information" from the government to Sittenfeld. *Smith*, 985 F. Supp. 2d at 520. In issuing that Order, the Court only had to make a finding of good cause and the Court was not required to narrowly tailor the Order. It would be surprising if a party who receives information under that protective Order could turn around and evade—unilaterally—the restrictions on dissemination contained in that Order merely by attaching a given document to a court filing on a discovery issue. And the ease of evading the protective Order would, in turn, undercut any "encouragement to disclose" in the first instance. *Id.*

Given the problems that arise from a broad reading of *Shane Group*'s scope, the Court concludes such a reading is not warranted. As already noted, the context in which the sealing issue arose in *Shane Group* did not involve "discovery motions," but rather a much broader sealing order than the government seeks here. *Shane Group* stemmed from a massive class-action lawsuit based "on credible allegations that Michigan's largest health insurer engaged in price-fixing to the detriment of

millions of Michigan citizens." 825 F.3d at 302. "Yet the district court sealed most of the parties' *substantive filings* from public view." *Id.* (emphasis added). These included "nearly 200 exhibits and an expert report upon which the parties based a settlement agreement that would determine the rights of those millions of citizens." *Id.* "Class members who sought to object to the proposed settlement thus had no ability to examine the bases of what they were objecting to." *Id.*

In *Shane Group*, then, the challenge to the seal took place *after* the parties had reached a settlement agreement and while the class members were evaluating the merits of that settlement. Here, the opposition to the seal comes while discovery in this case is ongoing and *before* the case has come close to reaching a final resolution. But perhaps the most important distinction is that the seal in *Shane Group* applied to "the parties' *substantive filings* ... including nearly 200 exhibits and an expert report upon which the parties based a settlement agreement that would determine the rights of ... millions of citizens." *Id.* (emphasis added). Clearly, "[t]he public has a strong interest in obtaining" *that* information. *Id.* at 305. Not so here, where the seal would apply to unsubstantiated allegations referenced in discovery filings (not "substantive filings") seeking information that might have no bearing on this case.

These differences strongly suggest that the *Shane Group* Court did not have in mind discovery filings when it suggested that placing a document in the court record ends the discovery stage and commences the adjudicative stage. And it is perhaps no surprise that none of the three cases it cited in support of that rule involved such filings, either. *See Joy*, 692 F.2d at 893 ("We simply do not understand the argument

22

that derivative actions may be routinely *dismissed* on the basis of secret documents.") (emphasis added); *Baxter*, 297 F.3d at 545–46 ("[Secrecy] [a]greements that were appropriate at the discovery stage are no longer appropriate *for the few documents that determine the resolution of an appeal*, so any claim of secrecy must be reviewed independently in this court.") (emphasis added); *Brown & Williamson*, 710 F.2d at 1180 ("The District Court's orders placed all documents filed by the FTC under seal and continued the seal *pending this appeal*.") (emphasis added).

By contrast, other courts have recognized that the mere filing of a document with the district court is not enough, in and of itself, to justify the "strong presumption in favor of openness" to which *Shane Group* refers. 825 F.3d at 305. In *S.E.C. v. TheStreet.Com*, for example, the court rejected the argument that "the very exercise of [the district court's] power to seal [confidential testimony] transformed the [testimony] into a 'judicial document' presumptively open to the public." 273 F.3d 222, 223 (2d Cir. 2001). Such a rule, reasoned the court, "would transform every document that a court reviews into a 'judicial document' presumptively open to the public, despite well-settled law to the contrary." *Id.* Or look to *United States v. Wolfson*, 55 F.3d 58 (2d Cir. 1995). There, the court rejected a request to unseal "documents that were submitted to a court *in camera* as part of a discovery dispute and were held not discoverable." *Id.* at 60. The court held that the mere "lodging" of documents with the district court did not create "a presumptive right of public access" "derived from the First Amendment or from common law." *Id.*

23

Finally, consider *Cryovac, Inc*, 805 F.2d at 1. There, the court explained why the same public right of access that applied to a motion for summary judgment did not apply to "a request to compel or protect the disclosure of information in the discovery process." *Id*. at 13. The court reasoned that the second type of document was "not a request for a disposition of substantive rights." *Id*. In fact, continued the court, "[m]aterials submitted to a court for its consideration of a discovery motion are actually one step further removed in public concern from the trial process than the discovery materials themselves, materials that the Supreme Court has said are not subject to the public's right of access." *Id.* (citing *Seattle Times Co.*, 467 U.S. 36–37). "It would be an odd procedure if a trial court were forced to scrutinize strictly … materials it considers in support or in opposition to a discovery motion, but it did not have to do so for the information the parties seek to uncover." *Id.*

In sum, the Court concludes that the better reading of *Shane Group*—based on historical, prudential, and practical grounds—is that its strictures do not, and should not, apply to discovery motions, like those at issue here.

That being said, at some level, it turns out not to matter much whether *Shane Group*'s strictures apply or not. That is because the Court finds that avoiding the prejudice that would almost certainly ensue from pre-trial publicity about these allegations presents a "compelling reason" justifying a seal. 825 F.3d at 305. And the seal would be "narrowly tailored" because it would apply to only those references containing the allegations and to no other portion of the document, unless redaction

were unfeasible. The proposed seal here thus satisfies *Shane Group*'s standards, even assuming they apply.

Accordingly, for both of those reasons, the Court rejects Sittenfeld's argument based on *Shane Group*.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the government's Sealed Motion for a Protective Order (Doc. 33). Accordingly, going forward, both parties are directed to file under seal any references, whether in briefing or exhibits, to allegations regarding ███████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ To accomplish this, the parties shall file any such documents on the sealed docket in unredacted form. The parties shall then have twenty-four hours to file on the public docket a version of any such filing in which all references to such allegations are redacted. The parties are directed to work together to determine the specific redactions necessary pursuant to this Opinion and Order, and to contact the Court if they cannot agree. In addition, because the government's Motion (Doc. 33) and Sittenfeld's Response Brief (Doc. 50) are both currently under seal, the parties are directed to (1) redact references to the allegations in those documents consistent with this Opinion and Order, and (2) file the redacted documents on the public docket.

**SO ORDERED.**

April 15, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**