UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALEXANDER SITTENFELD,<br>a/k/a "P.G. Sittenfeld,"<br><br>Defendant. | CASE NO. 1:20-CR-142<br><br>JUDGE COLE<br><br><u>GOVERNMENT RESPONSE TO DEFENDANT'S SECOND MOTION TO COMPEL DISCOVERY</u> |

The United States respectfully submits this response to the Defendant's Second Motion to Compel Discovery. (Doc. 84 at PageID 857). For the reasons set forth in the following memorandum, the Court should deny Defendant's motion.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

*s/ Matthew C. Singer*
MATTHEW C. SINGER (IL 6297632)
EMILY N. GLATFELTER (0075576)
MEGAN GAFFNEY PAINTER (NY 4849220)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
Email: Matthew.Singer@usdoj.gov
E-mail: Emily.Glatfelter@usdoj.gov
E-mail: Megan.Painter@usdoj.gov

**MEMORANDUM OF LAW**

The Defendant again moves to compel disclosure of discovery, asserting the requested materials—agent reports, agent messages, and investigative costs—are *Brady* and "exculpatory," as if characterizing them as such makes them so. Contrary to the Defendant's claim, the same criminal discovery rules apply regardless of the charge—there are no special rules for white-collar defendants. The Defendant's motion should be denied.

Although the law does not require pretrial disclosure of the type of agent reports that the Defendant seeks, the government has already agreed to produce such agent reports 60 days before trial. This follows the government's meeting with defense counsel over six months ago, during which the government summarized evidence from witness interviews—which made clear the information was inculpatory, Rule 404(b) evidence. As explained further below, the Defendant's motion is based on either sheer speculation or a misunderstanding about what constitutes exculpatory evidence in a bribery case. In addition, agent messages will be produced before trial, well in advance of when the law requires disclosure. The rest of the information the Defendant seeks—information relating to the cost of the investigation—is neither *Brady* nor relevant. Rather, this sideshow evidence would confuse the jury while offering nothing material to the issue central to this case: the Defendant's intent when he accepted payments from undercover agents during recorded meetings. For these reasons, set forth fully below, the motion should be denied.

I.  **RELEVANT BACKGROUND**

The Defendant's motion attached incomplete communications between the parties relating to discovery and did not describe two in-person meetings where these evidentiary issues were

1

discussed.[1] On July 12, 2021, in response to the defense's specific inquires relating to discovery, the government suggested that the parties meet in person to discuss any discovery issues after the defense had completed its review of discovery provided. (Doc. 85 at PageID 897 (Def. Ex. E).)

On August 31, 2021, the government met with defense counsel at the United States Attorney's Office. During that meeting, among other things, the defense asked about agent interviews of developers and donors to determine whether their interactions with the Defendant were exculpatory. In response, the government summarized broadly the information from developers and donors who were interviewed. In doing so, the government explained that the interviews were in fact inculpatory, and some of the evidence could be admissible as prior acts under Federal Rule of Criminal Procedure 404(b). Consistent with its obligations under that Rule, the government told defense counsel it would provide notice of such evidence prior to trial.

On September 23, 2021, the government again met in person with defense counsel for approximately two hours and provided detailed summaries of agent interviews of seven individuals, all of whom regularly conducted business with the city or had active business pending before the city at the times they interacted with the Defendant. The government did not provide the names of these individuals but provided their general background and described their interactions with the Defendant. As the government explained, those individuals told the FBI, in part: the Defendant was heavy-handed and inappropriate in his solicitation of contributions; a businessperson felt compelled to contribute because the Defendant could make life miserable as the next mayor; the Defendant communicated a subtle message of extortion in soliciting

---

[1] The Defendant's motion omitted the government's June 3, 2021 response to defense counsel emails in early June 2021, in which the government repeated that it would provide Jencks Act and impeachment materials in advance of trial but that the office has an obligation to protect the rights of third parties and potential witnesses, among other things.

2

contributions; a businessperson did not want to contribute to the Defendant but did so because the Defendant indicated he was going to be the next mayor; a businessperson with business before the city was taken aback by how blunt and upfront the Defendant was during a meeting in which the Defendant solicited contributions; the Defendant suggested he would not support a businessperson's project unless the businessperson supported a private third-party entity aligned with the Defendant; and the Defendant threatened to withhold his vote for a project unless the businessperson contributed a substantial amount of money to a private third-party entity aligned with the Defendant. The government also stated at the meeting that it would separately provide written notice of any Rule 404(b) evidence before trial.

The defense did not raise any discovery issues again until defense counsel's email on February 16, 2022. (Doc. 85 at PageID 898 (Def. Ex. F).) In that email, the defense referenced its correspondence in June 2021 and stated their belief that agents had interviewed individuals who told agents the Defendant "was not crooked, was always ethical, and provided statements to the government that is favorable to PG." (*Id.*) In response, the government indicated its belief that the parties had resolved the issue based on the meetings with defense counsel and that the government had already summarized the relevant interviews of donors and developers during the meeting in September 2021.[2] (*Id*. at PageID 900 (Def. Ex. G).)

Nevertheless, while disagreeing that the interviews contain the type of information sought by the defense, in later correspondence the government agreed to produce its Rule 404(b) notice

---

[2] As set forth in the Defendant's motion, the government also asked for additional information from the defense about the inquiry, (*id*. at PageID 900 (Def. Ex. G)), not as a means to shift an obligation as the Defendant suggests, but rather to determine whether the parties could reach some resolution with what appeared to be conflicting information.

3

and other disclosures on April 20, 2020—60 days before trial. (*Id*. at PageID 902 (Def. Ex. I).) The defense then filed the instant motion.

## II. APPLICABLE LAW

The government set forth the applicable law in response to the Defendant's first motion to compel and will not belabor it here. (Doc. 55 at PageID 543–46.) As this Court is well aware, *Brady* material is information favorable to a criminal defendant that is material to guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Kyles v Whitley*, 514 U.S. 419, 432 (1995). *Giglio* material is impeachment information relating to a witness's credibility. *See United States v. Giglio*, 405 U.S. 150, 154 (1972). Jencks material is prior "statements"—signed or adopted written statements or verbatim transcriptions of oral statements—of testifying witnesses relating to the subject matter of their testimony. *See* 18 U.S.C. § 3500; *United States v. Short*, 671 F.2d 178, 185 (6th Cir. 1982); *United States v. Padin*, 787 F.2d 1071, 1077–78 (6th Cir. 1986). The Jencks Act governs the timing of witness statements that contain exculpatory or impeachment *Brady* material. *See United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988); *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002).

Further, the Due Process Protections Act ("DPPA") emphasizes the importance of the government's disclosure obligations but does not substantively change them.[3] *See United States v. Ryan*, No. CR 20-65, 2021 WL 795980, at *2–3 (E.D. La. Mar. 2, 2021) (the DPPA "does not purport to alter the government's substantive obligations"); *United States v. Wilson*, No. 1:19-CR-00155, 2021 WL 480853, at *3 n.3 (W.D.N.Y. Feb. 10, 2021) (the DPPA "did not change the substance of those [*Brady*] obligations"); *see also Mansfield v. Williamson Cty*., No. 20-50331, --

---

[3] *See* Due Process Protections Act, Public Law No. 116-182 (Oct. 21, 2020) (titled, "An Act To amend the Federal Rules of Criminal Procedure to remind prosecutors of their obligations under Supreme Court case law.").

4

- F.4th ----, 2022 WL 970553, at *3–4 (5th Cir. Mar. 31, 2022) (applying the circuit's prior precedent in resolving *Brady* allegations post DPPA); *United States v. Bibbs*, No. 3:19-CR-151, 2021 WL 2383326, at *3 (E.D. Tenn. June 10, 2021) (post DPPA, applying *Presser* in denying motion to compel pretrial discovery of *Brady* and *Giglio* material because disclosure was subject to Jencks Act).

### III. ARGUMENT

In his motion, the Defendant asks the Court to compel disclosure of three types of information: reports from agent interviews; information relating to the costs of the undercover operation; and text messages among agents and cooperating witnesses.

**A. Reports from Agent Interviews**

The Defendant's request for agent reports summarizing interviews should be denied.

*First*, the government is not obligated to disclose the agent reports at this time because they are written statements of the *agent* subject to the Jencks Act. *United States v. Nathan*, 816 F.2d 230, 237–38 (6th Cir. 1987) (agent reports of witness interviews may be statements of the agent); *cf. United States v. Garrison*, 839 F. App'x 968, 979 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2866 (2021) ("Reports written by government agents summarizing prior witness statements do not qualify as Jencks Act material unless they are 'signed or otherwise adopted or approved by [the witness].'"). Even if the witness statements contain exculpatory or impeachment *Brady* material, the Jencks Act governs the timing of the government's disclosure, and the government may not be compelled to produce the statements prior to trial. *Davis*, 306 F.3d at 421; *Presser*, 844 F.2d at 1283; *see also United States v. Fletcher*, 295 F. App'x 749, 753–54 (6th Cir. 2008) (the Jencks Act governs witness statements that are "impeachment material" and "material exculpatory evidence possessed by the government"); *United States v. Flores*, No. 15-cr-20142, 2015 WL

5

13687396, at *3 (W.D. Tenn. Nov. 18, 2015) ("Where witness statements sought by a defendant are exculpatory and thus covered by both *Brady* and the Jencks Act, 'the terms of [the Jencks] Act govern the timing of the government's disclosure.'" (quoting *United States v. Bencs*, 28 F.3d 555, 561 (6th Cir. 1994)); *United States v. McPherson*, 1:07-cr-259, 2008 WL 922290, at *2 (W.D. Mich. Apr. 1, 2008) (same, citing *Davis* and *Presser*)). Nothing in the DPPA changed this.

*Second*, the government summarized reports from the relevant interviews of "developers and donors," which showed to defense counsel that the information provided to agents was inculpatory, not exculpatory.

Yet, even if the interviews were not inculpatory, that does not make them exculpatory here. In bribery cases, courts have excluded evidence of other innocent or innocuous non-bribery-related interactions as irrelevant to bribery charges. *See United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014) (affirming exclusion of evidence that defendant "did favors for people who did not pay him bribes" as irrelevant to the bribery charges at issue); *United States v. Dawkins*, 999 F.3d 767, 792–93 (2d Cir. 2021) (district court properly excluded defense evidence indicating the defendant did not attempt to bribe others); *United States v. Chambers*, 800 F. App'x 43, 46 (2d Cir. 2020) (affirming exclusion of evidence that defendant ran "legitimate law practice" to show he was less likely to have corrupt intent to bribe); *United States v. Fattah*, 914 F.3d 112, 175–76 (3d Cir. 2019) (district court properly excluded non-bribery payments in bribery trial).[4] In other words, that the Defendant did not want to—or need to—solicit or accept a bribe from others is irrelevant to whether he solicited and accepted a bribe here.

---

[4] Conversely, courts have found prior corrupt acts are admissible as relevant to specific intent in bribery cases. *See, e.g.*, *United States v. Harrold*, 1989 WL 34821, at *2, 872 F.2d 1029 (6th Cir. 1989) (table); *United States v. Reichberg*, 5 F.4th 233, 241–42 (2d Cir. 2021); *United States v. Repak*, 852 F.3d 230, 241–46 (3d Cir. 2017); *United States v. McNair*, 605 F.3d 1152, 1203–04 (11th Cir. 2010).

6

*Finally*, in any event, the government is turning over the agent reports of interviews of developers and donors on April 20, 2022, as indicated in the government's email to defense counsel. The government is disclosing this material 60 days before trial despite no obligation to do so. The defense's request should be denied.

### B. Cost of Undercover Investigation

Next, the Defendant seeks information relating to the costs of the undercover investigation. Despite claims to the contrary in this motion, the Defendant moved to compel this same information in his prior motion. (Doc. 48 at PageID 419 (requesting information regarding "costs and expenditures relating to this undercover operation")). The government responded, arguing the information is irrelevant and an invitation to jury nullification. (Doc. 55 at PageID 553–54.) The government incorporates that response here. This request should be denied for the reasons in the government's first response and the additional reasons set forth below.

The Defendant's attempts to make the investigative costs discoverable are meritless. In this motion, the Defendant claims the cost of the undercover operation is relevant to "motivations and bias." (Doc. 84 at PageID 864.) Yet, no witness is impeached by such information. For example, the defendant claims the cost of the investigation will show "the "government's motivation to indict because the costs associated with each undercover operation must be justified." (*Id.* at PageID 865.) But, aside from the fact there is *no evidence* supporting this inflammatory claim, agents do not decide to seek an indictment, the United States Attorney's office does.[5] This evidence does not impeach any witness; rather, it supports a jury nullification

---

[5] The Defendant concludes, "Budgets for the next sting are driven by the appearance of success in the past sting. More indictments means [*sic*] more money; more money means a continued lavish lifestyle for the government's undercover agents." (Doc. 84 at PageID 863.) The Defendant provides no support for this statement. Nor could he—because it is wrong.

7

argument as set forth in the government's response to the Defendant's first motion to compel. (Doc. 55 at PageID 553–54.)

The Defendant next argues that cost of the investigation is relevant to the manner in which agents investigated the case, such as how they drafted reports and took investigative steps. (Doc. 84 at PageID 865.) But this is a conclusion based on multiple assumptions—again, without any evidence in support. This attempted "fishing expedition" also is insufficient for ordering discovery. *United States v. Warren*, 782 F. App'x 466, 472 (6th Cir. 2019) (rejecting attempt at a "fishing expedition in the hope of finding exculpatory information"); *United States v. Faller*, 1:13CR-00029, 2014 WL 12691595, at *5 (W.D. Ky. May 29, 2014) (denying discovery because defendant "failed to demonstrate a 'particularized need' for specific *Brady* material").

The Defendant further claims that, because the government has not produced information relating to the cost of the investigation, the case is "vulnerable to being declared a mistrial at the district or appellate level." (Doc. 84 at PageID 865.) In support, the Defendant cites absolutely *nothing*—not a single district court or appellate case. Rather, denial of this discovery request is a proper application of this Court's discretion. *See United States v. White*, 563 F.3d 184, 190–91 (6th Cir. 2009) (discovery rulings and evidentiary rulings are reviewed for abuse of discretion).[6]

At bottom, the costs spent investigating corruption in Ohio simply are not material to guilt or innocence in this case. *See United States v. Anderson*, 31 F. Supp. 2d 933, 942 (D. Kan. 1998) (rejecting motion for disclosure of investigative costs); *United States v. Rosga*, No. 3:10CR170, 2010 WL 4963033, at *2 (E.D. Va. Nov. 30, 2010) (same). The Defendant continues to ignore

---

[6] The Defendant cites a "single receipt" produced in discovery to support his claim. (Doc. 84 at PageID 865.) But, unlike evidence relating to the costs of the investigation broadly, that receipt showed the value of an expensive gift the Defendant accepted from undercover agents during a meeting in which they discussed the Defendant's help with the development project at issue.

that this case turns not on agent credibility or investigative steps but on recorded conversations involving the Defendant's own statements. *See United States v. Burnette*, No. 4:18CR76, 2021 WL 5987025, at *11 (N.D. Fla. Dec. 18, 2021) (indicating counts of conviction involving bribery did not turn on the undercover agent's credibility because these counts were "proven by overwhelming evidence in the form of canceled checks and recordings of [the defendant's] own unambiguous statement").[7]

Finally, it bears mentioning that although not entirely clear from the Defendant's motion, by challenging the "government's motivations" to indict he could be seeking this information in furtherance of some brand of selective prosecution claim—a serious allegation of misconduct—without any evidence in support. (Doc. 84 at PageID 864.) If the Defendant is seeking cost and expenditure information for that purpose, his request also should be denied. First, he has failed to make the requisite showing of clear evidence of discriminatory purpose and effect. *See United States v. Merriweather*, 728 F. App'x 498, 508 (6th Cir. 2018) (to obtain discovery to support selective prosecution claim, defendant must make preliminary showing of "'clear evidence' that the prosecutor's policy had both a discriminatory purpose and effect.") (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). Second, a selective prosecution argument is not a proper

---

[7] *Burnette* is the Florida case criticized in the Defendant's motion. (*See* Doc. 84 at PageID 863.) In that case, John Thomas Burnette was found guilty after a jury trial of five counts of bribery, and two other defendants plead guilty to bribery-related offenses following an extensive corruption investigation by undercover agents. Although the Defendant challenges the propriety of using taxpayer dollars for corruption investigations, courts recognize the importance of public corruption prosecutions. *See, e.g.*, *United States v. Fattah*, 813 F. App'x 808, 813 (3d Cir. 2020) (defendant's "flagrant conduct undermines the confidence of the citizenry in the integrity of all public institutions and public officials. This cynicism saps the strength of [ ] our democracy."); *see also* Theodore Roosevelt, *Third Annual Message to the Senate and House of Representatives* (Dec. 7, 1903) ("There can be no crime more serious than bribery. Other offenses violate one law while corruption strikes at the foundation of all law.").

jury argument—and the Court should reject any attempt to gain and use such information under the guise of impeachment information.

### C. Text Messages Among Agents and Cooperating Witnesses

In conclusory fashion, without citation to any authority, the Defendant seeks production of text messages among agents and cooperating witnesses. (Doc. 84 at PageID 866.) The Defendant claims—also without explanation, and without having seen the communications—that these messages "negate the guilt" of the Defendant and are relevant to the credibility of the government investigation and witnesses. (*Id*. at PageID 870.)

Messages between agents and cooperating witnesses constitute Jencks Act material.[8] *See United States v. Losch*, No. CR-19-00294-001, 2019 WL 6524874, at *2 (D. Ariz. Dec. 4, 2019) (messages between agents were subject to Jencks Act disclosure); *cf. United States v. Alvarez*, 561 F. App'x 375, 387 (5th Cir. 2014) (agent emails discussing witnesses are not discoverable). Thus, like the agent reports described above, the government will be producing this material as Jencks Act disclosures prior to trial. *See Presser*, 844 F.2d at 1283; *see also United States v. Nixon*, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial").

### D. The Defendant's Remaining Arguments Have No Merit

Rather than address this Circuit's case law governing this area, the Defendant essentially argues the law should be ignored. For example, he claims that the government "erroneously

---

[8] The Defendant incorrectly states that the government produced no text messages between agents or other government actors and potential witnesses, and the messages with the Defendant were only provided upon request from the defense. (Doc. 85 at PageID 885.) The government's initial productions from December 2021 contained linesheets that included text messages between undercover agents and the Defendant, and subsequent productions included messages involving undercover agents and other potential witnesses, produced on a rolling basis.

10

cling[s] to historical notions of its *Brady* disclosure responsibilities." (Doc. 84 at PageID 867.) But the "historical" case law cited by the government above and throughout this litigation—*e.g., Presser*, *Davis*, *Short*—remains binding precedent. *See Bibbs*, 2021 WL 2383326, at *3 (applying pre-DPPA precedent); *Mansfield*, --- F.4th ----, 2022 WL 970553, at *3–4 (same); *Ryan*, 2021 WL 795980, at *2 (DPPA did not "alter the government's substantive obligations under governing law"); *Wilson*, 2021 WL 480853, at *3 (same).

The Defendant also argues that "traditional justifications" regarding disclosure are not applicable here because the Defendant is not a terrorist, member of a drug cartel, or violent criminal. (Doc. 84 at PageID 868.) But the government's disclosure obligations are the same regardless of the charge—there are no special disclosure rules for white-collar defendants.

The government's obligation to protect witnesses exists whether the defendant is violent or not. In corruption cases specifically, witnesses are often reluctant to speak to agents out of fear that cooperation against a current or former public official will ultimately harm their business, their reputation, or their relationships with other government officials. Commonly, potential witnesses tell the government that they have relevant information but ask to remain anonymous. The government thus has an obligation to protect those with the courage to come forward; and the governing law is, at least partially, set up for that very purpose. *See Presser*, 844 F.2d at 1285 ("[P]roviding the defense with such a broad right of pre-trial discovery would vitiate an important function of the Jencks Act, the protection of potential government witnesses from threats of harm or other intimidation before the witnesses testify at trial."); *United States v. Coppa*, 267 F.3d 132, 138–39 (2d Cir. 2001) (recognizing "justifiable concerns regarding the risk of witness tampering in circumstances where there is no evidence that the life or safety of a prospective witness is in danger.").

In his motion, the Defendant also announces that "[a]side from the government's allegations which are the result of a scripted sting, the government has not one criminal act that supports its contention that Mr. Sittenfeld is corrupt." (Doc. 84 at 869.) Based on this, the Defendant contends that any interview conducted by the FBI where the interviewee did not accuse the Defendant of wrongdoing is *Brady*. But the government is not endeavoring—and does not have the burden—to prove that the Defendant's *character* is corrupt.[9] The government instead must prove that the Defendant acted with corrupt intent on the days outlined in the indictment. Because this is not a trial of the Defendant's character, interviews where someone fails to describe a crime committed by the Defendant are not *Brady* material, in the same way that testimony of bank tellers not robbed by a defendant is not exculpatory to his charge of robbing a specific bank on a specific day. *See Dawkins*, 999 F.3d at 792.

Finally, without explanation, the Defendant asks the Court to order the government to provide its witness list, exhibit list, and witness statements now, over 60 days before trial. (Doc. 84 at PageID 870.) This argument is entirely undeveloped. It is also inconsistent with the law. *See United States v. Tucker*, No. 20-CR-731, 2021 WL 5206560, at *2 (N.D. Ohio Nov. 9, 2021) ("[T]he Government correctly asserts that it is under no obligation to disclose witness lists or exhibit lists to Defendant prior to trial.") (citing *United States v. Prince*, 618 F.3d 551, 562 (6th Cir. 2010)); *Presser*, 844 F.2d at 1283 (Jencks Act governs timing of witness statements). This request for relief should be denied.

---

[9] Federal Rule of Evidence 404 specifically forbids the admission of evidence of a defendant's character and circumscribes the admissibility of evidence of a defendant's prior crimes, wrongs, and acts. While *Brady* material is not limited to admissible evidence, this Rule embodies the principle that a defendant's character cannot properly be adjudicated at trial.

12

IV.     **CONCLUSION**

For these reasons, the Government requests that the Court deny the Defendant's second motion to compel.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney


*s/ Matthew C. Singer*
MATTHEW C. SINGER (IL 6297632)
EMILY N. GLATFELTER (0075576)
MEGAN GAFFNEY PAINTER (NY 4849220)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
Email: Matthew.Singer@usdoj.gov
Email: Emily.Glatfelter@usdoj.gov
Email: Megan.Painter@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed with the Court's CM/ECF System this 12th day of April 2022, which provides electronic notice to all parties.

*s/ Matthew C. Singer*
MATTHEW C. SINGER (IL 6297632)
Assistant United States Attorney
