# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**Case No. 1:20-cr-142**
**JUDGE DOUGLAS R. COLE**

**ALEXANDER SITTENFELD,**

    Defendant.

## OPINION AND ORDER

This cause comes before the Court on Defendant Alexander Sittenfeld's First and Second Motions to Compel Discovery (the "Motions," Docs. 48, 84).[1] For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** both Motions (Docs. 48, 84). The government shall provide Sittenfeld all *Brady* and *Giglio* material at least forty-five (45) days before trial. But Sittenfeld is not entitled to discovery concerning the costs or internal policies of the law enforcement investigation.

## THE INSTANT MOTIONS[2]

Sittenfeld is a former Cincinnati City Council member. On November 18, 2020, the government indicted Sittenfeld on charges of honest services wire fraud, bribery, and attempted extortion in connection with the Council's approval of a real estate

---

[1] In addition to these two Motions, the Court also notes a pending Motion to Prevent the Government from Filing *Ex Parte* Memoranda. (Doc. 91). That Motion is not yet fully briefed, and the Court accordingly does not address it at this time.

[2] The Court has already extensively summarized the factual and procedural background of this case in its March 1, 2021, Opinion and Order (Doc. 53) denying Sittenfeld's Amended Motion to Dismiss (Doc. 25). Accordingly, the Court limits its background discussion here to the discovery issues raised in the instant Motions.

development project. (*See* Doc. 3). On December 23, 2020, Sittenfeld moved to dismiss (Doc. 24) the Indictment (Doc. 3). He filed an Amended Motion to Dismiss (Doc. 25) on December 23, 2021. The Court denied those Motions in its March 1, 2021, Opinion and Order (Doc. 53). Trial in this matter is currently scheduled to begin on June 20, 2022. (*See* 9/7/21 Notation Order).

On February 10, 2021, Sittenfeld filed his First Motion to Compel (Doc. 48). Sittenfeld sought an Order from this Court compelling discovery of eleven categories of items, most related to a cooperating witness's role in the federal law enforcement investigation that led to Sittenfeld's Indictment (Doc. 3). (*See* Mot., Doc. 48, #370–71). More specifically, Sittenfeld sought

> all information regarding the undercover agents, their supervision and instruction to [the cooperating witness]; all information regarding times when [the cooperating witness] violated his instructions from his FBI handlers, including not recording calls; full and complete records of all statements by [the cooperating witness] about Mr. Sittenfeld, including all statements that were not recorded; all information related to inducements, threats, agreements, and consideration for [the cooperating witness]; information related to [the cooperating witness's] criminal record, including the sexual assault allegations; the Government's witness list; costs and expenditures related to this undercover operation; information related to how the [undercover officers] spent and used money, including the penthouse and entertainment with females; current DOJ and FBI policies, procedures and instructions related to [the cooperating witness] and this operation; statements and communications from government agents made to the media, regardless of whether the statements were made public; and all recordings related to [the real estate development project, the cooperating witness,] and Mr. Sittenfeld in the Government's possession.

(*Id.*). Sittenfeld argued that all this constitutes exculpatory and impeachment evidence whose disclosure is required under *Brady v. Maryland*, 373 U.S. 83 (1963),

2

*Giglio v. United States*, 405 U.S. 150 (1972), the Due Process Protections Act ("DPPA"), and Federal Rule of Criminal Procedure 16. (*See id.* at #363–67). Sittenfeld requested "immediate disclosure" of such material. (*Id.* at #368).

The government responded in opposition (Doc. 55) on March 3, 2021. The government schematized Sittenfeld's requests into three general categories, none of which, the government argued, justifies an order to compel discovery. First, there is discovery that the government had already produced or agreed to produce. (Resp. in Opp'n to First Mot. ("First Opp'n"), Doc. 55, #548). Second, there is non-exculpatory *Giglio* and Jencks Act material relevant to impeachment of the government's witnesses that the government at that time intended to produce "shortly before trial."[3] (*Id.* at #547, 549). The third category is comprised of items that are not discoverable because they would not lead to material evidence. (*See generally id.* at #551–55).

More specifically, the government first said that the following items were not discoverable because they were not likely to lead to material evidence: "all information regarding the undercover agents, their supervision and instruction to [the cooperating witness]" (*id.* at #551–52); "costs and expenditures related to this undercover operation" (*id.* at #553–54); "information related to how the [undercover officers] spent and used money, including the penthouse and entertainment with females" (*id.* at #553–54); "current DOJ and FBI policies, procedures, and

---

[3] At a June 4, 2021, telephonic status conference, the government clarified that it intended to produce this material thirty (30) days before trial, while Sittenfeld's position was that he needed it ninety (90) days before trial. (*See* 6/4/21 Minute Entry).

3

instructions related to [the cooperating witness] and this operation" (*id.* at #554–55); and "statements and communications from government agents made to the media, regardless of whether the statements were made public" (*id.* at #555).

Second, the government represented that it had already produced or agreed to produce the following items: "all information regarding times when [the cooperating witness] violated instructions from his FBI handlers, including not recording calls" (*id.* at #552); "full and complete records of all statements by [the cooperating witness] about Mr. Sittenfeld, including all statements that were not recorded" (*id.* at #552); and "all recordings related to [the real estate development project, the cooperating witness,] and Mr. Sittenfeld in the Government's possession" (*id.* at #556).

Third, into the category of materials that the government would produce "shortly before trial" fell "the government's witness list" (*id.* at #552–53); "all information related to inducements, threats, agreements, and consideration for [the cooperating witness]" (*id.* at #556); and "information related to [the cooperating witness's] criminal record, including the sexual assault allegations" (*id.* at #557).

In his Reply (Doc. 60), Sittenfeld did not respond to the government's arguments that certain items of his requested discovery were categorically inappropriate. Instead, Sittenfeld objected generally to the government's proposed timing for disclosure of discovery. (*See* Reply in Supp. of First Mot. ("First Reply"), Doc. 60, #672). Sittenfeld's argument was that the language of this Court's DPPA Order (Doc. 9, #52), requiring disclosure of *Brady* material "in a timely manner,"

4

should be interpreted to mean disclosure must occur as soon as possible. (First Reply, Doc. 60, #672).

On March 31, 2022, Sittenfeld filed his Second Motion to Compel Discovery (Doc. 84). In that Motion, Sittenfeld identified three categories of discovery he sought to compel. (In the Court's view, these categories overlap substantially with the discovery sought in Sittenfeld's First Motion to Compel.) First, Sittenfeld seeks information from the government concerning law enforcement investigative interviews with individuals who allegedly did not "say anything negative" about Sittenfeld. (Second Mot. to Compel ("Second Mot."), Doc. 84, #859). Second, Sittenfeld seeks "information related to the cost of the undercover operation and expenditures of its agents during the undercover operation." (*Id.* at #863). Third, Sittenfeld asks for "exculpatory texts between and among agents as well as texts between and among agents and cooperating witnesses." (*Id.* at #866).

In response (Doc. 87), the government stated that it would turn over all evidence in the first category on April 20, 2022. (*See* Resp. in Opp'n to Second Mot. ("Second Opp'n"), Doc. 87, #932). The government characterized the third category of discovery as Jencks Act material that it will provide "prior to trial." (*See id.* at #935). As for the second category, evidence concerning the costs of the undercover investigation, the government argues that such material is not subject to discovery because it is irrelevant and would invite jury nullification. (*See id.* at #932).

In his Reply (Doc. 88) in Support of his Second Motion to Compel, Sittenfeld again argues that the DPPA changed the government's discovery obligations such

5

that Sittenfeld is now entitled to his requested discovery prior to the deadline for pretrial motions. (*Id.* at #940–41).

The matter is now fully briefed and before the Court.

## LAW AND ANALYSIS

The general framework that applies to required disclosure of exculpatory and impeachment evidence in criminal cases is well-established. In most criminal cases, "the *Brady* rule, [Federal Rule of Criminal Procedure 16,] and the Jencks Act exhaust the universe of discovery to which the defendant is entitled." *United States v. Presser*, 844 F.2d 1275, 1285 n.12 (6th Cir. 1988). *Brady* requires disclosure of evidence that is favorable to a criminal defendant and is "material either to guilt or to punishment." 373 U.S. at 87. *Giglio* held that this includes impeachment evidence where the witness's reliability "may well be determinative of guilt or innocence." 405 U.S. at 153–54.

With respect to the timing of disclosure, the Sixth Circuit has held that there is no constitutional violation so long as the defense receives the material in time to use it effectively at trial. *Presser*, 844 F.2d at 1283. Federal Rule of Criminal Procedure 16(a) requires the government to disclose specific items of evidence including the defendant's oral, written, or recorded statements, the defendant's prior criminal record, objects obtained from the defendant or material to the defense, reports of physical or mental examinations or tests, and summaries of expert testimony. The Jencks Act applies to statements of witnesses who testify at trial that are related to the witness's testimony and in the government's possession. *See* 18

U.S.C. § 3500(b). The government must provide such statements to the defendant, but is not required to do so until after the witness has testified. *Id*. The DPPA amends Federal Rule of Criminal Procedure 5 to require courts to "issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor" under *Brady*. PL 116-182, Oct. 21, 2020, 134 Stat. 894.

Here, the parties' dispute is partly about the timing of required disclosure. On that score, the Court first rejects Sittenfeld's argument that the Court's DPPA Order (Doc. 9) requires the government to make required disclosures either "as soon as possible" or before the motions deadline, rather than in time for use at trial in accordance with longstanding case law. (*See* First Reply, Doc. 60, #672; Second Reply, Doc. 88, #941). Sittenfeld apparently gathers such a requirement from the Court's use of the phrase "in a timely manner." (*See* DPPA Order, Doc. 9, #52). Sittenfeld argues that the phrase "in a timely manner" must be interpreted to mean "as soon as possible" because the DPPA Order's subsequent list of pre-trial and trial remedies for failure to disclose evidence "is an implicit acknowledgment that the historical *Brady* disclosure timetable," which, according to Sittenfeld, included only appellate remedies for *Brady* violations, "is no longer applicable." (First Reply, Doc. 60, #671–72).

But the phrase "in a timely manner" does not mean "as soon as possible." Instead, the meaning of "in a timely manner" is notably consistent with the longstanding requirement that the government disclose *Brady* and *Giglio* material "in time for use at trial." *See Presser*, 844 F.2d at 1283. Moreover, even if there were

7

any merit to Sittenfeld's interpretation of those words in a vacuum, which there is not, the Court doubts that a phrase employed in a standard order "confirm[ing]" the government's discovery obligations could affect the substance of those obligations. (*See* DPPA Order, Doc. 9, #52). This is especially so where the DPPA itself only requires the court to issue an order "confirm[ing]" the prosecutor's *Brady* obligations, rather than effecting any substantive change to those obligations. *See* PL 116-182, Oct. 21, 2020, 134 Stat. 894. Sittenfeld is also wrong that only appellate remedies for *Brady* violations were available prior to the DPPA. *See, e.g., Presser*, 844 F.2d at 1286 ("the remedy for a *Brady* violation is a new trial"); *United States v. Chapman*, 524 F.3d 1073, 1083 (9th Cir. 2008) (affirming district court declaration of mistrial as remedy for *Brady* and *Giglio* violations); *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 255 (3d Cir. 2005) (dismissal with prejudice may be remedy for willful *Brady* violation). Accordingly, even the initial premise of Sittenfeld's argument is flawed.

For these reasons, the Court is confident that pre-DPPA case law remains fully applicable to the determination of the timing of government disclosure in this case. And, as Sittenfeld apparently concedes (*see* First Reply, Doc. 60, #669), this case law only requires disclosure "in time for use at trial." *See Presser*, 844 F.2d at 1283. On that score, the Court considers that forty-five (45) days is more than enough time to ensure that Sittenfeld has an adequate opportunity to prepare his defense. *See United States v. Louis Trauth Dairy, Inc.*, No. CR-1-94-52, 1994 WL 876372, at *1–2 (S.D. Ohio Sept. 12, 1994) (ordering discovery of *Brady* material forty-five days before trial in "extremely complex" case). Thus, and perhaps in an abundance of caution, the

Court **GRANTS IN PART** Sittenfeld's Motions (Docs. 48, 84) to the extent of requiring the government to provide all *Brady* and *Giglio* material by forty-five (45) days before trial begins in this matter.

However, the Court notes the government's representation that it would provide the agent interview reports at issue in the Second Motion to Compel on April 20, 2022, which was more than 60 days before trial. (Second Opp'n, Doc. 87, #932). Likewise, the government may well have already provided the other materials whose discovery it did not oppose in response to Sittenfeld's First Motion to Compel. In that case, the Court's ruling on this score may well be moot.

Turning now to the substance of the government's discovery obligations, the parties' remaining categorical disputes about which material is appropriate for discovery revolve around Sittenfeld's broad requests for information concerning the law enforcement investigation that led to his Indictment. That information includes "all information regarding the undercover agents, their supervision and instruction to [the cooperating witness];" "costs and expenditures related to this undercover operation;" "information related to how the [undercover officers] spent and used money, including the penthouse and entertainment with females;" "current DOJ and FBI policies, procedures, and instructions related to [the cooperating witness] and this operation;" "statements and communications from government agents made to the media, regardless of whether the statements were made public;" and "information related to the cost of the undercover operation and expenditures of its agents during the undercover operation." (First Mot., Doc. 48, #370–71; Second Mot., Doc. 84, #863).

9

The government argues that it should not be compelled to turn over such material. The Court agrees. Courts have routinely denied sweeping requests for broad categories of information about law enforcement investigations in the mere hope of finding some basis to cast doubt on the government's actions. *See United States v. Mendez-Aguirre*, 666 F. App'x 448, 451 (6th Cir. 2016) (upholding denial of request for information about "fast-track" policies for prosecuting immigrants for illegal reentry); *United States v. Rosga*, Criminal No. 3:10CR170—HEH, 2010 WL 4963033, at *2 (E.D. Va. Nov. 30, 2010) ("Allowing evidence of the cost of the investigation … would create a significant diversion of the jury's attention in a trial projected to last approximately two weeks."); *United States v. Anderson*, 31 F. Supp. 2d 933, 942 (D. Kan. 1998) (rejecting argument that "the excessive cost of the investigation is exculpatory and material because it shows how the FBI agents and prosecutors are biased in that they need to prosecute in order to justify the excessive cost"); *United States v. Hamzeh*, Case No. 16-cr-21-pp, 2018 WL 2754079, at *3–5 (E.D. Wis. June 8, 2018) (denying request for FBI policy manuals and rejecting defendant's argument that "whether the agents complied with their own policies is relevant" to defendant's guilt); *United States v. Reese*, No. 1:09 CR 00145, 2010 WL 2606280, at *20–21 (N.D. Ohio June 25, 2010) ("There is no assertion from [defendants] that ATF policies and procedures, what they were and whether or not they were adhered to, had material bearing on their individual guilt or innocence."); *United States v. Pickard*, 787 F. Supp. 155, 159–60 (S.D. Ind. 1992) ("internal guidelines on the conduct of investigations" not material to guilt absent particularized showing).

Sittenfeld cites no contrary authority. Instead, Sittenfeld asserts generally that "the evidence regarding the integrity of the undercover investigation … is relevant to the bias and motivation of the government actors and the credibility of the government's witnesses." (Second Mot., Doc. 84, #870). This is precisely the sort of general public policy argument that courts have considered too conclusory and speculative to substantiate the materiality of evidence for *Brady* purposes. *See also United States v. Faller*, CRIMINAL ACTION NO. 1:13CR-00029-JHM, 2014 WL 12691595, at *5 (W.D. Ky. May 29, 2014) ("Without a showing of a particularized need for certain information, the *Brady* rule is not intended to be used as a fishing expedition for material that may help [defendant] in preparation of his trial or other general reasons.") (internal quotation marks omitted). Moreover, introduction of such evidence would risk confusing and distracting the jury, as the government in fairness would have to be allowed to point more broadly to the fruits of its investigative efforts as justification for their costs, further removing the focus of trial from the merits of the government's case against Sittenfeld. *Cf. Rosga*, 2010 WL 4963033, at *2.

To be sure, Sittenfeld may understandably desire to cross-examine government witnesses regarding such information, and the Court does not rule out the possibility that some degree of questioning along these lines would be permissible, albeit with the reservations expressed above. But saying, for example, that Sittenfeld may cross examine officers about the extent to which they benefitted from the money spent on the investigation, an issue the Court need not, and does not, address at this time, is different from saying that *Brady* entitles Sittenfeld to discovery to aid him in

11

developing such cross examinations. It does not. Accordingly, the Court **DENIES** Sittenfeld's Motions (Docs. 48, 84) insofar as they seek broad categories of information about the law enforcement investigation such as its costs and internal policies.

## CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Sittenfeld's Motions to Compel Discovery (Doc. 48, 84). The government shall provide Sittenfeld all *Brady* and *Giglio* material at least forty-five (45) days before trial. But Sittenfeld is not entitled to discovery concerning the costs or internal policies of the law enforcement investigation.

**SO ORDERED.**

April 29, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**