UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 20-CR-142 |
| | : | |
| | : | JUDGE DOUGLAS R. COLE |
| v. | : | |
| | : | **MOTION TO PRECLUDE** |
| | : | **TESTIMONY** |
| ALEXANDER SITTENFELD, | : | |
| a/k/a "P.G. Sittenfeld," | : | |
| | : | |
| Defendant. | : | |

The United States submits this motion to exclude the purported expert testimony of defense witnesses Caleb P. Burns and Edward FitzGerald. For the reasons outlined, the defense should be precluded from calling Burns and FitzGerald to testify at trial based on the disclosures provided. In the alternative, this Court should order the defendant to comply with Fed. R. Crim. P. 16 by providing sufficient disclosures, allow the United States to contest the admissibility of the purported testimony through pretrial motions after such disclosures, if necessary, and order a hearing to explore the credentials of the witnesses and the relevancy and reliability of their proposed opinions.

## BACKGROUND

A grand jury charged the defendant with two counts each of honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346 (Counts 1 and 2); bribery concerning federal programs, in violations of 18 U.S.C. § 666(a)(1)(B) (Counts 3 and 5); and attempted extortion under color of official right, in violation of 18 U.S.C. §

1

1951 (Counts 4 and 6). The defendant has pleaded not guilty and trial is scheduled to commence on June 20, 2022.

The central question at trial will be the defendant's intent when he agreed to accept money in the form of campaign contributions from undercover agents posing as developers with business before city council. There will be no dispute that he agreed to take money, and later accepted the money—for he did so on tape. The jury will hear and see the defendant's recorded interactions with the undercover agents. The jury may also hear evidence about the defendant's interactions with others. The jury will then evaluate his intent by assessing his words, actions, and surrounding facts by applying their common sense and everyday experience, consistent with the Court's anticipated instructions. *See* Sixth Cir. Pattern Instr. 1.05.

## PROFFERED EXPERT TESTIMONY

In a December 3, 2020 letter to defense counsel, the government requested, pursuant to Fed. R. Crim. P. 16(b)(1), "[a] written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence. The summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Similarly, on December 9, 2020, defense counsel requested from the government in a discovery letter, "a written summary of testimony the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial. The summary should describe the witnesses' opinions, and the bases and reasons for those opinions, and the witnesses' qualifications."

On Friday, May 6, 2022, at approximately 4 p.m., after the defendant had filed his proposed jury instructions earlier that day, which failed to request Sixth Pattern Instruction 7.03 (Opinion Testimony), defense counsel emailed government counsel "notice" of two defense experts, whom the defendant indicated he would call at trial. The notice was contained in a one-page document entitled "Defendant's Rule 16 Discovery Disclosures."

Defense counsel stated that the defendant would call Edward FitzGerald, a lawyer and previous public official, to testify as an expert "in the area of undercover operations and campaign trail interactions between elected-officials and potential donors." Defense counsel attached a half page curriculum vitae (*see* Exhibit A) and indicated that FitzGerald would provide the following testimony:

- *General background and basics of undercover operations.* Mr. FitzGerald will provide testimony related to standard operating procedures, elements of control, script rehearsal, and general duties and expectations for the various people working for and within undercover operations.

- *The undercover operation in this case.* Insofar as it is relevant to the conduct of Mr. Sittenfeld and the elements of each crime charged, Mr. Fitzgerald will provide expert testimony about the conduct of the undercover investigation as the context in which Mr. Sittenfeld acted.

- *Typical and ordinary communication and interaction between elected-officials and potential donors.* Mr. FitzGerald will provide testimony related to the common and expected communication elected officials receive from potential donors which varies widely, including but not limited to, his first-hand experience dealing with incorrect attempts to donate, odd or strange questions, requests for more specific policy positions, and various forms of contribution.

(*See* Exhibit B.)  No other explanation or summary was provided for FitzGerald, beyond the language quoted above.

3

Defense counsel also stated that the defendant would call Caleb P. Burns, an attorney with the Washington, D.C. law firm Wiley Rein LLP, to testify as an expert "in the field of campaign fundraising." Defense counsel attached a screenshot of Burns's law firm website (*see* Exhibit C) and indicated that Burns would provide the following testimony:

- *Background on privately funded political campaigns*. Mr. Burns will provide background information on the dynamics of the American system of privately funded political campaigns. He will explain the necessity, in such a system, of a candidate communicating his or her positions on policies and issues with prospective supporters.

- *Federal campaign finance law and implementing regulations.* Mr. Burns will provide background on the federal campaign finance laws and implementing regulations promulgated by the Federal Election Commission. He will explain how those laws apply to candidates, lobbyists, and other participants in the political system.

- *Operation of a federal "leadership" PAC*. Mr. Burns will explain what constitutes a federal "leadership" PAC and how it differs from a candidate's campaign and other types of entities active in political campaigns like 501(c) organizations. He will detail some of the specifics of how a federal "leadership" PAC operates.

- *Campaign fundraising practices*. Mr. Burns will explain how candidates and their prospective supporters convey their interest in particular policies and issues while engaging in fundraising. Mr. Burns will provide examples of interactions between candidates and contributors.

- *History of investigations into campaign fundraising*. Mr. Burns will discuss prior investigations and inquiries into campaign fundraising practices. In particular, he will provide examples of government investigations into fundraising by Members of the U.S. House of Representatives that were alleged to have been linked to official acts.

(*See* Exhibit B.) Again, no other explanation or summary was provided for Burns, beyond the language quoted above.

## **LEGAL STANDARDS**

Federal Rule of Criminal Procedure 16 governs the parties' disclosure obligations as they relate to expert witnesses. The Federal Rules of Evidence govern the admissibility of proposed expert testimony. Both are relevant here, and the defendant runs afoul of both.

Federal Rule of Criminal Procedure 16 details the parties' discovery obligations for expert witnesses. *See United States v. Campbell*, 81 F. App'x 532, 535 (6th Cir. 2003). At the defendant's request, the government must provide the defendant a written summary of any expert testimony that the government intends to use during its case-in-chief at trial. Fed. R. Crim P. 16(a)(1)(G). If the government complies with defendant's request, the defendant, at the government's request, must provide the government a written summary of any expert testimony that the defendant intends to use as evidence at trial. *Id.* at 16(b)(1)(C). The purpose of the reciprocal disclosure obligation is "to minimize surprise that often results from unexpected testimony and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *United States v. White*, 492 F.3d 380, 406 (6th Cir. 2007) (quoting Fed. R. Crim P. 16 advisory committee's note) (alterations omitted).

Although Rule 16 does not mandate disclosure by a specific date, the Advisory Committee Notes make clear that discovery is to be provided in a "timely fashion" to avoid prejudicial surprise. *See* Rule 16 advisory committee's note (1993 Amendment).

To comply with Rule 16, the defendant must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C). This means it is not sufficient to simply list general subjects about which the expert intends to testify; rather, the disclosure must explain what opinion the expert would offer on those subjects. *See United States v. Anderson-Bagshaw*, 509 F. App'x 396, 410 (6th Cir. 2012) (expert disclosure was deficient in failing to adequately set forth the opinions of the expert); *United States v. Davis*, 514 F.3d 596, 612–13 (6th Cir. 2008) (disclosure did not adequately indicate the bases for the lab reports). Indeed, a vague description of an expert's opinion, or the bases for that opinion, can justify exclusion of the expert testimony or supplemental disclosures. *Anderson-Bagshaw*, 509 F. App'x at 411; *see also United States v. Rakhit*, No. 1:18-cr-33, 2020 WL 5530056, at *10–19 (N.D. Ohio Sept. 15, 2020) (requiring supplemental disclosure and clarification for a number of medical experts).

If a party fails to comply with its Rule 16 obligations, a district court may (A) issue a discovery order to the non-complying party; (B) grant a continuance; (C) "prohibit the party from introducing the undisclosed evidence;" or (D) "enter any other order that is just under the circumstances." Fed. R. Crim P. 16(d)(2).

While Rule 16 governs the disclosure of expert materials, the Federal Rules of Evidence govern the admissibility of proposed expert testimony. Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or

6

otherwise[.]" Fed. R. Evid. 702. The expert testimony is only permitted, however, where four conditions are met:

> [1] the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> [2] the testimony is based on sufficient facts or data;
> [3] the testimony is the product of reliable principles and methods; and
> [4] the expert has reliably applied the principles and methods to the facts of the case.

*Id.* at 702(a)–(d).

The most critical criterion for expert testimony is the first one—whether it is helpful to the jury. *See United States v. Freeman*, 730 F.3d 590, 600 (6th Cir. 2013). Testimony about matters within the common knowledge and experience of a lay juror is not helpful, and thus should not be permitted. *Id.* at 597. Expert testimony also does not assist the trier of fact when it is irrelevant, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993), or when it conveys legal standards or expresses legal conclusions, because it "interfere[s] with a district court's jury instructions" and "tell[s] the jury what result to reach." *Woods v. Lecureux*, 110 F.3d 1215, 1220–21 (6th Cir. 1997); *Weinstein's Federal Evidence* § 704.04[2][a] ("The most common reason for excluding opinion testimony that gives legal conclusion is lack of helpfulness . . . .").

An expert is also prohibited from opining on the defendant's intent when such mental state is an element of the offense. Fed. R. Evid. 704(b); *United States v. Dunnican*, 961 F.3d 859, 876 (6th Cir. 2020). That prohibition extends to testimony that is equivalent to opining on the defendant's state of mind. *See, e.g., United States*

7

*v. Warshak*, 631 F.3d 266, 324 (6th Cir. 2010) ("Furthermore, Simpson's remarks with respect to the 'design' of the transactions also implicate the issue of intent. To say that a transaction is designed to achieve a certain effect is tantamount to declaring that the individual who conducted the transaction intended to achieve that outcome.") (citations and quotations omitted); *United States v. Wood*, 207 F.3d 1222, 1236 (10th Cir. 2000) ("If believed, his testimony necessarily dictates the final conclusion that Dr. Wood possessed the requisite mens rea for involuntary manslaughter. *See United States v. Morales,* 108 F.3d 1031, 1037 (9th Cir.1997) ('A prohibited 'opinion or inference' under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea.') This intrusion into the province of the jury is precisely the sort of testimony Rule 704(b) is designed to prevent."); *United States v. Beavers*, 756 F.3d 1044, 1054–55 (7th Cir. 2014) (affirming trial court's determination that defense expert could not opine that he (expert) believed 100 checks were loans, noting that allowing the expert to opine on the issue "would have been the equivalent of opining on whether the defendant had the 'willfulness' necessary for a tax offense.")

In addition to Federal Rule of Evidence 702, expert testimony is also subject to Federal Rule of Evidence 403, which requires the exclusion of evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, [or] misleading the jury. . . ." Fed. R. Evid. 403. This is particularly salient in regard to expert testimony, which can be "both powerful and quite misleading because of the difficulty in evaluating it," and thus the court

8

"exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595. In other words, the district court serves in the "role of 'gatekeeper,' charg[ed] . . . with evaluating the relevance and reliability of the proffered expert testimony with heightened care." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007); *see United States v. Cunningham*, 679 F.3d 355, 380 (6th Cir. 2012).

As a gatekeeper, a district court may conduct a hearing in order to develop the record to evaluate whether the proffered expert and the proposed testimony satisfy the four requirements of Rule 702. While the decision to conduct such a hearing is within the discretion of the court, "a district court should not make a *Daubert* determination when the record is not adequate to the task." *Jahn* v. *Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000) (remanding because "record need[ed] to be further developed to make . . . adequate *Daubert* determination"); *see also Busch* v. *Dyno Nobel, Inc.*, 40 F. App'x 947, 961 (6th Cir. 2002) ("[W]e direct that the district court conduct a *Daubert* hearing before retrial in order to meet the full gate-keeping responsibility required under Rule 702 and *Daubert* and its progeny.").

## ANALYSIS

### A. The Court Should Preclude the Testimony of Edward FitzGerald

The disclosure provided by the defendant relative to FitzGerald is grossly inadequate. Indeed, the disclosure *does not contain any opinions at all*. At best, it hints at broad subject areas, about which the witness may say anything at all. No expert report has been provided. Instead, in a few sentences, defense counsel asserts that FitzGerald will testify about (1) "the basics of undercover operations," (2) "the

9

conduct of the undercover investigation as the context in which Mr. Sittenfeld acted" and (3) "the common and expected communication elected officials receive from potential donors which varies widely, including but not limited to, his first-hand experience dealing with incorrect attempts to donate, odd or strange questions, requests for more specific policy positions and various forms of contribution." (*See* Exhibit B.)  The disclosure does not contain any of FitzGerald's purported opinions about these topics, let alone provide any bases or reasons for those opinions, or explain the specialized knowledge or principles undergirding them.  Rather, it simply contains a list of subject areas about which FitzGerald may testify—which fails to comply with Rule 16, and which the Sixth Circuit has found insufficient.  *See Anderson-Bagshaw*, 509 F. App'x at 410; *United States v. Davis*, 514 F.3d at 613.

Moreover, due to the deficient disclosure, the United States cannot fully and completely evaluate and challenge the admissibility of FitzGerald's testimony under Rule 702—that is, whether his testimony will be helpful to the jury, whether the testimony is reliable, and whether he is qualified to give such testimony.  For example, FitzGerald will purportedly testify about "the conduct of the undercover investigation as the context in which Mr. Sittenfeld acted."  Without knowing his specific opinion and proposed testimony about such topic, the United States cannot evaluate whether that opinion is relevant and will be helpful to the jury, let alone whether he is qualified to testify about it.  Likewise, without knowing FitzGerald's opinions about donor communications and further details about his proposed testimony, the United States cannot assess whether FitzGerald's testimony is

10

impermissibly opining on the defendant's intent in violation of Rule 704(b), or whether it improperly suggests jury nullification. Due to these deficiencies, the interest of the United States is prejudiced—it cannot adequately challenge his testimony through pretrial motions, prepare to cross-examine him, or identify an appropriate expert witness(es) to rebut his testimony. Nor can the Court determine whether this testimony should be properly presented to the jury.

This is precisely what Rule 16 was written to prevent—prejudicing the opposing party by offering "unexpected expert testimony" and precluding the opponent from "a fair opportunity to test the merits of the expert's testimony." Fed. R. Crim. P. advisory committee's note (1993 Amendment). Accordingly, the Court should preclude testimony of Edward FitzGerald based on the disclosures provided.

### B. The Court Should Preclude the Testimony of Caleb Burns

The Defendant's disclosures relating to Burns are also deficient. The disclosures define five broad categories: (1) background on privately funded political campaigns, to include the necessity of candidates communicating with supporters; (2) background on federal campaign finance law and implementing regulation, to include how "laws apply to candidates, lobbyists, and other participants in the political system"; (3) the operation of a "leadership" PAC and how it differs from other types of campaign organizations; (4) campaign fundraising practices, namely, "how candidates and their prospective supporters convey their interest in particular policies and issues while engaging in fundraising," with examples of "interactions between candidates and contributors"; and (5) "prior investigations and inquiries into

11

campaign fundraising practices," with "examples of government investigations into fundraising by Members of the U.S. House of Representatives that were alleged to have been linked to official acts."

But these general topics are devoid of "opinions" or the reasons for those opinions. As set forth above, Rule 16 requires more. Fed. R. Crim. P. 16(b)(1)(C) (defendant must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."); *Anderson-Bagshaw*, 509 F. App'x at 410 (affirming exclusion of expert witness because disclosed summary was "extremely vague and could not have helped the government prepare to cross examine Dr. McPherson"). This is important because the insufficient disclosures are, on their face, improper bases for expert testimony. At the very least, additional disclosures are necessary so the government can challenge the opinions, if necessary, and the Court can assess the admissibility of the proposed testimony.

For example, the disclosures suggest the intended testimony will impede the Court's role as the sole source of law for the jury. It is well-settled that "only the trial judge may instruct a jury as to the law." *See United States v. Zipkin*, 729 F.2d 384, 386–87 (6th Cir. 1984); *United States v. Gordon*, 493 F. App'x 617, 626–27 (6th Cir. 2012) ("Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts.") (quoting *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998)); *United States v. Kalk*, 1989 WL 101539, at *7, 884 F.2d 581 (6th Cir. 1989) ("[T]estimony consisting of legal opinions on the applicable principles of law in a case is

inadmissible."). "Expert testimony on the law is excluded because the trial judge does not need the judgment of witnesses." *United States v. Mazumder*, 800 F. App'x 392, 395–96 (6th Cir. 2020) *(*quoting *Zipkin*, 729 F.2d at 387).

Here, although not entirely clear given the insufficient disclosure, an opinion relating to the background of the "American system of privately funded political campaigns" (topic 1) suggests that the witness intends to describe the American *legal system—i.e.*, the laws—that allow candidates to raise money for campaigns. But, to the extent the law is helpful to the jury, this is the Court's job, through the jury instructions. Indeed, both parties' proposed jury instructions contain an instruction relating to legal protections under the First Amendment for campaign and PAC contributions outside the context of bribery. (*See* Doc. 98, PageID 1053.) It appears the defense expert intends to supplement that law impermissibly by providing his own testimony explaining the law to the jury. *Zipkin*, 729 F.2d at 387 (reversing because district court improperly permitted expert testimony on the law); *Mazumder*, 800 F. App'x at 395–96 (affirming exclusion of testimony from witness who attempted to define and apply aspects of legal standard at issue). This would interfere with the Court's instructions and is not helpful to the jury.

The same goes for disclosures relating to federal campaign finance law (topic 2) and leadership PACs (topic 3). The disclosures state that Burns intends to "explain how those laws *apply* to candidates." Again, this is impermissible—if the law is applicable, it should come from the Court, not a witness. It is also confusing. Explanations of the law outside the Court's instructions—relating to statutes and

13

regulations the jury need not assess to determine guilt or innocence in this case—is both unhelpful under Rule 702 and confusing under Rule 403.

The broad disclosures relating to "how candidates . . . convey their interest in particular policies and issues while engaging in fundraising" with examples of interactions (topic 4) and "prior investigations and inquiries into campaign fundraising practices" (topic 5) are no better. A fair reading of these disclosures suggests that the witness intends to explain what *legal* "interactions between a candidates and contributors" looks like, in comparison to *illegal* interactions based on "prior investigations and inquiries." But what is legal or illegal in this case turns on this defendant's *intent*—the sole inquiry here, based on the facts of this case. And the only law relating to this issue must come from the Court. *See* Fed. R. Evid. 704(b) (intent "is for the trier of fact alone"). An expert's separate legal conclusions relating to the interactions of others—and, thus, the intent of other individuals—to show what is proper or improper based on his assessment of the law is both unhelpful and confusing to the jury.

Precluding witness testimony based on these disclosures is therefore appropriate.

## C. If the Court Does Not Preclude the Testimony, Supplemental Disclosures and a *Daubert* Hearing is Necessary.

If this Court does not preclude the testimony of FitzGerald and Burns, the Government requests Rule 16-compliant disclosures and a *Daubert* hearing to establish whether their testimony is properly admissible. Such a hearing would allow the Court to better determine the qualifications of FitzGerald and Burns, as well as

14

the relevance and reliability of their various opinions. Based on the limited disclosures, it appears that the witnesses' planned testimony is not admissible and should be excluded, but, in the absence of outright exclusion, a *Daubert* hearing will shed light on the witnesses' credentials and conclusions, and provide facts for admissibility analysis that the Court must undertake.

The principles in *Daubert* apply to all expert testimony—even non-scientific testimony, as proffered here. *Thomas* v. *City of Chattanooga*, 398 F.3d 426, 431–32 (6th Cir. 2005) (citing *Kumbo Tire*, 526 U.S. at 147). In evaluating such testimony, the court is afforded more flexibility as to the application of the *Daubert* factors. *Id*. However, even non-scientific testimony must be thoughtfully examined, and the "trial court's gatekeeping function requires more than simply taking the expert's word for it." *Id*. at 432 (quoting Fed. R. Evid. 702 advisory committee's note) (internal quotation marks omitted).

First, a *Daubert* hearing would allow the exploration of the witnesses' specific qualifications, which are a prerequisite for the admissibility of their testimony under Rule 702. *See United States* v. *Cunningham*, 679 F.3d 355, 379 (6th Cir. 2012) (qualification of expert "by knowledge, skill, experience, training, or education" is the "first hurdle to clear under Rule 702"). For example, based on the deficient disclosures, it is difficult to assess whether FitzGerald's three years of FBI employment in the mid-90's qualifies him to testify about "standard operating procedures, elements of control, script rehearsal, and general duties and expectations for the various people working for and within undercover operations."

15

Second, a *Daubert* hearing would clarify the alleged relevance of the witnesses' testimony. Based on what can be gleaned from these disclosures, the proposed subjects of testimony are irrelevant to the issues at this trial, are unhelpful to the jury, and risk improperly presenting evidence to the jury relating to legal conclusions and the defendant's intent. Absent precluding their testimony based on these disclosures, the record requires more development if an informed relevance determination is to be made.

Third, a *Daubert* hearing would develop a record as to the reliability of the witnesses' various conclusions. Given the sparse nature of the defendant's disclosures, additional exploration is required to determine whether Burns's and FitzGerald's opinions are reliable enough to be brought before the jury, even if they can be construed as relevant.

## CONCLUSION

For the reasons outlined, this Court should preclude Burns's and FitzGerald's unnecessary and unfounded testimony based on the deficient disclosures. In the alternative, the Court should compel supplemental disclosures, order a *Daubert* hearing, and permit additional motions practice, if necessary, so the Court can properly assess the admissibility of testimony from the proposed witnesses.

16

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

*s/Matthew C. Singer*
MATTHEW C. SINGER (IL 6297632)
EMILY N. GLATFELTER (0075576)
MEGAN GAFFNEY PAINTER
(NY 4849220)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Motion to Exclude Testimony was filed electronically this 13th of May, 2022, and served upon all counsel of record via the Court's CM/ECF system.

*s/Matthew C. Singer*
MATTHEW C. SINGER (IL 6297632)
Assistant United States Attorney