# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

    v.

**ALEXANDER SITTENFELD,**

    Defendant.

Case No. 1:20-cr-142
JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

This cause comes before the Court on Defendant Alexander Sittenfeld's Motion to Prevent the Government from Filing Ex Parte Memoranda (the "Motion," Doc. 91). For the reasons below, the Court **DENIES** Sittenfeld's Motion (Doc. 91).

## THE INSTANT MOTION[1]

Sittenfeld is a former Cincinnati City Council member. On November 18, 2020, the government indicted Sittenfeld on charges of honest services wire fraud, bribery, and attempted extortion in connection with the Council's approval of a real estate development project. (*See* Doc. 3). On December 23, 2020, Sittenfeld moved to dismiss (Doc. 24) the Indictment. He filed an Amended Motion to Dismiss (Doc. 25) on the same day. The Court denied those Motions in its March 1, 2021, Opinion and Order

---

[1] The Court has already extensively summarized the factual and procedural background of this case in its March 1, 2021, Opinion and Order (Doc. 53) denying Sittenfeld's Amended Motion to Dismiss (Doc. 25). Accordingly, the Court limits its background discussion here to the issue raised by the instant Motion. The court also notes other pending Motions (Docs. 99, 100) on the docket. Those motions are not yet fully briefed and therefore not ripe for review.

(Doc. 53). Trial in this matter is scheduled to begin in late June. (*See* Calendar Order, Doc. 74, #822).

On April 19, 2022, Sittenfeld filed the instant Motion. Sittenfeld anticipates that the government may wish to file an *ex parte* memorandum concerning "undercover information" related to other ongoing investigations and asks the Court to enter an order preventing any such filing. (Mot., Doc. 91, #947). Sittenfeld argues that the government cannot establish "good cause" for such *ex parte* filing under Federal Rule of Criminal Procedure 16(d)(1). The government responded in opposition (Doc. 92) to Sittenfeld's Motion on April 28, 2022. The government argues that it is within this Court's discretion to inspect sensitive materials *in camera* to determine whether they are materially exculpatory or impeaching such that the government would be constitutionally obligated to disclose them to the defense. (*Id.* at #952). Sittenfeld replied (Doc. 96) on May 5, 2022, arguing that an *ex parte* filing would violate his rights under the Fifth Amendment. (*Id.* at #972).

The matter is now fully briefed and before the Court.

## LAW AND ANALYSIS

Federal Rule of Criminal Procedure 16(d)(1) permits a court, for good cause shown, to inspect *ex parte* a party's "written statement" seeking a determination of its discovery obligations. At the same time, "the government typically is the sole judge of what evidence in its possession is subject to disclosure." *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). And, "[t]he practice of producing government

documents to the trial judge for his determination of relevancy and materiality, without hearing the accused, is disapproved." *Jencks v. U.S.*, 353 U.S. 657, 669 (1957).

Despite that admonition, it is well established that certain circumstances may justify such *in camera* inspection. For example, courts conduct *Brady* reviews of potentially sensitive national security information *in camera* pursuant to the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III. *See United States v. Amawi*, 695 F.3d 457, 472 (6th Cir. 2012); *United States v. Hanna*, 661 F.3d 271, 294 (6th Cir. 2011); *United States v. Hamama*, No. 08-20314, 2010 WL 330375, at *2 (E.D. Mich. Jan. 21, 2010). In the same vein, courts also review information *in camera* for potential production under *Brady* when it may be protected by an applicable legal privilege. *See, e.g., Pennsylvania v. Ritchie*, 480 U.S. 39, 60–61 (1987) (minor victim's state child welfare agency files); *United States v. Arias*, 936 F.3d 793, 800 (8th Cir. 2019) (minor victim's health information).

Moreover, those are not the only circumstances that may necessitate *in camera* review of potentially discoverable material for *Brady* determinations. The Sixth Circuit has recognized that such review may be necessary even in cases where there is no separate legal requirement that the information at issue remain confidential. *See United States v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992) ("We acknowledge that an *in camera* review by the court was not only proper, but probably required."). This includes situations where the government, despite its best efforts, is uncertain about whether it must disclose certain materials. *See, e.g., United States v. Dent*, 149 F.3d 180, 191 (3d Cir. 1998) (district court properly examined law enforcement agent's

3

personnel file *in camera* and determined it did not contain exculpatory or impeachment material); *United States v. Cadet*, 727 F.2d 1453, 1467–68 (9th Cir. 1984) ("If the prosecution is uncertain about the materiality of information within its possession, it may submit the information to the trial court for an *in camera* inspection and evaluation."); *Contreras v. Artus*, 778 F.3d 97, 114 (2d Cir. 2015) ("While *ex parte* proceedings are generally discouraged, it is well established that where there is a question as to the relevance or materiality of a given group of documents, the government may submit the documents to the court for the judge's independent *in camera* review.") (internal quotation marks omitted); *United States v. Jackson*, No. 19-CR-356 (ARR), 2020 WL 6558215, at *2 (E.D.N.Y. Nov. 9, 2020) (ordering *in camera* inspection of law enforcement agent files); *United States v. Wilson*, No. CR-13-01783-001-TUC-CKJ, 2014 WL 12693515, at *1 (D. Ariz. Nov. 6, 2014) (court reviewed agent personnel files and concluded that they did not contain exculpatory or impeachment material).

At the same time, the fact that a court *can* conduct such a review does not mean that it *should* do so in a given case. In particular, a court contemplating an *in camera* inspection at the request of the prosecution must strike a careful balance so as not to violate a defendant's constitutional rights. *See Minsky*, 963 F.2d at 874 ("An *in camera* review is not an open justification for an *ex parte* bench conference."); *see also United States v. Paulus*, 952 F.3d 717, 723–24 (6th Cir. 2020) (explaining ways district court could have conducted *in camera* inspection while involving defense counsel so as not to violate defendant's constitutional rights). After all, a defendant

generally has a right to be present during criminal proceedings, at least "where his absence might frustrate the fairness of the proceedings." *United States v. Barnwell*, 477 F.3d 844, 850 (6th Cir. 2007) (internal quotation marks omitted).

In view of these somewhat competing—and very context dependent—principles, it would be premature for this Court to conclude that the government may *never* submit any materials for *in camera* review in this case. For one thing, the government has not yet identified for the Court exactly the items as to which it intends to seek such review, so the Court is not in a position to determine to what extent such inspection might be appropriate. The government may be able to show "good cause" for an *in camera* inspection, for example, by establishing that information at issue would compromise other ongoing investigations. On the other hand, the Court emphasizes that such a determination is far from automatic, and Sittenfeld must have a chance to be heard as to either the need for *in camera* inspection, or factors that might bear on the Court's materiality determination pursuant to its *in camera* review, once the government has identified (at a level of generality that will not disclose the information it contends must remain secret) the records as to which such review is sought. *See Application of Storer Commc'ns, Inc.*, 828 F.2d 330, 335 (6th Cir. 1987) ("After giving defense counsel … an opportunity to be heard, the court can then proceed to consider the submitted materials *in camera* if that is required."). Accordingly, the Court instructs the government, should it desire that the Court inspect any specific items *in camera*, to (1) produce those materials to the Court, and (2) notify Sittenfeld's counsel that it has done so, identifying at least

5

the categories of information that the materials address. *Cf. United States v. Happ*, No. CR2-06-129(8), 2008 WL 5101214, at *4 (S.D. Ohio Nov. 25, 2008) (adopting these requirements). With such notice, Sittenfeld may then seek to be heard by the Court as to either the necessity of any *in camera* inspection by the Court at all, or the potential materiality of those general categories of information (which the parties are presumably in a better position to know than the Court).

Sittenfeld urges a different result, claiming that any *in camera* inspection of materials submitted *ex parte* by the government necessarily would violate his constitutional rights. (Reply in Supp. of Mot. ("Reply"), Doc. 96, #972–73). Specifically, Sittenfeld relies on the Sixth Circuit's statement in *Barnwell* that the Fifth Amendment ensures his "right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." 477 F.3d at 850. According to Sittenfeld, that principle precludes *in camera* review of government documents.

Explaining why that argument falls short requires a closer inspection of *Barnwell*. There, the Sixth Circuit found a Fifth Amendment violation where a district judge met *ex parte* with the prosecution a total of five times on a single day when the jury was deliberating the defendant's guilt. *See id.* at 847–50. The meetings concerned a wiretapped phone conversation between targets of an ongoing investigation in which one participant claimed to have inside information about the numerical breakdown of the jury in an unidentified trial. *Id.* at 847. After the government made the judge aware of the wiretapped conversation, the judge asked the jury foreperson for the jury's numerical breakdown, to determine whether it

6

matched the information from the wiretap. *Id.* at 848. The judge then shared that breakdown with the government, but not the defense, before entertaining argument from both parties about how to handle the fact that the jury was reporting it had reached an impasse. *Id.* at 849.

Sittenfeld's argument here begins with *Barnwell*'s admonition that "[a]n *ex parte* communication between the prosecution and the trial judge can only be justified and allowed by compelling state interest." (Reply, Doc. 96, #972 (quoting *Barnwell*, 477 F.3d at 850)). From *Barnwell*, Sittenfeld takes that "'vague and general' assertions" of "an 'ongoing criminal investigation'" into "'public corruption'" do not satisfy that threshold requirement. (*Id.* (quoting *Barnwell*, 477 F.3d at 851)). Applying this rule to the instant case, Sittenfeld further reasons that the government here has not met its burden to establish a "compelling interest" in submitting documents for the Court's *in camera* review.

In the Court's view, Sittenfeld overreads *Barnwell*. To be sure, some of *Barnwell*'s general language sounds superficially applicable to the instant case. But the extraordinary facts of *Barnwell*, and in particular the numerous *ex parte* meetings between the judge and the government regarding normally secret information about jury deliberations, which gave the government a clear strategic advantage in the case, make *Barnwell* inapposite here. In this case, the Court confronts a more routine situation. The government believes it need not turn over certain information. But, perhaps in an abundance of caution, the government asks to reserve the option to seek the Court's independent confirmation that the material at issue does not contain

7

information that would necessitate disclosure. As the authorities cited above demonstrate, courts in both this circuit and elsewhere have acknowledged the appropriateness of such an inspection, at least in some circumstances. Sittenfeld's argument that any such review necessarily violates a defendant's constitutional rights cannot be squared with those cases. *See, e.g., Minsky*, 963 F.2d at 874. Accordingly, subject to the caveats set forth above, the Court declines to foreclose the government from making an application for *in camera* review. Of course, should the government do so, the Court will afford Sittenfeld an appropriate opportunity to be heard as well.

## CONCLUSION

For the reasons above, the Court **DENIES** Sittenfeld's Motion (Doc. 91).

**SO ORDERED.**

May 17, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**