## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**UNITED STATES OF AMERICA,**

     **Plaintiff**

    **v.**                   **Case No. 1:20–cr–142**
                                 **JUDGE DOUGLAS R. COLE**

**ALEXANDER SITTENFELD,**

     **Defendant.**

## OPINION AND ORDER

This cause is before the Court pursuant to various Motions in Limine that both the government and Defendant Alexander Sittenfeld recently filed in connection with the soon-upcoming trial in this matter.

As to the government's Motions, the Court (1) **DENIES AS MOOT** the Motion in Limine to Preclude Reference to and Comments Regarding Discovery (Doc. 130) and Motion in Limine to Preclude Entrapment Evidence or Argument (Doc. 131); (2) **GRANTS** the Motion in Limine to Preclude Argument and Evidence Supporting Jury Nullification (Doc. 113) and Motion to Exclude Press Conference (Doc. 139); (3) **GRANTS IN PART** and **DENIES IN PART** the Motion in Limine to Exclude Evidence and Argument Concerning "Good Acts" (Doc. 132), Motion to Exclude Dinner Invitation (Doc. 138), and Motion to Exclude Improper Impeachment (Doc. 180), as discussed in more detail below; and (4) defers ruling on the Motion to Exclude Expert Testimony (Doc. 100).

With respect to Sittenfeld's Motions, the Court (1) **GRANTS IN PART** and **DENIES IN PART** the Motion to Exclude Proffered 404(b) Evidence (Doc. 111), Motion to Enforce the Rule of Completeness and Federal Rule of Evidence 106 (Doc. 121),[1] and Motion in Limine to Admit Defendant's Statements (Doc. 128), as discussed in more detail below; (2) **DENIES** the Motion to Exclude Testimony of J.K. (Doc. 115), Motion in Limine for an Order Barring the Government's Use of a Summary for Failure to Follow the Requirements of Federal Rule of Evidence 1006 (Doc. 127), Motion to Exclude Testimony of Kevin Flynn (Doc. 133), Motion in Limine to Exclude Testimony Regarding an Unsolicited Gift (Doc. 137), Motion in Limine Regarding Foundation, Confrontation, and Predication (Doc. 141), and Motion for Jury View (Doc. 146); and (3) **DENIES AS MOOT** the Motion to Exclude Evidence Regarding Post-Indictment Status of Donations (Doc. 129) and Motion in Limine to Exclude Evidence Regarding Larry Householder, Tamaya Dennard, Jeff Pastor, "Culture of Corruption," and Civil Open Meetings Violation (Doc. 134).

As with all motions in limine, the Court's rulings here are preliminary and intended to provide guidance to the parties in advance of trial. The Court's determination as to the admissibility of any specific evidence will depend on the circumstances under which a party seeks to introduce that evidence at trial.

---

[1] Initially, Sittenfeld had erroneously filed the first page of that Motion only as Doc. 120.

## THE PENDING MOTIONS[2]

Sittenfeld is a former Cincinnati City Council member. On November 18, 2020, the government indicted Sittenfeld on charges of honest services wire fraud, bribery, and attempted extortion in connection with the Council's approval of a real estate development project. (*See* Doc. 3). On December 23, 2020, Sittenfeld moved to dismiss (Docs. 24, 25) the Indictment (Doc. 3). The Court denied that Motion in its March 1, 2021, Opinion and Order (Doc. 53). Trial in this matter is currently scheduled to begin on June 21, 2022. (*See* 5/17/22 Min. Entry). A central issue at that trial will be Sittenfeld's state of mind—specifically, in soliciting and accepting certain campaign contributions, did he intend to enter a quid pro quo agreement with his donors to perform official acts beneficial to them?

Both parties have now moved to exclude various evidence. The government has moved to exclude: (1) Sittenfeld's proposed campaign finance expert testimony from Caleb P. Burns and Edward FitzGerald (Doc. 100); (2) argument and evidence that in the government's view would be elicited to support jury nullification under a number of theories (Doc. 113); (3) evidence, argument, or other reference concerning the discovery process in this case (Doc. 130); (4) evidence or argument that law enforcement officers entrapped Sittenfeld (Doc. 131); (5) evidence or argument that Sittenfeld performed "good acts" (Doc. 132); evidence that a United States Attorney

---

[2] The Court has extensively summarized the factual background of this case in its previous Opinion and Order denying Sittenfeld's Motion to Dismiss (Doc 25). (*See generally* Op., Doc. 53, #494–507). Accordingly, the Court here limits the background discussion to a very brief summary of the pending motions in limine, each of which the Court discusses in more detail below.

accepted a dinner invitation from Sittenfeld (Doc. 138); (6) evidence concerning the press conference at which the government announced Sittenfeld's Indictment (Doc. 139); and (7) impeachment evidence that the government regards as improper (Doc. 180).

For his part, Sittenfeld has moved to exclude the following: (1) evidence regarding Sittenfeld's meetings with actual or potential campaign contributors, other than directly in connection with this case (Doc. 111); (2) the testimony of J.K., who formerly worked for Sittenfeld (Doc. 115); (3) any summary of materials offered to prove their contents (Doc. 127); (4) evidence that Sittenfeld returned certain campaign contributions (Doc. 129); (5) the testimony of former Cincinnati City Council member Kevin Flynn (Doc. 133); (6) evidence of, or references to, a "culture of corruption," including incidents in which other politicians such as Larry Householder, Tamaya Dennard, and Jeff Pastor were involved (Doc. 134); (7) testimony regarding a gift that undercover agents gave Sittenfeld during the investigation, and that Sittenfeld failed to include on his ethics report (Doc. 137); and (8) recorded conversations from the undercover investigation unless participants in the conversations testify at trial (Doc. 141).

In addition, Sittenfeld moves for an affirmative determination that the following evidence may be *included* at trial: (1) complete audio of all recorded conversations from the undercover investigation (Doc. 121); and (2) Sittenfeld's own statements from recorded conversations, to prove his state of mind (Doc. 128). Finally,

Sittenfeld moves the Court to allow a jury view of 435 Elm Street, Cincinnati, Ohio, the location of the real estate development project at issue (Doc. 146).

## LEGAL STANDARD

To be admissible, all evidence must be relevant. Evidence is relevant if it tends to make a material fact more or less likely. Fed. R. Evid. 401. Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion, cumulativeness, misleading the jury, or wasting time. Fed. R. Evid. 403. Evidence of a previous act is not admissible to prove that, on a particular occasion, a person committed a similar act, but may be admissible for another purpose such as intent. Fed. R. Evid. 404(b). The testimony of a fact witness must have a basis in the witness's personal knowledge. Fed. R. Evid. 602. An expert witness must be qualified, and the expert's testimony must be both helpful to the jury and based on reliable principles and methods. Fed R. Evid. 702. A non-expert witness may offer opinion testimony based on personal knowledge. Fed. R. Evid. 701. If a party introduces part of a recorded statement, an adverse party may move for the simultaneous admission of "any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time," Fed. R. Evid. 106, but this rule of completeness does not trump other rules of evidence, such as— for example—hearsay, that would block the admission of the "other part." A party may use a summary to prove the contents of voluminous materials that could not be conveniently examined in court. Fed. R. Evid. 1006.

## LAW AND ANALYSIS

For the convenience of the parties, the discussion that follows is organized according to the order in which the various motions in limine appear on the docket in this case, with the exception that the Court discusses the government's Motion to Exclude Expert Testimony (Doc. 100), on which the Court defers ruling at this time, at the conclusion of this Opinion. (Note that this order of discussion differs from both the opening and concluding sections of this Opinion and from the organization of the above brief "Background" section.)

### A. The Government May Introduce Evidence Regarding Four Of Its Nine Proposed Categories Of "Other Acts" Under Rule 404(b).

Sittenfeld has moved to exclude evidence of his other acts of which the government gave him notice pursuant to Federal Rule of Evidence 404(b). (Doc. 111). In its Response (Doc. 140, #2414–15), the government describes evidence pertaining to eight individuals who had interactions with Sittenfeld concerning campaign contributions plus what appears to the Court to be a residual "other" category. More specifically, the government describes proposed testimony that (1) D.S. experienced "a subtle message of extortion" during a meeting with Sittenfeld about campaign contributions; (2) Sittenfeld sought campaign contributions from C.G. in a "heavy-handed" way; (3) Sittenfeld met with R.S., offered to help with a specific real estate project, and also requested campaign contributions; (4) Sittenfeld met with C.C. to request campaign contributions, and C.C. contributed because he felt that Sittenfeld "could make life miserable" if C.C. did otherwise; (5) Sittenfeld told J.B. that Sittenfeld would not vote for a zoning change in the absence of a substantial

contribution to "a third party aligned with Sittenfeld,"; (6) Sittenfeld mentioned C.C.'s failure to respond to Sittenfeld's messages seeking contributions in response to a message from C.C. about purchasing property from the city; (7) Sittenfeld solicited contributions from C.S., who had business pending before the city; (8) Sittenfeld indicated he would not support T.G.'s development efforts because T.G. "did not help a third-party entity"; and (9) Sittenfeld intentionally targeted individuals who currently or regularly had business before the city for contributions.

As noted above, such evidence of previous acts is not admissible to prove that Sittenfeld acted similarly on the occasions at issue in this case, but it is admissible to prove intent or for another proper purpose. Fed. R. Evid. 404(b). In the Sixth Circuit, courts considering admissibility of such evidence ask (1) whether there is sufficient evidence the defendant in fact performed the other acts; (2) if so, whether the other acts are probative of a material issue other than character; and (3) if so, whether the evidence should be excluded under Rule 403. *See United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012). In considering the sufficiency of the evidence at step one, the Court need not conclude by a preponderance of the evidence that the defendant performed the acts in question, but only that a jury could reasonably believe that the defendant did so. *See Huddleston v. United States*, 485 U.S. 681, 689 (1988).

First, the Court preliminarily concludes that there will be sufficient evidence that Sittenfeld performed the acts in question based on the government's representation that the individuals who met with Sittenfeld will testify as to what transpired during those meetings. It will be for the jury to decide whether to believe

7

those witnesses, but the Court sees nothing at this juncture to indicate that a jury could not reasonably do so. *See id*. Naturally, as with all such determinations, that could conceivably change depending on what else happens at trial, or if the evidence the government proposes to offer is of a different kind than the Court anticipates based on the government's representations in its briefing. But for now the Court considers the sufficiency prong satisfied.

Second, the Court considers some, but not necessarily all, of the proposed testimony to be sufficiently probative of a material issue other than character, namely Sittenfeld's intent in soliciting and accepting the campaign contributions at issue in this case. As the Court already intimated at the final pretrial conference, testimony as to specific acts or statements by Sittenfeld in his other fundraising activities, at least for the election cycle at issue here, may go to Sittenfeld's relevant state of mind. That said, the Court does not intend to allow witnesses to offer testimony based solely on their own subjective impressions about Sittenfeld's hopes, wishes, or plans. (Tr., Doc. 149, #2581 ("we're not going to trot a bunch of witnesses up to say things like, I don't know, he didn't really say anything, but I sort of felt, I was getting this sense that … you know, we're not doing that")). Specifically, based on the government's characterization of the proposed evidence, the Court preliminarily concludes that the evidence about R.S., J.B., T.G., and potentially the residual category could be probative of Sittenfeld's relevant state of mind. The potential testimony from these witnesses, as the government describes it, would tend to identify conduct by Sittenfeld that could support a nexus between specific official acts and campaign

8

contributions based on something more than a witness's own subjective perception about "heavy-handedness."

Third, the Court concludes that the items of potential evidence specified above would not be unfairly prejudicial to Sittenfeld. The other acts at issue are of the same general kind as the conduct charged in this case—namely, an alleged exchange of official actions beneficial to a particular donor for campaign contributions. Nothing in the parties' descriptions of the potential evidence suggests that there is anything more inflammatory or unusual about the alleged conduct at issue than the allegations of the Indictment itself. In such circumstances, unfair prejudice is unlikely. *See United States v. Emmons*, 8 F.4th 454, 476–77 (6th Cir. 2020). Sittenfeld has not identified any specific reasons to fear unfair prejudice to him here.

On the other hand, the Court finds that evidence about the other interactions listed above (again, as the government describes them here) have the potential for unfair prejudice and could also be cumulative, waste time, and confuse the jury. *See* Fed. R. Evid. 403. The danger in allowing witness testimony based solely or primarily on the witness's own subjective impressions of Sittenfeld's purported intent is that Sittenfeld may be unable to meaningfully cross-examine or otherwise rebut such testimony. Moreover, the Court sees little about the five items in question that would add evidence different in kind from the four categories that the Court deems permissible. Accordingly, even if some of the five other categories of potential evidence (to wit, evidence concerning D.S., C.G., either set of interactions with a C.C., and C.S.) would potentially also have some probative value, the Court intends to

9

exclude them on cumulativeness and Rule 403 grounds, unless the government can substantiate how they add something beyond what the Court's identified examples would cover.

In reaching its preliminary conclusions here, the Court rejects Sittenfeld's argument that evidence of the interactions at issue here is categorically inadmissible because "[a]ggressively campaigning is neither illegal nor a 'bad act.'" (Mot., Doc. 111, #1226). As the government points out, Rule 404(b) evidence by its terms is not limited to illegal or even wrongful acts. (*See* Opp'n, Doc. 140, #2421 (citing Fed. R. Evid. 404(b)) (referring to "other crimes, wrongs, *or acts*") (emphasis added)). Instead, other acts are admissible to the extent they are probative of a material issue other than character, subject to the other limitations discussed above. Moreover, Sittenfeld's characterization of his campaign style begs the question: even assuming that the conduct at issue may be entirely *consistent* with legal activity (fundraising with no quid pro quo involved), an issue the Court need not, and does not, decide here, the evidence to which the Court alluded above is also potentially consistent with, or indeed circumstantial evidence that could give rise to an inference of, an illegal quid pro quo. It will be for the jury to consider all the evidence and determine whether the government has proven beyond a reasonable doubt that Sittenfeld intended to agree to a quid pro quo. Because the proposed evidence the government seeks to offer, with the limitations discussed above, appears sufficiently reliable, and because its probative value regarding Sittenfeld's state of mind outweighs any unfair prejudice to Sittenfeld, the Court **DENIES IN PART** and **GRANTS IN PART** Sittenfeld's

Motion (Doc. 111), as discussed above. Again, the Court's preliminary conclusions as to which witnesses may offer Rule 404(b) could change in either direction depending on the context established at trial.

**B.      Sittenfeld May Not Argue Or Elicit Evidence That The Government Has Engaged In Selective Prosecution, That "Everybody Was Doing It," That The First Amendment Shields His Conduct, That He Was Ignorant Of The Law, Or That The Government Induced His Conduct.**

The government moves to exclude various categories of argument, evidence, or "lines of inquiry" that in its view would support jury nullification. (Doc. 113). These include selective prosecution (*id.* at #1236), an "everyone does it" defense (*id.* at #1241), an ignorance-of-the-law defense (*id.* at #1243), any defense based on the government's inducement of Sittenfeld's acts at issue (*id.* at #1245), and any First Amendment defense (*id.* at #1248). For his part, Sittenfeld says that he will not present any such arguments to the jury, but also quibbles with the government's previous statements that, in his view, misrepresent the law of campaign finance. (Doc. 125, #2297).

The motion thus raises a procedural issue common to some of the other motions also before the Court here. One party (here, the government) seeks an Order precluding certain evidence (here, evidence that would support jury nullification), and the other party responds by suggesting it does not intend to introduce any such evidence (but then seeks to limit what falls into the category of "such evidence"). In such situations, the Court presumably either could grant the motion (as it is in some sense unopposed), or deny the motion as moot (as the opposing party disclaims the intent to introduce such evidence, presumably relieving the Court of the need to

11

resolve the motion). The wrinkle, though, is that the party responding to the motion, as noted above, adds some qualifiers to the non-opposition. Thus, the Court concludes that the better path is to provide some clarity to the parties on the Court's view of the issue, as it appears that, at least at the margins, disputes could remain. Accordingly, the Court takes that tack as to each such motion, albeit in some cases granting the motion, and in others denying it as moot, depending on the apparent balance between agreement and quibbling in each instance. (The distinction between granting a motion and denying it as moot in such circumstances is somewhat academic given the preliminary character of all rulings on motions in limine.)

Applying that approach here, the Court agrees with the government that Sittenfeld cannot seek to introduce evidence in support of, or argue for, jury nullification. Indeed, the Court will specifically instruct the jury of its duty to follow the law whether the jury agrees with it or not. *See* Pattern Crim. Jury Instr. 6th Cir. 1.02 (2022) ("It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them."). Arguments for jury nullification would fly directly in the face of that instruction. The Court will not allow them.

Nor is that the only problem with some of the categories of arguments that the government fears Sittenfeld may try to raise. As for a selective prosecution defense, any type of I-just-did-what-everybody-does defense, or a First Amendment affirmative defense, the first and third of those are purely legal arguments for the Court—arguments Sittenfeld has not raised—while the second is not a defense at all.

*See United States v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006) ("the defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury"); *United States v. Vasilakos*, 508 F.3d 401, 409 (6th Cir. 2007) (affirming exclusion of evidence that "others did it too" as irrelevant to defendant's guilt); *United States v. Williams*, 553 U.S. 285, 297 (2008) ("Offers to engage in illegal transactions are categorically excluded from First Amendment protection."). To the extent that the First Amendment has a role to play in this case, it will be for the Court to instruct the jury on the line between constitutionally protected speech, on the one hand, and bribery, extortion, or fraud, on the other. Thus, the Court will not allow questions or arguments as to those topics.

Likewise, the Court will not allow Sittenfeld to argue or offer evidence in support of a mistake of law or ignorance of the law defense. "The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." *Cheek v. United States*, 498 U.S. 192, 199 (1991). The Sixth Circuit has held that the only exception to this general principle is for "'highly technical statutes,' such as tax or banking statutes" that require a showing of "willfulness" to establish a violation. *United States v. Trevino*, 7 F.4th 414, 424 (6th Cir. 2021). The statutes the government accuses Sittenfeld of violating, which prohibit bribery, extortion, and honest services wire fraud, are not "highly technical," and none expressly requires a "willful" violation. 18 U.S.C. §§ 666, 1343, 1346, 1951; *see also* Pattern Crim. Jury Instr. 6th Cir. 10.02 Commentary (2022) ("The instruction continues to use the term 'knowing' rather th[a]n 'willful' to describe

13

the participation based on the weight of Sixth Circuit authority and to avoid any suggestion that knowledge of illegality is an element of mail fraud.")

Sittenfeld's argument that 18 U.S.C. § 1343, the wire fraud statute, allows a mistake-of-law defense, based on *United States v. Phelps*, Case No. 20-5889, 2021 WL 4315947, at *1 (6th Cir. Sept. 23, 2021), is unpersuasive. (*See* Doc. 108, #1193–94). True, the Sixth Circuit in *Phelps* uses the word "willfully" in passing when recounting the elements of wire fraud. *Id.* There are even some published cases that do the same. *See United States v. Maddux*, 917 F.3d 437, 443 (6th Cir. 2019); *United States v. Kennedy*, 714 F.3d 951, 957 (6th Cir. 2013); *United States v. Faulkenberry*, 614 F.3d 573, 581 (6th Cir. 2010). But none of those cases states or even hints that there is a mistake of law defense to wire fraud, nor do they address whether the wire fraud statute is a "highly technical statute" so as to render such a defense available under Supreme Court precedent. Indeed, Sittenfeld has not cited, and the Court has not found, any Sixth Circuit case stating that a mistake of law defense is available for any statute at issue here. By contrast, numerous Sixth Circuit cases characterize the wire fraud statute as requiring only a "knowing" violation. *See United States v. Sadler*, 750 F.3d 585, 590 (6th Cir. 2014); *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003); *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 478 (6th Cir. 1999); *United States v. DeSantis,* 134 F.3d 760, 764 (6th Cir. 1998); *United States v. Frost*, 125 F.3d 346, 371 (6th Cir. 1997). In light of these authorities, the Court declines to take the Sixth Circuit's passing use of the word "willful" in certain other

14

cases as an invitation to allow an otherwise unprecedented defense to wire fraud, especially as the statute itself does not expressly include any willfulness requirement.

Finally, the Court will preclude Sittenfeld from offering evidence in support of, or arguing for, an "inducement" defense. The reason the government undertook the investigation here is not relevant. As further discussed below, Sittenfeld is not relying on, and may not present evidence regarding, an entrapment defense. Accordingly, the Court declines to allow Sittenfeld to offer what amounts to some kind of "entrapment-lite" defense that turns on whatever inducement the government may have offered to get him to engage in the alleged conduct. *See United States v. Tucker*, 28 F.3d 1420, 1428 (6th Cir. 1994) ("a defendant whose defense sounds in inducement is, by congressional intent and Supreme Court precedent, limited to the defense of entrapment and its key element of [lack of] predisposition"). That said, evidence regarding the investigative techniques the government employed here may be relevant. For example (and hypothetically), if there were evidence that the government fabricated or spoliated evidence, that could be relevant to the jury's consideration of the reliability of the government's case. Thus, without knowing more about the particulars of such evidence, the Court cannot say, in the abstract, that evidence relating to the investigative techniques would never be relevant or admissible.

For the reasons and with the caveats discussed above, the Court **GRANTS** as unopposed the government's Motion in Limine to Preclude Argument and Evidence Supporting Jury Nullification (Doc. 113).

## C.     J.K. May Testify As To Sittenfeld's Conduct At Issue In This Case.

Sittenfeld moves to preclude testimony from J.K., a person Sittenfeld characterizes as a "disgruntled former employee of Mr. Sittenfeld," whom Sittenfeld allegedly fired for dishonest, or even criminal, actions unrelated to his employment. (Doc. 115, #1281). It appears that J.K. worked with Sittenfeld on campaign fundraising activities, and that the government may call J.K. to discuss facts surrounding that employment. (*Id.*).

Sittenfeld argues that the Court should preclude the government from calling J.K. for three reasons. First, Sittenfeld claims lack of required notice under Rule 404(b). (*Id.* at #1283). Second, he claims unfair prejudice under Rule 403. (*Id.* at #1284). And third, he cites "general notions of fairness." (*Id.* at #1286).

The Court disagrees. As to the first, to the extent that J.K. is testifying about Sittenfeld's conduct in connection with the fundraising activities that form the basis for the charges, that is not Rule 404(b) evidence at all, but rather factual evidence relating to this alleged crime. Moreover, to the extent that J.K. is testifying about other fundraising activities, with other potential contributors, for this same election, those facts would likely be inextricably intertwined with the charges in this case in a way that means that they also are not "prior acts" for Rule 404 purposes. *See United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015). Finally, to the extent that notice is required, the government provided it here—which, indeed, explains how Sittenfeld knew to file this pre-trial motion at all. *See, e.g., United States v. French*, 974 F.2d 687, 694–95 (6th Cir. 1992) (notice one week before trial sufficient for Rule 404(b)).

As for Sittenfeld's second argument, the Court agrees with the government that the probative value is not "substantially outweighed" by potential prejudice. As in the instances discussed above in connection with another motion in limine, there is no indication that the acts to which J.K. will testify are any worse or materially different from the conduct with which Sittenfeld already stands charged. *See Emmons*, 8 F.4th at 476–77. Indeed, Sittenfeld insists that the conduct on his part to which J.K. will testify was all perfectly legal and above-board. (Mot., Doc. 115, #1284). Sittenfeld identifies nothing that would prevent him from making that same argument to the jury. Accordingly, J.K.'s testimony, as described in the parties' papers, is not more unfairly prejudicial to Sittenfeld than it is probative of his intent and conduct at issue in this case.

That said, to the extent that the government may rely on J.K.'s testimony, or indeed any other evidence, to suggest that the jury could find something untoward about the structure of certain campaign contributions (for example, that the contributions went to a political action committee rather than the campaign directly), the Court will allow Sittenfeld to rebut any such implication, either by presenting relevant argument or evidence, or by seeking an appropriate jury instruction.

Finally, and for much the same reasons, the Court rejects Sittenfeld's argument that "general notions of fairness" require the Court to exclude J.K.'s testimony. In the absence of constitutional concerns, which no party has raised here, and for which the Court sees no basis in any event, the notions of fairness that guide the Court's analysis are primarily those set forth in the Federal Rules of Evidence.

As far as the Court knows, there is not some amorphous set of free-standing "fairness principles" relating to evidence that operate outside those Rules, and that require exclusion of evidence that the Rules otherwise would allow. Moreover, even if there were, the Court does not find anything "unfair" about J.K.'s testimony here. To the extent that he is a disgruntled employee, or has an incentive to testify against Sittenfeld because of a proffer agreement with the government, as Sittenfeld suggests, Sittenfeld's attorneys are fully capable of exploring those potential sources of bias on cross examination.

For the foregoing reasons, the Court **DENIES** Sittenfeld's Motion to Exclude Testimony of J.K. (Doc. 115).

### D. Sittenfeld May Not Introduce His Own Recorded Statements To Prove The Truth Of The Matter Asserted, But May Introduce Them For A Proper Purpose Such As State Of Mind Or Effect On The Listener.

The government has recordings in this case of Sittenfeld conversing with certain confidential informants, undercover agents, or other potential witnesses. The government intends to play portions of those tapes, but not their entirety. Sittenfeld argues that under the "rule of completeness," Federal Rule of Evidence 106, he should be able to require the government to play the entirety of the tapes. (Mot., Doc. 121, #1315). The government counters that the rule of completeness does not trump the hearsay rule (i.e., Federal Rule of Evidence 802), and thus contends that, while the government may play any recorded comments by Sittenfeld it wants (as the comments are admissions by a party opponent), Sittenfeld cannot supplement those

18

statements with his statements from other portions of the tapes (as those statements would be hearsay as to which no exception applies). (Opp'n, Doc. 136, #2381).

To start, the Court agrees with the government that the rule of completeness does not trump the hearsay rule. Thus, to the extent any comments Sittenfeld would seek to add are hearsay, he may not play them for the jury.

That, however, does not answer the entire question. Statements are hearsay only if they are offered for the truth of the matter asserted. Sittenfeld separately argues (Mot., Doc. 128, #2339–40) that he may want to play his statements on some portions of the tapes for reasons that render them non-hearsay. For example, he may rely on his own recorded statements to show his then-existing state of mind under Federal Rule of Evidence 803(3). A statement might also be admissible as non-hearsay for its effect on the listener, rather than to prove the matter asserted.

Under such circumstances, and if the statements in question are also necessary in fairness to provide context for the portions of recorded conversations that the government wishes to play, then Sittenfeld may further rely on Rule 106 to play those portions for the jury along with the government's corresponding selections, rather than waiting until his own case-in-chief. (If the statements were non-hearsay, but were not also necessary in fairness to contextualize the statements that the government presented in its case-in-chief, Sittenfeld would have to wait until his own case-in-chief to present the recorded statements to the jury.)

Take an easy example. Imagine the following hypothetical recorded conversation:

Witness: What do I get in exchange for my contribution.

Sittenfeld: It would be illegal for me to make you any promises in exchange for a campaign contribution, and I don't want to do anything that even comes close to breaking any laws. There is no way that I am willing to promise you anything in exchange for a contribution. For example, I am not going to sit here and say, "If you give me a contribution, I will get the project approved." If you want somebody to tell you that, you have the wrong guy.

Now imagine, again hypothetically, that the government wanted to play only the following portion of that conversation for the jury:

Witness: What do I get in exchange for my contribution.

Sittenfeld: … If you give me a contribution, I will get the project approved …

In such a scenario, Sittenfeld would offer the full conversation not so much for the truth of the matter asserted in the omitted statements, as to provide the contextual meaning of the portion of the statement that the government did play. Allowing the government to play only the redacted version in the example above could lead the jury to understand the conversation in exactly the opposite manner from what the full conversation would reveal. Under such circumstances, the Court would require the government to play the entire statement in context, not only the edited portion.

That said, and as discussed at the final pretrial conference, the rule of completeness certainly does not require the jury to listen to more than twenty hours of recorded conversations simply because the government created all those recordings in the course of its investigation leading to the charges in this case. (*See* Tr., Doc. 149, #2573 ("I am not of the view that in a multi-month investigation, that the rule is going

to be if the government wants to use two minutes of audio, that means that twenty hours of audio need to be played.")). Nor, as already noted, is the rule of completeness a backdoor way around the hearsay rule. Thus, as indicated at the final pretrial conference, the government should indicate the portions of any taped conversations that it intends to play, and then Sittenfeld should indicate what additional portions, if any, he believes must in fairness be played simultaneously with the government's chosen portions, consistent with the Court's ruling on this motion.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Sittenfeld's Motion and Amended Motion to Enforce the Rule of Completeness and Federal Rule of Evidence 106 (Doc. 121) and Motion in Limine to Admit Defendant's Statements (Doc. 128), as discussed above.

## E.  There Is Presently No Basis To Prohibit The Government From Using A Summary At Trial.

Sittenfeld moves to prevent the government from using a summary at trial, arguing that such use of a summary would necessarily violate Federal Rule of Evidence 1006. (Doc. 127). But it is simply too early to say whether that may prove to be the case. Assuming there are "voluminous … recordings … that cannot be conveniently examined in court" (such as, say, twenty hours of recorded conversations), then the Court sees nothing in the present record to indicate that the government could not submit an admissible summary to prove their relevant contents. *See* Fed. R. Evid. 1006. Although Sittenfeld argued in his Motion (Doc. 127) that a summary should be disallowed because the government had not then provided Sittenfeld with its proposed summary for review, that point now appears to be moot

insofar as Sittenfeld represents he has subsequently received the proposed summary. (Reply, Doc. 186, #2906). And although Sittenfeld's Reply identifies additional concerns with the government's summaries, that does not change the fact that the Court has not seen the summaries in question (or indeed the underlying evidence that they would summarize). (*See id.* at #2907–9). In short, any ruling on the appropriateness of the government's use of a summary, even a preliminary ruling, must await the specific summary, if any, that the government proposes at trial. At that time, Sittenfeld will have a full opportunity to argue against the admissibility of the government's proposed summary, should he still desire to do so. For now, however, the Court **DENIES** Sittenfeld's Motion in Limine for an Order Barring the Government's Use of a Summary for Failure to Satisfy the Requirements of Federal Rule of Evidence 1006 (Doc. 127). Again, the denial is without prejudice to Sittenfeld's ability to make any argument regarding any specific summary the government may propose.

## F.   The Government Does Not Intend To Raise The Post-Indictment Status Of Campaign Contributions In Its Case-In-Chief.

In his Motion to Exclude Evidence Regarding Post-Indictment Status of Donations (Doc. 129), Sittenfeld asks the Court to preclude the government from presenting evidence as to what Sittenfeld did with the donations at issue once he was indicted in this matter. For example, he claims that the government should not be allowed to inquire into whether he may have returned them. He claims that any such evidence is not relevant, and that any marginal relevance it may have is substantially outweighed by its potential prejudice. (*Id.* at #2343–44).

22

For its part, the government does not so much oppose the motion, as instead note that it does not intend—at least as things stand now—to elicit any such testimony. (Opp'n, Doc. 174, #2849). Thus, the government says, the Court should deny the motion as moot, with the proviso that, if the government believes the evidence has become relevant because of information elicited at trial, it will present the issue to the Court outside the jury's presence before inquiring into it.

As already noted, when a party indicates it does not intend to elicit certain evidence, the Court agrees that this may render a motion in limine on that topic moot. At the same time, when the party hedges its bets on that front, direction from the Court on the topic may remain important, just to prevent surprise and ensure the smooth operation of the trial.

Here, the Court agrees with the government that the Court need not decide the motion now. That said, it is difficult to see what testimony could be elicited at trial that would render information as to the post-indictment handling of the funds relevant to any issue in this case. Of course, the Court cannot reach a final decision on that matter, nor does it, until such time as the government may seek to introduce evidence on that topic. Thus, for now, the Court **DENIES** Sittenfeld's Motion to Exclude Evidence Regarding Post-Indictment Status of Donations (Doc. 129) as **MOOT**, but instructs the government to raise the issue outside the jury's presence if its plans with regard to such information change during trial.

G. **Evidence Or Argument Concerning Any Disputes About Discovery That Occurred In This Case Are Inadmissible, But Evidence Or Argument About How Officers Gathered Or Failed To Gather Evidence May Be Admissible.**

The government seeks an Order precluding any reference to the discovery disputes that have occurred during the course of this case. (Doc. 130). Sittenfeld, for his part, does not oppose the motion directly, but rather says that he does not intend to introduce any such evidence, meaning that the motion is moot. (Doc. 164, #2803). Having said that, though, he also stresses that testimony regarding *the evidence itself, or the lack thereof,* may be relevant. (*Id.* at #2804).

Given Sittenfeld's representation that he will not seek to introduce evidence regarding discovery disputes, the Court agrees that the government's Motion in Limine to Preclude Reference to and Comments Regarding Discovery (Doc. 130) is **MOOT**, and therefore **DENIES** it on that ground. At the same time, the Court stresses that this ruling is not meant to prevent Sittenfeld from eliciting testimony regarding what evidence was gathered, how that was accomplished, or what types of evidence may be absent here. The Court is not saying that such questions will be appropriate—that will depend on the exact question and the evidence that has been elicited at trial—but only that the Court's ruling on this motion does not address that topic.

H. **Sittenfeld May Not Present Evidence That The Government Entrapped Him, But May Elicit Evidence That Individual Government Witnesses Are Biased.**

In its Motion in Limine to Preclude Entrapment Evidence or Argument (Doc. 131), the government seeks a ruling forbidding Sittenfeld from introducing any

24

evidence or argument that the government entrapped him into engaging in the conduct at issue in this case. The government notes that entrapment is an affirmative defense, and that Sittenfeld did not raise it. (*Id.* at #2349–50). Thus, the government claims, he is not allowed to elicit evidence in support of that unasserted defense.

Sittenfeld once again does not so much oppose the motion as quibble with its implicit definition of what would constitute entrapment evidence. He claims that he does not intend to present an entrapment defense, and asserts he will not elicit evidence about that issue. (Opp'n, Doc. 160, #2781). At the same time, though, he warns that he does intend to elicit testimony about "the credibility, basis of knowledge, and/or bias of the government agents, government witnesses, and the government's investigation" and contends that any Order prohibiting entrapment evidence should not be construed to prevent him from doing so. (*Id.*). In reply (Doc. 176, #2855), the government expresses its doubts that Sittenfeld will really avoid impermissible entrapment evidence or argument at trial, and accordingly entreats the Court to rule on its Motion now.

Once again, though, the Court finds that the parties are largely in agreement on the legal issue that the motion presents. The government does not want evidence of entrapment introduced, and Sittenfeld disclaims any intent to do so. The Court thus **DENIES** the government's Motion in Limine to Preclude Entrapment Evidence or Argument (Doc. 131) as **MOOT**, but emphasizes that the government is free to re-raise the issue should its doubts prove prescient and Sittenfeld attempt to offer what it considers impermissible evidence or argument on entrapment.

Moreover, as it appears that Sittenfeld may attempt to elicit evidence that he thinks goes to bias, but that the government may consider improper entrapment evidence, the Court offers some additional guidance. Allegations of bias are typically built on a witness's individual motivations pertaining to relevant persons or entities, including business or personal relations with parties to the case. *See United States v. Sumlin*, 956 F.3d 879, 890 (6th Cir. 2020) (defining bias as "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, [his or her] testimony in favor of or against a party" (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984))). For example, a jilted ex-lover may have incentives to lie to inflict harm on the other. Or one partner in a business may have either tangible or intangible incentives to shade the truth, either in favor of, or against, the other partner. Thus, evidence regarding such relationships, how they are going, and the incentives that may arise as a result, is entirely appropriate.

Nor is the Court suggesting that such relationships are the sole way of proving bias. Rather, evidence of bias "encompasses all facts and circumstances which, when tested by human experience, tend to show that a witness may shade [his or her] testimony for the purpose of helping to establish one side of a cause only." *Majestic v. Louisville & N.R. Co.*, 147 F.2d 621, 627 (6th Cir. 1945).

But, with all of that said, it is not at all clear to the Court how evidence related, even indirectly, to *entrapment* would go to bias. At the very least, the Court warns Sittenfeld that, if by "bias," Sittenfeld means evidence that "the government wants to get people to do criminal things so that the government can arrest them," such a

theory, without more, would not be specific enough to constitute permissible evidence of a particular witness's "bias," but would instead be impermissible evidence of "entrapment." On the other hand, evidence that a particular cooperating witness had an arrangement with the government that gave the witness an incentive to testify against Sittenfeld, for example, would be admissible in an effort to show that the witness's testimony is entitled to less weight because of potential bias. In short, Sittenfeld is free to elicit otherwise admissible evidence that might suggest some individualized basis for bias on the part of a given witness, but the Court will not allow him to smuggle in evidence or argument suggestive of entrapment under the guise of pursuing some generalized "bias" that he believes the government as a whole has evinced against him.

I. **Sittenfeld's Good Acts Are Not Admissible Merely To Show That He Is A Good Person, But Evidence Of Certain Past Acts May Be Admissible Insofar As They Are Probative Of His Intent In Soliciting And Accepting The Campaign Contributions At Issue In This Case.**

In its Motion in Limine to Exclude Evidence and Argument Concerning "Good Acts" (Doc. 132, #2355), the government seeks to preclude Sittenfeld from introducing evidence of either specific prior "good acts" or "non-corrupt conduct," other than reputation or opinion evidence by character witnesses pursuant to Federal Rule of Evidence 405(a). Sittenfeld opposes the motion, but the argument is indirect. He states that at least some forms of evidence that could be construed as "good act evidence," such as, for example, that Sittenfeld is generally pro-business, should not be excluded, as they may give the jurors reason to believe that Sittenfeld's conduct (promoting or approving a development project) did not reflect a quid pro quo for the

campaign contributions, but rather was an innocuous result of his general pro-development tendencies. (Opp'n, Doc. 159, #2774).

The Court agrees with the government on that, as a general matter, defendants are not allowed to elicit evidence of prior good acts. So, here, for example, Sittenfeld could not introduce evidence that he gave significant charitable contributions, or that he regularly attended church, or that he drove for Meals on Wheels, or anything of the like. Perhaps more to the point, Sittenfeld also cannot introduce evidence whose only probative value would be to show that there were occasions when he dealt with constituents non-corruptly or without accepting bribes. *See United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014) (affirming exclusion of evidence that former county official "on several occasions … helped constituents 'without asking for … or receiving anything of value'"). The point is that Sittenfeld cannot introduce evidence of otherwise unrelated good conduct, either in hopes that the jury will "forgive him" out of sympathy or appreciation for his good acts, or so that they will conclude that he is generally an honest person who therefore likely behaved non-corruptly with respect to the specific campaign contributions at issue in this case.

But here, there is more to the story. While Sittenfeld's prior good acts are not admissible merely to support a propensity inference, and still less to support jury nullification based on mere sympathy, specific relevant conduct could be admissible as probative of Sittenfeld's state of mind in soliciting and accepting the campaign contributions at issue in this case. For example, to the extent that the government seeks to preclude Sittenfeld from explaining that he is generally pro-development,

the Court concludes that the government is wrong. To the Court's understanding, there is no evidence in this case that will show an express quid pro quo—Sittenfeld never wrote, or said, "I agree to perform [a specific official act], in exchange for a campaign contribution." Thus, the jury will need to decide whether to draw an inference, from circumstantial evidence, that Sittenfeld nevertheless intended to agree to such an arrangement.

In making that determination, Sittenfeld's philosophy, or history, regarding development efforts in Cincinnati may be an appropriate consideration. Imagine, for example, that Sittenfeld had never before promoted any development project, but instead had always lobbied his colleagues against them. And then further imagine that, after accepting a campaign contribution from a particular donor, he proceeded to promote only that donor's project, but no other. That could support an inference that Sittenfeld had agreed to provide such support in exchange for the contribution. If, on the other hand, he had always supported such development projects, that could tend to negate any inference that might otherwise arise that Sittenfeld's intent was to exchange support for the project for campaign contributions as part of a quid pro quo. Of course, nothing would *require* a jury to infer from Sittenfeld's general support for development that his support for a particular project did not result from a quid pro quo. But to the Court's knowledge, there is no rule of evidence or substantive law that would render such an inference legally impermissible either.

In short, the Court will allow Sittenfeld to introduce evidence on topics such as his demonstrated views on development, but will not allow him to introduce evidence

29

regarding unrelated good acts generally. To that extent, the Court **GRANTS IN PART** and **DENIES IN PART** the government's Motion in Limine to Exclude Evidence and Argument Concerning "Good Acts" (Doc. 132).

### J. Kevin Flynn May Offer Limited Background Testimony About The Cincinnati City Council.

Sittenfeld has filed a Motion in Limine to Exclude the Testimony of Kevin Flynn (Doc. 133). Flynn is a former member of the Cincinnati City Council. The government intends to call him to provide background information as to how Cincinnati city government works when it comes to economic development activities. (Opp'n, Doc. 166, #2809). For example, the government claims he can explain the various departments that are typically involved in development projects, the division of work and relationships among them, and what a councilmember's responsibilities are. (*Id.*). Sittenfeld claims that such evidence is irrelevant, or that, to the extent it has any marginal relevance, the probative value is substantially outweighed by the potential for prejudice given extrinsic evidence that he claims calls into question Flynn's credibility. (Mot., Doc. 133, #2366–68).

The Court disposes of the last objection first. Flynn's credibility is a matter for cross-examination, not a basis to preclude his taking the stand at all. *See, e.g., Peters v. DCL Med. Labs. LLC*, 305 F. Supp. 3d 799, 812 (S.D. Ohio 2018) (challenges to reliability of opinion witness's testimony based on external evidence of bias went to credibility, not admissibility).

The Court likewise disagrees with Sittenfeld on the relevance front. Understanding how the various parts of the city machinery mesh together strikes the

30

Court as valuable background information for understanding Sittenfeld's conduct here. Did Sittenfeld undertake steps to promote a particular project that are atypical for Cincinnati City Council members? If so, that may give rise to (but certainly not compel) an inference that Sittenfeld was taking special care to ensure that the project advanced expeditiously—perhaps (although again not necessarily) giving rise to an inference that he did so in exchange for a contribution from that project's sponsor. To be sure, such evidence would not *prove* any of these inferences, but it would make them at least somewhat more probable than they would be without that evidence. And that is all that Rule 401's relevance standard requires.

Nor does the fact that Flynn is not a current member of the Cincinnati City Council change that result. His participation strikes the Court as recent enough that his knowledge on such topics would still have been salient at the time of the events at issue here. To be sure, Sittenfeld can explore that issue further on cross-examination, but the Court finds that the passage of time is not a basis to exclude his testimony on these topics outright.

That leaves Sittenfeld's argument that Flynn's testimony would be more unfairly prejudicial than probative. Based on the Court's current understanding of Flynn's testimony, which is focused on background regarding how units of the Cincinnati city government function together, the Court concludes that the unfairly prejudicial effect of Flynn's will not categorically outweigh its probative value such that he must be prevented from testifying entirely. But the Court notes a couple of danger zones. First, it would be improper for the government to use Flynn's testimony

as an opportunity to politicize this trial by focusing attention on public disagreements or rivalries between Flynn and Sittenfeld or among others affiliated or aligned with either of them. This would be especially so given the government's own insistence that this trial is about bribery, extortion, and wire fraud, not whether particular real estate development projects were good or bad for Cincinnati. (If Sittenfeld opens the door on this topic during cross-examination by using past disagreements or rivalries between the two to suggest that Flynn is biased, the Court will allow the government to explore the topic more fully on redirect.) Second, while Flynn may offer opinion testimony as a lay witness under Federal Rule of Evidence 701, such evidence must be "rationally based on [his] perception." To the extent that the government hopes to elicit generalizations from Flynn about the usual, proper, or permissible role of the Cincinnati City Council in development projects, it must (at least) be prepared to substantiate that those generalizations would have a basis in Flynn's personal knowledge, or risk the Court sustaining an objection to that testimony for lack of foundation.

With those caveats, the Court **DENIES** Sittenfeld's Motion in Limine to Exclude the Testimony of Kevin Flynn (Doc. 133).

## K. The Government Agrees Not To Introduce "Culture Of Corruption" Argument or Evidence As Such, But Mere Mention Of Other Instances Of Alleged Political Corruption Is Not Categorically Inadmissible.

In his Motion in Limine to Exclude Evidence Regarding Larry Householder, Tamaya Dennard, Jeff Pastor, "Culture of Corruption," and Civil Open Meetings Violation (Doc. 134, #2370), Sittenfeld seeks to preclude evidence tending to show

that there was a "culture of corruption" at Cincinnati City Hall, or comparing the allegations against Sittenfeld to those against Cincinnati City Council members Tamaya Dennard and Jeff Pastor and former Speaker of the Ohio House of Representatives Larry Householder, or discussing investigations into alleged open meetings violations at Cincinnati City Council meetings. According to Sittenfeld, all such evidence is irrelevant, or, at the very least, the probative value is substantially outweighed by the potential for unfair prejudice. (*Id.*).

Again here, the government does not really disagree. As has been the case with a number of the motions in limine discussed in this Opinion, the government disclaims any intent to introduce evidence that would run afoul of Sittenfeld's proposed restrictions. (Opp'n, Doc. 169, #2826). Indeed, the government emphasizes that it also wishes to exclude all statements made at the press conference announcing Sittenfeld's Indictment, which included comparisons of the kind that Sittenfeld seeks to bar here. That said, the government also notes that Householder's or Pastor's names may come up in the recorded conversations, for example, when describing efforts to pass sports betting legislation relevant to the project at issue in this case. (*Id.* at #2827).

Because it appears that the parties are largely in agreement on the issue, the Court **DENIES AS MOOT** Sittenfeld's Motion in Limine to Exclude Evidence or Argument Regarding Larry Householder, Tamaya Dennard, Jeff Pastor, "Culture of Corruption," and Civil Open Meetings Violation (Doc. 134). That said, to the extent that Sittenfeld is asking the Court to adopt a categorical rule that *any* mention of

33

those topics, even brief mentions of the type that the government anticipates, is necessarily more unfairly prejudicial than probative, and therefore inadmissible, the Court rejects that argument. Instead, evidence that mentions these topics will be subject to the same Rule 403 balancing analysis as any other evidence.

As with all Orders on motions in limine, this is a preliminary determination. A final ruling regarding any specific evidence must await trial.

**L.     The Government May Present Evidence That Sittenfeld Received, And Did Not Report As Required, A Bottle Of Scotch And A Box Of Cigars.**

It is undisputed that Sittenfeld's Motion in Limine to Exclude Testimony Regarding an Unsolicited Gift (Doc. 137) is directed at a bottle of scotch and a box of cigars that undercover agents gave Sittenfeld. But there is a pointed dispute as to the underlying meaning of that gift. Sittenfeld claims that he understood it as a congratulatory gift for his first child, and that he had no idea that the value of the two items exceeded $75, which is why he did not report the gift. (*Id.* at #2385). The government, on the other hand, contends that the witnesses who gave him the gift mentioned their congratulations, but also noted that it was a thank-you as Sittenfeld had "worked [his] ass off for [them]." (Opp'n, Doc. 170, #2831).

At the admissibility stage, these competing facts set up the competing arguments. Sittenfeld claims that the gift is not relevant, or at the very least should be excluded under Rule 403 as more unfairly prejudicial than probative, and under Rule 404(b) as impermissible character evidence. (Mot., Doc. 137, #2387). The government, on the other hand, claims that this little saga is tell-tale circumstantial evidence tending to show that Sittenfeld had agreed to work on the donors' behalf in

exchange for their contributions. That is so, the government says, both because the witnesses told Sittenfeld that it was a thank-you for such work, and because Sittenfeld did not disclose the gift on his ethics report, suggesting that he was trying to hide it as evidence of wrongdoing. (Opp'n, Doc. 170, #2832–33).

On the present record, the Court cannot say that either view of the facts is so unsupported that a reasonable jury could not accept it. And that is a problem for Sittenfeld. For understood in the way the government suggests, the evidence (1) is not subject to Rule 404(b), as it is inextricably intertwined with the charged conduct, (2) is relevant, as it tends to show intent and knowledge of wrongdoing, and (3) has probative value that is not substantially outweighed by the risk of unfair prejudice.

Because the evidence at issue could, on the present record, be understood as consistent with either Sittenfeld's version of events or the government's, the Court concludes that the evidence regarding the gift, and its non-disclosure, can properly go to the jury. The Court therefore **DENIES** Sittenfeld's Motion in Limine to Exclude Testimony Regarding an Unsolicited Gift (Doc. 137).

## M.  Sittenfeld May Introduce Evidence That He Invited A U.S. Attorney To A Dinner To Which He Had Also Invited The Undercover Cooperating Witnesses, But Not That The U.S. Attorney Attended The Dinner.

There is something of a mismatch between the title the government has placed on its Motion to Exclude Dinner Invitation (Doc. 138) and the contents of that Motion. The label suggests that the government is seeking to exclude evidence that the then-U.S. Attorney was *invited* to a dinner party at Sittenfeld's house, a dinner party to which Sittenfeld had also invited certain persons who (unbeknownst to Sittenfeld)

were undercover cooperating witnesses. The body of the motion, though, suggests that it is the then-U.S. Attorney's *attendance* at the dinner party that the government believes would give rise to the evidentiary problems it cites. The government notes, for example, that the fact that "Mr. Glassman and his wife attended a dinner party at the defendant's home" is not relevant. (Mot., Doc. 138, #2391). The government then also explains that "[i]f it comes out at trial that the then-U.S. Attorney went to the defendant's house for a dinner party," further explanation will be required that may turn something that the government considers a non-event instead into the main course. (*Id.* at #2392).

In responding, Sittenfeld focuses, by contrast, on the invitation itself. He notes that it would be a bold move if Sittenfeld were to invite people who, under the government's account, Sittenfeld thought were essentially co-conspirators (i.e., the people who were paying Sittenfeld the alleged bribe) to dinner with the then-U.S. Attorney. (Opp'n, Doc. 163, #2800). From that, Sittenfeld hopes that the jury will infer that the more sensible explanation is that Sittenfeld understood the arrangement with the undercover cooperating witnesses to be a typical political contributor arrangement, one that did not include an unlawful quid pro quo.

The Court agrees at some level with both sides. The fact that Glassman and his wife in fact attended the dinner party seems entirely irrelevant. At the same time, the fact that Sittenfeld chose to *invite* the undercover witnesses to the same dinner party to which Sittenfeld had *invited* the Glassmans does seem to offer at least some

indirect support for his claim that he had not intentionally entered any impermissible quid pro quo arrangement with the undercover cooperating witnesses.

Accordingly, the Court concludes that Sittenfeld can introduce evidence, whether by the proposed stipulations along the lines of those listed in the government's motion (Doc. 138, #2390), subject to any objection to their wording, or through another appropriate means, of the invitations to the various parties. If the government wishes, though, the Court will preclude Sittenfeld from offering evidence as to whether either Glassman or the UCs actually attended the dinner party. In short, it is the invitation, not the attendance, that Sittenfeld contends, and the Court agrees, carries probative value on the facts here. The Court thus **GRANTS IN PART** and **DENIES IN PART** the government's Motion to Exclude Dinner Invitation (Doc. 138).

### N.   Statements From The Government's Press Conference Announcing The Indictment In This Case Are Inadmissible.

In its Motion to Exclude Press Conference (Doc. 139), the government seeks to exclude statements that U.S. Attorney's Office and Federal Bureau of Investigation ("FBI") personnel made at a press conference announcing the Indictment in this case. According to the government, such statements are either hearsay that do not fall within any exception, or are barred by the balancing test under Federal Rule of Evidence 403. (*Id.* at #2397, 2400). Sittenfeld, by contrast, claims that the statements fall within the public records exception to hearsay under Rule 803(8). (Opp'n, Doc. 161, #2787). He further claims that, because the statements are demonstrably false,

they are indicative of bias against him, and go to the government's (and its agents') credibility. (*Id.* at #2789).

The Court rejects Sittenfeld's arguments on this matter. In essence, Sittenfeld seeks to introduce the statements, which are not evidence, but accuse him of wrongdoing, solely for the purpose of then turning around and explaining to the jury why those statements are false. The Court agrees with the government that doing so threatens to confuse the jury far more than it would assist them. The statements at the press conference are not evidence; indeed, the allegations in the Indictment itself are not evidence. The Court rejects the appropriateness of Sittenfeld intentionally injecting non-evidentiary allegations into this trial, solely for the purpose of Sittenfeld then disputing the very allegations that he introduced. Nor does this evidence strike the Court as demonstrative of "bias." The personnel may (or may not) have made incorrect statements, but Sittenfeld's argument that this, without more, goes to bias exemplifies exactly the type of generalized government-bias theory that the Court discussed and rejected above in the context of entrapment evidence. Assuming that the personnel at the press conference made false statements of law or fact, as Sittenfeld appears to suggest, the Court concludes that the better approach is to prevent the jury from hearing those falsehoods to begin with, not to parade them in front of the jury where they will distract from consideration of what is properly at issue in the case. The Court thus **GRANTS** the government's Motion to Exclude Press Conference (Doc. 139).

**O.    The Government May Introduce Recorded Conversations For A Purpose Other Than The Truth Of The Matter Asserted Even Though Their Participants Are Unavailable For Cross-Examination.**

In his Motion in Limine Regarding Foundation, Confrontation, and Predication (Doc. 141), Sittenfeld seeks to prevent the government from playing recordings of conversations between himself and undercover agents or cooperating witnesses unless those individuals also testify to the contents of the conversations. Sittenfeld claims that introducing such recordings would violate the Confrontation Clause. (*Id.* at #2427–28). The Court disagrees.

As the government notes, the Sixth Circuit has held that the Confrontation Clause applies only where a witness's out-of-court statement is being offered for the truth of the matter asserted. *See, e.g., United States v. King*, 865 F.3d 848, 850 (6th Cir. 2017) ("To establish a Confrontation Clause claim, the defendant must as an initial matter establish that the government used an out-of-court statement for its truth.") (citing *Michigan v. Bryant*, 562 U.S. 344, 369 (2011)). So, for example, in *King*, the Sixth Circuit held that no Confrontation Clause issue arose, as the recorded out-of-court statements were not offered for the truth of what the witness said, but rather to show what the defendant believed the facts to be, based on what the witness had said. In particular, there the government needed to establish that the defendant believed the money at issue to be "proceeds of unlawful activity." *Id*. (citing 18 U.S.C. § 1956(a)(3)). Of course, the money that the witness was discussing was not *in fact* such proceeds, but what mattered was whether the defendant *believed* that it was. Thus, the Sixth Circuit said that the Confrontation Clause did not preclude playing

the recorded out-of-court conversations, as they were being used "to prove what was 'represented,' not whether it was true." *Id.*

That same logic dooms Sittenfeld's arguments here. The government is not offering the undercover agents' statements for the truth of what they said. Rather, the government is offering them to prove what Sittenfeld believed, based on what they said. In other words, presumably the undercover agents here were not *in fact* offering a bribe, and did not *in fact* intend to make a deal with Sittenfeld where Sittenfeld would agree to secure approval for a real estate project in exchange for campaign contributions. Rather, the government intends to offer the recorded conversations to show that Sittenfeld *believed* that was the offer he was accepting. Under the Sixth Circuit's opinion in *King*, that use does not trigger Confrontation Clause concerns. *See also United States v. Parsons*, 798 F. App'x 922, 926 (6th Cir. 2020) (holding that recording was admissible where it "was used to show not that the informant wanted drugs, but, instead, *that [the defendant] believed she did* and, in turn, that [the defendant] intended to meet that demand while possessing a firearm") (emphasis added). The Court accordingly **DENIES** Sittenfeld's Motion in Limine Regarding Foundation, Confrontation, and Predication (Doc. 141).

## P.  The Court Will Not Allow A Jury View Of The Real Estate Development Project At Issue In This Case.

In a short Motion for Jury View (Doc. 146) that cites no case law, Sittenfeld asks the Court to order a jury view of the real estate development project that plays a central role in the allegations against Sittenfeld. The government opposes, noting

that the relative merits of the project from a development standpoint are largely irrelevant to the allegations here. (Opp'n, Doc. 173, #2845).

As a general matter, jury views are disruptive to the trial process, and courts should order them only if both (1) the property at issue is for some reason central to the case, and (2) the relevant attributes of that property cannot be sufficiently conveyed by photographs or other forms of evidence that can be presented in court. *See, e.g., United States v. Simmons*, 174 F. App'x 913, 918 (6th Cir. 2008); *United States v. Moonda*, 347 F. App'x 192, 201 (6th Cir. 2009). Here, a detailed view of the project is not central to the case. As the government notes, the relative merits of the project are largely irrelevant. That is because, even if Sittenfeld would have supported the project absent a bribe, if he did so *in exchange for a bribe* that would still be a crime. *See United States v. Brewster*, 408 U.S. 501, 527 (1972) ("Inquiry into the legislative performance itself is not necessary; evidence of the [defendant's] knowledge of the alleged briber's illicit reasons for paying the money is sufficient…."). True, as noted above, to the extent that the project is something that Sittenfeld would have supported even absent a bribe, that may tend to negate any inference that the jury might otherwise draw based on his support. But, on that front, photographs, or perhaps even a video, should be enough to give the jury a sufficient sense of the project to support that argument (to the extent that the facts may bear it out). Accordingly, the Court **DENIES** Sittenfeld's Motion for Jury View (Doc. 146).

**Q.  Sittenfeld May Engage In Limited Cross-Examination of Chinedum Ndukwe And UCE-1 Regarding The Separate Allegations Of Misconduct Against Each Of Them.**

In its Motion to Exclude Improper Impeachment Evidence (Doc. 180), the government seeks to limit the information on which Sittenfeld can rely in impeaching four government witnesses: Chinedum Ndukwe, UCE-1, UCE-2, and Special Agent Nathan Holbrook. As to each, the government is concerned that Sittenfeld may use alleged prior "bad acts" by the witness to impeach that witness's credibility. And the government claims that, on the facts here, use of the particular acts at issue would violate the Federal Rules of Evidence, either by going outside the contours that Federal Rule of Evidence 608(b) establishes for such impeachment, or because the probative value of those prior acts as to the witness's credibility is substantially outweighed by unfair prejudice under Federal Rule of Evidence 403.

Because the specific conduct at issue varies as to each of the four witnesses, the Court addresses each separately. But the Court can take care of two of the four quickly—Sittenfeld agrees not to rely on the conduct that the government raises as to Holbrook, and Sittenfeld did not oppose the government's motion as to the conduct at issue for UCE-2. (*See generally* Opp'n, Doc. 150; *see also id.* at #2636). The Court thus **GRANTS** the government's Motion to Exclude Improper Impeachment (Doc. 180) as to those two witnesses. That leaves Ndukwe and UCE-1, to whose permissible impeachment the Court turns now.

1. **Sittenfeld May Elicit Evidence As To Sittenfeld's Knowledge Of The Sexual Assault Allegations Against Ndukwe As Probative Of Sittenfeld's Intent.**

During the course of the investigation that led to the Indictment in this case, unrelated sexual assault allegations arose against Ndukwe. The government moves to prevent Sittenfeld from relying on those allegations to impeach Ndukwe. (Mot., Doc. 180, #2877).[3] For his part, Sittenfeld appears to disclaim any intent to use those allegations for impeachment purposes. (Opp'n, Doc. 150, #2637). But he nonetheless contends that inquiry around the allegations is proper, as Sittenfeld's *response* to those allegations, when Sittenfeld learned of them, may be indicative of whether Sittenfeld believed he had entered into a quid pro quo arrangement (i.e., felt he had obliged himself to support the project in exchange for contributions), or instead whether he believed he was free to withdraw his support at any time (i.e., suggesting that no quid pro quo existed). And, on that front, the government seems to agree, at least in part. In its reply (Doc. 181, #2886), the government acknowledges that the fact of the allegations, and the role that they played in discussions between Sittenfeld and others, are likely to come up at trial. But, the government says, that is no reason to allow Sittenfeld to impeach Ndukwe based on those allegations. (*Id.*).

The Court largely agrees with both Sittenfeld and the government. More specifically, the Court agrees that Sittenfeld's knowledge of the allegations, and their impact on him, is a permissible source of inquiry at trial. The Court also agrees with

---

[3] This citation is to the unsealed redacted version of the government's Motion, which the government did not file on the docket until after Sittenfeld responded to the sealed version of its Motion (Doc. 142).

both parties that there is no need to redact reference to those allegations from any of the recorded conversations—indeed, to the contrary, those allegations seem a potentially important part of such calls for the reasons that Sittenfeld raises. At the same time, though, the Court agrees with the government that Sittenfeld has failed to establish any permissible basis for attempting to impeach Ndukwe through use of the allegations. Nor is there any reason to go beyond a general description of the allegations in using them for the purposes that Sittenfeld suggests.

Thus, the Court concludes that Sittenfeld cannot rely on the allegations for impeachment, but that both Sittenfeld and the government may introduce and elicit testimony about the allegations in terms of establishing what Sittenfeld did, or did not do, in response to them, and what that might say about whether a quid pro quo existed. In doing so, though, the Court instructs both parties to limit any references to the specific details regarding those allegations, and instructs the parties not to delve into the terms of any settlement agreement relating to those allegations, as neither are necessary to the permissible purposes for which the allegations may be used. The Court therefore **GRANTS IN PART** and **DENIES IN PART** the government's Motion to Exclude Improper Impeachment (Doc. 180) as to Ndukwe as discussed above.

### 2. Sittenfeld May Engage In Limited Cross-Examination of UCE-1 Regarding The Disputed Material.

The allegations regarding UCE-1 have been the subject of sealing throughout the pre-trial litigation process in this case. (*See* Op., Doc. 63, #775–76 (citing *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016))).

Consistent with that, and based on a finding that a seal on the information remains warranted at this juncture under *Shane Group* and its progeny, the Court addresses the information relevant to this portion of the government's motion in a separate Order that the Court will file under seal. Assuming UCE-1 testifies at trial, though, the Court intends to allow Sittenfeld to examine him consistent with the Court's instructions in that sealed Order.

**R.    The Court Defers Ruling On Sittenfeld's Experts Pending Voir Dire.**

As discussed at the final pretrial conference in this case, the Court will defer ruling on the government's Motion to Exclude Expert Testimony (Doc. 100) until after *voir dire* of the relevant experts. (Tr., Doc. 149, #2585). The Court reminds defense counsel of the Court's advice not to promise the jury that it will hear from these expert witnesses in the opening statement. (*Id.* at #2605). Generally speaking, appropriate testimony from Sittenfeld's proposed campaign finance expert, Caleb P. Burns, might consist of rebutting any suggestion arising from the government's case-in-chief that the way the contributions at issue in this case were structured (for example, the fact that they went through a political action committee) is evidence of wrongdoing or wrongful intent on Sittenfeld's part. Inappropriate testimony would be any that would usurp the Court's function of instructing the jury as to the applicable law, or any that would support jury nullification along the lines of "this is how everyone does it," as already discussed in this opinion. As for Edward FitzGerald, the Court reiterates its concerns expressed at the final pretrial conference about his qualifications as an expert on law enforcement investigative techniques. (Tr., Doc.

149, #2591–92). But again, the Court defers ruling on the government's Motion to Exclude Expert Testimony (Doc. 100) at this time.

## CONCLUSION

For the foregoing reasons, the Court (1) **DENIES AS MOOT** the Motion in Limine to Preclude Reference to and Comments Regarding Discovery (Doc. 130) and Motion in Limine to Preclude Entrapment Evidence or Argument (Doc. 131); (2) **GRANTS** the Motion in Limine to Preclude Argument and Evidence Supporting Jury Nullification (Doc. 113) and Motion to Exclude Press Conference (Doc. 139); (3) **GRANTS IN PART** and **DENIES IN PART** the Motion in Limine to Exclude Evidence and Argument Concerning "Good Acts" (Doc. 132), Motion to Exclude Dinner Invitation (Doc. 138), and Motion to Exclude Improper Impeachment (Doc. 180); and (4) defers ruling on the Motion to Exclude Expert Testimony (Doc. 100).

The Court also (1) **GRANTS IN PART** and **DENIES IN PART** the Motion to Exclude Proffered 404(b) Evidence (Doc. 111), Motion to Enforce the Rule of Completeness and Federal Rule of Evidence 106 (Doc. 121), and Motion in Limine to Admit Defendant's Statements (Doc. 128), as discussed above; (2) **DENIES** the Motion to Exclude Testimony of J.K. (Doc. 115), Motion in Limine for an Order Barring the Government's Use of a Summary for Failure to Follow the Requirements of Federal Rule of Evidence 1006 (Doc. 127), Motion to Exclude Testimony of Kevin Flynn (Doc. 133), Motion in Limine to Exclude Testimony Regarding an Unsolicited Gift (Doc. 137), Motion in Limine Regarding Foundation, Confrontation, and Predication (Doc. 141), and Motion for Jury View (Doc. 146); and (3) **DENIES AS**

**MOOT** the Motion to Exclude Evidence Regarding Post-Indictment Status of Donations (Doc. 129) and Motion in Limine to Exclude Evidence Regarding Larry Householder, Tamaya Dennard, Jeff Pastor, "Culture of Corruption," and Civil Open Meetings Violation (Doc. 134).

  **SO ORDERED.**

June 17, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**