### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 1-20-CR-142 |
| Plaintiff | : | Hon. Douglas R. Cole |
| vs. | : | |
| ALEXANDER SITTENFELD a/k/a "P.G. Sittenfeld | : | MOTION FOR DISCLOSURE OF JURY QUESTIONNAIRES |
| Defendant | : | |

The Cincinnati Enquirer, a division of Gannett GP Media, Inc. ("the Enquirer") moves this court for an order to disclose complete jury questionnaires.

### MEMORANDUM IN SUPPORT

The United States Supreme Court has held that the right to attend criminal proceedings "is implicit in the guarantees of the First Amendment." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 556 (1980). This First Amendment right of public access extends to pretrial proceedings as well as documents filed in connection with those proceedings. *See, Application of Nat'l Broad. Co., Inc.,* 828 F.2d 340 (6th Cir. 1987).

This right of access, however, is not absolute and may be overcome "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest*." Press Enterprise Co. v. Superior Court*, 464 U.S. 501, 508-10 (1984). The trial court must clearly articulate the interest to be protected, and consider all reasonable alternatives before closure*. See, Presley v. Georgia*, 558 U.S. 209, 214 (2010) (holding that it is "incumbent upon [the trial court] to consider all reasonable alternatives to closure").

Although a trial judge has the discretion to conduct part of the *voir dire* process via a written questionnaire, it is important for the press and public, "to be able to have access to, see, and report on the jury questionnaires that are actually part of the jury selection process." *United States v. Bonds*, No. C 07-00732 SI, 2011 WL 902207 (N.D. Cal. Mar. 14, 2011).

While neither the Supreme Court nor the Sixth Circuit have expressly extended this presumption of access to juror questionnaires, courts that have confronted the question have held that jury questionnaires are part of *voir dire* and are subject to public access. *See In re Access to Jury Questionnaires*, 37 A.3d 879, 886 (D.C. 2012) ("Every court that has decided the issue has treated jury questionnaires as part of the voir dire process and thus subject to the presumption of public access.") (citing *In re South Carolina Press Ass'n,* 946, F.2d 1037, 1041 (4th Cir. 1991), and collecting other cases); see also *Stephens Media, LLC v. Eighth Judicial District Court*, 221 P.3d 1240, 1245 (Nev. 2009); *Forum Commc'ns Co. v. Paulson*, 752 N.W.2d 177, 182–83 (N.D. 2008); *Ohio ex rel. Beacon Journal Publ'g Co. v. Bond*, 781 N.E.2d 180, 187–89 (Ohio 2002); *United States v. Bonds*, No. C 07-00732 SI, 2011 WL 902207, at *3 (N.D. Cal. Mar. 14, 2011); *United States v. McDade*, 929 F. Supp. 815, 817 n.4 (E.D. Pa. 1996*); In re Washington Post*, No. 92-301, 1992 WL 233354, at *2 (D.D.C. July 23, 1992); *Copley Press, Inc. v. Superior Court*, 228 Cal. App. 3d 77, 89 (1991).Under these precedents, the juror questionnaires should not be kept from the public without specific findings of fact that meet the required strict scrutiny. *See Press-Enterprise I*, 464 U.S. at 510.

In response to the previous Motion to Disclose Jury Questionnaires filled by the Enquirer, this court granted redacted access which was limited to demographic information of the jurors. However, redacting names or juror numbers on questionnaires is a limitation on the public access to *voir dire* that could not be achieved in the courtroom setting without an order, based on specific findings that such redactions are necessary to serve compelling interests. *See United States v. Wecht*, 537 F.3d 222, 238 (3d Cir. 2008)

Courts have found that the redaction of juror identities require "exceptional circumstances," such as "a credible threat of jury tampering, a risk of personal harm to individual jurors, and other evils affecting the administration of justice." *In re Globe Newspaper Co.,* 920

F.2d 88, 97 (1st Cir. 1990). Accordingly, courts that have considered questionnaire access issues have implied or assumed without discussion that openness requires releasing questionnaires capable of being matched to individual jurors. *See, e.g., Bonds*, 2011 WL 902207, at *3 (ordering disclosure of numbered questionnaires so that the press and public "have open and meaningful access" to voir dire, "just as they would have had access to the questions and answers if the Court had conducted an extended oral voir dire"); *Stephens Media*, 221 P.3d at 1255 (ordering the district court to release "all unredacted completed juror questionnaires"); *In re Access to Jury Questionnaires*, 37 A.3d at 883, 885, 889 (stating that "the public-at-large has a valid interest in 'learn[ing] whether the seated jurors are suitable decision-makers,'") (quoting *United States v. Blagojevich*, 612 F.3d 558, 561 (7th Cir. 2010)); *Beacon Journal*, 781 N.E.2d at 196 (holding that any "nondisclosure of any name, address, or questionnaire response" must meet the *Press-Enterprise I* test).

Additionally, courts have recognized that jury questionnaires are a tool used to expedite the jury selection process. *Beacon Journal,* 781 N.E.2d at 188 ("the purpose behind juror questionnaires is merely to expedite the examination of prospective jurors"). If they were not utilized, jury selection would be conducted orally and the public would be able to observe each juror, hear each response, and identify who was selected. By electing to use a written questionnaire, the court substituted this live testimony with closed written responses. Therefore, redaction of names and responses undermines the original purpose of the public's right to access to *voir dire* proceedings without any showing of an overriding interest. *See Press-Enterprise I*, 464 U.S. at 509–10 (stating that closed proceedings "must be rare and only for cause shown that outweighs the value of openness").

In providing demographic juror information, the court referenced its legitimate concern with jury tampering. Given that that the trial has concluded, and a verdict rendered, potential juror tampering is no longer an issue. And while The Enquirer does not object to redacting truly personal information (such as medical history or cell phone numbers), the identity of the jurors does not qualify for confidential treatment. A criminal trial is a public proceeding and the public has a right to know which members of the public reached a verdict to convict a former city councilmember.

For the foregoing reasons, the Enquirer respectfully requests this Court to grant its request to make publicly available the complete juror questionnaires.

Respectfully submitted,

*/s/ John C. Greiner*
John C. Greiner (0005551)
GRAYDON HEAD & RITCHEY
312 Walnut Street
Suite 1800
Cincinnati, OH  45202-3157
Direct:  (513) 629-2734
Fax:     (513) 333-4316
E-Mail:  jgreiner@graydon.law

4

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed with the Court's CM/ECF System this 12th day of July 2022, which provides electronic notice to all parties.

*/s/ John C. Greiner*
John C. Greiner (0005551)

11970780.1