**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1-20-cr-142 |
| Plaintiff, | Hon. Douglas R. Cole |
| v. | MOTION FOR LEAVE |
| ALEXANDER SITTENFELD, a/k/a "P.G. Sittenfeld," | TO CONDUCT FORENSIC EXAMINATION OF RELEVANT DEVICES |
| Defendant. | OF JUROR X |

Defendant Alexander "P.G." Sittenfeld, through counsel, moves this Court for leave to conduct a forensic examination of the relevant devices of Juror X pursuant to <u>United States v. Lanier</u>, 988 F.3d 284, 287 (6th Cir. 2021). A memorandum in support follows.

*/s/ Gus J. Lazares*
Gus J. Lazares
Charles M. Rittgers
Charles H. Rittgers
Neal D. Schuett
Rittgers & Rittgers
12 East Warren Street
Lebanon, OH 45036
(513) 932-2115

charlie@rittgers.com

*Counsel for the Defendant*

Date: July 22, 2022

**RITTGERS & RITTGERS**
**Attorneys at Law**

12 East Warren Street Lebanon,
Ohio 45036
TEL (513) 932-2115
FAX (513) 934-2201

**Memorandum in Support**

**I.     Background**

Shortly before the verdict was announced on July 8, 2022, the Court simultaneously informed the parties that a verdict had been reached in Mr. Sittenfeld's case and that courthouse staff had learned that Juror X,[1] a juror in Mr. Sittenfeld's case, had made multiple posts on Facebook during and regarding the case. Tr., Doc# 212, PageID 3289. At this hearing, the Court provided the parties with two sets of screenshots of the posts, along with many comments by others to Juror X's Facebook posts. See Exhibits 2 & 3.

Juror X's posts alleged, among other things, that Juror Y "shouldn't be on the jury" because Juror Y "hates anyone that shares the same profession as our person on trial. Not Cool!!" Ex. 4, p. 19. The comments to Juror X's posts also included a news article about the case. Ex. 3, p. 2. Juror X made the posts during jury selection, during the trial, and on the night before the verdict was announced. See Ex. 2, 3 & 4.

Based on the posts, Counsel for Mr. Sittenfeld moved for a mistrial before the verdict was announced. Tr., Doc #212, PageID 3302-03. The Court denied the motion for a mistrial and the verdict was announced. Id. at PageID 3303.

Immediately following the verdict, the Court held an in-chambers hearing at which Jurors X and Y testified. Id. at PageID 3304. ██████████████████████████████████

██████ On July 11, 2022, the court provided the parties with additional screenshots of Juror X's Facebook posts. Ex. 4. These were similar, but not identical, to what had been provided on July 8, 2022. See Ex. 2, 3 & 4. The week following that hearing, Counsel for Mr. Sittenfeld moved to

---

[1] The Jurors are identified here as X, Y, and Z pursuant to previous Court order.

preserve the electronic communications of Juror X on her relevant devices. Doc# 213. The Court granted the motion and ordered Juror X to preserve her electronic communications. Doc# 215. In response, Juror X informed the Jury Coordinator that she had deleted her Facebook posts sometime after the post-verdict in-chambers conference that occurred on July 8, 2022. This motion for a forensic examination of Juror X's relevant devices follows.

**II.     Argument**

"The Sixth Amendment guarantees a defendant the right to trial by an impartial jury." United States v. Lanier, 988 F.3d 284, 294 (6th Cir. 2021) (citing U.S. CONST. amend. VI). "In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial[.]" Id. (quoting Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954)) (alterations in original). "When a defendant raises a 'colorable claim of extraneous influence[,]' a district court must fulfill its 'duty to investigate and to determine whether there may have been a violation of the [constitutional guarantee].'" Id. (alterations in original) (quotation omitted). While the Sixth Circuit is the only Circuit that requires the defendant to prove bias at a Remmer hearing, "a district court abuses its discretion by denying a defendant a 'meaningful opportunity' to demonstrate jury bias." Id. at 295 (quotation omitted). Indeed, "'it is the *trial* judge's responsibility to conduct an adequate investigation, given the unsatisfactory character of an inquiry into jury bias after the trial is over and the defendant convicted.'" Id. at 298 (*emphasis in original*) (quotation omitted).

In order to conduct a Remmer hearing that provides the defendant with a "meaningful opportunity" to demonstrate juror bias, the Court must allow for investigation into "the 'circumstances' of the external communications, the 'impact' of the communications on the jury,

2

and whether or not [the communications were] prejudicial.'" Id. at 295 (alteration in original) (quotation omitted). Whether a given Remmer hearing is constitutionally adequate "'is a function of the probability of bias; the greater that probability, the more searching the inquiry [into juror bias is] needed.'" Id. at 296 (alteration in original) (quotation omitted). When a defendant presents "substantiated and reasonable concerns about the growing difficulty of recovering deleted data as time passes" a "timely forensic examination" of a juror's relevant electronic devices is a "sensible request." Id. at 297. Moreover, "the necessity of recovering t[he] data" becomes "apparent" when a juror engages in conduct such as speaking with others about the case, researching the case, or providing "spurious and inconsistent testimony" about the case. Id. at 296-97.

The Sixth Circuit in Lanier also enumerated examples of constitutionally insufficient investigatory steps that do not provide a defendant with a "meaningful opportunity" to demonstrate juror bias. These include taking "screenshots of the juror's devices instead of appointing a forensic expert to examine the devices properly." Id. at 297. They also include "prolonged delays" that result in only allowing a defendant to forensically "image a phone that no longer exists and a computer that has been wiped of all germane information." Id. at 297-98.

It is no answer to say that here Juror X was already questioned at a Remmer hearing. The offending juror in Lanier was questioned under oath twice at such hearings. Id. at 289 & 293 ("The Remmer hearing took place on January 11, 2018… Juror 11, and the remaining jurors testified") ("At the April 18, 2019 hearing, Juror 11 denied that she had deleted her web browser history"). Rather, the multiple hearings in Lanier make clear that a defendant is entitled to at least one "meaningful opportunity" to prove juror bias, regardless of the number of tries that it takes to get there. Id. at 297 ("That the district court allowed the Laniers to question Juror 11 again is inapposite, because she had already discarded her phone and deleted her web-browsing history.")

a. **Juror X provided "spurious and inconsistent" testimony**

Mr. Sittenfeld has demonstrated a "colorable claim of extraneous influence" through the numerous Facebook posts of, and responses to, Juror X during the trial and deliberations. Ex. 2-4. ▮▮▮▮▮▮▮▮ Even from the limited screenshots of Facebook communications currently in the parties' possession, it is clear that Juror X communicated with at least twenty-nine non-jurors in reference to her posts regarding her jury service on Mr. Sittenfeld's case. Ex. 2-4. There were also several "likes" and other "reactions" to the posts and comments, but it is impossible to tell from the screenshots alone who "liked" or "reacted" to the posts and comments. Ex. 2-4.

Juror X also provided "spurious and inconsistent testimony" about the case. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the screenshots of the Facebook posts are littered with Juror X's replies to the comments of others. Ex. 3-4. She clearly read them.[2]

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] One commentor even appears to have tried to warn Juror X to cease posting by responding to her post "[j]ust call me juror [X] for a criminal case!" with "Ssshhhh." Ex. 4, p. 5.

4

██████████████████████████████████████ she had already posted about at least two jurors: as to Juror Z, Juror X said "[Juror Z] doesn't know a comfortable silence. Kinda wish her tongue would fall out," Ex. 2, p. 4, and "[t]hey left me alone with [Juror Z]," Ex. 2, p. 5; regarding Juror Y, Juror X posted "[Juror Y] you're on my damn nerves," Ex. 2, p. 8, and "omg…honestly [Juror Y] shouldn't be on the jury because she hates anyone that shares the same profession as our person on trial. Not cool!!!" Ex. 4, p.19.

████████████████████████████████████████████████████ Below is a list of the questions that she had answered about the trial on Facebook ███████████ ███████████████████████:

| Questions Posed by Facebook Commentors[3] | Juror X's Answers |
|---|---|
| "Can't wait until you can spill some details!" Ex. 3, p.2 and Ex. 4, p. 5 | "[Commentor's Name] irk…it's a big one" Ex. 3, p. 2 and Ex. 4, p. 5 |
| "You got jury duty?" Ex. 3, p. 3 | "[Commentor's Name] today is selection day" Ex. 3, p. 3 |
| "Uh [look up emoji] oh jury it is then?" Ex. 4, p. 2. | "[Commentor's Name] not yet…still waiting to see. But they told us what its about." Ex. 4, p. 2 |
| "Good luck, hope it's a quick case for you!" Ex. 4, p. 4 | "[Commentor's Name] 4 weeks my friend" Ex. 4, p. 4 |
| "I hate jury duty. I'm not getting paid basically 6 bucks a day to sit in a musty ass waiting room until I get called. Fuck that. I get out every time. I've been called in 6 times since I was 18." Ex. 4, p. 11 | "[Commentor's Name] mines a federal case and those pay a bit more." Ex. 4, p. 12 |
| "I would bet money you're the foreman. Lol" Ex. 4, p. 12 | "[Commentors Name] I'll let you know. Lol I hope so." Ex. 4, p. 12. |

████████████████████████████████████████████████

████████████████████████████████████████████ First, Juror X had, at minimum, left a trail of breadcrumbs to the specific case–"Just call me juror [X] for a criminal

---

[3] These questions are posed by a variety of different commentors whose names are being redacted per Court order.

5

case!" Ex. 2, p. 1, "irk…it's a big one," Ex. 3, p. 2, "mines a federal case," Ex. 4, p. 12. These comments were all date-stamped during the trial and often included pinpointed maps or Facebook check-ins showing Juror X's location at the Potter Stewart Courthouse. Second, Juror X clearly knew that her commentors knew which case she was on:

> Commentor: [Juror X] just saw the most interesting Instagram post from Cincinnati.com[4] about jury selection in a federal case today[5]
> Ex. 3, p. 2
>
> Different Commentor: Is this for that PG Sittenfeld guy? I just saw it on the news Ex. 3, p 3.

More needs to be mentioned about these two comments. The Cincinnati.com webpage on June 21, 2022 (the day the comment with the link was shared) displayed at least three different homepages on June 21, 2022, with headlines regarding Mr. Sittenfeld's case prominently displayed on each. Exhibit 7.[6] The commentor that posted links to Cincinnati.com referenced accessing the information through the Cincinnati Enquirer's Instagram page, which in turn contained a number of prominent posts about this case from June 21, 2022. Exhibit 8.[7]

Moreover, both the Enquirer/Instagram post and the "PG Sittenfeld guy" post appear on the screenshots taken by court staff on July 7th or 8th of 2022 (Ex. 2 & 3) but do not appear on the screenshots taken by court staff on July 11, 2022 (Ex. 4) ███████████████████████

███████████████████████████████████████

---

[4] This appeared to be a live hyperlink based on the blue highlighting of the text

[5] A preview box and apparent live link to the Cincinnati Enquirer homepage (Cincinnati.com) appears below this comment

[6] Exhibit 7 screenshots are taken from The Wayback Machine. "'The Wayback Machine is an online digital archive of web pages. It is run by the Internet Archive, a nonprofit library in San Francisco, California.'" Valve Corp. v. Ironburg Inventions Ltd., 8 F.4th 1364, 1374 (Fed. Cir. 2021) (quotation omitted). "District courts have taken judicial notice of the contents of webpages available through the Wayback Machine 'as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" Id. (quotation omitted). The specific URLs for each screenshot are on the screenshot, and timestamps can be seen in the screenshots as well.

[7] The URLs for the posts shown in Ex. 8 are https://www.instagram.com/p/CfEvMn1A8qd/?hl=en and https://www.instagram.com/p/CfFn1xkOFSy/?hl=en (date of access July 21, 2022, for each).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████

    ███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████



███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████

7

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███



███ The Court gave ████████████████████████████████ another extensive admonishment at the end of trial. Ex. 6. Juror X never spoke up. She was continually dishonest by commission and omission. This dishonesty strongly weighs in favor of granting leave for a forensic exam pursuant to <u>Lanier</u>.

      **b.    A forensic examination is necessary**

The other relevant factors favoring a forensic exam pursuant to <u>Lanier</u> are satisfied by the attached Declaration of Scott Greene (attached hereto as Exhibit 10). Mr. Greene is a Computer, Technology and Digital Forensics Expert. Ex. 1 and Ex. 10. He affirms that a forensic exam will allow him to determine the extent of the electronic communications made by Juror X over the course of the trial and deliberations, including what was accessed, deleted or modified, and when. Ex. 10, pp. 4-5. Moreover, if relevant electronic communications are no longer recoverable, Mr.

8

Greene will determine as much. Id. at 4-6. As in Lanier, Mr. Greene asserts that the risk that information will be unrecoverable will increase as time passes. Id. at 6.

### III. Conclusion

Thus, this Court should grant leave to Mr. Sittenfeld to allow Mr. Greene to conduct a forensic exam of the relevant devices of Juror X and to analyze her electronic communications as those terms are defined in his Declaration. This Court should further issue any and all necessary orders and subpoenas necessary to effectuate this examination. This is the only way to ensure that Mr. Sittenfeld will receive a constitutionally "meaningful opportunity" to prove juror bias.

Respectfully submitted,

RITTGERS & RITTGERS

*s/ Gus J. Lazares*
Gus J. Lazares
Charles H. Rittgers
Charles M. Rittgers
Neal D. Schuett
Rittgers & Rittgers
12 East Warren Street
Lebanon, OH 45036
(513) 932-2115
charlie@rittgers.com

*Counsel for the Defendant*

9

## **CERTIFICATE OF SERVICE**

  I hereby certify that the foregoing was filed with the Court's CM/ECF System provided to on this 22th day of July, 2022, which provides electronic notice to all parties. I further certify that the foregoing was emailed to the Court in Word format pursuant to the Court's Standing Order, subsection N.

               */s/ Charles M. Rittgers*
               Charles M. Rittgers
               *Counsel for the Defendant*