1                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF OHIO

2                   WESTERN DIVISION
                     * * *

3

4   UNITED STATES OF AMERICA,    : Case No. 1:20-cr-00142-1
                        :

5         Plaintiff,       : **Jury Trial, Day 12**
                        : Friday, July 8, 2022

6       - v -             :
                        : 1:15 p.m.

7   ALEXANDER SITTENFELD, a/k/a   :
    "P.G. Sittenfeld,"        :

8                        :
         Defendant.       : Cincinnati, Ohio

9
                     * * *

10      **REDACTED PRE AND POST VERDICT HEARING**

11   BEFORE THE HONORABLE DOUGLAS R. COLE, DISTRICT JUDGE

12                     * * *

13   For the Plaintiff:       EMILY N. GLATFELTER, ESQ.
                          MEGAN GAFFNEY PAINTER, ESQ.

14                         U.S. Department of Justice
                         U.S. Attorney's Office

15                         221 E. Fourth Street, Suite 400
                         Cincinnati, Ohio  45202

16

17   For the Defendant:       CHARLES M. RITTGERS, ESQ.
                         CHARLES H. RITTGERS, ESQ.

18                         NEAL D. SCHUETT, ESQ.
                         GUS J. LAZARES, ESQ.

19                         Rittgers & Rittgers
                         12 E. Warren Street

20                         Lebanon, Ohio  45036

21   Law Clerk:              Jacob T. Denz, Esq.

22   Courtroom Deputy:        Scott M. Lang

23   Court Reporter:          M. Sue Lopreato, RMR, CRR
                         513.564.7679

24                     * * *

25

```
 1                    P R O C E E D I N G S

 2                (In open court at 1:19 p.m.)

 3                        *   *   *

 4            THE COURT:  We're here on the record in chambers in

 5       the matter of United States of America versus Sittenfeld.

 6       It's case number 1:20-cr-142.

 7          Could I have counsel please enter their appearances for

 8       the record.

 9                MR. C. MATTHEW RITTGERS:  Charlie M. Rittgers for

10       P.G. Sittenfeld.

11                MR. C. HENRY RITTGERS:  Charlie H. Rittgers for

12       P.G. Sittenfeld.

13                MR. SCHUETT:  Neal Schuett for P.G. Sittenfeld.

14                MS. GLATFELTER:  Emily Glatfelter for the United

15       States.

16                MS. GAFFNEY PAINTER:  Megan Gaffney Painter for the

17       United States.

18                THE COURT:  So there are two things I wanted to

19       discuss.  First, as I mentioned when I asked to have an in

20       person meeting, an issue has come up.  It's a juror issue that

21       I want to talk about.

22          And second, since we've reached out to contact you, we've

23       received word from the jury that they have a verdict in the

24       matter.

25          So with that by way of background, I received word this
```

1    morning about 10 minutes before I called you guys that one of

2    the jurors was posting on social media about her experience as

3    a juror.

4        She's posted only to friends, so I didn't have any

5    ability to directly access it, but it turns out that a court

6    employee is a friend of hers and so had seen these posts.  So

7    I asked to have screen shots made of the posts.  So I have

8    copies for each side of the posts that were made.

9        You'll see some of the posts have "comments" indicated on

10   them, so I reached further back and asked for the person to

11   look at the comments and make screen shots of the comments.

12       So these are the comments that go with -- where a given

13   post has a comment underneath it, those were the contents of

14   the comments, so you can line it up with a given post.  And I

15   put them in date order.  You'll see the date is on each one of

16   them.

17       The only one that was done during deliberations, I

18   believe, is the one done on the last page, the comment,

19   "Number ▮, you're on my damn nerves," with four comments

20   underneath that.  And I believe the four comments underneath

21   that would be the page that I just handed you, the first page

22   of that.

23            MR. C. MATTHEW RITTGERS:  Do you know who ▬▬▬▬▬▬▬

24   is?

25            THE COURT:  The juror is ▬▬▬▬▬▬▬▬▬▬ would be

1    one of Juror ▆▆▆▆ friends.  So this is in response, I

2    believe, to where ▆▆▆ posts, "Number ▆, you're on my damn

3    nerves" on the last page of the other thing that your dad has

4    right now, and it says four comments underneath.

5        And I believe the four comments are probably the one

6    that's clipped off at the top about, "Brings back memories."

7        And then I believe one of ▆▆▆▆ friends, maybe ▆▆▆

8    ▆, responds, "There's always at least one."  And then ▆▆

9    ▆ has her response, and then ▆▆▆▆ has her response, and

10   that would be the way I would read this.

11       I thought I was fairly clear in my admonition about

12   communication, included posting on social media of any kind,

13   but...

14           MS. GLATFELTER:  I'm sorry if I didn't catch this the

15   first time, but this came to light because another juror

16   reported it or because a courthouse employee?

17           THE COURT:  No.  Because a courthouse employee is

18   friends with ▆▆▆▆

19           MS. GLATFELTER:  Got it.  I didn't know if --

20           THE COURT:  -- so ▆▆▆ posted this, not publicly.

21   Like I can't go on Facebook to ▆▆▆▆ profile and see this.

22   It was a friends only post.

23       But it turns out that a court employee is one of ▆▆▆

24   ▆▆▆ friends and saw it, brought it to his supervisor's

25   attention this morning, who then brought it to Jenn Webster's

1  attention within about five minutes, who then within about

2  five minutes brought it to my attention, who within about ten

3  minutes brought it to your attention.  So we have been trying

4  to move the information promptly out.

5         MR. C. MATTHEW RITTGERS:  So, Your Honor, this was

6  printed at 12:24 today?

7         THE COURT:  Yes.  Well, no.  I believe the 12:24

8  referred to the time at which the screen shot was snapped.

9      So I received these this morning, the posts --

10        MR. C. MATTHEW RITTGERS:  Gotcha.

11        THE COURT:  -- and I noted somebody had comments, or

12  Scott noted somebody had comments.  And I went back and said

13  would the person who did these also pull up the comments and

14  send those.  And I received those about 12:30 this afternoon.

15        MR. C. MATTHEW RITTGERS:  So this 12:24 probably

16  corresponds to today, we guess?

17        THE COURT:  Yes, although the comments, I believe,

18  are --

19        MR. C. MATTHEW RITTGERS:  17 hours.

20        THE COURT:  Right.  17 hours, so I believe 12:24 -- I

21  believe what this person did is found their phone, pulled up

22  the comments and then did a screen shot, so you're seeing

23  their iPhone.

24        MR. C. MATTHEW RITTGERS:  So this would have been at

25  like 7:00 p.m. last night on the comments, something like

1    that?

2              THE COURT:  Something like that, yes.

3              MR. C. MATTHEW RITTGERS:  Is it a unanimous verdict?

4              THE COURT:  I don't know.  I just have been told

5    there is a verdict.  I would assume -- I mean -- you mean the

6    same as to all counts?  I don't know.  I assume it's unanimous

7    as to whatever each of the counts, but I have no idea.

8         Does the government have a view?

9              MS. GLATFELTER:  I think we would like to consult

10   with our office.

11             MS. GAFFNEY PAINTER:  This is unchartered territory.

12             THE COURT:  It is for me as well.  Does the defense

13   have a view?

14             MR. C. MATTHEW RITTGERS:  We can also withhold it.

15   Is that all right, Judge?

16             THE COURT:  The jury did report they have a verdict

17   about 45 minutes ago at this point, so...

18             MS. GLATFELTER:  I'd like to consult with our office

19   to find out if we should take the verdict, first of all, to

20   see if there is any question about --

21             THE COURT:  The Court has done some preliminary

22   research, and I believe -- well, I don't want -- I don't know.

23             MR. C. MATTHEW RITTGERS:  Well, do you mind sharing,

24   just it will help us --

25             THE COURT:  I don't know that this is a basis for a

1     mistrial.  The reason I say that is because it does not

2     suggest to me that this person had access to any evidence or

3     information from outside the courtroom.

4         Even the comment from her friend was not a comment on the

5     evidence, nor at any point did she share the evidence or her

6     views about the evidence.  She was just sharing her concerns

7     about other jurors.

8         We may want to consider the possibility of a *Remmer*

9     hearing after, but I believe that would be something we would

10    do after the jury comes in.

11            MR. C. MATTHEW RITTGERS:  What is that, Your Honor?

12            THE COURT:  A *Remmer* hearing is a hearing into

13    potential juror misconduct.  So I think the comments here and,

14    in particular, the comment about, "She shouldn't be on the

15    jury because she hates anyone who shares this profession"

16    could give rise to questions about, you know, what sort of

17    pressure was used to overcome that, if it ends up being a

18    verdict one way or the other or, you know, is she biased and

19    shouldn't have been on the jury?  I guess we could explore

20    that down the road.

21        Obviously -- well, obviously is a strong word.  I believe

22    that Juror Number ▉ engaged in misconduct by publishing even a

23    limited public commentary about any aspect of this case, but

24    I'll note that, as I said, she didn't comment on any of the

25    evidence, she didn't comment on any of the witnesses.

1    I don't think there's anything necessarily inappropriate

2    about her checking in at the courthouse or sharing the fact

3    that the trial has ended for the week, or those types of

4    things.  I'm a little more leery about her comments about

5    other jurors.

6    But I do not believe -- we looked and just pulled a

7    couple cases.  *United States of America versus Fumo.*  It's

8    655 F.3d 288, Third Circuit case.

9    And we have another one, Jacob?  You said we had another

10   case, right, more recently, or is this the one that does the

11   pushing it out?

12          MR. C. MATTHEW RITTGERS:  F-u-m-o?

13          THE COURT:  655 F.3d 288.  Is this the one that makes

14   a distinction between pushing --

15          THE LAW CLERK:  The last one I sent.  It's the

16   District of South Carolina case, but I can look.  I sent you a

17   couple more things, and I also can look at those now on my

18   phone.

19          MR. C. MATTHEW RITTGERS:  When she's referring --

20   ▮▮▮▮▮ is referring to Number ▮, I'm assuming she's referring

21   to another juror?

22          THE COURT:  Juror Number ▮, I believe.  So she's

23   Juror Number ▮, the juror who is posting.  And she seems

24   mostly to be posting about Juror Number ▮ and Juror Number ▮.

25          MR. C. MATTHEW RITTGERS:  And Juror Number ▮, she

1    "wishes her tongue would fall out"?

2         THE COURT:  I don't think it's going to reflect well

3    on Juror Number ▉ when this all comes out, but...

4       The other case you may want to look at is 2018 --

5         MR. C. MATTHEW RITTGERS:  Juror Number ▉ is in this

6    comment where she said, "Honestly --"

7         THE COURT:  -- WL 11337365.

8         MR. C. MATTHEW RITTGERS:  WL 11337365?

9         THE COURT:  2018 Westlaw 11337365.  We've had about

10   25 minutes to do research, so...

11        MS. GLATFELTER:  Some of the comments, this does

12   appear to be the only one during deliberations.

13        THE COURT:  During deliberations, yes.  The only post

14   during deliberations appears to be, "Number ▉, you're on my

15   damn nerves."

16        MS. GLATFELTER:  Yeah.

17        THE COURT:  And then the first page of these comments

18   appear to be the four comments that are reflected there.

19        MR. C. MATTHEW RITTGERS:  "Number ▉, you're on my

20   damn nerves" would be on?

21        THE COURT:  On the last page of the first packet I

22   gave you, the last page.

23        MR. C. MATTHEW RITTGERS:  18 hours ago, I gotcha,

24   which corresponds back to --

25        THE COURT:  To these comments.

```
1          MR. C. MATTHEW RITTGERS:  -- those conversation
2    comments.  Gotcha.
3          THE COURT:  Yes.  I believe the other comments go to
4    earlier posts.
5          MR. C. MATTHEW RITTGERS:  Your Honor, it looks like,
6    if you look at the comment page, there are four comments, but
7    the first one appears to be cut off on this.
8          THE COURT:  Right.  I agree.  It's been a little bit
9    of a scramble.
10         MR. C. MATTHEW RITTGERS:  I understand.
11         THE COURT:  I can try to get more fulsome.  One of
12   these has 20 comments, and I don't see anything here that
13   corresponds to 20 comments.
14      So on June 23rd, there's a post about, "What a great
15   learning experience jury duty has given me."  Then underneath
16   it says it has 20 comments.  I haven't gotten those yet.
17         MR. C. MATTHEW RITTGERS:  Seven comments on there,
18   five --
19         THE COURT:  I'm trying to get the information as
20   quickly as I can.
21         MS. GLATFELTER:  The one that's cut off is by a
22   different person, though.
23         THE COURT:  Yes, it is.
24         MR. C. MATTHEW RITTGERS:  "Tongue falling out" has
25   five comments.
```

```
 1              MS. GLATFELTER:  Your Honor, we would ask for a brief
 2     adjournment so that we can go --
 3              THE COURT:  How long?
 4              MS. GAFFNEY PAINTER:  Fifteen minutes.
 5              MS. GLATFELTER:  Fifteen minutes.
 6              THE COURT:  Okay.  We are going to take a recess for
 7     15 minutes.  We've got to tell the jury something, so just --
 8              COURTROOM DEPUTY:  I instructed Jenn to let them know
 9     that we are organizing, and that they need to just wait and be
10     patient.
11              THE COURT:  Okay.  And, unfortunately, you may have
12     seen one of our CSOs opened the courtroom and swept it, and
13     was asked by a reporter for The Enquirer whether a verdict was
14     in, and without thinking, he said yes.
15              MR. C. MATTHEW RITTGERS:  We saw it on the news.
16              MR. C. HENRY RITTGERS:  Yeah.  Before we knew about
17     it, it was all over the news.
18              MS. GAFFNEY PAINTER:  Before any of us knew about it.
19              THE COURT:  Almost before I knew about it, but...
20              MR. C. MATTHEW RITTGERS:  Judge, thanks for the
21     explanation.  I was just curious.
22              THE COURT:  But that situation has been addressed, I
23     hope.
24              MS. GLATFELTER:  So we'll be back here at 1:45?
25              THE COURT:  Very good.  Thank you.
```

1        (Brief recess.)

2        THE COURT:  We're back on the record in chambers.

3   It's 1:48.

4     Ms. Gaffney Painter, have you had an opportunity to

5   consult with your office, or Ms. Glatfelter, whoever is

6   taking?

7        MS. GAFFNEY PAINTER:  Yes.  We consulted very briefly

8   with our office and did some very preliminary research on the

9   subject.

10        THE COURT:  Mr. Rittgers, have you had an opportunity

11   to discuss it with your colleagues?

12        MR. C. MATTHEW RITTGERS:  Briefly.  Yes, Your Honor.

13        THE COURT:  All right.  So thoughts about how we

14   should proceed at this juncture?

15        MS. GAFFNEY PAINTER:  First, I found a case out of

16   the Southern District of New York District Court case

17   involving -- now this was post verdict.  There were

18   allegations of juror misconduct, including social media posts

19   during and after the trial.

20     Again, I'm not prepared to give a thoughtful exegesis on

21   this, but I can give you a cite, in case it would be helpful.

22   It's 433 F. Supp. 3d 468, district court case about this.

23     It sounds like the major concerns with this sort of thing

24   is what you highlighted before, were they relying on

25   information outside of what was presented to them, did anyone

1    have like a real immovable bias against the defendant that

2    would have prejudiced his rights in any way.

3        I believe, based on -- don't let me speak over you.  What

4    would you --

5            MS. GLATFELTER:  I think our inclination is to take

6    the jury verdict, but we want to be sure that both sides are

7    able to preserve challenges based on misconduct.  We're

8    concerned about whether double jeopardy attaches.

9        So, for example, obviously, if it's a guilty verdict, the

10   defendant maintains that and would be able to challenge this.

11       If it's an acquittal, what rights attach to the

12   government if by way we take a verdict now and then decide

13   there's juror misconduct, and so that's the government's main

14   concern.

15           THE COURT:  Yeah.  I appreciate that.  I don't know

16   the answer to that for sure.  I mean, I think you would be --

17   it would have to be such a high showing of juror misconduct

18   that, essentially, it wasn't a trial and jeopardy never

19   attached.

20       And I haven't done any research on that, but I would

21   think that would be a nearly insurmountable hurdle.  So I

22   understand your concern.

23       As is often the case in criminal cases, there's a little

24   bit of a one-way street where defendants have an ability to

25   challenge --

```
1              MS. GLATFELTER:  Absolutely.

2              THE COURT:  -- a conviction, but the government

3    doesn't have really the ability to challenge an acquittal, but

4    I don't really know how to cure that at this point.

5        I mean, I would say that, to the extent there's any

6    indication of bias in any of the comments, it would seem to be

7    bias in favor of a conviction, not against it, so I don't --

8    and I don't know that it rises to the level of that anyway,

9    you know.  But certainly, that would be an issue that I'm sure

10   would be briefed after a verdict if there's a finding of

11   guilty.

12             MS. GLATFELTER:  Yes.  I didn't know if there was an

13   ability to take it as a conditional verdict.

14             THE COURT:  I don't believe there is.

15             MS. GLATFELTER:  Okay.

16             MR. C. HENRY RITTGERS:  The Remmer hearing, would we

17   have that right after the verdict?

18             THE COURT:  I don't know.  That's a great question.

19   I'm very much in unchartered territory at this point.

20             MR. C. HENRY RITTGERS:  Well, the one thing that

21   concerns me, I think it was Juror Number █, does not like any

22   politician.

23             THE COURT:  Sure.

24             MR. C. HENRY RITTGERS:  And if we have such a

25   hearing, I'd like to hear from her, since she's supposed to be
```

1     unbiased --

2             THE COURT:  Right.

3             MR. C. HENRY RITTGERS:  -- in the event that there's

4     a guilty verdict.

5             THE COURT:  Yeah.  In the event there's a guilty

6     verdict, I think it would make some sense to keep Juror

7     Number ▉ and Juror Number ▉, after we release the other

8     jurors, and talk to them, on the record, for purposes of a

9     hearing.

10        I know that it's a little bit difficult, since the

11    parties haven't had an opportunity to prepare for that, and I

12    guess we could leave open the possibility that we could do

13    further inquiry down the road, but I can appreciate the desire

14    to get information on the record.  And it will be helpful in

15    posttrial motions.

16        Mr. Rittgers?

17            MR. C. MATTHEW RITTGERS:  I'm in the same such

18    position as the government.  I don't know if we should object

19    now, because we haven't had the hearing.  We obviously don't

20    know what the verdict is.

21        I don't know about this bias which is now expressly

22    stated in Juror Number ▉▉ opinion, at least about Juror

23    Number ▉, so I just somehow want to preserve that for the

24    record.

25            THE COURT:  Well, are you moving for a mistrial based

1    on the information in front of you or not?

2            MR. C. HENRY RITTGERS:  Yes.  To preserve the record,

3    we are.

4            MR. C. MATTHEW RITTGERS:  Because it indicates Juror

5    Number █ is biased and shouldn't have been on the jury.

6            MR. C. HENRY RITTGERS:  If we have to do it now, yes.

7            THE COURT:  So the defense is moving for a mistrial.

8    What is the government's position on a mistrial?

9            MS. GLATFELTER:  We would oppose.  The record right

10   now is not strong enough for a mistrial.  We can remedy the

11   situation through a post-verdict hearing where the Court

12   inquires into this which, I think, the case law does support.

13           THE COURT:  Okay.  The Court is going to overrule the

14   request for a mistrial.  It's the Court's intent to take the

15   verdict.

16      I don't believe, based on the information we have, that

17   there's a sufficient basis not to move forward with taking the

18   verdict.

19      The case law that I've identified so far suggests that

20   these types of issues can be addressed on a post-verdict basis

21   and so, you know, this will be without prejudice to the

22   defendant's ability to further explore and brief issues

23   related to juror misconduct after the verdict comes in.

24           MR. C. MATTHEW RITTGERS:  Thank you, Your Honor.

25           THE COURT:  Anything else you want to put on the

1    record before we take a verdict?

2            MS. GLATFELTER:  No, Your Honor.

3            MS. GAFFNEY PAINTER:  No.  Thank you.

4            THE COURT:  Let's assemble in the courtroom, please.

5        (Brief recess.)

6                            *   *   *

7            THE COURT:  We're on the record in chambers post

8    verdict, and could I just have everybody enter their

9    appearances for the record.

10            MR. C. HENRY RITTGERS:  Charlie H. Rittgers for

11    P.G. Sittenfeld.

12            MR. C. MATTHEW RITTGERS:  Charlie M. Rittgers for

13    P.G. Sittenfeld.

14            MR. SCHUETT:  Neal Schuett for Mr. Sittenfeld.

15            MR. LAZARES:  Gus Lazares for Mr. Sittenfeld.

16            MS. GLATFELTER:  Emily Glatfelter for the United

17    States.

18            MS. GAFFNEY PAINTER:  Megan Gaffney Painter for the

19    United States.

20            THE COURT:  And we're here with Juror Number █.  As I

21    told you, Juror Number █, it came to the Court's attention

22    late this morning that there were some social media postings

23    that you'd made or appeared to have made about your

24    participation in the trial, and counsel had a few follow-up

25    questions about that.

1        I'm going to tell you right upfront, I don't want you to

2    testify about conversations you had in the jury room, but they

3    are allowed to inquire about whether you believe extraneous

4    influences or other jurors' access to extraneous influences

5    may have, in some way, impacted things, and ask you questions

6    about that.  Do you understand what I'm saying?

7            JUROR NO. █:  Yes.

8            THE COURT:  I'm going to ask Scott to swear you in.

9    (JUROR NUMBER █, sworn.)

10           THE COURT:  Mr. Rittgers?

11           MR. C. MATTHEW RITTGERS:  Hi.  You're not in trouble.

12           JUROR NO. █:  Okay.

13           MR. C. MATTHEW RITTGERS:  That's why we're not doing

14    this in the courtroom.  And I know it's nerve racking.  I'm

15    sorry to put you through this, but I just wanted you to know

16    you're not in trouble, and that's why the judge is doing it in

17    chambers.

18           JUROR NO. █:  Okay.

19           MR. C. MATTHEW RITTGERS:  Can you just tell us

20    about -- I mean, we know the Facebook post --

21           JUROR NO. █:  Yeah.  He told me.

22           MR. C. MATTHEW RITTGERS:  And so that was just

23    brought to our attention by the Court recently, maybe like an

24    hour or two ago.

25           JUROR NO. █:  Okay.

1          MR. C. MATTHEW RITTGERS:  So that's what the

2     questions are going to be about.

3          And as the judge indicated, we're not asking about

4     conversations within the room.

5          But on Facebook, you did post some things about your

6     service, and you read the comments that people posted back to

7     you, right?

8          JUROR NO. ■:  I honestly haven't seen them about

9     that.

10          MR. C. MATTHEW RITTGERS:  May I show them?

11          THE COURT:  Yes.

12          JUROR NO. ■:  I'll be honest, I haven't seen them.

13          MR. C. MATTHEW RITTGERS:  These are just some of

14     them.  And these are your comments, I will call you Juror ■.

15     I won't call you by name, but these are the Juror ■ comments.

16          And there are comments through here, but these are

17     comments that, I believe, are associated with this post, which

18     was made, I think, last night, July 7th, around 7:00.  I

19     believe --

20          JUROR NO. ■:  Yeah.

21          MR. C. MATTHEW RITTGERS:  -- those comments are

22     through this one?

23          JUROR NO. ■:  Uh-huh.

24          MR. C. MATTHEW RITTGERS:  And so -- and there are a

25     lot of comments.  This is your main page.  This is the way I

1    understand it.  This is what was given to me, and some of

2    these have lots of comments on them.

3              JUROR NO. ■:  Uh-huh.

4              MR. C. MATTHEW RITTGERS:  And the one that we have,

5    the comment section that's printed out, it indicates that you

6    were responding to some comments based off your comment.

7              JUROR NO. ■:  Yeah.

8              MR. C. MATTHEW RITTGERS:  So I guess my first

9    question is, is it you -- you made this post, "Number ■,

10   you're on my damn nerves"?

11             JUROR NO. ■:  Uh-huh.

12             MR. C. MATTHEWS RITTGERS:  And that would have been

13   last night, right?

14             JUROR NO. ■:  Yes.

15             MR. C. MATTHEW RITTGERS:  And then there are four

16   comments that I see in the screen shot.  And some of those

17   were your comments commenting off of other people's comments?

18             JUROR NO. ■:  Yeah, I just -- someone said, "There's

19   at least one in every group."  And then I just mentioned,

20   basically, that my take on it was -- I honestly didn't feel --

21   and I hope I can say this, but she shouldn't have been on the

22   jury, in my opinion, just because I feel like she has a deep

23   hatred for politicians and people in office just by some of

24   the -- I mean like the comments.

25             THE COURT:  Yeah.  You can't testify about what

1    happened in the jury room.  So to the extent you believe she

2    was influenced by extraneous information, information she

3    hadn't heard at trial, and you have some basis for that, you

4    can share what extraneous information you believe she was

5    relying on.

6         JUROR NO. ▮:  Yeah.  I just think that she doesn't

7    like politicians, that's all.  And that's what that comment

8    was about.

9         MR. C. MATTHEW RITTGERS:  So what the judge -- the

10   judge doesn't want you to say if she said something like I

11   read something --

12        JUROR NO. ▮:  No.

13        MR. C. MATTHEW RITTGERS:  -- or I had an ex-husband,

14   or --

15        JUROR NO. ▮:  No.

16        MR. C. MATTHEW RITTGERS:  So when you made these

17   posts, I assume off some of them -- for example, and I'll show

18   you like this one on June 23rd, where you talked about

19   experience, there were 20 different comments.  I don't have

20   those, but I assume none of those comments were other jurors'

21   comments?

22        JUROR NO. ▮:  No.  Huh-uh.

23        MR. C. MATTHEW RITTGERS:  So this is all people who

24   were not jurors and they were commenting.  And for some of

25   those -- did you respond back to some of those comments?

1          JUROR NO. ▪:  I didn't think about the jury.  No, I

2     didn't answer any questions.  No one knew what, you know, case

3     I was on, so I never mentioned what case I was on and what

4     jury I was on.

5        I just mentioned that it was hard for me to know that

6     someone was -- I don't think I put anything in there.  I mean,

7     I can pull it up and see.

8          MR. C. MATTHEW RITTGERS:  Is that all right, Judge?

9     I mean, can she look?

10          THE COURT:  Sure.

11          MR. C. MATTHEW RITTGERS:  Someone posted like an

12     article about -- P.G. Sittenfeld's name was mentioned on a

13     couple of these which I saw -- which, again, you're not in

14     trouble at all, but this was a comment about Juror Number ▪.

15          JUROR NO. ▪:  She talks a lot.

16          MR. C. MATTHEW RITTGERS:  And then there are five

17     comments within that.  Someone posted something --

18          JUROR NO. ▪:  Someone did say, "Good old P.G.," or

19     something.  And then I deleted it.  I didn't respond back to

20     it.  I think I just hid it, not delete it, just so they didn't

21     think that I hid it so no one else could see it, but I didn't

22     comment or say, yeah, anything with P.G. on it.

23          MR. C. MATTHEW RITTGERS:  Was that comment during --

24     I thought I saw something where someone posted a

25     Cincinnati.com article?

1            JUROR NO. ■:   Oh, there it is.   Yeah, someone did.

2   And that's ■■■■.   I ignored it.   I didn't look at it.   I

3   didn't go into it.   I didn't dive any further into it.

4            MR. C. MATTHEW RITTGERS:   Some of these, obviously,

5   you responded to the comments, right?   I mean, you read them

6   and responded to people?

7            JUROR NO. ■:   The ones that I think I responded to

8   was about Juror Number ■.   I think the one that's when they

9   were talking about how they don't get paid.   And I said, well,

10   you know, we get paid.   I said, obviously, I'm in the federal

11   building.   It's mind numbing, mentally draining.

12            THE COURT:   Did anyone post any articles that you

13   read?

14            JUROR NO. ■:   Just that.   I didn't read any articles.

15   She posted that, and I did not touch it, did not go inside it.

16            MR. C. MATTHEW RITTGERS:   What was the comment about,

17   "Good old P.G.," or --

18            JUROR NO. ■:   Because I said that I think it was one

19   of these, and someone said, "Good old P.G." trying to see if

20   that was the case I was on, but they didn't respond.

21            MR. C. MATTHEW RITTGERS:   Can we see the one that you

22   just said you hid, you didn't delete it?

23            JUROR NO. ■:   I hid it because I didn't want anybody

24   else to start commenting and just, you know, snowballing from

25   there.   I don't even know how I would find a hidden one.

1    MR. C. MATTHEW RITTGERS:  I think it should still

2  show up --

3    JUROR NO. ▮:  For me?

4    MR. C. MATTHEW RITTGERS:  -- for you.  I think so.

5    JUROR NO. ▮:  See, and then someone else here says,

6  "Is it the P.G. Sittenfeld guy?"  I didn't say anything,

7  didn't respond, didn't post because I was told not to.  I

8  didn't know I couldn't post, you know what I'm saying?

9    I knew I couldn't say anything about who I was on trial

10  with or for.  I didn't know I couldn't post in general, so my

11  apologies.

12    Let's see, when did our jury -- when did it start?

13    THE COURT:  The 21st.

14    JUROR NO. ▮:  There's no comment on that one.  Yeah,

15  right here.  This comment has been hidden.  Unhide comment.

16  "Big P.G." is what he said.

17    MR. C. MATTHEW RITTGERS:  "Big P.G."?

18    JUROR NO. ▮:  And I hid it so no one else -- I'm

19  going to hide it again, so...

20    MR. C. MATTHEW RITTGERS:  Did you have any, like,

21  private messages with anyone, or texted jurors about --

22    JUROR NO. ▮:  No.  The only number I have is

23  Number ▮, and that's only because we would meet at Starbucks

24  in the morning and she'd ask if I was there, and we kind of

25  wanted to stay close after this.

1    MR. C. MATTHEW RITTGERS:  Without saying anything

2    that happened in the deliberation room, going back to Juror

3    Number █, was that known to you before, like, the

4    deliberations?

5    JUROR NO. █:  No.  I just gathered it myself

6    because just some of the comments that she made, I felt like

7    she had a deep hatred for politicians.

8    MR. C. MATTHEW RITTGERS:  Was it before the

9    deliberations on that one?

10    JUROR NO. █:  Yes.

11    MR. C. MATTHEW RITTGERS:  So at some point before the

12    deliberations, it was clear that she had a deep hatred for

13    elected officials?

14    JUROR NO. █:  She was -- I guess felt like she didn't

15    trust them, and that's basically what she said.

16    MR. C. MATTHEW RITTGERS:  That was before the

17    deliberations even started?

18    JUROR NO. █:  Us, what, talking?  No.  I'm sorry.

19    MR. C. MATTHEW RITTGERS:  Oh, sorry.

20    JUROR NO. █:  It was inside.  Yes, it was inside,

21    just the comments that -- they're all correct.

22    THE COURT:  And, again, we're not going to talk about

23    comments that were made in the jury room.

24    MR. C. MATTHEW RITTGERS:  But were there comments

25    that she made before?

1       JUROR NO. ▇:  No.  No.  No.

2       MR. C. MATTHEW RITTGERS:  During the two and a half

3  weeks of trial --

4       JUROR NO. ▇:  No.

5       MR. C. MATTHEW RITTGERS:  -- no incident?

6       JUROR NO. ▇:  No.

7       MR. C. MATTHEW RITTGERS:  You sure she would not make

8  comments before the deliberations?

9       JUROR NO. ▇:  No.  There was no comments before.

10       MR. C. MATTHEW RITTGERS:  Do you guys have anything?

11       MR. C. HENRY RITTGERS:  I don't have any questions,

12  Judge.

13       THE COURT:  Very good.  Ms. Glatfelter, Ms. Gaffney

14  Painter, any questions?

15       MS. GAFFNEY PAINTER:  No questions.

16       THE COURT:  Thank you, ma'am.  I appreciate it.

17       JUROR NO. ▇:  Am I free to go?

18       THE COURT:  You are free to go.  Thank you very much.

19       JUROR NO. ▇:  Thanks, guys.

20     (Juror No. ▇ excused.)

21       MR. C. HENRY RITTGERS:  Before we bring in the other

22  juror --

23       MS. GAFFNEY PAINTER:  Could we wait until she steps

24  out.

25       THE COURT:  Yes.

1          MS. GAFFNEY PAINTER:  And just one other thing for

2     the record.  Would you let the record reflect that she had her

3     phone.  She looked at her phone.  She showed Mr. Rittgers her

4     phone and showed the hidden post and then re-hid the post, and

5     that was all done here in chambers.

6          THE COURT:  That is correct.

7          MR. C. MATTHEW RITTGERS:  But just so the record is

8     clear, I did not see all these comments, nor do we have all

9     these comments.

10        And while we're on the record, there were 29 different

11    reactions, some of which were laughing, crying, likes, shocks;

12    16 comments the first day of trial, for example.  We do not

13    know what those 16 comments were or are.  Five comments and

14    10 types of likes and reactions on this.

15         THE COURT:  Mr. Rittgers, I fully intend to allow you

16    to make your record.  I would just like to get this other

17    juror in and out.

18         MR. C. MATTHEW RITTGERS:  Okay.  Understood.  Thanks,

19    Judge.

20         MS. GLATFELTER:  Your Honor, just so we understand

21    the ground rules for this.

22        So I understand the first inquiry is whether there was

23    any extraneous communication, and then and only then are there

24    other communications about what underlies that?

25         THE COURT:  Extraneous evidence, yes.

1          MS. GLATFELTER:  Right, extraneous evidence, but it's

2    not just are you a biased person off of that, right?  Because

3    that seems to be where this is going.

4          MR. C. HENRY RITTGERS:  If I may?

5          THE COURT:  Wait.  Mr. Schuett, you had something?

6          MR. SCHUETT:  Question, Your Honor.  In *Cunningham*

7    *versus Shoop*, which is a Sixth Circuit case from January 2022,

8    which is 23 F.4th 636, the Sixth Circuit says, "We have

9    treated a court's failure to hold a *Remmer* hearing as a due

10   process violation closely related to but distinct from the

11   underlying question of juror bias, in violation of the Sixth

12   Amendment right to an impartial jury."  It says, "See *Ewing*."

13      If you look at *Ewing*, they talk about affording the

14   defendant an opportunity to show actual prejudice through a

15   hearing.

16      So then the question is, how do we reconcile that issue?

17   If we're not allowed to show actual prejudice through this

18   process, then we're not going to be able to address the Sixth

19   Amendment issue, which then we might have a due process

20   violation, according to *Ewing*.

21          THE COURT:  So I'm going to allow you to explore

22   whether she had some bias coming in, or whether she wrongfully

23   answered some jury questionnaire question.

24      But, again, I'm not going to allow you to get into

25   deliberations in the jury room.  So you can explore if she's

1    got some basis for bias as a result of things outside the

2    courtroom.

3              MR. C. MATTHEW RITTGERS:  Okay.

4              THE COURT:  Let's bring in the other juror.

5         Let's go off the record.

6         (Off the record.)

7              THE COURT:  So Juror Number █ is in chambers now.  I

8    want to start with something I've already told Juror █ outside

9    chambers, which is you're absolutely not here because you're

10   in any kind of trouble.  I want to make that very clear.

11        Another juror posted some information, and we want to

12   follow up a little bit, and defense counsel wants to follow up

13   a little bit on that.

14        But I want to make very clear to you first, as I said,

15   you're not in any trouble.  And second, the other thing I want

16   to make clear to you is this is not to allow an inquiry into

17   conversations that occurred in the jury room.  We're not going

18   to go over conversations that occurred in the jury room.

19        This is to allow counsel to explore whether there were

20   outside influences that may have been in play with regard to

21   you and your participation in this case.  So that's all it's

22   about.

23        And I'm going to have Scott swear you in in a second.

24   Mr. Rittgers is going to ask you some questions.  Again, I

25   want to be very clear, you're not in any trouble, all right.

```
 1    I'm sure this is stressful, and I apologize.  This typically

 2    is not part of the process, but...

 3        (JUROR NO. ▮, sworn.)

 4        MR. C. MATTHEW RITTGERS:  Hi.  I'm sorry to stress

 5    you out, and you really are not in trouble.  Can you promise

 6    me you'll be brutally honest with me with these answers?

 7        JUROR NO. ▮:  I will be brutally honest.

 8        MR. C. MATTHEW RITTGERS:  Can you just tell us, like,

 9    your thoughts about elected officials and politicians in

10    general?

11        JUROR NO. ▮:  I don't -- it's not my area of

12    expertise, so I don't really have opinions about elected

13    officials.

14        MR. C. MATTHEW RITTGERS:  Juror Number ▮ made a post

15    that said that you hated any elected official.

16        JUROR NO. ▮:  I said no such thing, and I don't even

17    feel that.

18        MR. C. MATTHEW RITTGERS:  Can you please just be

19    honest?

20        JUROR NO. ▮:  I am being brutally honest.  I'm

21    serious.  I never said that.

22        MR. C. MATTHEW RITTGERS:  You're not in trouble.  It

23    won't -- you're not --

24        JUROR NO. ▮:  I'm not -- I'm not -- I am being

25    brutally honest.  Trust me.  I'm only nervous because I feel
```

1      like I'm in the principal's office and I wasn't smoking.  It

2      wasn't me.  I'm just using the bathroom.

3              MR. C. MATTHEW RITTGERS:  I mean, just might be like

4      some things you've read, and --

5              JUROR NO. ■:  No.  Absolutely not.  I promise you.

6              MR. C. MATTHEW RITTGERS:  Are you nervous in here?  I

7      mean, I --

8              JUROR NO. ■:  Like I said, I do have that feeling

9      of --

10             MR. C. MATTHEW RITTGERS:  Yeah, it's hard not to, I

11     know.

12             JUROR NO. ■:  Can I just say something?

13             MR. C. MATTHEW RITTGERS:  Yeah.

14             JUROR NO. ■:  I have no clue why she would say that.

15     Can I say something else too?

16             MR. C. MATTHEW RITTGERS:  Yes.  Please.

17             JUROR NO. ■:  You know, the judge gave us

18     instructions not to talk to people.  He said don't make any

19     decisions ahead of time.  Listen only to the evidence that's

20     in the court, and don't even think about what decision you're

21     going to make until you're back in the deliberation room.

22        I followed every single one of those, I did, and not to

23     talk to anybody about or to have any kind of outside

24     information.

25        Not only me, I made my husband and daughter not watch the

1    news or be on their phones or follow social media, I did, and

2    they followed that, so...

3            MR. C. MATTHEW RITTGERS:  Thank you for that.  Before

4    this, before you were called to jury duty, if someone said a

5    politician, you didn't have any thoughts that came to mind?

6            JUROR NO. ██:  No.  I think politicians are like

7    anybody else, that you have politicians who are honest and

8    good at their job, and politicians who aren't.  That's true in

9    every single field.

10           MR. C. MATTHEW RITTGERS:  Sure.

11           JUROR NO. ██:  And I don't feel like -- I don't even

12   know the defendant.  I'm not -- I don't live in the City of

13   Cincinnati, and I don't really follow politics at all, so I

14   know nothing about anything that went on.

15       I didn't even understand the charges, so when you brought

16   those and gave us the explanation, each one, I'm like I'm so

17   glad you did that because I don't know what that is, so no.

18       Do I think that that there's a lot of money involved with

19   the campaign financing stuff?  I do.  And I think that of

20   other professions as well, and that, you know, sometimes some

21   of the people -- I had no bias about the defendant, though, or

22   anybody until I would have to look at all the evidence and

23   stuff.

24       But I do think, because I have seen myself -- not in

25   politics but in other fields -- that when there's a lot of

money involved, people often have ulterior motives.  I don't

think I even shared that feeling that I have.  I don't think I

shared that in the deliberation room either.

But, you know, let me be brutally honest, I do think that

sometimes when there's money involved -- and that's true not

just of politicians.  I think that's true in every profession

is that not -- I mean, just like you have honest and dishonest

people in every profession, does that count as bias?

MR. C. MATTHEW RITTGERS:  It's up to the judge.

JUROR NO. ██:  Yes.  Exactly.  I have no bias

whatsoever towards anybody in the trial, so the witnesses, the

defendant, the lawyers, I promise you.

MR. C. MATTHEW RITTGERS:  You're not in trouble.  If

you walked in here and you said, you know, I've never liked

politicians.  You're not in trouble.  Nobody knows that.

That's why we're doing this in chambers.

JUROR NO. ██:  I don't even feel that way, though.

I'm not sure I've even met any politicians.

MR. C. MATTHEW RITTGERS:  Just from what you've read

and seen on the news?

JUROR NO. ██:  I don't watch the news.  That's why I'm

here, isn't it?  Because if I watched the news, I'd know all

about this case.  We don't even have cable TV, so -- I do look

at national news, but I don't look at the local news.

MR. C. MATTHEW RITTGERS:  You know how the jurors

1    came back one by one in the judge's chambers before voir dire?

2    You weren't one of those folks?

3           JUROR NO. ■:  No.

4           MR. C. MATTHEW RITTGERS:  I don't even remember.

5    There were like 23 jurors.

6           JUROR NO. ■:  I feel like the area of politics is

7    totally outside -- I'm an engineer.  I have nothing to do with

8    politicians.  It's not an area of interest to me.  I don't sit

9    around and debate with people about anything, I mean, not like

10   political issues and stuff.

11       I'm just not -- it's not an area -- like medicine, I have

12   nothing to do with medicine either, so just politics isn't

13   something that's in my area of interest.

14          MR. C. MATTHEW RITTGERS:  Did you have any -- you

15   weren't aware of any of the social media posts?

16          JUROR NO. ■:  Absolutely not.  I thought we weren't

17   allowed to do that.  And I don't even have a social media

18   so... so I am very unsure as to why she would even say that.

19   And I don't want to talk about what we talked about.

20          THE COURT:  I don't want you to either.

21          JUROR NO. ■:  But can I just say that I followed

22   every single rule you told us to do.  I did.  And I am an

23   honest person, and there would not even be any reason for me

24   to lie.

25          THE COURT:  What kind of engineer?

```
 1              JUROR NO. █:  Aerospace.

 2              THE COURT:  I'm an electrical engineer.

 3              JUROR NO. █:  Are you?

 4              THE COURT:  Yeah, before I was a lawyer.

 5    Mr. Rittgers, any further questions?

 6              MR. C. MATTHEW RITTGERS:  No.

 7              THE COURT:  Ma'am, I am deeply apologetic.  I've

 8    never had a situation like this, and I'm so sorry it happened

 9    to you.

10       I know it's probably going to leave a bad taste in your

11    mouth about the experience here, but please know that you have

12    the sincere thanks of the Court and the sincere appreciation

13    for your willingness to provide some additional insight.

14       As Mr. Rittgers said, and as I've said, this is not in

15    any way about you being in any kind of trouble, it's just when

16    certain things are said, we had to create a record around

17    that.

18       So I -- I'm so sorry this happened, but I do

19    appreciate -- and I should have asked the United States, any

20    questions?

21              MS. GLATFELTER:  No, just thank you for your service.

22              JUROR NO. █:  Thanks.  And I think that all of you

23    guys did a great job.  I've enjoyed myself, because I've never

24    had a court experience before, and I did work so hard on

25    trying to understand our juror instructions.  I had no bias.
```

```
1          THE COURT:  To the extent you did, it was

2     Mr. Rittgers' fault.

3        (Laughing.)

4          JUROR NO. █:  Well, I mean, you know, we're not

5     lawyers, so it's hard for us to understand that.  And we

6     hammered at it over and over and over, and I'm not even

7     allowed to talk about it.

8          THE COURT:  All right.  Very good.  Thank you very

9     much, ma'am, for your testimony.  I appreciate it, and you are

10    now free to go, with the Court's thanks.

11         JUROR NO. █:  Thank you.

12         MS. GAFFNEY PAINTER:  Thank you.

13        (Juror No. █ excused.)

14         THE COURT:  Mr. Rittgers, I cut you off earlier in

15    the interest of getting testimony from Juror Number █, but if

16    there's additional information you'd like to put on the

17    record, now would be an appropriate time to do so.

18         MR. C. MATTHEW RITTGERS:  We don't have, Your

19    Honor -- we have one set of screen shots that consists of

20    three pages, which would be three pages of comments as

21    printed.

22         THE COURT:  Yes, I will endeavor to get the remainder

23    of the comments that are reflected on what's in your left

24    hand.

25         MR. C. MATTHEW RITTGERS:  Thank you.  Will the
```

1    record -- can we incorporate what we have into the record?

2            THE COURT:  Yes.  I've kept a copy of everything I've

3    given you, and it will be part of the record.

4            MR. C. MATTHEW RITTGERS:  Okay.  And one -- there was

5    a comment on July 7th, which was last night, around 7:00 p.m.,

6    where Juror Number █ said, quote, Number █, you are on my damn

7    nerves.  And there were four comments.

8        And one of the comments was that Juror Number █ "hates

9    anyone who shares the same profession as our person on trial,

10   and that's not cool," which the defense believes indicates a

11   bias, which is Juror Number █ hates all elected officials, and

12   I just want to make sure the record reflects that.

13           THE COURT:  Very good.  Does the government wish to

14   place anything on the record?

15           MS. GLATFELTER:  No, Your Honor.

16           THE COURT:  Mr. Rittgers?

17           MR. C. HENRY RITTGERS:  How will the document be

18   identified?  Will it be a court exhibit?

19           THE COURT:  Yeah.  That's probably a good idea, call

20   it Court Exhibit 1 and Court Exhibit 2 are the two that were

21   used, and I'll try to get a more fulsome set of the comments,

22   although she may be frenetically hiding them all right now as

23   we speak.

24           MS. GLATFELTER:  Will this be under seal, we assume?

25           THE COURT:  I think it probably should be.

```
 1            MR. C. MATTHEW RITTGERS:  No objection.

 2            MR. C. HENRY RITTGERS:  No objection.

 3            THE COURT:  Yes.  So we'll file this under seal, all

 4   this post verdict stuff.  Anything further?

 5            MR. C. MATTHEW RITTGERS:  Do you know deadlines on

 6   motions?

 7            MR. SCHUETT:  Fourteen days.

 8            MR. LAZARES:  Is there going to be briefing on this

 9   hearing?

10            THE COURT:  I assume, to the extent you wanted to

11   include it as part of your -- although this needs to be

12   sealed, I guess, if it's in the briefing, right?  If we're

13   sealing this, we should seal references to it in the briefing.

14      To the extent you believe that any of the juror

15   information gives rise to a basis for mistrial or acquittal,

16   could you do a separate brief on that issue as a basis for

17   acquittal and mistrial.

18      And then you will have your standard Rule 29 motion, and

19   then there will be a supplemental one that will be filed under

20   seal with regard to jury conduct issue.

21            MR. SCHUETT:  Absolutely.  Your Honor, a question,

22   since this arose before.  Do we need to file to ask leave to

23   do that, or should we just do that now, because prior

24   instruction was file the motion for leave to file it under

25   seal, that's what gave rise to the Cincinnati Enquirer.
```

```
1              COURTROOM DEPUTY:  You just got leave.

2              MR. SCHUETT:  I just wanted to make sure we are clear

3         so that there wasn't any confusion.

4              COURTROOM DEPUTY:  And you'll send it to me, like you

5         have with other sealed ex parte stuff.

6              MR. LAZARES:  The Remmer hearing motion is motion one

7         that we are going to file, correct?  Is that what you call it?

8              THE COURT:  It's up to you.

9              MR. LAZARES:  Okay.

10             THE COURT:  There's your standard Rule 29 based on

11        trial issues, and then there will be a separate -- I think

12        it's a Rule 29, I don't even know, but separate post-verdict

13        motion that related to juror misconduct issues, which will be

14        filed under seal.

15           As I said, I've not really been down this road before, so

16        I don't even know if it's called a Rule 29, but I would assume

17        it's some kind of a motion for an acquittal or a new trial.

18           And then the government will have opportunity to respond.

19             MR. LAZARES:  Normal briefing schedule?

20             THE COURT:  Yes.  Anything else anyone wants to put

21        on the record before we go off the record?

22             MS. GAFFNEY PAINTER:  No.  Thank you, Your Honor.

23             MR. C. HENRY RITTGERS:  No.  Thank you, Your Honor.

24             THE COURT:  All right.  We're off the record.

25                  (Proceedings concluded at 3:43 p.m.)
```

```
 1                      C E R T I F I C A T E

 2                            -   -   -

 3        I, M. SUE LOPREATO, RMR, CRR, certify that the foregoing
      is a correct transcript from the record of proceedings in the
 4    above-entitled matter.

 5

 6    /s/ M. Sue Lopreato_____            _____July 13, 2022_____
      M. SUE LOPREATO, RMR, CRR
 7    Official Court Reporter

 8                        I N D E X

 9
      EXHIBITS
10

11    Court Exhibit No. 1
      Court Exhibit No. 2
12

13                            -   -   -

14

15

16

17

18

19

20

21

22

23

24

25
```