# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  September 23, 2022

Ms. Emily Noel Glatfelter
Ms. Megan Gaffney Painter
Mr. Matthew Singer
Ms. Alexis J. Zouhary
Office of the U.S. Attorney
221 E. Fourth Street, Suite 400
Cincinnati, OH 45202

Mr. Gus John Lazares
Rittgers & Rittgers
3734 Eastern Avenue
Cincinnati, OH 45226

Re:  Case No. 22-3694, *In re: Alexander Sittenfeld*
Originating Case No. : 1:20-cr-00142-1

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Laurie A Weitendorf
Deputy Clerk

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0220p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

IN RE: ALEXANDER SITTENFELD, aka P.G. Sittenfeld,

                    *Petitioner.*

No. 22-3694

On Petition for a Writ of Mandamus Construed as an Appeal

United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:20-cr-00142-1—Douglas Russell Cole, District Judge.

Decided and Filed:  September 23, 2022

Before:  BATCHELDER, GIBBONS, and THAPAR, Circuit Judges.

─────────────────

## COUNSEL

**ON PETITION FOR A WRIT OF MANDAMUS AND LETTER BRIEF:**  Gus J. Lazares, RITTGERS & RITTGERS, Cincinnati, Ohio, for Alexander Sittenfeld.  **ON RESPONSE AND LETTER BRIEF:**  Alexis J. Zouhary, Matthew C. Singer, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for the United States.

       BATCHELDER, J., delivered the opinion of the court in which THAPAR, J., joined. GIBBONS, J. (pp. 22–25), delivered a separate concurring opinion.

─────────────────

## OPINION

─────────────────

       ALICE M. BATCHELDER, Circuit Judge.  Alexander Sittenfeld, a criminal defendant convicted by a jury in the district court, has filed a motion in this court to compel a forensic examination of a juror's cellphone, computer, or "any electronic device that [the juror] used to make electronic communications."  Sittenfeld presented this same motion to the district court,

which denied it. *United States v. Sittenfeld*, No. 1:20-cr-142, Dkt. 234 (S.D. Ohio, Aug. 3, 2022) (sealed). We construe Sittenfeld's motion as an appeal from that order.[1]

Sittenfeld's argument prompted a precursor question that had not been addressed, so we asked for additional briefing on this question: What legal authority empowers a court to order a juror to provide his or her cellphone, computer, or other electronic devices to the court for it to conduct—or permit a party to conduct—a search or forensic examination of the juror's devices?

Because a court's inherent or statutory authority in conducting a *Remmer* hearing does not include an unlimited, inquisitorial power to order jurors to surrender their personal possessions, such as their electronic devices, or to divulge their passwords, we hold that the district court had no power to order a forensic examination of the juror's devices. Therefore, we AFFIRM the district court's denial of Sittenfeld's motion and alert the district court that any further aspects of the *Remmer* hearing must comply with this opinion.

## I.

In the criminal context, a *Remmer* hearing concerns a defendant's Sixth Amendment right to "a fair trial by a panel of impartial, indifferent jurors." *United States v. Perry*, 438 F.3d 642, 651 (6th Cir. 2006) (citation omitted). In *Remmer v. United States*, 347 U.S. 227, 229-30 (1954), the Supreme Court held that "unauthorized invasions" on the jury proceedings can oblige the trial court to "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." This is a *Remmer* hearing.

In this circuit, a *Remmer* hearing is required when a defendant presents a "colorable claim" that extraneous information or contact had an obvious or likely adverse effect on the jury. *United States v. Harris*, 881 F.3d 945, 953 (6th Cir. 2018); *United States v. Gonzales*, 227 F.3d 520, 527 (6th Cir. 2000). In the post-verdict scenario, after a conviction, the *Remmer* hearing is the prescribed method for investigating whether the outside influence affected the verdict in a

---

[1]Jurisdiction is satisfied by the collateral order doctrine. *See United States v. Andrews*, 857 F.3d 734, 741–42 (6th Cir. 2017); *see also Williams v. Maurer*, 9 F.4th 416, 426 (6th Cir. 2021).

No. 22-3694                    *In re: Alexander Sittenfeld*                    Page 3

way that deprived the defendant of a fair trial by impartial jurors, and thus necessitates a new trial.

But to justify a new trial, the defendant must prove at the *Remmer* hearing that the improper contact caused actual prejudice to the verdict. *Ewing v. Horton*, 914 F.3d 1027, 1030 (6th Cir. 2019). The mere occurrence of juror misconduct, extraneous information, or improper contact is not, without evidence of actual prejudice, enough to warrant a new trial. *United States v. Mack*, 729 F.3d 594, 606 (6th Cir. 2013) ("[N]o presumption of prejudice arises merely from the fact that improper contact occurred."); *United States v. Pennell*, 737 F.2d 521, 532 (6th Cir. 1984).

If after the post-verdict *Remmer* hearing, the defendant has carried the burden of proving actual prejudice from an outside influence, the court must vacate the conviction and allow for a new trial. *See United States v. Davis*, 177 F.3d 552, 560 (6th Cir. 1999). If not, the conviction must stand. *See id*. Either way, the court's determination is subject to appeal, which we review for abuse of discretion. *See United States v. Ford*, 761 F.3d 641, 654 (6th Cir. 2014); *United States v. Corrado*, 304 F.3d 593, 605–06 (6th Cir. 2002); *Ewing*, 914 F.3d at 1033.

## II.

After charging Alexander "P.G." Sittenfeld, a former Cincinnati City Council member, on two counts each of honest-services wire fraud, bribery, and attempted extortion under color of official right, the federal prosecutor tried the case to a jury. The trial comprised nine days, spanning June 21 to July 6, 2022. The district court did not sequester the jurors but admonished them repeatedly against discussing the case or considering extraneous information. On the morning of the third day of jury deliberations, a court employee informed the judge that a juror ("Juror X") had been posting throughout her jury service to her private Facebook page, which was visible only to Juror X's Facebook friends, of whom the court employee was one.

The court obtained from the court-employee friend several printouts of Juror X's private—otherwise unavailable—posts and the associated comments. One of Juror X's posts expressed her opinion that another juror ("Juror Y"), "shouldn't be on the jury because [she] hates anyone that shares the same profession as our person on trial. Not cool!!!" None of Juror

X's posts contained facts about the case, discussed any of the proceedings, or even named the defendant (Sittenfeld). Juror X's Facebook friends, however, added their own comments to her posts. When one friend identified Sittenfeld by name, Juror X hid that comment so that others could not see it. Another friend commented, on the first day of trial, with a link to a local newspaper's homepage that linked to an article about the case. And on the third day of trial, yet another friend wrote a lengthy comment that included thoughts on juror nullification, such as an assertion that, "A jury has the right and the power to return a not guilty verdict and add in, when reading the verdict, that the jury verdict is based on the jury deciding that the law is unfair."

The court immediately called the parties to chambers to inform them of Juror X's Facebook postings and discuss the situation. In the meantime, the jury reached a verdict, so the court considered whether to hear the verdict. After a brief recess, Sittenfeld moved for a mistrial, which the court denied without prejudice. Ultimately, the parties and court decided to accept the verdict with the possibility of a post-verdict *Remmer* hearing if the jury returned a guilty verdict.

The jury convicted Sittenfeld on two of the six counts: one count each of bribery and attempted extortion under color of official right. The court accepted the verdict, ended the trial, and discharged the jury. But the court had Jurors X and Y remain for questioning in chambers. Pursuant to Federal Rule of Evidence 606(b), the court forbade counsel from asking about jury deliberations, except for whether the deliberations had included reference to any extraneous prejudicial information or other outside influences on the jury.

After Juror X was sworn in, Sittenfeld's attorney questioned her about the Facebook posts and comments. Under this questioning, Juror X reasserted her opinion that Juror Y should not have been on the jury because she hated politicians, which Juror X surmised from statements that Juror Y made throughout the trial. In answer to another question, Juror X explained that she had hidden Sittenfeld's name from one of the Facebook comments so that others would not see it. And she testified that she ignored the commenter's link to the newspaper site, did not click the link, and did not read any news about the case. During the questioning, Juror X shared her cellphone with Sittenfeld's counsel so that he could read all the posts and comments, including the full content of those that were truncated on the printouts. Finally, Juror X testified that she

did not engage in any private messaging with anyone, including any other jurors, about the case. The government declined to ask her any questions and the court asked her no questions before excusing her.

After Juror Y was sworn in, and testified that she had no opinions about politicians and elected officials, Sittenfeld's attorney pressed her at least six times to confess to Juror X's accusation that she hated politicians. Juror Y denied the accusation repeatedly and emphatically. Juror Y also testified that she did not participate in social media, had followed all the court's instructions, and had no bias against the defendant. The government did not ask her any questions. The judge asked what kind of engineer she was (aerospace) and shared that he had been an electrical engineer before becoming a lawyer, but asked no questions about the issue.

The next day, the court obtained and provided the parties with complete screenshots of all of Juror X's posts and comments. Four days later, Sittenfeld moved the court, under seal, to order Juror X to "preserve any and all data on any and all electronic devices on which she was capable of accessing Facebook during the trial and [the jury's] deliberation," and for leave to subpoena Facebook, Inc. for Juror X's Facebook data during that same period. Sittenfeld's sole cited source of authority was *United States v. Lanier*, 988 F.3d 284, 296 (6th Cir. 2021) ("When there is evidence that, in the lead-up to a *Remmer* hearing, a juror has researched a case online or has electronically communicated with a third-party about the case, a district court must seek at minimum to preserve the relevant data and notify the defendants.").

The court ordered Juror X to preserve any electronic communications relating to "her service as a juror . . . or any other aspect of this matter," and specified her text messages, emails, or social media messaging on Facebook, Instagram, or Snapchat. The court's sole stated source of authority was *Lanier*, 988 F.3d at 296. The court ordered the Jury Coordinator to inform Juror X of the order. It did not grant Sittenfeld leave to subpoena Facebook, Inc.

When the Jury Coordinator told Juror X to preserve her electronic communications, Juror X replied that she had already deleted the Facebook posts and comments. Sittenfeld then moved "for leave to conduct a forensic examination of the relevant devices of Juror X pursuant to *United States v. Lanier*, 988 F.3d 284, 287 (6th Cir. 2021)." Sittenfeld argued to the court that

the deletion of the data and Juror X's dishonest—in Sittenfeld's eyes—testimony necessitated the forensic examination. Sittenfeld's sole source of authority was still just *Lanier*.

The government opposed the motion, arguing that Sittenfeld "asks this [c]ourt to authorize an astonishing invasion of juror privacy—the kind of invasion that would otherwise require a search warrant." The crux of its argument, however, was that Sittenfeld could not show that Juror X's Facebook activity exposed the jury to any extraneous information likely to affect the verdict, i.e., the necessary predicate to a *Remmer* hearing. But Sittenfeld had nonetheless had a *Remmer* hearing (i.e., "a meaningful opportunity to investigate any possible prejudicial extraneous influence"), at which Juror X testified unequivocally that she did not read about the case or discuss it with anyone else. The government detailed Juror X's Facebook posts, the comments to them, and her testimony about both, to claim that Sittenfeld's "characterization of Juror X's testimony is unfair and untrue." Finally, the government insisted that even "[a] colorable claim of extraneous influence does not afford the defendant boundless license to seize a juror's computers and phones, acquire that juror's passwords, and search for 'relevant evidence.'"

In reply, Sittenfeld again relied solely on *Lanier* to insist that the law required the district court to order the forensic examination. And Sittenfeld added: "Privacy concerns notwithstanding, this is an outcome that Juror X chose by her conduct and that is required by *Lanier*."

The district court denied Sittenfeld's motion for a forensic examination. *United States v. Sittenfeld*, No. 1:20-cr-142, Dkt. 234 (S.D. Ohio, Aug. 3, 2022) (sealed).[2] The court explained

---

[2]The district court granted Sittenfeld's motion to communicate with jurors, ordering that Sittenfeld could select two additional jurors for questioning in camera on topics consistent with Federal Rule of Evidence 606(b). The government moved the court to reconsider, asserting that it had no legal or factual basis to order the questioning of additional jurors, and arguing that the order violated longstanding policies intended to protect jurors from harassment, ensure the sanctity of jury deliberations, and uphold the finality of verdicts.

On August 17, 2022, well after the present action was filed in this court, the district court conducted the in camera hearing, under seal, at which Sittenfeld and the government questioned the two additional jurors Sittenfeld had selected. Sittenfeld selected Juror A because she was seated next to Juror X during the trial and because Juror X had criticized her in two of her Facebook posts. Sittenfeld selected Juror B because Juror X had revealed during the post-verdict questioning that they had exchanged text messages during the trial about meeting for coffee before entering the courthouse. Both jurors denied knowledge of any extraneous information during deliberations.

No. 22-3694 *In re: Alexander Sittenfeld* Page 7

that a defendant's colorable claim that extraneous information likely influenced the jury's verdict requires the court to investigate, via *Remmer* hearing, whether the events or circumstances violated the defendant's right to a fair trial by an impartial jury. *See Remmer*, 347 U.S. at 229-30.

The court found that two of the Facebook comments had extraneous information: (1) the link to the newspaper site and (2) the comment about jury nullification. The court continued: "As to the former, Juror X denies ever clicking on the link, and the [c]ourt finds that testimony credible." But "even if Juror X did click on the link, . . . [t]he link was to a general news article published before trial began that did not discuss the allegations at issue in the trial, nor provide any meaningful external information about those allegations," so it was not prejudicial to Sittenfeld. Similarly, the court explained that "the comment about jury nullification, if anything, would have been prejudicial to the government, not Sittenfeld; it encouraged jurors to consider declining to convict defendants under laws the jurors consider unjust." The court found "no basis to believe that Juror X was prejudiced against Sittenfeld by any extraneous information, [and] conclude[d] that no basis exists to order a forensic examination of Juror X's cell phone."

The district court's denial led Sittenfeld to file the present action in this court.

## III.

On August 5, 2022, Sittenfeld "move[d] this [c]ourt to issue an emergency order directing the [district court] to order a forensic examination of the relevant devices of Juror X pursuant to *United States v. Lanier*, 988 F.3d 284, 287 (6th Cir. 2021)." *Sittenfeld Mtn.* at 1. Sittenfeld defined "relevant devices" as "any electronic device that Juror X used to make electronic communications," which he defined as "any communication relating to Juror X's

---

When asked about the text messages, Juror B explained—as had Juror X previously—that the content solely concerned their meeting at the coffee shop for coffee, and that there were only two or three messages. But at the conclusion of the hearing, Sittenfeld's attorney moved the district court to order Juror B to preserve the contents of her cellphone for forensic examination, based on his insinuation that Juror B had been lying. The court denied the motion. Sittenfeld's attorney also moved to question the eight remaining jurors. The court denied that motion, stating that "nothing that I've heard today has changed my view that the evidence-gathering phase of this should be over."

The court added: "I think we just saw with regard to the juror who was here today, that these jurors see this [questioning] as an immense invasion of their privacy. They see it as casting a shadow on their integrity."

service as a juror in this matter, or any other aspect of this matter, that she posted, sent, read, or received, whether directly to or from another individual (such as, for example, text messages or email), or through any social media such as Facebook, Instagram, Snapchat, etc." *Id.* at 4 n.2.

Sittenfeld's argument relied exclusively on *Lanier*, just as it had in the district court. Sittenfeld proffered *Lanier* as the controlling precedent and cited it for every aspect of his argument. The motion cites no other authority in support of his assumption that a court has the power to order a juror to provide his or her cellphone, computer, or other electronic devices to the court for it to conduct—or permit a party to conduct—a search or forensic examination of the juror's devices.

The government responded to Sittenfeld's motion with three arguments. One, the *Remmer* hearing was satisfied when the district court found that Juror X's testimony was credible, and the extraneous information was not prejudicial anyway. *Govt. Br.* at 12-20. Two, *Lanier* is distinguishable on its facts and, because "*Lanier* is the only authority Sittenfeld cites in support of his request[,] . . . [he] is thus bereft of any legal precedent or other authority supporting his [position]." *Id.* at 20-24. And three, "[j]urors, like all citizens, have strong privacy interests in their cell phones . . . [and] do not check their privacy at the courthouse door." *Id.* at 25 (internal quotation marks and citation omitted).

We requested supplemental briefing from both parties on whether and what authority district courts have to search or permit a search of a juror's electronic devices. In his response, Sittenfeld again relied entirely and exclusively on *Lanier* as the legal authority that would empower a court to order jurors to provide their electronic devices for forensic examination, and argued that the only two limits on that power are set out in *Lanier*: the defendant must show a colorable claim of external influence (i.e., the right to a *Remmer* hearing) and connect the electronic devices to that claim. The government questioned *Lanier*'s authority, arguing that, "due to the procedural posture of the case, *Lanier* had no occasion to analyze or discuss the implications or limitations of such a search." *Govt. Suppl. Br.* at 3. And "aside from this [c]ourt's decision in *Lanier*, the United States is unaware of another federal case even implicitly approving of such a sweeping invasion of juror privacy." *Id.*

After thorough research, we likewise could not locate a single case other than *Lanier* in which a district court in a *Remmer* hearing ordered a juror to relinquish his or her cellphone, computer, or other electronic device to the court for it to conduct—or permit a party to conduct—a search or forensic examination of the juror's device. Nor has Sittenfeld identified any.

## IV.

In *Lanier*, the jury was deliberating when the judge discovered that Juror 11 had called a friend named Nelson—a state assistant district attorney—seeking advice about a problem with the deliberations. After the jury returned guilty verdicts, Lanier moved to question the jurors about outside influence based on Juror 11's contact with Nelson. The court denied the motion, finding that Juror 11's attempt to talk with Nelson had been unsuccessful, so the claim of external influence was speculation. On appeal, the panel vacated the conviction and remanded for a *Remmer* hearing. *United States v. Lanier* (*Lanier I*), 870 F.3d 546, 551 (6th Cir. 2017).

At the ensuing *Remmer* hearing, at which Nelson and Juror 11 testified, Juror 11 admitted to sending text messages to Nelson and to conducting some on-line research about the *Remmer* hearing. At the conclusion, the court orally ordered Juror 11 to preserve her text messages and browser history. The court did not cite any legal authority that empowered it to issue the order.

Lanier moved to subpoena Juror 11 but, other than claiming a Sixth Amendment right to a fair trial, Lanier did not provide any legal authority that would empower a party to subpoena a juror as part of a *Remmer* hearing. The court denied Lanier leave to subpoena. *United States v. Lanier*, No. 2:14-cr-83, 2018 WL 577017, at *4 (E.D. Tenn. Jan. 26, 2018). The court did not identify any authority that would empower a court to issue a subpoena against a juror.

But about two weeks later, the district court ordered Juror 11 to report to the district court clerk's office and produce her cellphone and laptop computer so that a court staff member could retrieve from those devices the information that was requested in Lanier's proposed subpoena. The order contained no citation to any legal authority that would justify the order. The juror, who was not represented by counsel, did not file any legal challenge to the order or the court's

authority to issue it.  Rather, the juror complied and delivered her devices to the court as instructed.

The search located and retrieved some information but found that other information had been deleted.  Based on this, Lanier moved for a forensic analysis of the devices.  The court denied forensic analysis of the cellphone but granted it for the computer and permitted the expert to question Juror 11's employer, because her employer owned the computer.  The court cited no legal authority that empowered it to issue these orders, nor is there any indication that Juror 11 was informed of these activities or offered an opportunity to object.  Lanier petitioned this court to compel the district court judge to recuse.  *United States v. Lanier* (*Lanier II*), 748 F. App'x 674, 676 (6th Cir. 2018).  Despite denying the petition, the panel opined that Lanier's complaints about the district court judge had merit, *id.* at 677-78, and offered this assessment in dicta:

> [T]he district court has denied [Lanier] an adequate search of Juror 11's cellphone without an adequate explanation.  This is the device that Juror 11 used to violate the district court's order to refrain from communicating with others about the [*Remmer*] hearing.  Furthermore, Juror 11 may have used the web browser on her cellphone to conduct outside research, as opposed to her computer's web browsers.

*Id.* at 677; *see Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019) ("[O]nly *holdings* are binding, not *dicta*.").  The panel did not cite any legal authority that would empower a court to order a search of a juror's cellphone, nor does it appear that this issue was raised or considered.

When Lanier moved the district court to reconsider its denial of the forensic examination of Juror 11's cellphone, the government chose not to oppose the motion, "in order to help avoid continued delay and to satisfy the Sixth Circuit's suggestion."  *United States v. Lanier*, No. 2:14-cr-83, 2018 WL 4997139, at *8 (E.D. Tenn. Oct. 15, 2018).  The district court scheduled a hearing, at which it approved the forensic analysis of Juror 11's cellphone.  The court issued an order for Juror 11 to surrender her cellphone for forensic examination.  But Juror 11 reported that she no longer had that cellphone; she had traded it in for a new one.

Lanier moved for a new trial, arguing that he was "denied a meaningful opportunity to investigate and prove [a] claim of extraneous influence."  *United States v. Lanier*, No. 2:14-cr-83, Dkt. No. 440, at *2 (E.D. Tenn. Mar. 8, 2019).  The district court denied the motion.

On appeal, Lanier argued that the inability to conduct a forensic examination of Juror X's cellphone denied him a meaningful opportunity to investigate and prove extraneous influence. Lanier's briefing did not cite any legal authority that would address the power of a court to order a search of a juror's cellphone or computer. Nor did the government contest this issue. In fact, the government conceded that: "Perhaps a more perfect proceeding would have allowed [Lanier] to forensically examine Juror 11's computer sooner and her cell phone at all." *Brief of the United States*, *Plaintiff-Appellee*, No. 16-6657, 2020 WL 5496188, at *50 (Sept. 2, 2020).

The panel concluded that Lanier was "deprived of a 'meaningful opportunity' to prove juror bias" and was therefore "entitled to a new trial before a different judge." *United States v. Lanier* (*Lanier III*), 988 F.3d 284, 299 (6th Cir. 2021). The panel explained in pertinent part:

> The district judge's handling of the *Remmer* hearing and his minimally timely, minimally adequate, investigation into Juror 11's illicit communications and research undershot the district court's constitutional obligations.
>
> When there is evidence that, in the lead-up to a *Remmer* hearing, a juror has researched a case online or has electronically communicated with a third-party about the case, a district court must seek at minimum to preserve the relevant data and notify the defendants.
>
> Anything less flunks the Supreme Court's guarantee that defendants must have a meaningful opportunity to demonstrate these communications' circumstances, their impact, and whether or not the contacts were prejudicial, in a hearing with all interested parties permitted to participate.

*Id.* at 296 (quotation marks, editorial marks, and citations omitted; paragraph breaks inserted) (citing *Oswald v. Bertrand*, 374 F.3d 475, 483 (7th Cir. 2004), and *Remmer*, 347 U.S. at 230).

In the present case, Sittenfeld asks us to read *Lanier III* to mean that a satisfactory *Remmer* hearing concerning a juror's electronic communications, social media, or on-line activity necessarily or unavoidably requires the district court to: (1) order the suspected juror to preserve her electronic communications, social media, or on-line activity; (2) order the juror to surrender her cellphone, computer, or other electronic devices to the court for a search; and (3) allow the defense expert to search or conduct a forensic examination of the juror's devices.

But *Lanier III*, like each of the decisions leading up to it, contains no legal authority that would empower a court conducting a *Remmer* hearing to issue any of those orders to a juror. The only hint of authority is the vague insistence that *Remmer* requires an "adequate investigation."

Juror 11—who was *not* represented by counsel at any stage—did not challenge the court's orders. She voluntarily provided her phone, computer, and passwords. This issue about the court's authority was not raised to the *Lanier III* panel and, in fact, was never raised at any point.

Because *Lanier III* did not consider, analyze, or provide any authority that would empower a court to order a juror to preserve her electronic communications, surrender her electronic devices, or submit to forensic examination, *Lanier III* provides no holding on that issue and is not controlling. We are left in search of some legal authority that would so empower a court.

## V.

It bears emphasis that we are concerned with a court's power over a *juror*. Not a criminal defendant, a civil litigant, or even a material witness. And certainly not an attorney admitted to the bar and subject to the court's rules of admission. A juror has no stake in the outcome of the case and may in fact have preferred not to be called to jury service. And while a juror's attendance is not strictly voluntary, *see* 28 U.S.C. §§1864(a) & 1866(g), once called, his or her cooperation, participation, and effort certainly are. We should be at the very least hesitant to impose on a juror the heavy hand demanded by Sittenfeld.

Our hesitation is consistent with much of our common-law tradition. At least one other court has recognized that while the act of seizing a phone or a computer for an invasive search is the "kind of treatment [that] sometimes befalls a person accused of a crime or even someone involved in substantial civil litigation," to a juror this is "an indefensible additional burden," and it is doubtless that "[t]reating jurors this way would make future jurors understandably reluctant to serve." *United States v. Siegelman*, 799 F. Supp. 2d 1246, 1255 (M.D. Ala. 2011). Our judicial system "ask[s] much of jurors. But not this much." *Id.*

The Supreme Court has "long-recognized and very substantial concerns" about post-verdict investigation into juror misconduct. *Tanner v. United States*, 483 U.S. 107, 127 (1987).

> There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. *It is not at all clear, however, that the jury system could survive such efforts to perfect it.* Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process.

*Id.* at 120 (citation omitted; emphasis added). If such a search were truly required upon any post hoc claim of juror misconduct, any and all "[j]urors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict." *McDonald v. Pless*, 238 U.S. 264, 267 (1915).

In *United States v. Ianniello*, 866 F.2d 540 (2d Cir. 1989), a Second Circuit panel opined:

> We are always reluctant to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences. As we have said before, post-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts. This court has consistently refused to allow a defendant to investigate jurors merely to conduct a fishing expedition.

*Id.* at 543 (quotation marks and citations omitted).

If there is a broad policy or presumption to be drawn from the universe of common law, it is not that a court must or should (or even can) subject an accused juror—even a clearly disobedient or misbehaving juror—to an invasive search of her personal, private belongings. It is instead that a court should be reluctant to investigate accused jurors so invasively, if at all.

## VI.

Sittenfeld pointed us to *Lanier III* to justify his demand for a forensic examination. But as explained in Section IV, above, *Lanier III* did not create that power, nor did it base its assumption of that power on any clear authority. Neither party pointed us to any such authority either. But before holding that there is no such authority, certain possibilities warrant consideration.

## A.

First, "[i]t has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quotation and editorial marks omitted). But "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44. "[I]nherent power is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *Id.* at 42 (quotation marks and citation omitted).

"The inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question." *Universal Oil Prods. Co. v. Root Refin. Co.*, 328 U.S. 575, 580 (1946). And because "[t]he power to unearth such a fraud is the power to unearth it effectively[,] . . . a federal court may bring before it by appropriate means all those who may be affected by the outcome of its investigation." *Id.* "But if the rights of parties are to be adjudicated in such an investigation, the usual safeguards of adversary proceedings must be observed." *Id.*

While juror misconduct grounded in external information or contact is not "fraud," there is no legitimate question that the district court has inherent power to conduct a *Remmer* hearing to investigate whether some extraneous influence affected the integrity of its verdict. *See Remmer*, 347 U.S. at 230. And it has the power to conduct and regulate those proceedings. For instance, it can question jurors. *See United States v. Moten*, 582 F.2d 654, 664 (2d Cir. 1978) ("Often, the only way this exploration can be accomplished is by asking the jury about it."). Federal Rule of Evidence 606(b) provides boundaries for questioning jurors. "During an inquiry into the validity of a verdict . . . , a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." Fed. R. Evid. 606(b)(1). But "[a] juror may testify about whether . . . extraneous prejudicial information was improperly brought to the jury's attention." Fed. R. Evid. 606(b)(2)(a).

No. 22-3694                          *In re: Alexander Sittenfeld*                          Page 15

Similarly, the district court can oversee the parties' questioning of jurors.  "[W]e see no basis for doubting the authority of the trial judge to direct [the parties] that any interrogation of jurors after a conviction shall be under his supervision."  *Miller v. United States*, 403 F.2d 77, 81–82 (2d Cir. 1968).  In the conduct of its *Remmer* hearing, and pursuant to Rule 606(b), "[t]he court has a vital interest in seeing that jurors are not harassed or placed in doubt about what their duty is and that false issues are not created."  *Miller*, 403 F.2d at 82.  And "because the line between proper and improper inquiry is not easy to draw, and because the jurors may be in doubt about the proprieties, the judge may well find it better that he [or she] control any questioning."  *Id.* (internal citation omitted).  "Thus, supervision is desirable not only to protect jurors from harassment but also to [e]nsure that the inquiry does not range beyond subjects on which a juror would be permitted to testify under Rule 606(b)."  *Moten*, 582 F.2d at 665.[3]

But conducting a forensic search of a juror's devices is not simple "supervision."  *Id.* And there is no rule or statutory authority that provides any equivalent boundaries or governance for the searching of jurors as part of a *Remmer* hearing.  Neither does our caselaw indicate the existence of any such power.[4]

It should also be recalled that jurors, who are "summoned to perform a duty in the administration of justice," are "officers of the court."  *McDonald*, 238 U.S. at 266.  Thus, jurors are entitled to a level of respect or deference beyond that of an ordinary witness.  We doubt that other officers of the court would submit meekly to a court ordered search of their cellphones.

To look at it another way, suppose the district court does have the power in conducting a *Remmer* hearing to order a search of a juror's belongings.  We asked the parties to brief the

---

[3]"Human nature is such that some jurors, instead of feeling harassed by post-trial interviewing, might rather enjoy it, particularly when it involves the disclosure of secrets or provides an opportunity to express misgivings and lingering doubts.  A serious danger exists that, in the absence of supervision by the court, some jurors, especially those who were unenthusiastic about the verdict or have grievances against fellow jurors, would be led into imagining sinister happenings which simply did not occur or into saying things which, although inadmissible, would be included in motion papers and would serve only to decrease public confidence in verdicts."  *Moten*, 582 F.2d at 665.

[4]Note that in the realm of "searches," this is effectively a suspicionless search.  There is no implication of any crime—this is at most juror misconduct, so there is no "reasonable suspicion" or "probable cause" as those terms are used in the legal context of searches.  Suspicionless searches are at the very extreme limit of government power.  In the Sixth Circuit, even probationers and parolees are not subjected to suspicionless searches.  *See United States v. Fletcher*, 978 F.3d 1009 (6th Cir. 2020); *United States v. Sharp*, 40 F.4th 749 (6th Cir. 2022).

extents and limits of that power.  Sittenfeld argues that *Lanier III* sets the limits and extents: the only limit is that the defendant must show a colorable claim of external influence due to electronic communications accessible through the devices, and the extent of the court's power is a "function of the probability of bias; the greater that probability, the more searching the inquiry into juror bias is needed, " *Lanier III*, 988 F.3d at 296 (quotation and editorial marks omitted). But, if the court truly has such limitless power, we would expect far more—and more compelling—authority than just this repeated reference to *Lanier III* and its citation to two cases about jury selection.

A court's inherent power is expressly limited.  *See Chambers*, 501 U.S. at 42 ("[I]nherent power is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function."); *Universal Oil*, 328 U.S. at 580 (emphasizing that "the usual safeguards of adversary proceedings must be observed").

The district court has inherent power to hold a *Remmer* hearing, which includes juror testimony.  But that inherent power does not extend to an investigation into a juror's personal affairs and does not empower the court to order a search of the juror's belongings.

**B.**

Second, suppose that Sittenfeld had attempted to subpoena Juror X's phone and computer, thus implicating the district court's subpoena power over witnesses.

As already explained, a juror—being an officer of the court and subject to a limited field of questioning, *see* Fed. R. Evid. 606(b), about events and circumstances that arose during or out of his or her jury service—is not an ordinary witness.  Thus, the court's subpoena power over witnesses has questionable, if any, applicability here.  But we need not resolve this question because we find the court's subpoena power inapplicable or insufficient for other reasons.

A civil subpoena is inapplicable on its face.  "Every subpoena must . . . state the title of the action and its civil-action number."  Fed. R. Civ. P. 45(a)(1)(A)(ii).  There is no civil action nor any civil-action number in a criminal trial.  Nor could the *Remmer* hearing be converted to a civil action against the juror, given that jurors have absolute immunity from civil suit.  *Butz*

*v. Economou*, 438 U.S. 478, 509–10 (1978); *see also Briggs v. Goodwin*, 569 F.2d 10, 49 (D.C. Cir. 1977) ("[I]t must be emphasized that historically all of the essential participants in the judicial process enjoyed an absolute immunity from civil suit for their words and actions relevant to the judicial proceedings.  This included the judge, petit jurors, grand jurors, counsel, and witnesses.").[5]

> Alternatively, the Federal Rules of Criminal Procedure provide for subpoenas:
>
> A subpoena may order the witness to produce any books, papers, documents, data, *or other objects* the subpoena designates. . . . When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1) (emphasis added).  On its face, that would appear to empower a court to order a phone or computer submitted for a search.  But a subpoena duces tecum has additional requirements of "relevance, admissibility[,] and specificity."  *United States v. Hughes*, 895 F.2d 1135, 1145–46 (6th Cir. 1990) (footnotes omitted).  There would be no specificity here, given that the purpose of this subpoena is to search for possible evidence, not to acquire some admissible evidence.

A district court conducting a *Remmer* hearing has no power enforce a subpoena request that a juror produce her electronic device on the basis that a search of that device might uncover evidence to impeach that juror's *Remmer* hearing testimony.  Consequently, the court's subpoena power cannot provide some further authority for the court to order the search of that device.

## C.

Three statutes, which could warrant consideration, fail on their own terms: the All Writs Act, 28 U.S.C. § 1651(a) (federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"); civil contempt, 28 U.S.C. § 1826(a) (titled "Recalcitrant witnesses"); and criminal contempt, 18 U.S.C. § 401

---

[5]Sittenfeld's request for a civil subpoena here was otherwise unauthorized.  *See* 18 U.S.C. § 2702 (Stored Communications Act); *Lucas v. Jolin*, No. 1:15-cv-108, 2016 WL 2853576, at *5 (S.D. Ohio May 16, 2016) (explaining that "the SCA prevents a provider from releasing the 'contents' of a user's stored communications in response to a civil subpoena from a third party").

(titled "Power of the court").  Whatever powers—if any—these statutes confer, none provides a court conducting a *Remmer* hearing with the power to order a search of a juror's belongings.

***

In sum, no source of authority justifies a district court's ability to search or order a search of a juror's belongings.  The parties have pointed us to no such authority, and we have found none.

**VII.**

This lack of clear authority is particularly troubling when a court's exercise of power threatens a third-party's constitutional rights.  That is what would happen here if Sittenfeld were to prevail.

In the post-verdict *Remmer* hearing scenario, in which the court has accepted the jury's guilty verdict, concluded the trial, and discharged the jury, a juror called to a *Remmer* hearing is technically no longer a juror.[6]  More to the point, once ushered into the *Remmer* hearing and sworn to give full and truthful testimony, that former juror is no longer *treated* as a juror but is treated as a suspect or a witness.[7]  In this case, Juror X was treated as a suspect while Juror Y, Juror A, and Juror B were treated like witnesses—reluctant, confused, and offended witnesses.

Moreover, the former juror is frequently, if not always, thrust into the center of the already live *Remmer*-hearing dispute, without context or forewarning, likely without any expectation that he or she will be treated as a suspect or a reluctant witness, and almost certainly without counsel.  Therefore, the court has a duty to the former juror, regardless of the former

---

[6]*See* 28 U.S.C. § 1877(b)(2) (titled "Protection of Jurors") ("[P]erformance of duty as a juror includes that time when a juror is in attendance at court pursuant to a summons, in deliberation, sequestered by order of a judge, or at a site, by order of the court, for the taking of a view." (letter designations omitted)).

[7]Obviously, a *Remmer* hearing conducted during trial (pre-verdict) presents a different scenario with different considerations.  For example, a juror called to chambers to testify at a mid-trial *Remmer* hearing would still be a juror, and while the court could discharge that juror, the court could also return that juror to the jury and continue the trial.  That scenario is not before us and we need not dwell on it, but it bears mention that some attorneys might question jurors in a pre-verdict hearing very differently from the way they question former jurors post-verdict.

juror's perceived or believed misconduct, to protect the former juror's personal rights as well as the jury process.

In *Riley v. California*, 573 U.S. 373, 403 (2014), the Supreme Court held that police must obtain a warrant before searching a criminal suspect's cell phone incident to an arrest. "Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans the privacies of life." *Id.* (quotation marks and citation omitted). The government cites to *Riley* in its supplemental briefing, emphasizing that "jurors . . . have robust privacy interests in their electronic devices," and suggests three protective rules:

> 1). "In light of these significant privacy interests, a district court should afford a juror an opportunity to be represented by counsel and to object to any forensic examination."
>
> 2.) "Prior to authorizing a search of a juror's personal electronic devices, at a minimum, a district court would need to make a finding that the search was reasonable under the Fourth Amendment."
>
> 3.) "At a minimum, it would require a particularized showing that the search would be likely to reveal evidence of prejudicial misconduct, as well as a showing that the requested search was narrowly tailored to protect privacy interests and was necessary because less intrusive mechanisms were insufficient."

*Govt. Suppl. Br.* at 4.[8] But the government cited no authority that would empower us to impose prophylactic rules on the district court's conduct of a *Remmer* hearing. And without authority, we cannot do so.

But given that the juror ordered to testify at a *Remmer* hearing is sometimes—and certainly was in this case—*treated like a suspect*, questioned severely, without counsel, in custody, and without Miranda warnings, the government's suggested protections certainly resonate. We need not speculate on the consequences of Juror X's accidentally revealing

---

[8] Sittenfeld contends that a juror's misconduct waives any right to privacy. *Sittenfeld Suppl. Br.* at 4 ("Juror X's decision to use her phone in the deliberation room thus waived her privacy interest related to that device.").

something criminal in her testimony or the contents of her phone, but that possibility certainly exists for some people.

Juror X posted several statements to her private Facebook page during the course of her jury service. Several of her Facebook friends read those posts and commented to them; likely other Facebook friends read those posts and did not comment. One Facebook friend printed screen shots of the posts and comments, and gave those printouts to the judge. Juror X had no claim of privacy to anything she had posted on her Facebook page. *See Smith v. Maryland*, 442 U.S. 735, 743 (1979) (a person "has no legitimate expectation of privacy in information he voluntarily turns over to third parties"). That is, Juror X could not prevent the Facebook friend from showing, or the court from viewing, the printouts of her Facebook page posts and comments. But that does not mean that Juror X waived any right to privacy for anything she did *not* post to Facebook.

The district court cannot order a juror to submit to a search of her belongings as part of the *Remmer* hearing, because it has no authority to do so. And a juror's right to privacy bolsters that conclusion.

## VIII.

The district court has inherent authority to conduct a *Remmer* hearing, which includes the power to question jurors, *see Moten*, 582 F.2d at 664; FRE 606(b). But that inherent power has limits. *See Chambers*, 501 U.S. at 44 ("Because of their very potency, inherent powers must be exercised with restraint and discretion."); *Universal Oil*, 328 U.S. at 580 (admonishing that "the usual safeguards of adversary proceedings must be observed"). The court can question jurors under oath and oversee the *Remmer* hearing, but it cannot search jurors' personal devices and steamroll their Fourth Amendment rights in the process.

We hold that in conducting the *Remmer* hearing, a court cannot order a search of a juror's belongings—electronic or otherwise. For example, a court conducting a *Remmer* hearing cannot order a search of a juror's home, office, car, or person; cannot order a juror to turn out her purse, pockets, or wallet, cannot order a juror to submit to a blood test, a urine test, a breath test, or a DNA test. And, most pertinent here, in conducting a *Remmer* hearing, a court cannot order a

juror to hand over his or her cellphone, computer, or other electronic devices, nor order a search or forensic examination of a juror's devices.

If a court in conducting a *Remmer* hearing suspects that a juror's misconduct constitutes a crime subject to possible criminal prosecution, that is a matter for a prosecutor to investigate, not a judge. A prosecutor can pursue a warrant from a neutral and detached magistrate and question the juror pursuant to Miranda warnings. The court has no power to conduct a criminal inquisition.

Sittenfeld asks the court to order Juror X to do things that a court has no power to order a juror to do. Though perhaps for the wrong reasons, the district court properly refused.

The conclusion of the *Remmer* hearing is the trial judge's determination of whether some external information influenced the verdict to the defendant's actual prejudice. If after the post-verdict *Remmer* hearing, the defendant has carried the burden of proving actual prejudice, the court must vacate the conviction and allow for a new trial. *See Davis*, 177 F.3d at 560. If not, the conviction must stand. *See id.* Either way, the *Remmer* hearing is complete, and the district court's decision is then subject to appeal. *See Ford*, 761 F.3d at 654; *Corrado*, 304 F.3d at 605–06.

## IX.

For the foregoing reasons, we AFFIRM the district court's order denying Sittenfeld's motion and correspondingly DENY Sittenfeld's motion to this court.

No. 22-3694              *In re: Alexander Sittenfeld*              Page 22

--------------------

## CONCURRENCE

--------------------

JULIA SMITH GIBBONS, Circuit Judge, concurring.  I agree that Alexander Sittenfeld is not entitled to the relief he seeks, in light of well-recognized limits on the scope of our mandamus jurisdiction.  However, I would refrain from broad statements of law that purport to limit the discretion of a district court in further cases with differing circumstances.

This matter was assigned to the instant panel as an emergency motion pursuant to Sixth Circuit Rule 27(c).  Indeed, in the caption of his motion, Sittenfeld described it as an "Emergency Motion to Compel Forensic Examination of Relevant Devices of Juror X, or, in the Alternative, Petition for Writ of Mandamus."  CA6 R. 1, Emergency Mtn., at 2.

Resolution of Sittenfeld's motion is fairly straightforward.  First, his petition for a writ of mandamus should be considered under the All Writs Act, 28 U.S.C. § 1651(a).  Second, the petition should be denied on the limited grounds that Sittenfeld fails to demonstrate that issuing the writ is "appropriate under the circumstances."  *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 381 (2004).

Sittenfeld petitions for a writ of mandamus, "one of the most potent weapons in the judicial arsenal."  *Id.* at 380 (quoting *Will v. United States*, 389 U.S. 90, 107 (1967)).  According to Sittenfeld, the emergency nature of his motion is necessary "as the electronic communications at issue are highly likely to be lost or destroyed if not produced immediately."  CA6 R.1, Emergency Mtn., at 3.

Under the All Writs Act, 28 U.S.C. § 1651(a), we may issue a writ of mandamus "to compel [an inferior court] to exercise its authority when it is its duty to do so."  *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980) (per curiam) (quoting *Will*, 389 U.S. at 95 (internal citations omitted)).  "[O]nly exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify [its] invocation."  *Cheney*, 542 U.S. at 380 (internal quotation marks and citations omitted).  To limit use of the writ to only

extraordinary causes, "three conditions must be satisfied before it may issue." *Id.* First, the petitioner must have no adequate alternative means to obtain the relief sought — "a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Id.* at 380−81. Second, the petitioner must show a "clear and indisputable" right to the relief sought. *Id.* at 381 (citation omitted). Finally, the petitioner must show that issuing the writ is "appropriate under the circumstances." *Id.* As Sittenfeld fails to satisfy this final requirement, he is not entitled to a writ of mandamus.

Sittenfeld has not shown that relief is appropriate under these circumstances. Sittenfeld has already been provided with an opportunity to examine Juror X's bias, and Juror X has been ordered to preserve any relevant communications. Likewise, although Juror X clearly discussed her jury service with others, her posts and comments do not obviously indicate external influence of the kind that offends the Sixth Amendment right to an impartial jury. In addition, Sittenfeld has now interviewed four jurors—fully one-third of the jury—none of whom described any discussion of external sources or information. Although Juror X's use of her cell phone in the deliberation room means that a forensic examination could determine whether she accessed inappropriate information or communicated with outside individuals, use of the cell phone in and of itself does not permit an inference of external influence. Weighed against uniform testimony from multiple jurors that no external influence affected deliberations, uncertainty alone is not enough.

Moreover, an examination of the cell phone would implicate concerns about jurors' privacy, constitutional rights, and future willingness to serve.[1] *See Riley v. California*, 573 U.S. 373, 393 (2014) ("Modern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse."); *Tanner v. United States*, 483 U.S. 107, 120–21 (1987) (explaining that general skepticism of post-verdict inquiries protects "full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople"); *United*

---

[1]To support his request for forensic examination of the juror's cell phone, Sittenfeld relies on *United States v. Lanier*, 988 F.3d 284 (6th Cir. 2021). In *Lanier*, the district court had in fact ordered a juror to turn over her cell phone and laptop to the court. Our court's opinion, however, did not discuss the district court's authority to do that, and the issue does not appear to have been raised.

*States v. Siegelman*, 799 F. Supp. 2d 1246, 1255 (M.D. Ala. 2011) (opining that seizing the jurors' computers for a forensic examination "would inflict an indefensible additional burden on these jurors" and "would make future jurors understandably reluctant to serve").

Mandamus "is a drastic and extraordinary remedy,'" and a petitioner must show a "clear and indisputable" right to relief. *Cheney*, 542 U.S. at 380 (internal quotation marks and citation omitted). Sittenfeld has not cleared that high burden, which ensures that the writ is "reserved for really extraordinary causes." *Id.* (citation omitted).

Notwithstanding a clear, straightforward path to denial of the relief that Sittenfeld seeks, the majority's sweeping opinion strays far outside customary boundaries for this type of matter. At the outset the panel majority proclaims itself to be a merits panel deciding an appeal from a district court order, presumably to justify the breadth of its undertaking. It then proceeds to examine the general question of a district court's authority to order jurors to turn over electronic devices or divulge their passwords, and it does so in a published opinion.

When we set precedent of the type included in this opinion, we typically do so when a case has been set on the regular argument calendar. More extensive briefing is permitted, not the truncated, hurried briefs requested by the panel here. In the first instance at least, the appellant frames the issues for consideration on appeal, not the panel. Oral argument may be permitted. In short, normal deliberative processes occur. The majority's chosen path is at odds with those.

The breadth of the majority opinion creates another concern. A district court may face myriad situations in handling matters of extreme importance to the integrity of the jury deliberations process. Further, "the trial judge is in the best position to determine the nature and extent of alleged jury misconduct," justifying our review of a trial judge's "decision on the scope of proceedings necessary to discover misconduct . . . for an abuse of discretion." *United States v. Shackelford*, 777 F.2d 1141, 1145 (6th Cir. 1985), *cert. denied*, 476 U.S. 1119 (1986).[2] The notion that a "broad policy or presumption is needed," *see* maj. op. at 14*,* in this context more

---

[2]In this case, both at the beginning of the case and before deliberation, the district court gave extensive and explicit instructions prohibiting the use of electronic devices to communicate about or to research the case. The majority focuses entirely on juror rights rather than juror misconduct. Yet both relate to the proper course of action when dealing with juror misconduct.

than others is not necessarily sound.  District courts have previously been afforded considerable discretion in handling post-trial matters involving juror conduct.  *See, e.g.*, *Pena-Rodriguez v. Colorado*, 580 U.S. 206 (2017) (permitting trial courts to consider the evidence of a juror's statement of racial bias); *Harden v. Hillman*, 993 F.3d 465, 480 (6th Cir. 2021) (applying *Pena-Rodriguez* to civil cases); *United States v. Copeland*, 51 F.3d 611, 613 (6th Cir. 1995) (affirming the trial court's authority to determine post-trial remedies for demonstrated juror misconduct); *Cunningham v. Shoop*, 23 F.4th 636, 652 (6th Cir. 2022) ("The greater the probability of juror bias, moreover, the more searching the court's investigation must be").  A more measured approach here too would be more prudent.

Accordingly, I would deny the petition for a writ of mandamus and say no more than necessary to do so.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 22-3694

IN RE: ALEXANDER SITTENFELD, aka P.G. Sittenfeld,

      Petitioner.

```
┌─────────────────────────────┐
│           FILED             │
│        Sep 23, 2022         │
│    DEBORAH S. HUNT, Clerk    │
└─────────────────────────────┘
```

Before:  BATCHELDER, GIBBONS, and THAPAR, Circuit Judges.

# JUDGMENT

On Petition for a Writ of Mandamus Construed as an Appeal from the
United States District Court for the Southern District of Ohio at Cincinnati.

THIS CAUSE was heard on the pleadings of counsel and the record of the district court.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's denial of Alexander Sittenfeld's motion to compel a forensic examination is AFFIRMED and the petition for a writ of mandamus is DENIED.

**ENTERED BY ORDER OF THE COURT**

_____

Deborah S. Hunt, Clerk