1

```
02:00:00    1                   UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF OHIO
            2                 WESTERN DIVISION AT DAYTON
                                      -   -   -
            3    UNITED STATES OF AMERICA,       : CASE NO. 1:20-cr-142-DRC
                                                 :
            4                  Plaintiff,        :
                         vs.                     :MOTIONS HEARING
            5                                    :
                 ALEXANDER SITTENFELD, a/k/a     :
            6    "P.G. Sittenfeld,"              :1:30 P.M.
                                                 :
            7                  Defendant.        :
                                                 :
            8                          -   -   -

            9                  TRANSCRIPT OF PROCEEDINGS
                         BEFORE THE HONORABLE DOUGLAS R. COLE
           10          UNITED STATES DISTRICT JUDGE, PRESIDING
                              MONDAY, DECEMBER 5, 2022
           11
                                      -   -   -
           12    For the Plaintiff:
                                    EMILY N. GLATFELTER, ESQ.
           13                       MATTHEW C. SINGER, ESQ.
                                    MEGAN GAFFNEY PAINTER, ESQ.
           14                       U.S. Department of Justice
                                    U.S. Attorney's Office
           15                       221 E. Fourth Street, Suite 400
                                    Cincinnati, OH  45202
           16
                 For the Defendant:
           17                       CHARLES M. RITTGERS, ESQ.
                                    CHARLES H. RITTGERS, ESQ.
           18                       Rittgers & Rittgers
                                    12 East Warren Street
           19                       Lebanon, OH  45036
                                         and
           20                       GUS J. LAZARES, ESQ.
                                    Rittgers & Rittgers
           21                       3734 Eastern Avenue
                                    Cincinnati, OH  45226
           22                            and
                                    JAMES BURNHAM, ESQ.
           23                       THOMAS HOPSON, ESQ.
                                    Jones Day - Washington
           24                       51 Louisiana Avenue, N.W.
                                    Washington, DC  20001-2113
           25
```

```
 1   Also present:        Alexander Sittenfeld, Defendant
                          SA Nathan Holbrook, FBI
 2
     Law Clerk:           Jacob T. Denz, Esq.
 3
     Courtroom Deputy:    Scott M. Lang
 4
     Stenographer:        Mary Schweinhagen, RPR, RMR, RDR, CRR
 5                        United States District Court
                          200 West Second Street, Room 910
 6                        Dayton, Ohio 45402

 7
         Proceedings reported by mechanical stenography,
 8   transcript produced by computer.
                          *** *** *** ***
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 01:35:06 | 1 | P-R-O-C-E-E-D-I-N-G-S                    1:35 P.M. |
| 01:35:06 | 2 | THE COURT:  Good afternoon.  We are here this |
| 01:35:10 | 3 | afternoon in open court and on the record in the Court's |
| 01:35:13 | 4 | criminal docket in the matter of the United States of America |
| 01:35:14 | 5 | versus Alexander Sittenfeld.  It's Case Number 1:20-cr-142. |
| 01:35:23 | 6 | And it's the Court's understanding we're here for |
| 01:35:25 | 7 | argument on two motions:  number one, defendant's motion for |
| 01:35:32 | 8 | acquittal, which is Document Number 270; and then defendant's |
| 01:35:39 | 9 | motion for a new trial, which is Document Number 271. |
| 01:35:44 | 10 | Could I have counsel please enter their appearances for |
| 01:35:47 | 11 | the record. |
| 01:35:47 | 12 | MR. SINGER:  Good afternoon, Your Honor.  Matt |
| 01:35:51 | 13 | Singer, Emily Glatfelter, and Meg Gaffney Painter for the |
| 01:35:55 | 14 | United States.  Also at counsel table is special agent from |
| 01:35:57 | 15 | the FBI Nathan Holbrook. |
| 01:35:59 | 16 | THE COURT:  Good afternoon. |
| 01:36:01 | 17 | MR. M. RITTGERS:  Good afternoon Your Honor.  James |
| 01:36:03 | 18 | Burnham, Thomas Hopson, Gus Lazares, Chars H. Rittgers, |
| 01:36:06 | 19 | Charles M. Rittgers for P.G. |
| 01:36:11 | 20 | THE COURT:  Good afternoon. |
| 01:36:11 | 21 | MR. M. RITTGERS:  Good afternoon. |
| 01:36:12 | 22 | THE COURT:  All right.  Well, Mr. Sittenfeld's team, |
| 01:36:14 | 23 | it's your motion.  So please proceed. |
| 01:36:19 | 24 | MR. BURNHAM:  Thank you, Your Honor.  James Burnham |
| 01:36:22 | 25 | for Mr. Sittenfeld. |

01:36:23  1      So, Your Honor, I'm going to focus on two issues this

01:36:26  2  afternoon:  the Rule 29, the evidence of the agreement; and

01:36:29  3  then the constructive amendment as it relates to what we would

01:36:31  4  describe as the uncharged conduct involving Mr. Ndukwe.

01:36:35  5  Obviously, if the Court has questions about other stuff, we

01:36:37  6  will endeavor to answer them.  Mr. Lazares will probably take

01:36:39  7  the lead on anything else that comes up.

01:36:41  8      Your Honor, politicians solicit and accept campaign

01:36:44  9  contributions every single day.  They do so from donors with

01:36:47  10  business pending before them; they do so from donors who want

01:36:51  11  things from them.

01:36:52  12      The First Amendment protects this core political conduct.

01:36:55  13  There is a quote from *Citizens United* that I think nails the

01:36:58  14  point pretty well where the Court said, "It is well understood

01:37:00  15  that a substantial and legitimate reason, if not the only

01:37:03  16  reason, to donate to one candidate over another is that the

01:37:06  17  candidate will respond by producing those political outcomes

01:37:10  18  the supporter favors."

01:37:12  19      Federalism, I think, is also important when you're

01:37:15  20  talking about a local official like Mr. Sittenfeld.  There was

01:37:17  21  a case argued in the Supreme Court one week ago called

01:37:21  22  *Percoco*, a corruption case that's not very similar on the

01:37:24  23  legal issue but broadly similar in some ways, and just as

01:37:27  24  Thomas observed at the beginning of the argument, quote, "It

01:37:29  25  seems as though we are using a federal law to impose ethical

01:37:33 1 standards on state activity." And I think that same

01:37:36 2 admonition would be very applicable here. That's why the

01:37:39 3 Court has said you need an explicit quid pro quo in the

01:37:43 4 context of campaign contributions.

01:37:45 5 So if I could, let me talk about this case for just a

01:37:47 6 second.

01:37:47 7 THE COURT: Would you agree, though, that if there

01:37:49 8 is an explicit quid pro quo, that everything you just said is

01:37:52 9 sort of immaterial at some level?

01:37:53 10 MR. SINGER: Yes. If there is an explicit quid pro

01:37:55 11 quo when the evidence is viewed through the Rule 29 standard,

01:38:00 12 then I think the conviction can stand. I think the real heart

01:38:03 13 of the discussion we will probably have today is, well, okay,

01:38:04 14 what does that mean? What is an explicit quid pro quo? And I

01:38:09 15 am happy to jump at that. I just wanted to make one more

01:38:11 16 quick point about this case.

01:38:12 17 THE COURT: Sure.

01:38:13 18 MR. BURNHAM: Your Honor, I just -- I'd like to

01:38:14 19 emphasize at the outset, I have read a lot of -- as I am sure

01:38:16 20 Your Honor has -- a lot of public corruption cases involving

01:38:18 21 campaign contributions. And I feel pretty confident saying

01:38:20 22 that this is the most aggressive campaign contribution case,

01:38:22 23 from the government's perspective, that I have ever

01:38:24 24 encountered. Blessing it will expand the law in a meaningful

01:38:28 25 way. None of the other cases have facts remotely like these,

01:38:31 1  and remotely as consistent as these are, with normal political

01:38:34 2  behavior as opposed to forming a corrupt agreement.

01:38:38 3       On the official act side, we have a bribe that the

01:38:42 4  government contrived in a sting operation to get a public

01:38:45 5  official who supported development across Cincinnati, to

01:38:47 6  support the most no-brainer real estate development project I

01:38:52 7  have ever seen.

01:38:52 8       I actually went over and looked at 435 Elm this morning

01:38:57 9  after coming last night after the Bengals game.  It is hard

01:38:59 10 for me to believe that there is not a better use for that

01:39:01 11 property than a boarded-up building with a Hustler store on

01:39:02 12 the first floor.  So giving somebody the support, that strikes

01:39:05 13 me as a fairly easy proposition.

01:39:07 14      Okay.  So what was the bribe that the government

01:39:09 15 contrived to get him to do it?  A completely lawful campaign

01:39:13 16 contribution.

01:39:14 17      Okay.  So then what happened is exactly what the

01:39:15 18 government expected to happen and wanted to happen:

01:39:18 19 Mr. Sittenfeld agreed to support the development that he

01:39:20 20 obviously was going to support, indeed had previously offered

01:39:24 21 to support in a text exchange with the current tenant, the

01:39:27 22 name of whom I don't have in front of me -- there is a text

01:39:30 23 message.  I can provide it to Your Honor.  I'm sure you

01:39:33 24 remember it from trial -- and accept campaign contributions

01:39:36 25 that he was obviously going to need because he was about to

01:39:38  1    run for mayor.

01:39:39  2        There were six --

01:39:40  3            THE COURT:  What you just said is he agreed to

01:39:43  4    support.  That's what you just said, right?

01:39:47  5            MR. BURNHAM:  Yes.

01:39:47  6            THE COURT:  He agreed to support that.  So if he

01:39:50  7    agreed to support it in exchange for campaign contributions --

01:39:54  8            MR. BURNHAM:  Oh, yes.

01:39:55  9            THE COURT:  -- that is a quid pro quo.

01:39:58  10           MR. BURNHAM:  That would be, yes.  That's not what I

01:39:59  11   meant to say, and if I said in exchange, I misspoke.

01:40:02  12       He certainly was happy to support the development.  He

01:40:04  13   had been supportive of the development for a long time.  He

01:40:07  14   separately was happy to accept campaign contributions.  The

01:40:10  15   government has to -- the key to the whole case is showing that

01:40:13  16   there was an explicit linkage in his mind that his behavior

01:40:16  17   would be controlled to support the development by the campaign

01:40:20  18   contribution.  Correlation is obviously not sufficient.  I

01:40:24  19   mean, that comes from many, many cases, *McCormick*, et cetera.

01:40:27  20       What the government did when they designed the case was

01:40:30  21   that they took something that he was going to reflexively

01:40:34  22   support and then they provided campaign contributions and

01:40:37  23   asked the jury to infer, based on totally insufficient

01:40:40  24   evidence -- and we can talk about that -- that Mr. Sittenfeld

01:40:42  25   understood there was an agreement to exchange the two.

01:40:45  1     The reason that is so pernicious is, in almost every

01:40:48  2 corruption case I've encountered, the official act is

01:40:51  3 something obscure:  It's, you know, a zoning variance.  Help

01:40:54  4 me get a liquor license for this tavern.

01:40:56  5     THE COURT:  We don't need an official act for both

01:40:59  6 of them, right?

01:41:00  7     MR. BURNHAM:  I beg your pardon?

01:41:01  8     THE COURT:  We don't need an official act -- I mean,

01:41:03  9 official act is not part of Count 3, right?

01:41:05  10     MR. BURNHAM:  We would submit that for 666, you need

01:41:08  11 a full quid pro quo as the Fifth Circuit held in *Hamilton* and

01:41:11  12 the First Circuit held in the case -- the name of which

01:41:14  13 escapes me for the moment.

01:41:15  14     But setting that aside, I know under Your Honor's

01:41:18  15 instructions, we didn't find that.  So -- but even there, you

01:41:20  16 still have to agree to be controlled in the way that you wield

01:41:22  17 your official power in a particular way.  I mean, it can't

01:41:25  18 just be some sort of generalized thing:  good will gifts -- I

01:41:28  19 hope you will do something nice for me down the road.  I mean,

01:41:31  20 that's every campaign contribution, or many of them as we saw

01:41:35  21 from *Citizens United*.

01:41:36  22     And so the government -- but the point -- the only point

01:41:38  23 I was trying to make is that you have to think about, or I

01:41:40  24 would submit that the Court should think about this case

01:41:42  25 against the backdrop of something -- I know you don't have to

01:41:45 1    fulfill the official act for it to be a bribe.  I know it's

01:41:48 2    not a defense that if you would have done it anyway, you know,

01:41:50 3    you can't cite that.

01:41:52 4         But there is something very unique when the government

01:41:55 5    goes out and picks something that they knew he would support,

01:41:58 6    that he was already on the record having supported, and says,

01:42:01 7    okay, we're going to give you campaign contributions to do

01:42:05 8    that, and this Rob character is going to continuously try to

01:42:08 9    link them in your recorded conversations while you are kind of

01:42:11 10   trying to steer away and circumvent the, you know, net that

01:42:14 11   we've put you in without doing anything wrong.  That's just

01:42:17 12   the backdrop for the rest of the evidence.

01:42:19 13        The only other big-picture point I would like to make,

01:42:22 14   and then I am happy to turn to the details, $16.7 billion --

01:42:26 15   with a "B" -- were spent on the elections in 2022.  That is an

01:42:29 16   enormous amount of money.  The Constitution, I would submit,

01:42:33 17   cannot tolerate lay juries being the only thing that stands

01:42:36 18   between public officials and, you know, prison time when we're

01:42:40 19   talking about legal, constitutionally protected campaign

01:42:44 20   contributions.

01:42:45 21        The courts have a very important role to play in this

01:42:48 22   context.  I think if the courts don't play that role, it is

01:42:51 23   going to be a very constitutionally treacherous area.

01:42:54 24             THE COURT:  I understand, but what is that role in

01:42:56 25   your view?  I mean, generally speaking, when there are

01:42:59　1　ambiguous facts from which you could draw inferences one way

01:43:05　2　or another, it's the job of those people seated over there --

01:43:11　3　　　　MR. BURNHAM: Right.

01:43:12　4　　　　THE COURT: -- to deal with that. And I take it

01:43:13　5　from your papers that you're saying that's not true when we're

01:43:16　6　dealing with campaign contributions, and I'm struggling a

01:43:21　7　little bit with that. What -- what gatekeeper role do you see

01:43:25　8　for the Court when we're dealing with facts that could support

01:43:29　9　an inference that would give rise to criminality on the one

01:43:32　10　hand versus inferences that would give rise to a finding of

01:43:37　11　non-criminality on the other?

01:43:39　12　　　　MR. BURNHAM: Right.

01:43:39　13　　　　THE COURT: You know, just sitting here, I think of

01:43:42　14　that as a job for the jury, but I sense you're suggesting it's

01:43:45　15　not, so --

01:43:45　16　　　　MR. BURNHAM: Well, so I guess what -- the way I

01:43:47　17　would think about it, Your Honor, is this: The Rule 29

01:43:50　18　standard, as you've very well articulated, says that we take

01:43:53　19　all the inferences in the government's favor and any inference

01:43:56　20　that can be drawn from the facts they get once the jury has

01:43:59　21　convicted, provided that the inference can clear the

01:44:02　22　reasonable doubt threshold, which it does have to clear even

01:44:04　23　in the Court's review. So it's kind of like summary judgment

01:44:07　24　on steroids. Okay, so that's the standard.

01:44:09　25　　　I think in this context you have a very, very

| | | |
|---|---|---|
| 01:44:12 | 1 | particularized legal role that requires that -- the government |
| 01:44:15 | 2 | to clear a high burden. |
| 01:44:15 | 3 | And, Your Honor, there was actually a decision that came |
| 01:44:17 | 4 | out just this morning that I'd like to give Your Honor, if I |
| 01:44:20 | 5 | may.  It's from a district judge in the SDNY, Judge Oetken.  I |
| 01:44:25 | 6 | gave the government some copies earlier. |
| 01:44:28 | 7 | May I give someone -- |
| 01:44:29 | 8 | THE COURT:  You may. |
| 01:44:30 | 9 | MR. BURNHAM:  In this case, Judge Oetken dismissed |
| 01:44:33 | 10 | an indictment on the exact same issue we are here talking |
| 01:44:36 | 11 | about today.  He said that there was not a sufficiently |
| 01:44:39 | 12 | alleged explicit quid pro quo -- I am happy to walk through |
| 01:44:43 | 13 | the decision.  Probably more productive for Your Honor to just |
| 01:44:46 | 14 | read it when you have a minute.  But here's the way that Judge |
| 01:44:48 | 15 | Oetken stated the rule, and then I will explain why the Sixth |
| 01:44:48 | 16 | Circuit's law is totally consistent with this. |
| 01:44:52 | 17 | Judge Oetken said, quote, "In the context of campaign |
| 01:44:54 | 18 | contributions, there must be a quid pro quo that is clear and |
| 01:44:57 | 19 | unambiguous, meaning that, one, the link between the official |
| 01:45:00 | 20 | act and the payment or benefit -- the pro -- must be shown by |
| 01:45:04 | 21 | something more than mere implication; and, two, there must be |
| 01:45:08 | 22 | a contemporaneous mutual understanding that a specific quid |
| 01:45:12 | 23 | and a specific quo are conditioned upon each other." |
| 01:45:15 | 24 | And that's from the opinion at page 23.  And that was at |
| 01:45:19 | 25 | 666 Hobbs Act -- I mean, 666, honest services case.  That is |

01:45:24  1    the legal rule that I think the Court has to apply.  So under

01:45:26  2    the Rule 29 standard, the evidence has to suffice to satisfy

01:45:30  3    that rule.  In that case, the judge was applying a standard

01:45:34  4    that Your Honor is very familiar with, the very differential

01:45:36  5    standard for dismissing indictments.  And even there, Judge

01:45:39  6    Oetken said the government's allegations couldn't clear it,

01:45:42  7    even though they had done just as much as they did here in my

01:45:45  8    submission to try to link the two interactions with each

01:45:47  9    other.

01:45:47  10        The Sixth Circuit has given you a very similar

01:45:50  11   understanding of the test, I would submit.  In *Blandford*, the

01:45:54  12   Court said it has to be, quote, "clear an understanding" --

01:45:57  13   "clear in understanding and neither obscure nor ambiguous."

01:46:00  14        So Your Honor had started by asking about ambiguous

01:46:03  15   evidence.  In our view, if the evidence is ambiguous, it

01:46:06  16   cannot be sufficient as a matter of law to convict.  Even if

01:46:09  17   the jury attempted to draw an inference from the ambiguous

01:46:11  18   evidence that there was some sort of linkage between the two

01:46:15  19   things.  And that flows directly from *Blandford*, it flows

01:46:18  20   directly from *McCormick*, and it flows directly from the sort

01:46:21  21   of big-picture point that it cannot be that in a campaign

01:46:24  22   contribution case -- please, Your Honor?

01:46:25  23        THE COURT:  Well, it's just, isn't -- I think I am

01:46:28  24   trying to find in your brief one spot -- it may have been in

01:46:32  25   the motion for a new trial -- you said something like, well,

| | | |
|---|---|---|
| 01:46:36 | 1 | if there's a plausible alternative explanation, you have kind |
| 01:46:41 | 2 | of got to credit that. And isn't it always the case, somebody |
| 01:46:46 | 3 | could come in and get up on the witness stand and say, oh, |
| 01:46:49 | 4 | yeah, I was joking. I mean, yeah, yeah, yeah, I said I |
| 01:46:53 | 5 | promised to do X in exchange for the money. It was a joke. |
| 01:46:56 | 6 | We all understood it was a joke. You know, we kind of all had |
| 01:47:00 | 7 | a big smile on our faces. And then somebody like you comes in |
| 01:47:04 | 8 | and says, well, there was a plausible alternative explanation, |
| 01:47:07 | 9 | so it really can't go to the jury. I'm struggling here a |
| 01:47:10 | 10 | little bit. |
| 01:47:11 | 11 | MR. BURNHAM: In Your Honor's framing, it doesn't |
| 01:47:13 | 12 | sound very plausible. And so I think what I would say is -- I |
| 01:47:17 | 13 | think the way I would think about it is you have to give them |
| 01:47:19 | 14 | all the inferences and apply the Rule 29 standard. But at |
| 01:47:22 | 15 | that point you are going to be left with a constellation of |
| 01:47:24 | 16 | facts. |
| 01:47:24 | 17 | And the Court has to say that it is not -- this was |
| 01:47:27 | 18 | unambiguous. I mean, that just comes directly from *Blandford*. |
| 01:47:32 | 19 | There is nothing ambiguous about what was going on here. This |
| 01:47:34 | 20 | evidence -- |
| 01:47:34 | 21 | THE COURT: So "love you but can't." |
| 01:47:37 | 22 | MR. BURNHAM: Beg your pardon? |
| 01:47:38 | 23 | THE COURT: "Love you but can't." |
| 01:47:40 | 24 | MR. BURNHAM: I am happy to talk about that. And |
| 01:47:42 | 25 | now, of course, that was uncharged conduct, and we'll talk |

01:47:44  1   about that at the constructive amendment point.

01:47:44  2        On "love you but can't," I think you have to -- let me

01:47:46  3   just go to my part of the outline where I talk about that

01:47:49  4   specifically.

01:47:49  5        So I think that statement doesn't work for a couple

01:47:52  6   reasons.  So, first of all, that call, there is no

01:47:55  7   conversation about campaign contributions in any specific

01:47:58  8   sense at all.  What leads up to him saying that is a long

01:48:01  9   conversation about how the current -- well, the then-current

01:48:04  10  mayor, Cranley had been retaliating against Mr. Ndukwe.  So it

01:48:08  11  is a chat about how, you know, how are we going to make Chin's

01:48:11  12  life not unlivable in the next regime.

01:48:14  13       I think Mr. Sittenfeld saying you don't want me to not

01:48:16  14  get elected mayor, you don't want me to be like "love you but

01:48:20  15  can't" because I am just a private citizen, you know, having

01:48:22  16  some private citizen job, is not going to be a good outcome

01:48:25  17  for you, and I need to be able to raise money in order to be a

01:48:29  18  successful mayor.

01:48:30  19       There is nothing specific about any campaign donation at

01:48:33  20  all.  It is a purely generalized statement about what's going

01:48:36  21  to happen down the road.  And so -- if he doesn't become the

01:48:39  22  mayor.  I don't think that's enough to be able to flip the

01:48:41  23  burden and say that the burden was satisfied.

01:48:43  24       Another way I would put it, Your Honor, that is an

01:48:46  25  extremely thin read in the greater context of this case to

| | | |
|---|---|---|
| 01:48:50 | 1 | infer an unambiguous corrupt agreement given everything else |
| 01:48:54 | 2 | that happened. And so I think if you -- if the government put |
| 01:48:58 | 3 | wires in the rooms with all the $16 billion that had been paid |
| 01:49:01 | 4 | over the last two years for the elections, you would find a |
| 01:49:04 | 5 | lot of things that sound an awful lot like "love you but |
| 01:49:07 | 6 | can't." And I don't think that's going to -- that's enough to |
| 01:49:09 | 7 | say that there was -- you can say that Mr. Sittenfeld |
| 01:49:12 | 8 | understood that he was agreeing to have his official actions |
| 01:49:14 | 9 | controlled, which is the word that comes from -- that word |
| 01:49:18 | 10 | comes from *McCormick,* and an unambiguous way, which comes from |
| 01:49:21 | 11 | *Blandford*, to do the official act that Mr. Ndukwe wanted. |
| 01:49:25 | 12 | Because there's -- I mean, it's just too -- "I love you but |
| 01:49:28 | 13 | can't," I don't know what that means. It's just not clear |
| 01:49:30 | 14 | enough, you know, and they don't ever circle back to it -- |
| 01:49:34 | 15 | THE COURT: "Love you but can't," I mean, I like you |
| 01:49:36 | 16 | but you can't pay the campaign contribution so I am not going |
| 01:49:41 | 17 | to support your project. |
| 01:49:42 | 18 | MR. BURNHAM: I don't think that's -- I think that |
| 01:49:43 | 19 | is one possible interpretation of what happened, but I think |
| 01:49:46 | 20 | there are others, even if you take the inferences in the |
| 01:49:47 | 21 | government's favor, because the conversation is just too |
| 01:49:50 | 22 | cryptic to be able to understand it as having -- as showing |
| 01:49:53 | 23 | even with the inferences. |
| 01:49:55 | 24 | THE COURT: But aren't the conversations always |
| 01:49:56 | 25 | going to be cryptic? Isn't that the nature of the beast? |

01:49:59　1　　　　　MR. BURNHAM: Oh, no. I mean, I have read a lot of

01:50:01　2　these opinions, as I am sure Your Honor has, and they are

01:50:03　3　really not. In the campaign contribution context, they are

01:50:06　4　not cryptic. The judge in *Terry* is taking phone calls from

01:50:10　5　the donor and then ruling on motions, you know, right after

01:50:12　6　that in the afternoon. There is nothing unambiguous about

01:50:15　7　that. That's not coded language; that's not the nudging.

01:50:19　8　　　　　You know, the *Blagojevich* opinion, which I know Your

01:50:22　9　Honor is quite familiar with, nothing unambiguous was going on

01:50:23　10　with Governor Blagojevich. I mean, he was telling the aides

01:50:25　11　to tell the donor you are not going to get your permit unless

01:50:28　12　I get my donation. I mean, this is really clear conduct.

01:50:31　13　　　　　Here, you got a two-minute, three-minute phone call

01:50:34　14　between two guys who have known each other for ten years

01:50:37　15　talking about how the current mayor is terrible from the

01:50:40　16　perspective of Mr. Ndukwe and Mr. Sittenfeld reassuring him

01:50:43　17　that, you know, I need to be able to become the mayor and then

01:50:44　18　you won't have such an intolerable existence because I, unlike

01:50:49　19　he, you know, don't hate you.

01:50:50　20　　　　　And I just don't think you can say we can cherry-pick

01:50:52　21　that one sentence out of the two-year long case that was

01:50:55　22　presented in this courtroom and say, oh, that, that right

01:50:58　23　there, that's the explicit agreement, even though everything

01:51:00　24　else completely undercuts it.

01:51:03　25　　　　　And let's talk for a minute about the other evidence that

01:51:05 1    the government showered upon the jury.  First, you know, the

01:51:07 2    main quo was promoting Cincinnati investment.  We have

01:51:11 3    obviously talked about that.

01:51:12 4        Compliance with campaign finance law.  In the

01:51:15 5    government's view, the fact that Mr. Sittenfeld refused, I

01:51:17 6    think it was, five different attempts, one of which I gather

01:51:20 7    was inadvertent, by the FBI to give Mr. Sittenfeld

01:51:23 8    noncompliant donations, the rejection of them was actually

01:51:26 9    proof that he was guilty because -- only if he was trying to

01:51:28 10   cover it up by making sure that the contributions came through

01:51:31 11   in a lawful way.

01:51:32 12       I know Your Honor gave excellent instructions to try to

01:51:35 13   mitigate the damage that that evidence caused, but I still

01:51:39 14   think it is a troubling thing that we threw that kind of thing

01:51:40 15   in front of a jury and said, oh, you know, this guy was trying

01:51:44 16   to get donations from his PAC from an LLC and you can infer

01:51:48 17   some sort of criminality from that.

01:51:49 18       They talked about his strategies to recruit potential

01:51:52 19   donors.  So they made a big deal out of the fact that he

01:51:54 20   raised money from people with business pending before the

01:51:57 21   city.  Well, who do you think gives to municipal elections?

01:51:59 22   You know, I have never given to a municipal election because I

01:52:01 23   live in Alexandria, and, you know, it seems like everything's

01:52:05 24   going okay and it's not my problem.

01:52:07 25       The people who give to local officials are the people who

01:52:09  1    have a direct economic stake in the city that they are going

01:52:12  2    to govern.  So, you know, of course they are going to raise

01:52:14  3    money, and courts have said repeatedly that that's fine.  But

01:52:16  4    the jury doesn't understand that.  I mean, from the jury's

01:52:18  5    perspective, there is something wrong with that.

01:52:20  6         And so there is just all these other things that surround

01:52:23  7    the constitutionally protected conduct that the government can

01:52:26  8    use that to then say, oh, but that one little line, the "love

01:52:31  9    you but can't," that's the key to the whole case.

01:52:33  10         And I think if you go through these other opinions, and

01:52:34  11    they made a big deal about *Pawlowski*, the Third Circuit case

01:52:37  12    about the mayor of Allentown.  Your Honor has to read the

01:52:39  13    district judge -- the district court opinion in that case.

01:52:42  14         Mayor Pawlowski, I mean, he was using burner phones

01:52:44  15    because he said they can't tap them.  He was telling his aides

01:52:47  16    how he sweeps his office for bugs every day.  He was telling

01:52:50  17    one of the donors, you know, we got to stop talking on the

01:52:53  18    phone.  I mean, this was not -- it was very obvious what was

01:52:56  19    going on here.

01:52:57  20         And I think that's what Judge Easterbrook was talking

01:52:59  21    about in Blagojevich.  It was certainly the case that the

01:53:03  22    winking and the nudging cannot defeat a prosecution when

01:53:07  23    everybody knows what's going on, when there's coded language

01:53:09  24    or something very clear.  But that doesn't mean you can just

01:53:11  25    infer winks out of the ethor and say, well, these guys were in

01:53:16  1    the room at the same time, and I know we have a video and I

01:53:18  2    know nobody's winking but, you know, the jury is still allowed

01:53:20  3    to infer that there was some sort of, you know, mesmeric

01:53:24  4    connection between those two people where they both understood

01:53:24  5    what was happening.

01:53:28  6         I mean, that's another thing about this case that's so

01:53:30  7    unique is Your Honor has -- we've all seen the same evidence.

01:53:33  8    It's all recorded.  And so you can see exactly what happened

01:53:36  9    in each of these interactions.  And I think it's very hard to

01:53:38  10   say, particularly when you watch the, you know, videotaped

01:53:41  11   interaction with Rob at the lunch and then the apartment, that

01:53:45  12   there was some kind of meeting of the minds here.  I mean, Rob

01:53:48  13   is trying to talk about the deal, but they just spent an hour

01:53:51  14   talking about the real estate deal.  And so when he starts

01:53:54  15   trying to talk about the deal as though it is some kind of

01:53:57  16   bribery deal, P.G.'s talking about, well, is the mayor going

01:54:00  17   to -- I mean, it's ridiculous.

01:54:01  18        But it's a good example too of how the government uses

01:54:04  19   word play to try to confuse things in the case.  So they tell

01:54:07  20   the jury, oh, P.G. said that they want to invest in me.  Okay,

01:54:09  21   he said "invest" because they are investors.  And he assumes,

01:54:12  22   I'm sure, that that is how investors talk.  What he means --

01:54:15  23   he does not mean invest in this bribery agreement.  He means

01:54:19  24   invest in me as a candidate because I am going to win.  I am

01:54:21  25   going to be the winning candidate, and I know you were worried

01:54:25 1     about supporting me because, you know, Chin supported the

01:54:27 2     other person in the last election and now he can't get a phone

01:54:29 3     call back from city hall. So don't worry about it, because

01:54:31 4     I'm going to win. You don't have to worry about retaliation

01:54:34 5     from my opponent. That's what he means by "invest."

01:54:37 6         But the jury doesn't know. And they suggest that he

01:54:40 7     meant they were investing in some kind of corrupt agreement.

01:54:42 8     The deal is even worse. I mean, if you watch the whole video,

01:54:44 9     nobody at lunch is talking about campaign contributions at

01:54:47 10     all, except in the most abstract sense. When P.G. asked

01:54:50 11     Mr. Ndukwe would it be appropriate -- he actually asks -- to

01:54:54 12     transition from talking about the project to talking about

01:54:56 13     politics, that he shows him his slides and all this stuff

01:54:59 14     about how he is going to win, there is like one little line

01:55:02 15     where he says, you know, in case, you know, Chin can get you

01:55:05 16     guys to support me. It's not until they go back to the

01:55:07 17     apartment and Rob starts trying to aggressively interject

01:55:11 18     campaign contributions into the discussion that they come up

01:55:13 19     at all.

01:55:14 20         So at the beginning, P.G. has no idea what's going on.

01:55:16 21     It's very clear from the video that he does not understand

01:55:18 22     that to be the deal. And then Rob keeps trying to come back

01:55:21 23     to it. And in the middle of the interaction, P.G. calls his

01:55:24 24     lawyer -- I guess he wasn't a lawyer, but he calls the

01:55:26 25     campaign compliance guy to ask him if he's okay to take the

01:55:30  1    cash.  I submit that there will be no case in the *Federal*

01:55:33  2    *Reporter* where in the middle of the key interaction forming

01:55:36  3    the corrupt agreement the defendant called his lawyer and

01:55:38  4    asked his lawyer if he's allowed to accept his felonious bribe

01:55:43  5    in an LLC check or in cash or in a money order or in something

01:55:46  6    else.

01:55:47  7        Please.

01:55:47  8            THE COURT:  I don't know.  I mean, so if you're

01:55:52  9    concerned that a payment may be deemed by someone to be

01:55:58  10   illicit, maybe you want to make sure that the form is one that

01:56:01  11   it isn't likely to come to a regulator's attention because

01:56:04  12   once you start, you know, peeling away at the onion, you

01:56:06  13   get -- you get down a few layers and start hitting close to

01:56:09  14   home.  So you're like, let's make sure we have dotted all our

01:56:13  15   i's and crossed all our t's --

01:56:15  16           MR. BURNHAM:  Sure.

01:56:15  17           THE COURT:  -- from a campaign law -- from a

01:56:17  18   campaign finance perspective, because if you start digging

01:56:19  19   away at this, it's not going to look good.

01:56:21  20           MR. BURNHAM:  Right.

01:56:22  21           THE COURT:  So we don't want anything that is bad on

01:56:24  22   the surface.

01:56:24  23           MR. BURNHAM:  Two responses to that, Your Honor, one

01:56:26  24   big picture, one little.

01:56:27  25       The first is, I think that's a really good illustration

01:56:30  1    of how the defendant can't win when the government tries to

01:56:32  2    set him up.  Because I guarantee you if he had taken the cash,

01:56:35  3    we would be having a much more difficult conversation right

01:56:37  4    now, where I would be trying to tell you that that also is --

01:56:39  5    I mean, it would have been a much worse case for P.G.  So I

01:56:43  6    think that's the big-picture point.

01:56:44  7        The second point is, I just don't think that's plausible.

01:56:46  8    I mean, if you were going to take a corrupt bribe, okay, and

01:56:49  9    they want to give it to you in a bag of cash that you can use

01:56:52  10   to go out to lunch or dinner or do whatever you want with,

01:56:56  11   there is no world in which routing it through LLCs and putting

01:56:59  12   it on the PAC and all this other stuff is going to make your

01:57:01  13   life easier.  All it's going to do is make it more likely that

01:57:05  14   somebody figures out what's going on and links them.

01:57:07  15       And on that point, can we talk a moment about

01:57:09  16   concealment?  So the other theory behind all this was that he

01:57:12  17   was trying to hide the relationship with Rob.  Your Honor,

01:57:14  18   I -- again, I suggest that you will never find a case in the

01:57:18  19   *Federal Reporter* where in the middle of the corrupt scheme the

01:57:20  20   defendant invited the bribe payors to a dinner party with the

01:57:23  21   sitting U.S. attorney.  I don't think that that is going to be

01:57:26  22   something you find anywhere.

01:57:27  23       Now, they didn't go.  Who knows what the dinner would

01:57:30  24   have been like.  But it's just -- it's just incomprehensible

01:57:33  25   to me that if Mr. Sittenfeld had understood that this was a

01:57:36   1    corrupt relationship he would have done any of these things.

01:57:38   2    And I think that is the kind of stuff the Court has to think

01:57:40   3    about when it's trying to figure out whether there was an

01:57:43   4    unambiguous agreement here.  Because when the record is so

01:57:47   5    totally, you know, not consistent with that inference, not

01:57:50   6    even the most, you know -- the jury is not allowed to draw

01:57:53   7    that inference when the evidence does not support it.

01:57:56   8        So unless Your Honor has questions, I can move to

01:57:58   9    constructive amendment.

01:57:59  10             THE COURT:  Go ahead.

01:58:01  11             MR. BURNHAM:  Yeah.  Oh, actually, one more point,

01:58:02  12    Your Honor.

01:58:02  13        The only other thing I would say on kind of the evidence

01:58:05  14    specifically is that as the Court is well aware, under the new

01:58:07  15    trial rule, that you have the authority to grant a new trial

01:58:09  16    acting as the 13th juror, and that permits you to draw some

01:58:12  17    inferences.  It's basically a lower standard for us than the

01:58:15  18    Rule 29 standard.

01:58:16  19        We obviously -- if Your Honor's not sure about everything

01:58:19  20    I've just said on the Rule 29 standard, we would suggest that

01:58:22  21    the Court should grant a new trial against the manifest weight

01:58:26  22    of the evidence for all the same reasons.

01:58:27  23             THE COURT:  It's still an extraordinary remedy,

01:58:29  24    though, right?

01:58:30  25             MR. BURNHAM:  Oh, absolutely.  And I don't mean to

01:58:32  1  suggest that it's not.  I just think this is an extraordinary

01:58:34  2  case.

01:58:34  3      Because I think that when you really get down to it --

01:58:38  4  and, obviously, the jury thought the evidence was not perfect

01:58:40  5  either, which is why they acquitted on four of the six counts,

01:58:43  6  and we will talk about the two, but when you really drill down

01:58:45  7  into the evidence, it is very hard for me to see how you can

01:58:48  8  cobble together an unambiguous, corrupt bargain between

01:58:51  9  Mr. Sittenfeld and Rob, who is the one that they charged it

01:58:54  10  with.

01:58:55  11          THE COURT:  I mean, I think the corrupt bargain that

01:59:01  12  the government was trying to tell the jury existed was

01:59:04  13  something about deliver the votes in exchange for 20,000 or

01:59:09  14  40,000 or whatever in campaign contributions.

01:59:11  15          MR. BURNHAM:  So that's certainly their position,

01:59:13  16  but the "deliver the votes" line, of course, is in this

01:59:16  17  apartment conversation where Rob is talking about the deal.

01:59:18  18  And P.G. clearly, clearly -- I mean, I have watched that video

01:59:22  19  ten times -- thinks he's talking about the real estate deal.

01:59:25  20  Remember, the backdrop for this is P.G. wants to redevelop

01:59:27  21  this blighted building that's a few blocks away.  These are

01:59:30  22  big-time investors.  It's like Mark Zuckerberg going to New

01:59:35  23  Newark, New Jersey, with Cory Booker.

01:59:36  24      So it's a big deal for the local official to bring in

01:59:39  25  redevelopment.  It is a playbook -- and we've cited some

01:59:42  1   examples in our briefs -- for guys like P.G.  They move back

01:59:43  2   to their hometown.  They run for city office.  They bring an

01:59:46  3   investment.  And then they tout the investment as their

01:59:48  4   careers, you know, sort of take off.

01:59:49  5       So he is certainly trying very hard to convince Rob that

01:59:52  6   this is a good plan; that investing, well, I think it was $1.4

01:59:55  7   million into the project will not be money wasted because they

01:59:59  8   will be able to get it the through the city council.  I mean,

02:00:03  9   that's important.  Rob is talking about putting 1.4 million

02:00:06  10  into Cincinnati, not into P.G.  That's the deal.  And then if

02:00:09  11  they get approval, he'll spend 75 million redeveloping the

02:00:12  12  property.  That was the lunchtime conversation.  That was what

02:00:14  13  it was all about.  Is Mayor Cranley going to make me --

02:00:16  14          THE COURT:  Let me ask it this way.

02:00:18  15          MR. BURNHAM:  Please.

02:00:18  16          THE COURT:  If -- if the situation was such that the

02:00:22  17  jury believed that if the campaign contributions were made

02:00:29  18  P.G. would -- Mr. Sittenfeld would support the deal, and if

02:00:36  19  the campaign contributions were not made Mr. Sittenfeld would

02:00:38  20  not record the deal, if that's what the jury believed the

02:00:41  21  evidence showed, that would be enough, right?

02:00:43  22          MR. BURNHAM:  If the -- yeah, if the jury found that

02:00:46  23  Mr. Sittenfeld's support for the deal in his own mind was

02:00:48  24  contingent on obtaining the donations -- I gather that's Your

02:00:53  25  Honor's question?

02:00:53　1　　　　　　　　THE COURT:  Right.

02:00:53　2　　　　　　　　MR. BURNHAM:  Yeah, then I think we're -- yes, I

02:00:56　3　think then we lose.

02:00:56　4　　　　　　　　THE COURT:  So if --

02:00:57　5　　　　　　　　MR. BURNHAM:  If the -- I'm sorry.  If the evidence

02:00:59　6　supported under the Rule 29 standard, not just if the jury

02:01:02　7　believed it for that evidence.

02:01:04　8　　　　I think I misunderstood Your Honor's question.

02:01:06　9　　　　　　　　THE COURT:  If there is sufficient evidence from

02:01:08　10　which the jury could draw that inference and the jury, in

02:01:11　11　fact, drew that inference, putting aside your part about the

02:01:17　12　modification of the constructive amendment of the

02:01:20　13　indictment --

02:01:20　14　　　　　　　　MR. BURNHAM:  Yeah.

02:01:21　15　　　　　　　　THE COURT:  -- but just on the Rule 29 part, that

02:01:23　16　would be enough?

02:01:24　17　　　　　　　　MR. BURNHAM:  Yes, but only because I think we have

02:01:25　18　stipulated that the standard is satisfied.

02:01:27　19　　　　I am not trying to fence with you.  You are absolutely

02:01:29　20　right.  The legal rule that Your Honor's articulated is one

02:01:32　21　that I am fine with, which is that Mr. Sittenfeld understood

02:01:34　22　in this hypothetical that he was -- his support for the

02:01:38　23　project was contingent on receiving the donation.  That's --

02:01:41　24　that's the legal proposition?

02:01:42　25　　　　　　　　THE COURT:  Yes.

|       |    |                                                                          |
|-------|----|--------------------------------------------------------------------------|
| 02:01:42 | 1  | MR. BURNHAM: Yeah. As long as the evidence shows |
| 02:01:44 | 2  | that that is an unambiguous matter, I'm -- that as long as the |
| 02:01:50 | 3  | evidence under the Rule 29 standard is unambiguous that he |
| 02:01:54 | 4  | understood that, then I think that the law is satisfied. Or, |
| 02:01:57 | 5  | in other words, if it's clear in understanding, which is the |
| 02:01:59 | 6  | other line in *Blandford*, if there is enough evidence to find |
| 02:02:03 | 7  | beyond a reasonable doubt that the agreement that Your Honor |
| 02:02:05 | 8  | has hypothesized, or in your hypothetical the conditional |
| 02:02:08 | 9  | support is clear in understanding, then I think the standard |
| 02:02:11 | 10 | is satisfied. |
| 02:02:11 | 11 | THE COURT: I think where we are uncertain, isn't |
| 02:02:15 | 12 | that what you -- isn't that about what you tell the jury, not |
| 02:02:18 | 13 | about what you tell the Court? So, in other words, you tell |
| 02:02:21 | 14 | the jury that you shouldn't convict unless beyond a reasonable |
| 02:02:27 | 15 | doubt you find that there is a clear and unambiguous -- |
| 02:02:30 | 16 | MR. BURNHAM: Yes. |
| 02:02:30 | 17 | THE COURT: -- agreement, right? And then the only |
| 02:02:34 | 18 | question for the Court on the back end if the jury has found |
| 02:02:38 | 19 | that is, is there evidence from which a rational jury could |
| 02:02:44 | 20 | have reached -- |
| 02:02:44 | 21 | MR. BURNHAM: Yes. |
| 02:02:44 | 22 | THE COURT: -- the belief that there was a clear and |
| 02:02:46 | 23 | unambiguous arrangement? |
| 02:02:48 | 24 | MR. BURNHAM: Right, beyond a reasonable doubt. |
| 02:02:49 | 25 | THE COURT: Beyond a reasonable doubt. So if -- |

02:02:51   1          MR. BURNHAM:  Yes.

02:02:52   2          THE COURT:  -- any rational jury --

02:02:53   3          MR. BURNHAM:  Yes.

02:02:53   4          THE COURT:  -- could have found beyond a reasonable

02:02:56   5   doubt that there was a clear and unambiguous deal, that would

02:03:00   6   be enough?

02:03:01   7          MR. BURNHAM:  Yes.  I think what's sort of unusual

02:03:03   8   about this issue is that the criminality standard is

02:03:08   9   extraordinarily high.  There are very few things -- maybe the

02:03:10  10   willfulness standard in tax fraud or something -- where the

02:03:13  11   government's burden on the substantive law side is as high as

02:03:18  12   it is here with an explicit agreement that's clear in

02:03:21  13   understanding and not ambiguous.

02:03:22  14          And so I think the problem is that I think what the Court

02:03:26  15   has to do is it has to take the evidence the way Your Honor

02:03:29  16   just said, but then it has to marry it up with that very high

02:03:33  17   legal standard and figure out if the jury just got this one

02:03:36  18   wrong.  And I think the Court has an especially profound

02:03:40  19   obligation to do that here because of the First Amendment,

02:03:43  20   federalism, and other policy issues that are just infused into

02:03:46  21   this case.

02:03:47  22          Because at the end of the day, it's just not going to be

02:03:52  23   a very functional situation to have the Robs of the world

02:03:54  24   running around trying to give campaign donations, you know,

02:03:57  25   $16 billion a year to federal officials, state officials,

02:04:00 1 local officials, and then say, well, he supported my bill at

02:04:03 2 the same time, and then throwing everything to the jury and

02:04:05 3 saying, well, you know, hopefully the 12 of you can figure it

02:04:08 4 out. I don't think that is what *McCormick* allows. I don't

02:04:12 5 think that's what the Sixth Circuit contemplated in *Blandford*

02:04:14 6 or *Terry*. I don't think it's what Judge Oetken --

02:04:17 7 THE COURT: But that was just what I was asking

02:04:18 8 about. So you think the Court has some special role to play

02:04:21 9 with regard to the clear and unambiguous part?

02:04:25 10 MR. BURNHAM: I wouldn't call it special, Your

02:04:27 11 Honor. I would say the rule is special. The rule for

02:04:29 12 *McCormick* is especially onerous for the government in a way

02:04:33 13 that it is much more so than in a personnel benefits case. I

02:04:37 14 mean, I think it's *Terry*. One of the cases talks about the

02:04:40 15 presumption of legitimacy that attaches to campaign

02:04:43 16 contributions. I think Judge Sutton called it a tax-free gift

02:04:46 17 or something like that, duty-free gift. That means the rule

02:04:50 18 is very demanding, but I don't think the Court does anything

02:04:53 19 different -- I'm sorry. You obviously have a question.

02:04:55 20 THE COURT: Well, I know, but the -- so when a rule

02:04:59 21 is demanding, a couple things could happen. One thing is you

02:05:03 22 can tell the jury the rule is very demanding and you need to

02:05:05 23 find beyond a reasonable doubt that the government met this

02:05:08 24 very demanding rule. And so what I said to the jury was, and

02:05:11 25 on that front the agreement, once again, need not be expressed

02:05:15 1  but it must be --

02:05:16 2          MR. BURNHAM:  Right.

02:05:17 3          THE COURT:  -- explicit; that is, the government

02:05:19 4  must show that the contours of the proposed exchange were

02:05:23 5  clearly understood by both the public official and the payor

02:05:27 6  even if the proposed exchange was not communicated between

02:05:30 7  them in express terms.

02:05:32 8      So that's sort of telling the jury it's a really

02:05:35 9  demanding standard and then the jury found that the really

02:05:39 10 demanding standard was met.  And so I'm just -- I'm not -- I'm

02:05:45 11 not clear I'm following you on why then on the back end there

02:05:49 12 is also sort of a special heightened --

02:05:52 13         MR. BURNHAM:  Oh.

02:05:53 14         THE COURT:  -- obligation on the Court beyond I

02:05:56 15 sense you are saying the typical criminal case for what the

02:05:59 16 Court should do on the back end once you have instructed the

02:06:01 17 jury as to the really heightened standard.

02:06:03 18         MR. BURNHAM:  I think I understand Your Honor's

02:06:05 19 question.  So I don't mean to suggest you have a special

02:06:07 20 obligation on the back end.  I think you have the same

02:06:09 21 obligation Rule 29 imposes on the Court in any criminal case,

02:06:13 22 which is to say, okay, does this evidence, taking all the

02:06:16 23 inferences, satisfy this legal standard, at least arguably --

02:06:20 24 I's say after the inferences, you have to say it does --

02:06:23 25 beyond a reasonable doubt, rationally.

*Mary A. Schweinhagen, RDR, CRR  (937) 512-1604*

02:06:25  1        And I don't think here the Court can draw that conclusion

02:06:27  2    for all the reasons we've been talking about, and I'm happy to

02:06:30  3    talk about it further, because I don't think the evidence in

02:06:32  4    this case is sufficient under the normal rules of procedure to

02:06:36  5    satisfy that very high legal standard, despite the fact that

02:06:39  6    the jury concluded that it did.

02:06:42  7        And, of course, that must be the case in some cases or we

02:06:44  8    would never have a post-verdict Rule 29 proceeding.  So the

02:06:47  9    Court obviously has a role to play in superintending the

02:06:51  10   jury's verdict and figuring out whether it does, in fact,

02:06:54  11   comport with Rule 29.

02:06:55  12        THE COURT:  But what I read your motion for

02:06:58  13   acquittal as saying is that because of the First Amendment

02:07:01  14   infused nature of all of this, that the Court does have a

02:07:04  15   special obligation.  So that I -- that was just a misreading

02:07:07  16   of the motion then?

02:07:08  17        MR. BURNHAM:  I guess -- I was trying to -- we were

02:07:11  18   trying to link that point to the nature of the rule.  And to

02:07:15  19   show that sort of the quality of the evidence that can show an

02:07:19  20   explicit agreement has to be very clear, which is what

02:07:23  21   *McCormick* and *Blandford* say.  And that that -- but that comes

02:07:26  22   on the substantive side, not the Rule 29 side.

02:07:29  23        THE COURT:  Right.  That's what I --

02:07:30  24        MR. BURNHAM:  Totally.  That is very much infused

02:07:32  25   with the First Amendment values.

*Mary A. Schweinhagen, RDR, CRR  (937) 512-1604*

02:07:33 1   When the Court looks at the record to figure out whether

02:07:35 2 there is unambiguous evidence of an agreement, I think the

02:07:39 3 First Amendment is part of the legal rule that you are

02:07:41 4 applying to the evidence. So the one way we described it at

02:07:43 5 one point is the evidence wouldn't be consistent with normal

02:07:46 6 political contact. I think Your Honor actually referenced

02:07:48 7 this earlier in the argument.

02:07:50 8   In order for the rule to be satisfied, the evidence has

02:07:53 9 to be of that quality, because otherwise, the rule is

02:07:55 10 meaningless. *McCormick*, in other words, contemplates that the

02:07:59 11 courts are going to be very active in enforcing this rule.

02:08:03 12 *McCormick* itself threw out a conviction based on, you know,

02:08:06 13 essentially temporal proximity between campaign donations and

02:08:10 14 official actions.

02:08:11 15   THE COURT: Here there is more than temporal

02:08:13 16 proximity, though. I agree with you temporal proximity isn't

02:08:17 17 enough. I agree with that.

02:08:17 18   MR. BURNHAM: I think it's maybe a scintilla. But

02:08:20 19 really, Your Honor, I really would resist the notion that

02:08:24 20 there is really anything more than that. I mean, the best

02:08:26 21 that they have got is this deal thing where Rob is trying to

02:08:28 22 transition from the real estate deal to the corrupt deal, and

02:08:31 23 P.G. clearly has no idea what he's talking about because no

02:08:35 24 one had talked about the corrupt deal as a deal in the

02:08:38 25 previous conversation. So I actually would resist pretty

02:08:40 1    strongly the idea that there is anything more than temporal

02:08:42 2    proximity here.

02:08:43 3      And then you have this one totally ambiguous thing with

02:08:47 4    Mr. Ndukwe before in the uncharged conversation, but I just

02:08:52 5    think that that, you know, pulled out of the record is not

02:08:54 6    nearly enough. And then against all that, you have all the

02:08:56 7    other behavior that is totally inconsistent with the corrupt

02:09:00 8    agreement.

02:09:00 9      And I do think the Court has to look at all of it. It

02:09:04 10    can't just say, oh, you know, this 30-second interaction, if

02:09:06 11    pulled out of all context, could be enough to support beyond a

02:09:09 12    reasonable doubt. That's not what Rule 29 says. Rule 29 says

02:09:12 13    that you look at all evidence in the record and assess

02:09:14 14    whether, after they get the inferences we talked about, there

02:09:16 15    is enough there to satisfy what I have described as a very

02:09:20 16    high standard.

02:09:21 17      And I am perfectly comfortable with the way *Blandford*

02:09:24 18    describes the standard, and I think the opinion we handed up

02:09:28 19    to Your Honor, you know, provides the articulation of the rule

02:09:29 20    as well. And I think once you apply Rule 29 to that rule,

02:09:33 21    looking at the whole record, it's quite clear to me -- and I

02:09:35 22    hope may be clear to you -- that the evidence does not satisfy

02:09:37 23    that very high standard.

02:09:39 24      Should I move to constructive amendment or --

02:09:43 25        THE COURT: Yeah, yeah.

| 02:09:45 | 1 | MR. BURNHAM: Please, if you have -- |

02:09:45  1    MR. BURNHAM:  Please, if you have --

02:09:46  2    THE COURT:  Well, I am on page 7 of your brief, and

02:09:48  3  so I am trying to think about what the legal role you are

02:09:52  4  positing is and what the role of the Court is in that legal

02:09:56  5  role, and I get down to the sentence that says, "thus, when

02:09:58  6  the evidence permits a plausible explanation of the

02:10:03  7  defendant's conduct that sounds in politics instead of

02:10:07  8  corruption, *McCormick* is not satisfied."

02:10:09  9    MR. BURNHAM:  Right.

02:10:10  10    THE COURT:  So I take from that that in your -- in

02:10:14  11  your telling, there is some legal rule that if the evidence

02:10:21  12  permits a plausible explanation, the government loses as a

02:10:25  13  matter of law.

02:10:26  14    MR. BURNHAM:  And what is implied here but not

02:10:29  15  stated, and may be the source of the disconnect, when the

02:10:32  16  evidence, after applying the Rule 29 standard to it.  So when

02:10:35  17  the evidence, after taking all plausible inferences in the

02:10:38  18  government's favor, nonetheless, still permits a plausible

02:10:42  19  explanation of the defendant's conduct, then the rule in

02:10:45  20  *McCormick* is not satisfied.

02:10:46  21    At one point I described it as summary judgment on

02:10:50  22  steroids, and I think that's actually a fair way to think

02:10:52  23  about it.  If the Court imagined that we were here in a

02:10:55  24  summary judgment posture rather than a post-verdict posture,

02:10:57  25  you could just take the evidence as you would in summary

| | | |
|---|---|---|
| 02:10:59 | 1 | judgment and then just, you know, match it up with the |
| 02:11:01 | 2 | *McCormick-Blandford* test and see whether it would be enough, |
| 02:11:05 | 3 | applying the higher standard of beyond a reasonable doubt, |
| 02:11:07 | 4 | which the Court does have to apply, the same as it would apply |
| 02:11:11 | 5 | to preponderance in summary judgment.  So that's what I meant |
| 02:11:13 | 6 | there.  I didn't mean to suggest that you wouldn't apply the |
| 02:11:15 | 7 | normal Rule 29 standard. |
| 02:11:17 | 8 | THE COURT:  So first you take all the evidence, and |
| 02:11:20 | 9 | then you take all the inferences that can be drawn from that |
| 02:11:24 | 10 | evidence and throw them in the government's favor, and then |
| 02:11:28 | 11 | you say, thus construed, does it permit a plausible |
| 02:11:33 | 12 | alternative explanation? |
| 02:11:35 | 13 | MR. BURNHAM:  Does it show an unambiguous agreement. |
| 02:11:37 | 14 | I mean, that's just *Blandford*. |
| 02:11:39 | 15 | THE COURT:  Right.  So wouldn't -- let's just take |
| 02:11:42 | 16 | one of them, the Ndukwe statement. |
| 02:11:42 | 17 | MR. BURNHAM:  Sure. |
| 02:11:44 | 18 | THE COURT:  "Love you but can't."  So let's draw the |
| 02:11:47 | 19 | inference in the government's favor that that statement should |
| 02:11:50 | 20 | be understood as him saying, if you don't give me this money, |
| 02:11:53 | 21 | I won't be able to support you.  That's the inference the |
| 02:11:57 | 22 | government wants to draw, and it says that inference is |
| 02:11:59 | 23 | supported by that statement.  So if that's an inference that's |
| 02:12:03 | 24 | supported by that statement, isn't that in and of itself |
| 02:12:07 | 25 | enough? |

| | | |
|---|---|---|
| 02:12:07 | 1 | MR. BURNHAM: So two points, Your Honor. I |
| 02:12:09 | 2 | obviously disagree with the premise of the hypothetical -- |
| 02:12:10 | 3 | THE COURT: Sure. |
| 02:12:11 | 4 | MR. BURNHAM: -- but that -- |
| 02:12:12 | 5 | THE COURT: But there weren't any -- |
| 02:12:13 | 6 | MR. BURNHAM: -- and perhaps the more important |
| 02:12:15 | 7 | point, I think you have to look at the entire record. And so |
| 02:12:17 | 8 | you can't just say, oh, this ten-second interaction is |
| 02:12:21 | 9 | where -- |
| 02:12:22 | 10 | THE COURT: Doesn't it get worse rather than better? |
| 02:12:24 | 11 | I mean -- |
| 02:12:24 | 12 | MR. BURNHAM: Oh, I don't know. |
| 02:12:25 | 13 | THE COURT: So that statement occurs in the context |
| 02:12:28 | 14 | where over the course of a multi-month period Mr. Sittenfeld |
| 02:12:33 | 15 | is meeting with people who have been portrayed to him as sort |
| 02:12:37 | 16 | of mob adjacent, you know? |
| 02:12:43 | 17 | MR. BURNHAM: That statement's before. |
| 02:12:44 | 18 | THE COURT: The statement -- that statement's |
| 02:12:45 | 19 | before, but I said it's in the context of a -- the beginning |
| 02:12:48 | 20 | of a multi-month interaction -- |
| 02:12:51 | 21 | MR. BURNHAM: Sure. |
| 02:12:51 | 22 | THE COURT: -- where, you know, there's -- when you |
| 02:12:55 | 23 | look at the whole context, these are portrayed as being |
| 02:12:57 | 24 | relatively unsavory characters. |
| 02:13:01 | 25 | MR. BURNHAM: So I volunteered for a few political |

02:13:05  1    campaigns, Your Honor.  I mean, there's some colorful folks

02:13:07  2    out there.  And so I don't know that we can say the fact that

02:13:10  3    the fake -- the fake characters are portrayed as being

02:13:13  4    unsavory is itself equivalent to him using burner phones or

02:13:18  5    some of the things you see in these other cases.  I mean,

02:13:21  6    truly, I mean, all of the other corruption cases have stuff in

02:13:24  7    that --

02:13:24  8         THE COURT:  But if you take -- so I am just thinking

02:13:26  9    about all the inferences --

02:13:27  10        MR. BURNHAM:  Sure.

02:13:27  11        THE COURT:  -- and drawn in all the government's

02:13:29  12   favor.  So the inference is drawn all in the government's

02:13:32  13   favor is, I think, something like Mr. Sittenfeld is willingly

02:13:37  14   interacting with people he believes to be recently associated

02:13:44  15   with some form of organized crime, I think it's fair to say

02:13:48  16   from some of the comments that were made in the videos --

02:13:51  17   again, if we are drawing all the inferences in the

02:13:54  18   government's favor.

02:13:54  19        MR. BURNHAM:  Yes.

02:13:55  20        THE COURT:  Is soliciting or at least accepting

02:13:57  21   money from them in the same conversation in which he's

02:14:01  22   agreeing that, yeah, I can get a vote to my left or a vote to

02:14:05  23   my right, I can deliver the votes, I've always been able to

02:14:11  24   get, you know --

02:14:12  25        MR. BURNHAM:  Right.

02:14:13  1          THE COURT:  -- the majorities, I am always able to

02:14:15  2    get a lot of votes, I am the biggest vote getter, whatever, if

02:14:19  3    you draw all the inferences in the government's favor and look

02:14:23  4    at the whole interaction, you don't think there is enough for

02:14:27  5    a -- to show a deal?

02:14:29  6          MR. BURNHAM:  No, not under the standard of

02:14:31  7    *McCormick* and *Blandford*, because I think under those cases the

02:14:35  8    Court -- the deal has to be clear in understanding from the

02:14:38  9    perspective of P.G.  And I really don't think, even with

02:14:41  10   everything that Your Honor just put on the table, particularly

02:14:43  11   when included with the other things that we have talked about,

02:14:45  12   which the Court does have to consider.  It's not as though the

02:14:48  13   Court just ignores the exculpatory evidence and looks only at

02:14:52  14   the inculpatory.  It looks at the whole tapestry construed

02:14:56  15   through the Rule 29 standard.

02:14:57  16       And I don't think there is enough there, even with the

02:14:59  17   comment to Mr. Ndukwe that I still -- I mean, I don't think

02:15:02  18   it's at all clear what he meant in context, particular given

02:15:06  19   the backdrop of what we filed about that.  There's enough

02:15:09  20   there for the Court to say, yes, it is completely clear,

02:15:10  21   beyond a reasonable doubt, taking these inferences in their

02:15:13  22   favor, that Mr. Sittenfeld understood that these payments were

02:15:14  23   being given to him in exchange for him supporting the

02:15:18  24   development at 435 Elm for Hobbs or, you know, generally

02:15:21  25   supporting our exploits in Cincinnati for 666.  I just -- I

02:15:25  1   don't -- I don't think so.

02:15:26  2       And I think if you look at the other kinds of cases where

02:15:29  3   convictions have been upheld under those rules, the Court will

02:15:34  4   see evidence that is far more inculpatory than what the Court

02:15:36  5   has before it here.

02:15:37  6           THE COURT:  What's your best case when we're --

02:15:39  7   where a case was taken away from the jury, where a guilty

02:15:42  8   verdict was overturned by the Court on Rule 29?

02:15:45  9           MR. BURNHAM:  So I don't know of any cases in the --

02:15:48  10  on the *McCormick* issue where a verdict has been overturned by

02:15:52  11  Rule 29, but I just handed Your Honor a case where the

02:15:55  12  district court threw out the indictment, which, as you know,

02:15:58  13  as Your Honor knows, is an even lower standard for the

02:15:59  14  government than the one that they have to satisfy here because

02:16:01  15  there they can draft their own --

02:16:02  16          THE COURT:  So other than the one you've just handed

02:16:04  17  me, you're not aware --

02:16:04  18          MR. BURNHAM:  Well, to be fair, Your Honor, the

02:16:05  19  government doesn't bring pure campaign contribution cases very

02:16:09  20  often.  It is very, very unusual for them to bring a case like

02:16:12  21  this without personal benefits.  Because I think historically

02:16:16  22  that the government has realized that this is extremely

02:16:19  23  treacherous water to go sailing in, which is, of course, why

02:16:22  24  they tried so hard to get Mr. Sittenfeld to accept personal

02:16:25  25  benefits with the vacations and the UFC fights.  I mean, it's

02:16:30  1    almost cartoonish when you go through the record how many

02:16:33  2    times they tried to get him to accept something.  So there is

02:16:35  3    just not a lot of cases like this where the courts have a

02:16:38  4    person in front of them who only took donations, does not, you

02:16:41  5    know -- and hasn't engaged in other sorts of obviously corrupt

02:16:44  6    conduct.

02:16:45  7        I mean, they look -- the *Terry* decision by Judge Sutton,

02:16:48  8    I think that's one of our best cases.  I mean, the behavior in

02:16:51  9    the *Terry,* as the Court well knows, is completely bizarre

02:16:53  10   behavior that does not permit any plausible inference.  There

02:16:57  11   is no interpretation of what was going on, with the judge in

02:17:00  12   *Terry*, that is consistent with him not being on the take.

02:17:03  13           THE COURT:  But as far as you know, this will be the

02:17:05  14   first court ever to overturn a jury conviction on the

02:17:08  15   arguments you are making here?

02:17:10  16           MR. BURNHAM:  Let me check with Thomas when I sit

02:17:12  17   down.  On the *McCormick* issue, it may well be.  Of course,

02:17:17  18   Judge Oetken is -- as I say, has sort of shown Your Honor the

02:17:21  19   way, we would submit.

02:17:22  20       But there are certainly plenty of cases throwing out

02:17:25  21   corruption convictions.  I mean, *McCormick* itself actually,

02:17:27  22   now that I think about it, threw out a conviction.  So Your

02:17:29  23   Honor would be in good stead with Justice White and his

02:17:33  24   opinion in *McCormick.*

02:17:34  25       And then the Supreme Court throws out two or three

*Mary A. Schweinhagen, RDR, CRR  (937) 512-1604*

02:17:37 1    corruption convictions a year. I mean, the *Percoco* decision

02:17:39 2    that I just mentioned is going to be a 9-0 loss for the

02:17:42 3    department.

02:17:42 4        The *Ciminelli* decision, which was argued right after it,

02:17:45 5    not looking too good for them either.

02:17:47 6        *McDonald*, which I am personally very familiar with --

02:17:49 7            THE COURT: Another 9-0 loss.

02:17:49 8            MR. BURNHAM: -- another 9-0. Actually it was 8-0,

02:17:52 9    may God rest his soul.

02:17:53 10          THE COURT: That was a specific -- that was an

02:17:54 11    official act, right?

02:17:55 12          MR. BURNHAM: It's a different legal issue.

02:17:56 13        But the government's track record in the Supreme Court on

02:17:59 14    corruption cases is extremely poor, and most of those cases,

02:18:02 15    for good or ill -- and I have a lot of thoughts about that

02:18:05 16    separately -- come up in a post-trial posture.

02:18:07 17        The Supreme Court does not have any problem when they

02:18:09 18    think the government has gotten law wrong or the jury, you

02:18:12 19    know, didn't understand what was going on properly with

02:18:14 20    throwing out opinions.

02:18:14 21        And I don't see any reason why this case should have to

02:18:17 22    wait, you know, three more years for them to be able to do

02:18:20 23    that for Mr. Sittenfeld if they don't get to Mr. Benjamin

02:18:23 24    first. We will see if the government appeals.

02:18:25 25        So I guess that's my answer on that, subject to

| | | |
|---|---|---|
| 02:18:29 | 1 | supplementation after I talk to Thomas. |
| 02:18:33 | 2 | On the constructive amendment. Okay. Sorry. Catch my |
| 02:18:33 | 3 | breath. |
| 02:18:37 | 4 | As this Court recognized in its opinion on the motion to |
| 02:18:40 | 5 | dismiss the indictment, the indictment is a very important |
| 02:18:43 | 6 | document. It's, in fact, the critical document in a felony |
| 02:18:46 | 7 | case like this. It is not an illustration of the charges to |
| 02:18:49 | 8 | come, or whatever euphemism the government used in their Rule |
| 02:18:53 | 9 | 33 brief. It is the charges. The Fifth Amendment requires |
| 02:18:55 | 10 | it. They cannot proceed, unless the defendant waives, without |
| 02:18:59 | 11 | getting an indictment from the grand jury. |
| 02:19:00 | 12 | And I actually think that this is about as |
| 02:19:03 | 13 | straightforward a case of a constructive amendment as the |
| 02:19:06 | 14 | Court's going to see. The indictment charges solicitation of |
| 02:19:09 | 15 | Rob, not Mr. Ndukwe. |
| 02:19:10 | 16 | Counts 3 and 4 have the same structure. They have the |
| 02:19:13 | 17 | jurisdictional allegations, then the substantive elements of |
| 02:19:16 | 18 | 666 and the Hobbs Act, and then they allege the substantive |
| 02:19:20 | 19 | facts showing a violation. They both say, quote, "to wit," |
| 02:19:23 | 20 | end quote, by soliciting payments from UCE-1, that is to say, |
| 02:19:27 | 21 | from Rob and only Rob, not Mr. Ndukwe. Critically, they do |
| 02:19:31 | 22 | not say soliciting payments from another person, which is the |
| 02:19:34 | 23 | language that the Court used in its jury instructions. |
| 02:19:37 | 24 | The indictment maybe could have been charged -- Your |
| 02:19:42 | 25 | Honor? I can put the indictment up, if you'd like. Do you |

| | | |
|---|---|---|
| 02:19:46 | 1 | mind if I turn this thing on? |
| 02:19:48 | 2 | THE COURT: Are you talking Count 3 or Count 4? |
| 02:19:51 | 3 | MR. BURNHAM: Both. |
| 02:19:52 | 4 | THE COURT: "Accepted and agreed to accept the thing |
| 02:19:54 | 5 | of value from a person." |
| 02:19:56 | 6 | MR. BURNHAM: Are we looking at your instructions or |
| 02:19:58 | 7 | the indictment, Your Honor? |
| 02:19:59 | 8 | THE COURT: I'm sorry. The indictment. |
| 02:20:01 | 9 | MR. BURNHAM: Your Honor's instructions -- the |
| 02:20:03 | 10 | government may have been able -- here's the indictment. Sorry |
| 02:20:04 | 11 | for the notes. This is the indictment. |
| 02:20:06 | 12 | THE COURT: Okay. |
| 02:20:07 | 13 | MR. BURNHAM: So the indictment charges Rob only. |
| 02:20:09 | 14 | That's Count 3 above the header. |
| 02:20:13 | 15 | THE COURT: But look at the top line. |
| 02:20:15 | 16 | MR. BURNHAM: What top line? |
| 02:20:17 | 17 | THE COURT: Go up. There you go. |
| 02:20:19 | 18 | MR. BURNHAM: Yes. But then they have the "to wit." |
| 02:20:22 | 19 | So they have the general allegation of what the statute is, |
| 02:20:24 | 20 | but then they specified the way that it was actually -- |
| 02:20:27 | 21 | THE COURT: Your whole thing comes down to whether |
| 02:20:29 | 22 | "to wit" somehow modifies the text above it, right? |
| 02:20:33 | 23 | MR. BURNHAM: It does. But I would -- the "to wit," |
| 02:20:34 | 24 | I think, is actually quite clear. And we have a bunch of |
| 02:20:37 | 25 | positions where courts have drawn instructive amendments in |

02:20:40  1    the exact same circumstance involving the "to wit," and we
02:20:41  2    have those in our brief.  I mean, Your Honor --
02:20:42  3            THE COURT:  Right.  And then the government has one
02:20:44  4    where "to wit" was deemed not to be sort of a constructive
02:20:46  5    amendment.
02:20:47  6            MR. BURNHAM:  Only in the Second Circuit.  And the
02:20:49  7    Second Circuit I think has a weird rule that is totally
02:20:51  8    inconsistent with *Stirone* and some other decisions we can talk
02:20:55  9    about.
02:20:55  10           But let's just start first with what "to wit" means.  "To
02:20:58  11   wit" just does not mean "for example."  If you look in the
02:21:01  12   dictionary, you look in *Black's*, anywhere, it doesn't mean
02:21:03  13   "for example."  It means "specifically."  That's what the
02:21:05  14   phrase means.
02:21:06  15           So in order for the government to get out of its use of
02:21:09  16   the word "to wit," the phrase "to wit," it first has to
02:21:11  17   persuade Your Honor that it doesn't mean what it means, which
02:21:13  18   I think is wrong.
02:21:14  19           And then when you turn to the law, the government did not
02:21:17  20   have to put UCE-1 in this count.  Maybe.  I mean, they might
02:21:22  21   have been subject to a Bill of Particulars if they didn't, but
02:21:24  22   they probably would have survived the motion to dismiss with
02:21:26  23   just another person in there rather than UCE-1.  But they did.
02:21:31  24           And the courts have held since *Stirone* that when they do
02:21:34  25   that, they are stuck with it.  So what *Stirone* says is, quote,

02:21:38    1    "A court cannot permit a defendant to be tried on charges that

02:21:41    2    are not waived in the indictment against them."  Then it goes

02:21:42    3    on to say, "When one particular kind of commerce is charged to

02:21:46    4    have been burdened, a conviction must rest on that charge and

02:21:48    5    not another even though it be assumed that under an indictment

02:21:52    6    drawn in general terms a conviction might rest upon either."

02:21:56    7        There's a great opinion by then-Judge Gorsuch -- I have a

02:22:01    8    particular fondness for -- in *United States versus Farr*, in

02:22:02    9    which he says the, quote, "settled rule" is that, quote,

02:22:04    10   "language employed by the government in its indictment becomes

02:22:07    11   an essential and deliberative part of the charge itself such

02:22:10    12   that if an indictment charges particulars, the jury

02:22:14    13   instructions and evidence introduced at trial must comport

02:22:17    14   with those particulars."

02:22:17    15       I think this is especially troubling in this case because

02:22:20    16   it actually, I think, pretty clearly explains the inconsistent

02:22:24    17   verdict.  We're not objecting that the inconsistent verdict on

02:22:27    18   its own is some independent basis for reversal.  I know the

02:22:30    19   courts have rejected that many times.  But it shows you that

02:22:33    20   the variance, I think --

02:22:34    21           THE COURT:  You gave a nod towards that in your

02:22:36    22   papers.

02:22:36    23           MR. BURNHAM:  I think it's important to the extent

02:22:37    24   the Court reaches prejudice, prejudice in general is presumed

02:22:40    25   in the constructive amendment context.  It's compelling

02:22:43  1    evidence of prejudice, and no court has rejected that.  You

02:22:45  2    can't look at what the jury did to figure out whether the

02:22:47  3    amendment mattered.

02:22:49  4         Here, the indictment is clear as day about how these two

02:22:52  5    counts were committed.  In one, they charge it the same way

02:22:54  6    but then they have the wire.  So the wire, of course, is

02:22:57  7    carried forward in the instructions.  So the jury -- I think

02:23:00  8    the inference is Your Honor was talking about "love you but

02:23:03  9    can't."  It sure seems as though that's where the jury went.

02:23:05  10   And indeed that's where the government went in their closing

02:23:08  11   arguments.  So the government in their closing arguments urged

02:23:10  12   the jury directly to convict Mr. Sittenfeld for the

02:23:14  13   interactions with Mr. Ndukwe.

02:23:16  14        So, I mean, you've kind of got it all.  You've got --

02:23:18  15   you've got the indictment is clear.  You have instructions

02:23:21  16   that are broader.  You have got the government urging a

02:23:23  17   conviction on the uncharged count.  That is a clear Fifth

02:23:27  18   Amendment violation.  And nothing I have seen in the

02:23:29  19   government's brief distinguishes any of that.

02:23:32  20        And then their constructive amendment, I think, just kind

02:23:34  21   of ties it all together because it shows you that not only was

02:23:36  22   it a Fifth Amendment violation, but it's one that, you know,

02:23:39  23   it's one that actually mattered in this case.

02:23:41  24             THE COURT:  But in Count 3, it starts by saying --

02:23:44  25   paragraphs 1 through -- I think it also said in Count 3,

02:23:47 1      right?

02:23:47 2              MR. BURNHAM:  Yeah.

02:23:48 3              THE COURT:  "Paragraphs 1 through 23 of the

02:23:49 4      indictment are incorporated here," and that includes --

02:23:53 5      doesn't that include the conversation with --

02:23:55 6              MR. BURNHAM:  And I am not challenging, at least in

02:23:57 7      this argument, the Court's allowance of Mr. Ndukwe to testify

02:24:00 8      or the Court's permission for him to tell that story.  The

02:24:04 9      problem is the grand jury did not indict P.G. for that

02:24:07 10     interaction.  It didn't.  If you look at the indictment --

02:24:09 11             THE COURT:  Unless it's all part of -- I guess I am

02:24:11 12     thinking about, I think, one of the cases the government said,

02:24:14 13     I was trying to find, was one where there was -- you know,

02:24:17 14     somebody was alleged to have had illicit foreign accounts and

02:24:21 15     the indictment specified one foreign bank and one foreign

02:24:25 16     account; and instead at the trial, they proved that one or

02:24:30 17     proved another -- they also proved another foreign bank or

02:24:33 18     foreign account and, you know, they were just like, oh, well,

02:24:36 19     it doesn't really matter whether it was exactly the same one

02:24:39 20     as in the indictment or not.

02:24:40 21             MR. BURNHAM:  So my guess is that was either one of

02:24:43 22     the Second Circuit cases or Judge Bea's very recent opinion in

02:24:46 23     the Ninth Circuit.  Everything else is on the other side.

02:24:49 24         And there is a bunch of cases that are really, I mean,

02:24:51 25     really nitty-gritty about it.  You know, the government will

48

| | | |
|---|---|---|
| 02:24:54 | 1 | allege felon in possession of a Mossberg shotgun, and then |
| 02:24:58 | 2 | they -- |
| 02:24:58 | 3 | THE COURT: In the Seventh Circuit, right? |
| 02:24:58 | 4 | MR. BURNHAM: Yeah. |
| 02:24:59 | 5 | THE COURT: You know that case. |
| 02:25:01 | 6 | MR. BURNHAM: And so it is a very technical rule, |
| 02:25:02 | 7 | but it's not as though it's an unimportant one. I mean, the |
| 02:25:05 | 8 | Fifth Amendment gives Mr. Sittenfeld a right to have the |
| 02:25:08 | 9 | indictment pass upon these allegations before he's allowed to |
| 02:25:10 | 10 | even be brought into this room. |
| 02:25:13 | 11 | THE COURT: I understand. But the allegations |
| 02:25:14 | 12 | are -- I think the difference is the allegations are in the |
| 02:25:18 | 13 | indictment; they are just not in the "to wit" section. |
| 02:25:22 | 14 | MR. BURNHAM: Well, they are not in the crime. The |
| 02:25:24 | 15 | only crime that he was indicted for is the count, and the |
| 02:25:28 | 16 | count says, "to wit, soliciting Rob." Not "soliciting |
| 02:25:32 | 17 | Ndukwe." |
| 02:25:33 | 18 | THE COURT: Well, but further up -- that's why I |
| 02:25:35 | 19 | started further up. Further up it says the crime is agreeing |
| 02:25:38 | 20 | to accept money or something from another person. I don't |
| 02:25:41 | 21 | want to misquote here. |
| 02:25:42 | 22 | MR. BURNHAM: Right. But then it says "to wit," |
| 02:25:44 | 23 | which means "specifically." So the government narrows the -- |
| 02:25:46 | 24 | they have the general allegations, the background, the kind of |
| 02:25:49 | 25 | whatever, you know, historical stuff, and then they say |

| | | |
|---|---|---|
| 02:25:53 | 1 | specifically -- I mean, imagine that it wasn't the sort of |
| 02:25:55 | 2 | antiquated language "to wit" but instead just said |
| 02:25:59 | 3 | "specifically," or, you know, "for example" -- not "for |
| 02:26:02 | 4 | example."  Sorry. |
| 02:26:02 | 5 | But I think specifically is probably the best way to do |
| 02:26:06 | 6 | it, then you have got the specific crime that he is alleged to |
| 02:26:08 | 7 | have committed.  He was not indicted for soliciting the -- |
| 02:26:10 | 8 | THE COURT:  But if this says "for his benefit from |
| 02:26:12 | 9 | UCE-1 and others," we wouldn't be having this conversation? |
| 02:26:15 | 10 | MR. BURNHAM:  I would not be bringing this to Your |
| 02:26:18 | 11 | Honor.  And I don't fault the Court's instructions.  I don't |
| 02:26:20 | 12 | think we objected to the "any person" instruction. |
| 02:26:23 | 13 | THE COURT:  I think you suggested it. |
| 02:26:25 | 14 | MR. BURNHAM:  Did we?  And I'm not suggesting -- |
| 02:26:28 | 15 | THE COURT:  Later on there was an objection to it. |
| 02:26:30 | 16 | MR. BURNHAM:  Yeah.  So I'm not suggesting that the |
| 02:26:33 | 17 | Court did anything wrong here.  I am not suggesting -- |
| 02:26:37 | 18 | THE COURT:  I am not suggesting you are suggesting |
| 02:26:38 | 19 | that. |
| 02:26:38 | 20 | MR. BURNHAM:  But when you match this up with the |
| 02:26:40 | 21 | instructions, the reality is the instructions are general and |
| 02:26:43 | 22 | this is specific.  The government urged the general on the |
| 02:26:46 | 23 | jury, the uncharged conduct.  That conduct was never indicted. |
| 02:26:50 | 24 | And I think if you look at Farr, *Stirone*, and a lot of other |
| 02:26:55 | 25 | cases we've cited, it's a pretty straightforward constructive |

02:26:56 1    amendment.

02:26:57 2        And the Sixth Circuit role, by the way, is not any

02:27:00 3    different from the other cases -- let me find my cite here.

02:27:04 4        I can't find it.  But I know it's in our brief.  They

02:27:07 5    have not adopted the Second Circuit's kind of loose rule that

02:27:09 6    the indictment, you just kind of look at the gist, and as long

02:27:12 7    as the defendant understood the gist, that's fine.

02:27:14 8        They go with Gorsuch, and the Sixth Circuit is with

02:27:17 9    Justice Gorsuch, or then-Judge Gorsuch and everybody else.

02:27:20 10   And then when the government commits itself to a theory and

02:27:22 11   the grand jury indicts only on that theory -- they forwarded

02:27:26 12   the Sixth Circuit case, which is cited in our briefs that I

02:27:29 13   can commend to Your Honor.  But when the government commits to

02:27:31 14   that, that's what the grand jury's tasked upon.  And you

02:27:33 15   cannot convict someone for something the grand jury has not

02:27:36 16   indicted them for.  And I just don't think there is any other

02:27:38 17   way to read those counts.

02:27:40 18       THE COURT:  And the remedy for a constructive

02:27:42 19   amendment, if the Court were to find a constructive amendment?

02:27:44 20       MR. BURNHAM:  I believe it's a new trial, and then

02:27:46 21   there may be a statute issue that we would have to have a

02:27:49 22   conversation about with them.  They can retry -- I believe

02:27:52 23   they can retry on the same indictment.  I can confirm this and

02:27:55 24   get back to Your Honor.

02:27:55 25       THE COURT:  I saw the line in your --

02:27:57  1        MR. BURNHAM:  It's a new trial basis.  What I have

02:27:59  2   not thought through fully is the downstream implications of

02:28:02  3   that, but I am 99 percent sure they can retry on the same

02:28:05  4   indictment.

02:28:05  5        THE COURT:  So when *Kuehne* says when proven -- a

02:28:08  6   constructive amendment when proven reads -- means the

02:28:11  7   defendant is entitled to reversal of his conviction, that just

02:28:14  8   means like vacate the conviction and new trial?

02:28:16  9        MR. BURNHAM:  Yes, because there was an error in

02:28:19  10  trial that's per se prejudicial because it's constitutional

02:28:22  11  error.  Some of this language is not how the courts talk as

02:28:26  12  much these days, but it's a sort of structural error.  And the

02:28:29  13  court presumes prejudice, and then, you know, we can come back

02:28:31  14  and do it again if they want to.  But that's that.

02:28:36  15       The only thing I would point Your Honor to is the

02:28:38  16  government talks about plain error.  I have two responses to

02:28:40  17  that.  First, we are raising it now.  So I think, you know,

02:28:43  18  it's not -- probably not plain error because we are raising it

02:28:46  19  in district court with Your Honor at least now.  So I would

02:28:48  20  just apply the rule straight.  Even if the Court thinks it is

02:28:51  21  plain error because we didn't do anything earlier to sort of

02:28:54  22  bring this to your attention, I think the standard is clearly

02:28:57  23  satisfied.

02:28:57  24       There is a Tenth Circuit case called *United States versus*

02:29:00  25  *Miller*, very, very similar case.  891 F.3d 1220, 2018 case.

02:29:06 1 First, the indictment charged one false statement. The

02:29:08 2 government introduced evidence of two false statements on the

02:29:11 3 same form. I mean, truly, one form he had one box he checked

02:29:14 4 and one he didn't check. And the government introduced

02:29:16 5 evidence of both, said they were both false in closing, but it

02:29:19 6 only charged one. And the Tenth Circuit said that's plain

02:29:23 7 error. You can't do it.

02:29:24 8 The instructions were general. They just said that he

02:29:27 9 committed a false statement. Very, very, very similar facts.

02:29:29 10 THE COURT: Does the fact that you gave me that

02:29:32 11 citation means it's found in your brief --

02:29:34 12 MR. BURNHAM: I'm almost certain it's in our brief.

02:29:35 13 I'd be astonished if it's not.

02:29:35 14 THE COURT: Okay.

02:29:37 15 MR. BURNHAM: I just want to especially commend it

02:29:38 16 to Your Honor, that and the decision from the SDNY that I've

02:29:41 17 talked about at least five times.

02:29:41 18 THE COURT: Okay.

02:29:44 19 MR. BURNHAM: So unless Your Honor has any

02:29:45 20 questions, I can --

02:29:47 21 THE COURT: I don't, Mr. Burnham.

02:29:49 22 MR. BURNHAM: Thank you so much.

02:29:53 23 MR. SINGER: May I approach, Your Honor?

02:29:55 24 THE COURT: You may.

02:29:59 25 MR. SINGER: Thank you.

53

| | | |
|---|---|---|
| 02:30:00 | 1 | If I may, Your Honor, I'd like to start with the opinion |
| 02:30:14 | 2 | that was just published today that defense counsel provided |
| 02:30:22 | 3 | and puts a lot of weight in. |
| 02:30:24 | 4 | One thing I'd like to point out, on page 16, Footnote 6, |
| 02:30:34 | 5 | this Court recognizes that the law is different in the Sixth |
| 02:30:38 | 6 | Circuit, and *Blandford* sets out the appropriate standard in |
| 02:30:41 | 7 | determining the difference between "express" and "explicit." |
| 02:30:44 | 8 | It appears, although I have only read the first half of |
| 02:30:47 | 9 | it as I was sitting here, what the Court in this case said was |
| 02:30:53 | 10 | that "express" and "explicit" are the same. What the Court in |
| 02:30:57 | 11 | *Blandford* said is that "express" and "explicit" are different, |
| 02:31:01 | 12 | which is consistent with this Court's jury instructions. |
| 02:31:06 | 13 | In paragraph 16 -- I'm sorry -- page 16, Footnote 6, this |
| 02:31:11 | 14 | district court opinion recognized that the Sixth Circuit case |
| 02:31:14 | 15 | law is different. And so what turned the Court on this motion |
| 02:31:18 | 16 | to dismiss is fundamentally different than the law in the |
| 02:31:22 | 17 | Sixth Circuit. |
| 02:31:27 | 18 | Your Honor, starting with the Rule 29, the defendant |
| 02:31:33 | 19 | would like to apply a new law, this unambiguous quid pro quo |
| 02:31:39 | 20 | that was not in the Court's jury instructions, that they had |
| 02:31:43 | 21 | never raised at any point prior to trial, and use that as a |
| 02:31:46 | 22 | way to describe what an explicit quid pro quo is and then |
| 02:31:51 | 23 | apply their own plausible interpretation of the facts. |
| 02:31:55 | 24 | THE COURT: Well, wait. I'm not sure that's fair. |
| 02:31:59 | 25 | I mean, the jury instructions said, "The government must show |

*Mary A. Schweinhagen, RDR, CRR  (937) 512-1604*

02:32:03  1    the contours of the proposed exchange were clearly understood

02:32:06  2    by both the public official and the payor."  That's something

02:32:10  3    to do with unambiguous, isn't it?

02:32:13  4             MR. SINGER:  Well, Your Honor, I think -- so the

02:32:16  5    word "unambiguous" is not in *McCormick*, it's not in *Evans*,

02:32:19  6    it's not in *Terry*, it's not in *Inman*.

02:32:22  7             THE COURT:  Isn't clear -- "clearly understood"

02:32:25  8    something like "unambiguous"?

02:32:26  9             MR. SINGER:  It is, but "express" is something like

02:32:28  10   "explicit."  But there is a difference, and the Court is

02:32:30  11   instructed that there is a difference between "express" and

02:32:33  12   "explicit."  And it does turn on the understanding of the

02:32:39  13   parties, but I think the actual language of *Blandford* is

02:32:42  14   instructive, Your Honor.

02:32:45  15        May I approach?

02:32:46  16             THE COURT:  You may.

02:33:01  17             MR. SINGER:  The only place in the defendant's brief

02:33:07  18   that lists out what -- that describes "explicit" as not -- as

02:33:13  19   unambiguous is Footnote 13 in the *Blandford* opinion.  It's

02:33:20  20   important because Footnote 13 defines both "explicit" and

02:33:23  21   "express" as not ambiguous.

02:33:27  22        So "ambiguous" is not this term that all of a sudden

02:33:30  23   shines some new light on what it means to be explicit.  If

02:33:34  24   "express" is not ambiguous and "explicit" is not ambiguous,

02:33:40  25   then -- and then the sentence that precedes this footnote to

02:33:44　1　which it's attached states, "evidence instructed that by

02:33:48　2　'explicit' *McCormick* did not mean 'express.'"

02:33:53　3　　　　What matters is -- and I think the standard that the

02:33:58　4　Court laid out in the jury instructions, the standard that

02:34:00　5　this jury heard is set forth in *Blandford*.  And that is, "The

02:34:10　6　quid pro quo on *McCormick* is satisfied by something short of a

02:34:12　7　formalized and thoroughly articulated contractual agreement."

02:34:16　8　That is in *Blandford*, "i.e., merely knowing the payment was

02:34:20　9　made in return for official acts is enough."

02:34:24　10　　　　　　　THE COURT:  Are you reading from the --

02:34:25　11　　　　　　　MR. SINGER:  I am reading from *Blandford*, Your

02:34:29　12　Honor.

02:34:29　13　　　　　　　THE COURT:  Oh, okay.

02:34:30　14　　　　　　　MR. SINGER:  "This is consistent with the Court's

02:34:31　15　instructions.  Similarly, 'explicit,' as explained as

02:34:35　16　evidence, speaks not to the form of the agreement between the

02:34:37　17　payor and payee but the degree to which the payor and payee

02:34:42　18　were aware of its terms, regardless of whether those terms

02:34:45　19　were articulated."

02:34:46　20　　　　What the Court is saying is the courts don't require, "I

02:34:50　21　am going to give you $20,000 in exchange for votes, and you

02:34:54　22　are going to give me votes in return."  That is not what is

02:34:57　23　required.  But that is what --

02:34:59　24　　　　　　　THE COURT:  What do you think is the quid pro quo

02:35:02　25　that the jury could have found here?

02:35:04  1          MR. SINGER:  Your Honor, I think the November 7th

02:35:05  2   exchange is the clearest example.  But, of course, all of

02:35:10  3   that, all the evidence has to be read together.

02:35:14  4          THE COURT:  I understand.  But what's -- what is

02:35:17  5   the -- what is the quid pro quo -- give me the quid and the

02:35:22  6   quo that you think that the jury -- the evidence the jury saw

02:35:27  7   supports.

02:35:29  8          MR. SINGER:  $20,000 in return for enough votes to

02:35:32  9   make a development agreement on 435 veto-proof.  That is --

02:35:38  10  that is what was discussed at the November 7th meeting after

02:35:41  11  the lunch.

02:35:44  12      And -- but the jury, hearing that evidence, trying to

02:35:47  13  figure out what that means, interpreting it, has to do so in

02:35:51  14  the context of all of the evidence.  And that includes the

02:35:54  15  October 30th exchange, the November 7th exchange in which a

02:35:58  16  very express quid pro quo was offered and the defendant said

02:36:03  17  why don't we meet in person.  Nothing could be in quid pro

02:36:06  18  quo, let's meet in person, and we can talk about it and I can

02:36:09  19  give you comfort that you are investing wisely.

02:36:12  20      In that context, when you see Rob offers almost entirely

02:36:18  21  the same quid pro quo and the defendant says I can deliver the

02:36:23  22  votes, a rational jury could have heard this and said that

02:36:28  23  satisfied the standard as set forth in *Blandford*.

02:36:38  24          THE COURT:  So what if -- what if Mr. Sittenfeld

02:36:42  25  says during the meeting:  I'm voting for this one way or the

| | | |
|---|---|---|
| 02:36:46 | 1 | other.  I would be happy to have your campaign contributions, |
| 02:36:50 | 2 | but this seems like a no-brainer for Cincinnati.  You've got |
| 02:36:53 | 3 | my vote.  I'd love to have your campaign contributions too. |
| 02:36:58 | 4 | Is that -- if that's the evidence, does it support -- |
| 02:37:04 | 5 | MR. SINGER:  Well, I mean, Your Honor, first of all, |
| 02:37:07 | 6 | can I -- can I take a step back from your hypothetical? |
| 02:37:10 | 7 | THE COURT:  Sure. |
| 02:37:11 | 8 | MR. SINGER:  Because those were not the facts here. |
| 02:37:14 | 9 | THE COURT:  But you are going to find that with all |
| 02:37:16 | 10 | my hypotheticals.  They are not going to be the facts that -- |
| 02:37:18 | 11 | MR. SINGER:  Well, it depends, Your Honor.  Because |
| 02:37:21 | 12 | on the one hand, the fact that he would support the project |
| 02:37:23 | 13 | anyway, as we know, is not a defense.  But if he took the |
| 02:37:27 | 14 | money knowing that it was in return, that knowing that it's a |
| 02:37:31 | 15 | bribe, then the statute is satisfied.  I mean, that's |
| 02:37:35 | 16 | *Blandford*. |
| 02:37:36 | 17 | Merely knowing the payment was made in return for |
| 02:37:39 | 18 | official acts is enough.  So if he's like, yeah, I'm going to |
| 02:37:42 | 19 | support this one way or the other, well, I want to really make |
| 02:37:45 | 20 | sure.  So I am going to give you this money so that you -- and |
| 02:37:48 | 21 | this money is the bribe money.  It's $20,000 for your votes. |
| 02:37:52 | 22 | That's why I am giving it to you.  And he accepts it with that |
| 02:37:55 | 23 | understanding, that's *Evans*, that's *Blandford*.  Knowing that |
| 02:37:58 | 24 | this is a bribe payment and receiving it is sufficient. |
| 02:38:01 | 25 | I will say, though -- |

02:38:02  1          THE COURT:  Mr. Burnham, would you agree with that?

02:38:05  2          MR. BURNHAM:  I would just point out, Your Honor,

02:38:07  3  the part of *Blandford* that he is relying on is this is not a

02:38:10  4  campaign contribution case.  *Blandford's* a personal payment

02:38:12  5  case.

02:38:13  6      To answer your question, I'm sure they think that that

02:38:15  7  would be enough for a corrupt agreement, but I certainly don't

02:38:17  8  think it's enough under the law.  And, of course, that's what

02:38:20  9  happened here because Mr. Sittenfeld has lunch with Rob.  And

02:38:23  10  he says if that's the details, it has my support, before

02:38:26  11  anybody talks about campaign contributions, before he asks

02:38:28  12  Mr. Ndukwe would it be appropriate if I bring out my little

02:38:32  13  PowerPoint about how I am going to win the mayoral election.

02:38:34  14  He says that.

02:38:34  15          THE COURT:  So if a contributor says to a politician

02:38:38  16  "I am giving you this money because," intending it to be a

02:38:43  17  bribe, and the politician says, "You don't need to give it to

02:38:47  18  me.  I am voting for it anyway," you are saying that would

02:38:50  19  not -- that would not be --

02:38:51  20          MR. BURNHAM:  It's a little odd.  The hypo maps

02:38:53  21  better onto the gratuity statute, which you can -- I don't

02:38:56  22  think it can even be constitutionally applied in this context,

02:38:59  23  but the Court's already said 666 is not a gratuity statute.

02:39:03  24      I don't know what it would be other than a gratuity if

02:39:06  25  the politician has already said you can't agree to do it

| | | |
|---|---|---|
| 02:39:08 | 1 | because of the bribe if you've already agreed to do it, right. |
| 02:39:11 | 2 | That's a gift for or because of the official act, which is a |
| 02:39:14 | 3 | gratuity. So I think that would be a gratuity, and that means |
| 02:39:17 | 4 | they lose. |
| 02:39:18 | 5 | MR. SINGER: Your Honor, that is the holding. The |
| 02:39:19 | 6 | Court in *Evans*, a campaign contribution case, the Court says, |
| 02:39:23 | 7 | "We hold that knowingly receiving a payment in return for |
| 02:39:26 | 8 | official acts is enough." |
| 02:39:30 | 9 | Receiving the money, knowing it's in return for official |
| 02:39:33 | 10 | acts. That's also entirely consistent with the Court's |
| 02:39:36 | 11 | instructions in this case in the 1951. |
| 02:39:48 | 12 | So *Blandford* is repeating what was said in *Evans* when |
| 02:39:54 | 13 | *Blandford* says, in the part that's highlighted in the copy |
| 02:39:57 | 14 | that I provided, "merely knowing the payment was made in |
| 02:39:59 | 15 | return for official acts." That is -- that is the Sixth |
| 02:40:05 | 16 | Circuit showing how *Evans* clarified *McCormick*. That language |
| 02:40:08 | 17 | is directly from *Evans,* "knowing the payment was made in |
| 02:40:12 | 18 | return for official acts." |
| 02:40:13 | 19 | That's how this case was instructed by the Court. That's |
| 02:40:17 | 20 | how the case was argued in closing arguments. |
| 02:40:21 | 21 | THE COURT: And I think the question is what does |
| 02:40:23 | 22 | the phrase "in return for" mean. Does it have the causal link |
| 02:40:27 | 23 | that Mr. Burnham was just suggesting so that a gratuity would |
| 02:40:31 | 24 | not meet the "in return for" part? |
| 02:40:34 | 25 | MR. SINGER: Your Honor, I encourage you to review |

02:40:36  1    the language in *Evans*.

02:40:37  2                THE COURT:  Okay.

02:40:38  3                MR. SINGER:  It is square on point as to this issue,

02:40:40  4    and it's entirely consistent with the way the Court instructed

02:40:43  5    the 1951 in the elements section.

02:40:50  6                THE COURT:  As to which element in 1951?

02:40:57  7         Oh, 1951.  You are saying that's 5 and 6, right?

02:41:04  8                MR. SINGER:  Yeah.  Which, Your Honor, I will note

02:41:06  9    is a Sixth Circuit pattern instruction.

02:41:08  10               THE COURT:  Yes.  Counts 5 and 6.

02:41:36  11               MR. SINGER:  This is PageID 3227, page 38 of the

02:41:40  12   Court's 1951 instructions, Element 3.  "Third, the defendant

02:41:44  13   knew the property that he obtained, accepted, agreed to

02:41:47  14   accept, or received was being offered or provided to him in

02:41:49  15   exchange for either undertaking a specific official action or

02:41:52  16   him agreeing to undertake a specific official -- a specific

02:41:55  17   action."

02:41:56  18        So it's being provided, and it's being provided for this

02:42:02  19   purpose.  That's receiving a bribe.  You know it's -- a bribe

02:42:05  20   is being offered, and you are receiving it anyway.  That

02:42:08  21   violates 1951.  That is in the *Blandford* case as the defendant

02:42:13  22   relies on exclusively for its unambiguous challenge.

02:42:19  23               THE COURT:  Okay.

02:42:20  24               MR. SINGER:  The other point I would like to make,

02:42:22  25   Your Honor, is we heard a lot about lay jurors and what lay

02:42:26  1    jurors should be deciding.  I think *Evans* is clear, *Blandford*

02:42:31  2    is clear, *Terry* is clear.  We trust jurors to make this

02:42:35  3    decision.  Your Honor provided the explicit quid pro quo

02:42:39  4    instruction.  Eleven times in this Court's instructions did

02:42:42  5    you make -- use the phrase "explicit quid pro quo."  You

02:42:45  6    defined it very clearly.  The jury was instructed what an

02:42:50  7    explicit quid pro quo was.

02:42:52  8         They also received three pages or four pages of

02:42:55  9    instructions about what was not campaign contributions:

02:42:58  10   merely meeting with donors and talking about money and

02:43:02  11   official action in the same conversation.  They received all

02:43:04  12   of that.  They were well informed of what was not an explicit

02:43:09  13   quid pro quo.

02:43:10  14        With *Terry* and *Evans* and *Blandford*, all said, is we trust

02:43:15  15   jurors to make this call.  They hear all the evidence, they

02:43:18  16   assess it, they draw all the reasonable inferences, and they

02:43:21  17   make the call.

02:43:22  18             THE COURT:  I think what -- I think what Mr. Burnham

02:43:26  19   is saying, though, in the system in which politicians

02:43:32  20   routinely solicit and/or accept contributions from people who

02:43:38  21   may have business coming before that body, is it always going

02:43:44  22   to be the case that that means it's up to 12 jurors to decide

02:43:49  23   whether, notwithstanding anything that was said, there

02:43:53  24   actually was some agreement to do something?

02:43:57  25        I mean, I hear what you are saying about trusting juries,

02:44:02  1    but -- so no politician can accept money from anybody who is

02:44:06  2    going to have business coming before them on pain of leaving

02:44:11  3    it up to 12 of their peers to decide whether or not there

02:44:16  4    was -- an inference could be drawn that there was some illicit

02:44:19  5    deal?

02:44:20  6                MR. SINGER:  Your Honor, they moved to dismiss the

02:44:24  7    indictment.  The Court assessed whether or not the indictment

02:44:27  8    established the elements.

02:44:32  9         The next step is presenting the evidence, and then the

02:44:34  10   jury has to assess the evidence.  That's what the trial is

02:44:39  11   for.  If we didn't -- if there was not enough in the

02:44:41  12   indictment, then it would have been dismissed.  If the jury --

02:44:47  13   otherwise, the Court -- the jury gets the instruction:  This

02:44:50  14   is what the law is.  Do these facts meet this law?

02:44:55  15               THE COURT:  But would there -- I guess, would you --

02:44:59  16   would you concede that you may need something more than like

02:45:05  17   mere temporal proximity?

02:45:07  18               MR. SINGER:  Absolutely.

02:45:07  19               THE COURT:  If you just had temporal proximity in

02:45:10  20   the indictment, would that have been enough to --

02:45:12  21               MR. SINGER:  Absolutely not, Your Honor, and that's

02:45:14  22   very clear.  And the Court would have been -- probably would

02:45:16  23   have dismissed it at the Rule 29 in the middle of trial.

02:45:19  24        "Temporal proximity" means here's evidence that he

02:45:22  25   received a campaign contribution and here's evidence that he

02:45:25  1   took official action and they are close in time.  Of course

02:45:31  2   without anything more than that, then it has to be dismissed.

02:45:34  3   Then it can't -- it didn't meet the Rule 29 standard.  No

02:45:38  4   rational jury could find a conviction under that scenario.

02:45:41  5   That's not what --

02:45:42  6            THE COURT:  Here the something more is Ndukwe --

02:45:47  7   Mr. Ndukwe's statement and the conversation that occurs on

02:45:49  8   November 7th?

02:45:51  9            MR. SINGER:  Your Honor, yes, and other evidence.

02:45:56  10  There is -- the October 30th exchange, "love you but can't,"

02:46:00  11  that absolutely was as interpreted -- or how a rational jury

02:46:05  12  could interpret this evidence that paying a contribution was

02:46:11  13  tied to whatever action would have to happen with regard to

02:46:15  14  435 Elm when it's before the city.

02:46:17  15     The November 2nd call, again, a very expressed quid pro

02:46:22  16  quo.  This guy wants to give you $10,000 next week, but he's

02:46:26  17  going to want to know it's going to be a yes vote no matter

02:46:29  18  what.

02:46:30  19     The defendant himself admitted at trial that is an

02:46:34  20  express quid pro quo.  This guy who is offering -- who wants

02:46:38  21  to offer you money when you meet with him next week intends to

02:46:41  22  offer you quid pro quo.  He's a criminal, essentially.  And

02:46:46  23  the defendant met with him anyway, said let's talk about it in

02:46:50  24  person, get him some confidence that he's investing wisely.

02:46:53  25     So it was not shocking when the same quid pro quo that

| 02:46:58 | 1 | was offered on November 2nd was also offered on November 7th. |
| 02:47:02 | 2 | And his response was different that time.  He said, "I'll |
| 02:47:05 | 3 | deliver the votes."  A rational jury -- that is something more |
| 02:47:08 | 4 | than temporal proximity. |
| 02:47:12 | 5 | THE COURT:  What about the uncharged conduct |
| 02:47:15 | 6 | problem, the "to wit" part of the indictment? |
| 02:47:18 | 7 | MR. SINGER:  We're moving to the constructive |
| 02:47:20 | 8 | amendment part, Your Honor? |
| 02:47:22 | 9 | THE COURT:  Well, it seems to come up here.  I mean, |
| 02:47:25 | 10 | you just relied on Mr. Ndukwe's statement to sort of answer |
| 02:47:29 | 11 | part of my -- |
| 02:47:30 | 12 | MR. SINGER:  Indeed. |
| 02:47:31 | 13 | THE COURT:  -- Rule 29 question.  So I think that |
| 02:47:34 | 14 | leads into the indictment issue. |
| 02:47:39 | 15 | MR. SINGER:  So I think a couple things here, Your |
| 02:47:41 | 16 | Honor.  One, it bears actually looking at what was said in |
| 02:47:46 | 17 | closing argument.  Closing argument, I think it's page 5035 or |
| 02:47:51 | 18 | PageID 5034 into 35, the closing argument was, the evidence |
| 02:47:56 | 19 | that you're going to hear for Counts 3 and 5, the 666 charges, |
| 02:48:00 | 20 | are the same as the evidence that you are going to hear, that |
| 02:48:04 | 21 | you have already heard, that we had already gone through with |
| 02:48:07 | 22 | regards to the honest services in the 1951.  They are a |
| 02:48:11 | 23 | difference in the elements, but the evidence is the same. |
| 02:48:16 | 24 | When we got to the second element of the offense -- |
| 02:48:23 | 25 | THE COURT:  Which offense are we talking about? |

65

| | | |
|---|---|---|
| 02:48:25 | 1 | MR. SINGER: This is the -- then we proceeded to go |
| 02:48:26 | 2 | through the elements of the 666 charge. |
| 02:48:28 | 3 | THE COURT: The 666. So that's Count 3 then. |
| 02:48:31 | 4 | MR. SINGER: Correct. So on PageID 5035, what was |
| 02:48:37 | 5 | stated at closing arguments was, you can consider the -- this |
| 02:48:43 | 6 | is what the element says. You can consider the checks that |
| 02:48:47 | 7 | were offered, you can consider the checks that were given, and |
| 02:48:50 | 8 | you can consider the solicitation of Chin, "love you but |
| 02:48:55 | 9 | can't." That is entirely consistent with what the indictment |
| 02:48:58 | 10 | says. |
| 02:48:58 | 11 | THE COURT: Except in the "to wit" part. |
| 02:49:00 | 12 | MR. SINGER: Your Honor, the "to wit" cannot be |
| 02:49:02 | 13 | read -- so I take umbrage with what the defendant said with |
| 02:49:07 | 14 | regards to what the import of the first 23 paragraphs of the |
| 02:49:14 | 15 | indictment that were incorporated. That is as if Count 3 |
| 02:49:18 | 16 | follows the 23 paragraphs. |
| 02:49:20 | 17 | That's all part of the charge, and part of the charge is |
| 02:49:26 | 18 | the October 30th call, "love you but can't." It's all part of |
| 02:49:30 | 19 | a singular core of criminality. It's all part of the charge |
| 02:49:34 | 20 | that is part of Count 3. And that is what was said -- |
| 02:49:39 | 21 | THE COURT: So you are reading "to wit" means "for |
| 02:49:42 | 22 | example"? It's not a limiting phrase? |
| 02:49:44 | 23 | MR. SINGER: So I think the Second Circuit certainly |
| 02:49:46 | 24 | found that, but I don't think that this Court needs to find |
| 02:49:50 | 25 | that in order to deny the defendant's motion on that ground. |

02:49:54  1        The indictment -- the indictment itself, Your Honor, it

02:50:00  2   says, "corruptly solicited or agreed to accept payments from

02:50:07  3   the UC-1."  It doesn't say the UC-1 was solicited.  That has

02:50:12  4   to be -- that statement has to be read in the context of the

02:50:16  5   23 paragraphs that preceded it.

02:50:18  6             THE COURT:  Well, I understand -- I guess I am

02:50:20  7   thinking about -- I can't come up with the case number.  Maybe

02:50:26  8   Mr. Burnham can, but I think there was a case where a

02:50:29  9   defendant was charged with a 924(c) and the underlying drug

02:50:34  10  crime of distribution of cocaine, and I think he was also

02:50:37  11  separately charged in the same indictment, I think, but could

02:50:41  12  be wrong, with possession of cocaine.  And then it turned out

02:50:45  13  that the way they tried to prove the 924(c) was based on

02:50:48  14  possession rather than distribution.  And even though it was

02:50:52  15  all in the same indictment, I thought the Court said that

02:50:56  16  isn't going to work.

02:50:57  17            MR. SINGER:  Your Honor, I have not seen a single

02:50:59  18  case in which a count incorporated facts into that count and

02:51:04  19  then those facts were proved at trial to establish that count

02:51:08  20  and there was a constructive amendment.

02:51:12  21        That is -- that is what happened here.  The October 30th

02:51:16  22  was incorporated into the count.  It is part of the charge as

02:51:19  23  to Count 3.

02:51:20  24            THE COURT:  What's the case I'm talking about,

02:51:22  25  Mr. Burnham?

| | | |
|---|---|---|
| 02:51:23 | 1 | MR. BURNHAM:  It's *United States versus Willoughby*, |
| 02:51:25 | 2 | Your Honor, twenty -- |
| 02:51:27 | 3 | THE COURT:  Is that *Willoughby*? |
| 02:51:28 | 4 | MR. BURNHAM:  Yes, sir. |
| 02:51:29 | 5 | THE COURT:  And am I right, there was both a charge |
| 02:51:31 | 6 | for possession and distribution in the indictment? |
| 02:51:33 | 7 | MR. BURNHAM:  You're correct, Your Honor.  And that |
| 02:51:35 | 8 | Court said "to wit" meant "to wit." |
| 02:51:38 | 9 | MR. SINGER:  There were no facts relating to |
| 02:51:40 | 10 | distribution that were incorporated into that count, though, |
| 02:51:43 | 11 | Your Honor. |
| 02:51:44 | 12 | THE COURT:  Possession, you mean. |
| 02:51:45 | 13 | MR. SINGER:  Possession, that were incorporated into |
| 02:51:47 | 14 | that count. |
| 02:51:47 | 15 | THE COURT:  You have seen the indictment in that |
| 02:51:49 | 16 | case? |
| 02:51:49 | 17 | MR. SINGER:  I'm relying on the -- on what the |
| 02:51:53 | 18 | Seventh Circuit held. |
| 02:51:54 | 19 | THE COURT:  So what did *Willoughby* -- I don't have |
| 02:51:57 | 20 | it in front of me, I don't think. |
| 02:51:59 | 21 | So *Willoughby* said that the reason it wasn't going to |
| 02:52:01 | 22 | allow the possession to work was because the count, that |
| 02:52:06 | 23 | 924(c) count didn't include the facts relating to possession? |
| 02:52:12 | 24 | MR. SINGER:  Indeed, Your Honor. |
| 02:52:14 | 25 | THE COURT:  Do you have a specific pin cite for |

| | | |
|---|---|---|
| 02:52:18 | 1 | that? |
| 02:52:33 | 2 | MR. SINGER:  I do not standing here, Your Honor. |
| 02:52:35 | 3 | I will say that the Court -- nowhere did it mention the |
| 02:52:38 | 4 | fact that there were -- my reading of the case, Your Honor, is |
| 02:52:45 | 5 | that there was no description of possession. |
| 02:52:51 | 6 | THE COURT:  I think it charged possession. |
| 02:52:53 | 7 | MR. SINGER:  It charged using the gun in relation to |
| 02:52:55 | 8 | the drug offense. |
| 02:52:56 | 9 | THE COURT:  Well, it charged 924(c) and said, to |
| 02:53:00 | 10 | wit, using the gun in connection with distribution of cocaine. |
| 02:53:03 | 11 | I believe the indictment also separately charged possession of |
| 02:53:05 | 12 | cocaine, and I think at trial the government proved the use of |
| 02:53:10 | 13 | the gun in connection with possession rather than |
| 02:53:13 | 14 | distributing, and I think the Court in *Willoughby* said that |
| 02:53:16 | 15 | isn't going to cut it, because that's a constructive amendment |
| 02:53:20 | 16 | because your underlying crime that you proved at trial to |
| 02:53:23 | 17 | support the 924(c) was different than the one you to wit'd in |
| 02:53:28 | 18 | the indictment. |
| 02:53:28 | 19 | Mr. Burnham's standing up, though. |
| 02:53:30 | 20 | MR. BURNHAM:  Yes.  I just want to agree with Your |
| 02:53:33 | 21 | Honor.  The quote is, "A conviction that rests, no matter how |
| 02:53:34 | 22 | comfortably, on proof of another offense cannot stand." |
| 02:53:38 | 23 | THE COURT:  Right.  But I take your point, |
| 02:53:41 | 24 | Mr. Singer, to be that here the count itself incorporated the |
| 02:53:47 | 25 | very facts on which you were relying in part to support the |

| | |
|---|---|
| 02:53:52 | 1 |
| 02:53:56 | 2 |
| 02:54:00 | 3 |
| 02:54:08 | 4 |
| 02:54:12 | 5 |
| 02:54:19 | 6 |
| 02:54:23 | 7 |
| 02:54:26 | 8 |

conviction, and you are suggesting that maybe if I look at the indictment in *Willoughby*, the facts supporting the possession charge won't be in there; or is the difference that with 924(c), you actually need a specific crime as an element of 924(c); whereas, here you don't need the thing that was to wit'd in this indictment as an element because the elements of the offense is just a person. It doesn't need to be a specific person?

MR. SINGER: I think that's right. But also, Your Honor, the facts that were alleged in 1 through 23 are not inconsistent with what is in the "to wit" section. The paragraphs that allege above are that -- I think it's paragraph 12, there is a discussion on October 26 where Mr. Ndukwe says, listen, I've got these UCEs. They are willing to contribute.

This is in a follow-up from the September 21st where Mr. Sittenfeld solicited Mr. Ndukwe. There was a call on October 26th. I've got these UCEs -- he didn't use that phrase. I've got these UCEs. They want to contribute. They want to set up a time to meet before the change of law on November 7th.

The follow-up call on November 7th -- or on October 30th was my guy can't get here before the deadline. UCE-1 specifically can't get here before the deadline.

So the facts in the indictment are saying the money that

02:55:29  1    you are soliciting, that you want from me, is going to come

02:55:31  2    from UCE-1.  And that leads to the "love you but can't" and

02:55:36  3    then the November 7th -- 2nd, the November 7th, and the

02:55:41  4    introduction of the relationship of UCE-1.

02:55:44  5         So the payments, even from the calls on October 26th and

02:55:47  6    October 30th, were going to come from UCE-1.

02:55:50  7         The indictment, the "to wit" section doesn't say

02:55:53  8    "corruptly solicited directly from UCE-1."  There was a

02:55:57  9    corrupt solicitation, and the payments came from UCE-1,

02:56:01  10   ultimately.  There was corrupt solicitation and a demand and

02:56:04  11   acceptance and agreement to accept payments from UCE-1.  This

02:56:10  12   is -- this is a matter --

02:56:11  13        THE COURT:  If the jury convicted him solely based

02:56:16  14   on the Ndukwe comment and not based on anything that happened

02:56:20  15   on November 7th or anything else, that wouldn't be consistent

02:56:23  16   with the to "wit part," right?

02:56:24  17        MR. SINGER:  It would be, Your Honor.  The

02:56:26  18   solicitation on October 30th is relating to payments from

02:56:29  19   UCE-1.  It's all part of this core of criminality.  It's all

02:56:32  20   part of this singular episode that is laid out in paragraphs 1

02:56:37  21   through 23 and then incorporated into Count 3.  It's all part

02:56:43  22   of the charge.

02:56:45  23        The "to wit" section, maybe inartfully, mushes it all

02:56:49  24   together.  There is the solicitation, the acceptance -- the

02:56:53  25   demand, acceptance, and agreement to accept payments to the

02:56:57  1    PAC from -- or for his benefit from UCE-1.  So the payments

02:57:01  2    ultimately came from UCE-1.  That was clear in the --

02:57:04  3              THE COURT:  Only the first 10,000 from Mr. Ndukwe

02:57:08  4    was going to be the UCE-1?

02:57:10  5              MR. SINGER:  All the payments, yes.  Maybe that's

02:57:12  6    what I am maybe inartfully trying to say.

02:57:14  7         Paragraphs 12 and 13 are clear:  The payments that I am

02:57:17  8    anticipating giving you, Mr. Ndukwe says, is going to come

02:57:21  9    from UCE-1.

02:57:25  10        And so when all of the different ways 666 can be violated

02:57:31  11   are scrunched together in the "to wit" section, after

02:57:35  12   incorporating all those paragraphs in 1 through 23, that line

02:57:40  13   is entirely consistent with everything that's been

02:57:43  14   incorporated into that count.  And that is entirely consistent

02:57:47  15   with the way that that was described in closing arguments.

02:57:50  16        Essentially, when you're looking at 666, you can consider

02:57:56  17   the October 30th "love you but can't" call.  That's evidence

02:58:01  18   you can consider.

02:58:02  19        For the Court to say that it's constructive amendment or

02:58:04  20   by a prejudicial variance where the very facts that were cited

02:58:10  21   in the closing argument and presented at trial were expressly

02:58:15  22   set forth in the indictment and incorporated into the count,

02:58:18  23   there is not another case that has held that.

02:58:25  24             THE COURT:  Okay.  So the conversation "love you but

02:58:39  25   can't" occurs on October 30th; is that right?

02:58:42   1         MR. SINGER:  That's correct.

02:58:49   2         THE COURT:  That was after the two investors have

02:58:51   3 already been introduced into this conversation, UCE-1 and

02:58:57   4 UCE-2?

02:58:57   5         MR. SINGER:  They had been introduced on October

02:58:59   6 26th as the investors for Mr. Ndukwe, who he was trying to get

02:59:04   7 some money for in order to provide Sittenfeld --

02:59:06   8 Mr. Sittenfeld money in advance of the November 7th law

02:59:11   9 change.

02:59:16  10         THE COURT:  Okay.  Thank you.  That's helpful.

02:59:37  11         MR. SINGER:  Did Your Honor have anymore questions

02:59:38  12 relating to that specific area?

02:59:40  13         THE COURT:  No, not -- I don't think so.

02:59:42  14         MR. SINGER:  The only other thing I would mention,

02:59:44  15 Your Honor, is I don't believe that an issue can be preserved

02:59:50  16 to end around plain error review by raising it at post trial.

02:59:55  17         THE COURT:  That would seem odd, I agree.

02:59:58  18         MR. SINGER:  Nothing further.

02:59:59  19         THE COURT:  Do you have any case law on that?

03:00:01  20         MR. SINGER:  I do not, Your Honor.  This was raised

03:00:04  21 for the first time, although I will say that the cases that we

03:00:08  22 did cite in our Rule 33 response applied plain error review

03:00:11  23 because they were not raised at trial.  So, presumably, when

03:00:14  24 the issue came up post trial, that did not satisfy the

03:00:19  25 requirement that the objection is preserved.

03:00:22  1                    THE COURT:  Thank you.

03:00:27  2                    MR. SINGER:  If there is nothing further, thank you,

03:00:28  3      Your Honor.

03:00:29  4                    THE COURT:  Thank you.

03:00:30  5           Mr. Burnham.

03:00:31  6                    MR. BURNHAM:  Thank you, Your Honor.

03:00:35  7                    THE COURT:  Can we start with that last point first?

03:00:38  8                    MR. BURNHAM:  I was going to do reverse order.  Yes,

03:00:41  9      that was my plan.  Which point?

03:00:43  10                   THE COURT:  The point about you cite me any case law

03:00:46  11     that applies a non-plain error standard as something first

03:00:49  12     raised in post-trial motions?

03:00:51  13                   MR. BURNHAM:  No.  The best I can do is that the

03:00:53  14     government didn't invoke plain error as to the indictment.  It

03:00:56  15     only invoked it as to the instructions.  And I do have a cite

03:00:59  16     that says they can forfeit the plain error objection when they

03:01:01  17     don't raise it specifically.

03:01:02  18          The look on your face suggests I should move on to plain

03:01:06  19     error, and I do think we have satisfied plain error.  And I

03:01:08  20     would be much more comfortable, I think, with the Court just

03:01:11  21     thinking about it through that prism.  The Tenth Circuit case

03:01:13  22     I commended to Your Honor is a very similar case.

03:01:17  23          And all of these -- sort of tortured reading we were just

03:01:20  24     talking about -- if I can just put this up for just a second.

03:01:24  25                   THE COURT:  Hang on.  It's not up yet, Mr. Burnham.

03:01:27 1              MR. BURNHAM:  Sorry.  I am going to read you

03:01:28 2    something first then.

03:01:29 3              THE COURT:  Oh, okay.  Now it's up.

03:01:34 4              MR. BURNHAM:  Here is what the government said in

03:01:35 5    closing argument.  Let me just find you all the quotes.  Hold

03:01:39 6    on.

03:01:40 7         "This also includes potentially the solicitation 'love

03:01:50 8    you but can't' in October 30, 2018.  That element is

03:01:54 9    satisfied."

03:01:55 10        Later on they say, "The evidence shows that the

03:01:57 11   defendant" -- and I apologize.  There is like four

03:01:59 12   transcripts.  So the page numbers are all different.  The one

03:02:02 13   I just read is from 5035 of ECF 251.  The other quote is "The

03:02:08 14   evidence shows that the defendant corruptly solicited

03:02:11 15   Mr. Ndukwe on October 30th."

03:02:12 16        So this thing where he solicited Rob through Ndukwe, I

03:02:16 17   mean, that's just not what this says.  It doesn't say that he

03:02:18 18   solicited Mr. Ndukwe for money to be paid by others.  It

03:02:21 19   doesn't say that he solicited other people.  It says, "He

03:02:24 20   directly corruptly solicited and demanded and accepted and

03:02:27 21   agreed to accept payments to his PAC for his benefit from

03:02:31 22   UCE-1."  That's what it says.

03:02:33 23        UCE-1 was the object of the solicitation with UCE-1's

03:02:39 24   consent, which is the second part.  And we also know that they

03:02:41 25   didn't charge it the way that my friend just suggested because

| | | |
|---|---|---|
| 03:02:44 | 1 | the counts vary about -- among who the object of the |
| 03:02:47 | 2 | solicitation is going to be.  Some of them say UCE-1 and |
| 03:02:51 | 3 | UCE-2.  They don't just say UCE-1. |
| 03:02:55 | 4 | And so in the conversation that counsel relied on, |
| 03:02:57 | 5 | Mr. Ndukwe is talking generically about unspecified investors. |
| 03:03:00 | 6 | It's not some specific conversation about Rob specifically, |
| 03:03:03 | 7 | and that's who you are going to go meet.  And so the |
| 03:03:05 | 8 | solicitation has to match up with what the indictment says, |
| 03:03:08 | 9 | which is that it was of Rob directly, particularly when you |
| 03:03:11 | 10 | compare the indictment to what the government said in closing, |
| 03:03:13 | 11 | which was that he separately solicited Mr. Ndukwe. |
| 03:03:16 | 12 | And that's how they argue.  They go through and say he |
| 03:03:19 | 13 | solicited Rob in the interaction of the lunch or what have you |
| 03:03:22 | 14 | and then he separately solicited Mr. Ndukwe.  And I don't |
| 03:03:25 | 15 | think you can jam both of those solicitations, each of which |
| 03:03:28 | 16 | would be independent crimes in their view of things -- because |
| 03:03:32 | 17 | the crime, of course, is the solicitation or the agreement. |
| 03:03:35 | 18 | It's not the receipt of the payment -- and say that this |
| 03:03:37 | 19 | actually in its very specific language charges both of those |
| 03:03:40 | 20 | crimes. |
| 03:03:41 | 21 | The grand jury did not indict for both of those crimes. |
| 03:03:44 | 22 | It indicted for one crime -- a solicitation of Rob, not a |
| 03:03:49 | 23 | solicitation of Mr. Ndukwe. |
| 03:03:50 | 24 | We talked a lot about *Willoughby*.  I think Your Honor had |
| 03:03:53 | 25 | it right, particularly with regard to a question on that last |

03:03:54  1    point.

03:03:55  2        Okay.  The only thing I would read, Your Honor, is that

03:04:00  3    the rule is not nearly as loose and sort of generous as the

03:04:04  4    government suggested.  The rule from *Willoughby* is that,

03:04:06  5    quote, "Even if an adequate 924(c) charge need not name --

03:04:11  6    indicate by name a particular drug-trafficking offense, by the

03:04:12  7    way they framed the indictment in this case, the government

03:04:14  8    narrowed the legitimate scope of the weapons charge to

03:04:17  9    Willoughby's use of a firearm."

03:04:18  10       This case is from 1994.  So I do not have the indictment

03:04:21  11   from this case.  But I would be very surprised if it does not

03:04:24  12   comport with what the Seventh Circuit said, which is that they

03:04:27  13   can't mix and match across the counts the way that counsel

03:04:30  14   suggested.

03:04:30  15       The quote from *Farr* is even more straightforward.  Had

03:04:33  16   the government --

03:04:33  17            THE COURT:  I know, but I wonder, you heard me --

03:04:35  18            MR. BURNHAM:  Yes.

03:04:35  19            THE COURT:  -- talk with Mr. Singer.  I am wondering

03:04:41  20   if a difference is that in 924(c) an element of the offense,

03:04:45  21   an actual element of the offense is an underlying crime that

03:04:48  22   you've used the gun in connection with, right?  Because 924(c)

03:04:53  23   says if you use a gun in furtherance of some other crime.

03:04:57  24            MR. BURNHAM:  Right.

03:04:57  25            THE COURT:  So it's an actual element of 924(c) what

03:05:01   1   that other crime was.

03:05:02   2          MR. BURNHAM:  Sure.  But it's an element -- sorry.

03:05:05   3   Finish, Your Honor.

03:05:07   4          THE COURT:  But here, is it an element of the

03:05:08   5   crime --

03:05:10   6          MR. BURNHAM:  Well, the solicitation is, and you

03:05:12   7   can't solicit yourself.  And so he committed -- and the way

03:05:15   8   the closing argument unfolded Mr. Sittenfeld committed two

03:05:18   9   crimes:  He committed a crime with Mr. Ndukwe in October, and

03:05:22  10   a separate crime with Rob in November.  That's how they argued

03:05:24  11   it.

03:05:24  12     Okay.  In the indictment, he only committed one crime:

03:05:26  13   He committed a solicitation of Rob in November.

03:05:30  14     I take your point that the identity --

03:05:33  15          THE COURT:  If the -- but I think they were arguing

03:05:34  16   that everybody on the one side was working together, and so

03:05:39  17   the crime was taking money from the group in exchange for

03:05:44  18   supporting the group's project.  And there could be different

03:05:48  19   people in the group at different times giving money, but the

03:05:53  20   idea was the group --

03:05:53  21          MR. BURNHAM:  I --

03:05:54  22          THE COURT:  -- the types of UCE-1, this group was

03:05:57  23   operating at the direction of UCE-1 and was trying to get 435

03:06:01  24   Elm approved.

03:06:01  25          MR. BURNHAM:  So I don't dispute that they argued it

03:06:04 1 as this kind of blob that he was soliciting from. I think the

03:06:08 2 problem they have is that the indictment is much more precise

03:06:11 3 than that, and that the particular interactions with Ndukwe

03:06:14 4 that they are trying to rely on just don't connect through the

03:06:17 5 charged count the way that they want them to because the count

03:06:19 6 says that he solicited Rob. And that to me is the key problem

03:06:24 7 that they've got.

03:06:25 8 And the element point I don't think works in all the

03:06:28 9 cases about the Mossberg shotgun versus the rifle. And there

03:06:31 10 is a lot of cases where the underlying identity of the firearm

03:06:34 11 or the identity of the false statement is not an element.

03:06:37 12 Yes, a false statement is an element, but what type of false

03:06:40 13 statement is not an element.

03:06:41 14 So in the Tenth Circuit 2018 case on plain error, the

03:06:45 15 accountant -- not the accountant. I'm sorry -- the pharmacist

03:06:49 16 filled out a form, checked two boxes. The government said at

03:06:52 17 trial both were lies but they had only indicted on one, and

03:06:56 18 the Court said that doesn't work. And --

03:06:57 19 THE COURT: That's in the Tenth Circuit.

03:06:59 20 MR. BURNHAM: Yes, Your Honor. That's *Murphy*. It's

03:07:00 21 in our brief.

03:07:01 22 The other case that I think is constructive is a case

03:07:03 23 called *Ford* that is definitely in our brief. I don't have the

03:07:05 24 cite. It's a Sixth Circuit case, so that is important. And

03:07:08 25 there they said, "gun possession on or about September 28,

03:07:11  1  1987." There was a separate possession on August 9, 1987, so

03:07:16  2  about a month and a half earlier. And the Court -- the

03:07:18  3  instruction said the time frame could include any date from

03:07:20  4  November 2, 1986, the date he allegedly purchased the firearm,

03:07:25  5  up until the date of September 28, 1987, the date of the

03:07:28  6  alleged domestic violence incident in his home.

03:07:31  7  The court said that was a constructive amendment because

03:07:34  8  it is, quote, "possible that the jury convicted *Ford* based on

03:07:38  9  an incident of possession not intended by the grand jury to be

03:07:40  10  part of the charge."

03:07:41  11  It's a very similar situation where the charge is very

03:07:44  12  specific, and the government tried to rely on something very

03:07:46  13  similar and indeed related and tried to say that they combat.

03:07:52  14  I think the "to wit" phrase is just a very specific thing, and

03:07:55  15  I think when Your Honor reads it, hopefully you will agree

03:07:57  16  with us about that.

03:07:58  17  That's all I had on constructive amendment unless Your

03:08:04  18  Honor -- okay.

03:08:04  19  On the -- back to the bribery counts. So let's just walk

03:08:08  20  through just a few quick points, Your Honor. So, again,

03:08:11  21  *Blandford* -- there is two things going on in *Blandford*.

03:08:14  22  *Blandford* is not a campaign contribution case. So the

03:08:17  23  government is trying to mix and match parts of *Blandford* to

03:08:20  24  say that it conflated the campaign contribution standard with

03:08:23  25  the non-campaign contribution standard. That is wrong.

03:08:26 1  *Blandford* comes right after *Evans*, when there is a bunch of

03:08:29 2  controversy about whether you even need a quid pro quo in the

03:08:32 3  first place for a Hobbs Act count, or for a Hobbs Act

03:08:35 4  conviction.

03:08:36 5  And so *Blandford* is trying to figure out what to do with

03:08:38 6  *McCormick* and *Evans* in a non-campaign contribution case.  The

03:08:41 7  key quote in *Blandford* is in the footnote, where it says what

03:08:45 8  explicit means.  And that's where it says, quote, "Not obscure

03:08:46 9  or ambiguous, having disguised meaning or reservation, and

03:08:46 10 then the --

03:08:46 11  (Mr. Burnham was asked to slow down by reporter.)

03:08:54 12  MR. BURNHAM:  And then the Court itself italicized

03:08:56 13 "clear in understanding."  That's in -- italicized in their

03:09:00 14 opinion in Footnote 13.

03:09:02 15  The point I'm making is just that the legal rule the

03:09:05 16 Sixth Circuit adopts -- indicative, to be sure, because this

03:09:10 17 is not a campaign case -- is the same rule that we're urging

03:09:13 18 on the Court today and the same rule that Judge Oetken applied

03:09:17 19 in the opinion I handed Your Honor.

03:09:18 20  It's true, he does say in a footnote that the Sixth

03:09:21 21 Circuit law appears to be different.  I think that is not the

03:09:23 22 right reading of *Blandford*.  Because I think if you actually

03:09:26 23 read it pretty carefully, it says, no, we have the campaign

03:09:29 24 cases and then we have the non-campaign cases, and we are

03:09:34 25 going to do something different in the non-campaign cases.

03:09:37   1          The other point I would make is the issue in *Evans* that

03:09:40   2    the Court was resolving in the quotes that were talked about a

03:09:43   3    few minutes ago was whether you had to have an affirmative

03:09:46   4    inducement of the victim for a Hobbs Act, right, because Hobbs

03:09:49   5    Act is an extortion statute.  And what the Court said is you

03:09:51   6    don't need inducement.

03:09:52   7          So a lot of the quotes that counsel was giving Your Honor

03:09:55   8    are not about how specific or clear the quid pro quo needs to

03:09:59   9    be.  They are in the Court's discussion of inducement.

03:10:01  10          On the quid pro quo, it's important to bear in mind that

03:10:05  11    *Evans* is not about campaign contributions.  In that case, the

03:10:07  12    defendant took $7,000, reported it on no forms, taxes or

03:10:11  13    campaign, and pocketed it.  There is some discussion in the

03:10:14  14    background about campaign contributions because that's how the

03:10:17  15    defendant had defended it.  There is a long quote from the

03:10:20  16    jury instructions.  That's --

03:10:21  17              THE COURT:  So *Evans* is not a campaign?

03:10:23  18              MR. BURNHAM:  It's very unclear because the issue

03:10:25  19    the Court granted cert on was whether or not you had to have

03:10:28  20    inducement in a Hobbs Act case and whether the instructions in

03:10:31  21    that case were okay.

03:10:34  22          What the Court's operative discussion --

03:10:36  23              THE COURT:  I am pushing back only --

03:10:38  24              MR. BURNHAM:  Please.

03:10:40  25              THE COURT:  -- because while what we are talking

03:10:41    1    reading *Blandford* here --

03:10:41    2            MR. BURNHAM:  The Sixth Circuit here --

03:10:42    3            THE COURT:  -- the Court says, I quote, "Our reading

03:10:43    4    of *Evans* -- as limited to the campaign contribution

03:10:45    5    context" --

03:10:45    6            MR. BURNHAM:  Right.

03:10:46    7            THE COURT:  "-- is bolstered by the fact that the

03:10:48    8    case, after all, involved campaign contributions."

03:10:50    9            MR. BURNHAM:  Right.  I think that is -- I don't

03:10:52   10    mean to suggest that -- the Sixth Circuit has certainly said

03:10:55   11    that *Evans* is important to what the Court's supposed to think

03:10:58   12    about in the campaign contribution context.  So I am not

03:11:00   13    suggesting that the Court should disagree with that.  I am

03:11:02   14    just saying I don't actually think that's the right reading of

03:11:05   15    *Evans*.

03:11:05   16        And in *Blandford,* the Court doesn't really have to get

03:11:08   17    into all of that because *Blandford* is, of course, not a

03:11:10   18    campaign contribution case.

03:11:12   19        Then in theory, Judge Sutton comes along and is presented

03:11:15   20    with the sale conundrum that so many others have between these

03:11:18   21    two cases.  And the way he deals with it in *Terry* is he says,

03:11:21   22    look, the rule is *McCormick.*  *Evans* tells us it doesn't have

03:11:24   23    to be express because one interpretation of explicit could be

03:11:27   24    express, certainly.  And in this case, it's easy because, you

03:11:31   25    know, the judge was so obviously corrupt that there is no

03:11:33  1    other inference you could draw.

03:11:36  2         So I think certainly *Evans* is relevant.  I am just saying

03:11:38  3    the thing about knowing it was in exchange for official acts

03:11:41  4    is not the Supreme Court's definition of the specificity

03:11:44  5    required for a campaign contribution bribe.  That is not what

03:11:47  6    *Evans* held, that is not what the lower courts have said it

03:11:49  7    held, and that would not be a permissible rule because that

03:11:52  8    would indeed make gratuities come within the net.  That's all

03:11:57  9    I -- that's the only point I wanted to make on that.

03:11:58  10        Two more quick, very quick points.  Characterization -- I

03:12:01  11   think it's important to draw a distinction between sort of

03:12:06  12   characterizing a statement and drawing a rational inference.

03:12:08  13   And so, yes, we can characterize any statement as inculpatory

03:12:12  14   if we want to, but I think what the Court's job is to do, as

03:12:15  15   we have talked about, is take all the evidence and then figure

03:12:17  16   out whether a reasonable inference -- that a reasonable juror

03:12:22  17   could draw the inference of criminality according to the

03:12:24  18   standard that we've talked about beyond a reasonable doubt.

03:12:27  19        This is a uniquely easy case in which to do this because

03:12:30  20   all of the important interactions are recorded.  So the Court

03:12:33  21   can listen to them over and over or as many times as you

03:12:37  22   want -- I've done it a lot -- and the Court can figure out

03:12:40  23   what is a reasonable inference to draw according to this high

03:12:42  24   standard.

03:12:43  25        The last point I would make, Your Honor asked me about

| | | |
|---|---|---|
| 03:12:46 | 1 | whether I had any Rule 29 opinions in the campaign context, |
| 03:12:49 | 2 | and I have not yet located one, but here's why: Every other |
| 03:12:52 | 3 | case is miles beyond this. I mean, truly, if you go through |
| 03:12:56 | 4 | the opinions, particularly if you go to the district court |
| 03:12:59 | 5 | opinions, it is very clear that these are hardcore fraud |
| 03:13:02 | 6 | schemes where, yes, it is -- sometimes the campaign |
| 03:13:05 | 7 | contributions aren't reported, they are being pocketed, they |
| 03:13:08 | 8 | are being diverted. The people are talking about burner |
| 03:13:11 | 9 | phones. There is coded language. It's *Blagojevich*. I mean, |
| 03:13:14 | 10 | the reason why is because the department does not normally |
| 03:13:16 | 11 | bring cases like this. The only case that's even kind of |
| 03:13:19 | 12 | close is *Siegelman*, but even in *Siegelman*, which I think is a |
| 03:13:22 | 13 | close case, *Siegelman* had acknowledged to his aide that the |
| 03:13:25 | 14 | money was coming in in exchange for a seat on the CON Board, |
| 03:13:29 | 15 | which was the board that hands out healthcare facilities in |
| 03:13:32 | 16 | Alabama. It decides how many there is going to be. So you |
| 03:13:36 | 17 | had direct acknowledgment from the defendant that he knew |
| 03:13:39 | 18 | these things were going to be exchanged with each other. |
| 03:13:41 | 19 | There is nothing like that here at all. There is not a |
| 03:13:44 | 20 | shred of evidence that I am aware of in which Mr. Sittenfeld |
| 03:13:47 | 21 | makes clear either by deed or word that he understands he is |
| 03:13:52 | 22 | being bribed to support a redevelopment project three blocks |
| 03:13:55 | 23 | away from this courthouse. And to me that is a huge |
| 03:13:58 | 24 | evidentiary gap, particularly in a case where the government |
| 03:14:02 | 25 | designed everything, recorded everything, and tried millions |

03:14:05  1     of times to induce Mr. Sittenfeld into saying something or

03:14:08  2     admitting something along those lines.  I just don't think the

03:14:11  3     evidence can fly in this context.

03:14:13  4          Thank you, Your Honor.

03:14:14  5              THE COURT:  Are we good?  Do you have something else

03:14:25  6     you want to say?

03:14:26  7              MR. SINGER:  Am I permitted to make any follow-up

03:14:28  8     comments?

03:14:28  9              THE COURT:  Very brief.  Go ahead.

03:14:29  10             MR. SINGER:  If the Court is satisfied --

03:14:32  11             THE COURT:  No, no.  If you heard something new you

03:14:33  12    want to comment on, go ahead.

03:14:34  13             MR. SINGER:  I mean, just very briefly, Your Honor.

03:14:36  14    I would note that the facts that were incorporated include the

03:14:40  15    date range, and the date range includes that -- that is

03:14:44  16    charged in the indictment, that is charged in Count 3 includes

03:14:47  17    the October 30th "love you but can't."  So that is

03:14:51  18    incorporated in.  Rob is specifically mentioned in paragraph

03:14:55  19    13.

03:14:55  20             THE COURT:  I saw that.

03:14:56  21             MR. SINGER:  In the "love you but can't."  It's the

03:15:00  22    same money that we're talking about on October 30th that leads

03:15:03  23    to the December 17th payments.

03:15:06  24          As for the Rule 29, Your Honor, *Blandford* is a published

03:15:14  25    Sixth Circuit case.  It controls.  This Court's instructions

03:15:18  1    mirrored the law that's set forth in *Blandford* and reinforced

03:15:23  2    in *Terry*.

03:15:26  3         If there are no further questions, the government rests.

03:15:28  4              THE COURT:  I don't think so.  Thank you.

03:15:30  5         All right.  Well, this case has not been under-

03:15:35  6    litigated, I'll give it that.  So you have given the Court a

03:15:38  7    lot to think about.  I will try to do that as promptly as

03:15:41  8    possible and get something out on these motions.

03:15:46  9         I think I am ready to recess.

03:15:48  10             THE COURTROOM DEPUTY:  All rise.  This court is

03:15:51  11   adjourned.

03:15:52  12        (Proceedings concluded at 3:16 p.m.)

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

1                    CERTIFICATE OF REPORTER

2

3           I, Mary A. Schweinhagen, Federal Official Realtime

4    Court Reporter, in and for the United States District Court

5    for the Southern District of Ohio, do hereby certify that

6    pursuant to Section 753, Title 28, United States Code that the

7    foregoing is a true and correct transcript of the

8    stenographically reported proceedings held in the

9    above-entitled matter and that the transcript page format is

10   in conformance with the regulations of the Judicial Conference

11   of the United States.

12

13   s/Mary A. Schweinhagen

14   _____ 16th of December, 2022

15   MARY A. SCHWEINHAGEN, RDR, CRR
     FEDERAL OFFICIAL COURT REPORTER
16

17

18

19

20

21

22

23

24

25